IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al.*

     Debtor.

Case No. 6:07-bk-00761-ABB
Jointly Administered
Chapter 11

_____/

SONEET KAPILA, Chapter 11
Trustee
for TRANS CONTINENTAL
TELEVISION PRODUCTIONS,
INC.,

     Plaintiff,

v.

MTV NETWORKS COMPANY,

     Defendant.

Adv. No.: 6:08-ap-00157-ABB

_____/

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO
PLAINTIFF'S AMENDED COMPLAINT**

Defendant MTV Networks, a division of Viacom International, Inc. ("MTVN"), by and through its undersigned counsel, hereby submits its Answer and Affirmative Defenses to Soneet Kapila, Chapter 11 Trustee for Trans Continental Television Productions, Inc.'s ("Plaintiff/TC") Amended Complaint.

## ANSWER

MTVN denies each and every allegation not specifically admitted herein and states as to each correspondingly numbered Paragraph of the Amended Complaint as follows:

1.    MTVN admits the allegations of Footnote 1.  MTVN denies all remaining allegations in Paragraph 1.

2.    MTVN denies the allegations in the first sentence of Paragraph 2 and states that *Making the Band* originally aired on ABC in 2000.  MTVN admits the allegation in the second sentence of Paragraph 2 that the show was renewed for a second season.  The remaining allegations of the second and third sentences of Paragraph 2 are merely opinions that cannot be admitted or denied.  To the extent such opinions require a response, MTVN denies same.  The allegations of the fourth sentence of Paragraph 2 are denied.

3.    MTVN denies the allegations in the first sentence of Paragraph 3. MTVN lacks knowledge or information sufficient to form a belief as to the allegations of the second and third sentences of Paragraph 3 and therefore denies same.

4.    Denied.

5.    MTVN Denies allegations in the first and second sentences of Paragraph 5, but admits that it received a letter from TC and issued a written response and states that the letters speaks for themselves; MTVN denies any characterizations thereof.  MTVN denies the allegations of the third sentence of

Paragraph 5. With respect to the fourth sentence of Paragraph 5, MTVN admits that at a certain point, it stopped listing TC as a co-owner of Making the Band.

6.    As to allegations in the first sentence of Paragraph 6, MTVN states that Exhibit B to the Amended Complaint speaks for itself, and denies any characterizations thereof. MTVN lacks knowledge or information sufficient to form a belief as to the allegations in the second through fifth sentences of Paragraph 6 and therefore denies same, but admits that Louis Pearlman was eventually removed from the credits.

7.    MTVN admits the allegation in the first sentence of Paragraph 7 that it stopped making payments to TC, and further states that this was a result of no monies being owed to TC. MTVN denies the remaining allegations of the first sentence of Paragraph 7. As to the remaining allegations of Paragraph 7, to the extent TC is referring to Exhibit C of the Amended Complaint, MTVN states that Exhibit C speaks for itself, and otherwise denies the remaining allegations.

8.    MTVN denies the allegations in Paragraph 8, and further states that the allegations of the second sentence of Paragraph 8 mischaracterize MTVN's position.

## JURISDICTION AND VENUE

9.    Admitted, but MTVN denies that Plaintiff is entitled to any relief against MTVN whatsoever.

10.    MTVN admits that it and Plaintiff are citizens of different states and that Plaintiff purports to bring a claim seeking damages in excess of

$75,000.00, but denies that Plaintiff is entitled to any relief against MTVN whatsoever.

11.    Admitted, but MTVN denies that Plaintiff is entitled to any relief against MTVN whatsoever.

12.    Admitted, but MTVN denies that Plaintiff is entitled to any relief against MTVN whatsoever.

## PARTIES

13.    Admitted.

14.    MTVN admits that it is a division of Viacom International Inc., which is a Delaware corporation with its principal place of business at 1515 Broadway, New York, New York 10036.

## FACTUAL BACKGROUND

15.    Admitted.

16.    Admitted.

17.    Admitted.

18.    Admitted.

19.    Admitted.

**A.    The Joint Venture Between MTV and Trans Continental.[1]**

20.    MTVN lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 20 and therefore denies same.

---

[1] To the extent this heading, "The Joint Venture Between MTV and Trans Continental" is an allegation, MTVN denies same.

21.     MTVN admits the allegation in the first sentence of Paragraph 21 that it is a division of Viacom International Inc.; the remaining allegations of the first sentence of Paragraph 21 are merely opinions that cannot be denied or admitted. To the extent such opinions require a response, MTVN denies same. MTVN admits the allegations in the second sentence of Paragraph 21. With respect to the third sentence of Paragraph 21, MTVN admits that *The Real World* first aired in 1992 and states that it has been referred to as a pioneer of reality television.

22.     MTVN admits the allegation in the first sentence of Paragraph 22 that it entered into the January 7, 2000 letter agreement, and denies any characterization thereof. MTVN further admits that the January 7, 2000 letter agreement contains provisions regarding a television program regarding the making of a boy-band which was to be broadcast on ABC. However, MTVN states that the provisions are included within a more fully integrated document that includes numerous other terms and conditions that supplement, influence and place into context the provisions, and MTVN respectfully refers the Court to the complete text of the January 7, 2000 letter agreement for its full and intended interpretation. MTVN admits that a true and correct copy of the January 7, 2000 letter agreement is attached to the Amended Complaint as Exhibit A. MTVN denies all remaining allegations in Paragraph 22.

23.     MTVN respectfully refers the Court to Exhibit A as it speaks for itself.

24.    Paragraph 24 is merely an opinion that cannot be admitted or denied.  To the extent such opinion requires a response, MTVN denies same.

25.    MTVN denies the allegations in the first sentence of Paragraph 25, except to the extent it purports to characterize the January 7, 2000 letter agreement, in which case MTVN respectfully refers the Court to Exhibit A as it speaks for itself.  MTVN lacks knowledge or information sufficient to form a belief as to the allegation in the second sentence of Paragraph 25 and therefore denies same, except admits that TC played some role in the development of the television series.

26.    MTVN denies the allegations in the first sentence of Paragraph 26. MTVN admits that the January 7, 2000 letter agreement contains provisions for the division of certain revenues pursuant to the express terms of the January 7, 2000 letter agreement, but denies that TC has accurately or completely set forth those terms and respectfully refers the Court to the January 7, 2000 letter agreement for the actual and complete language of those terms.  MTVN denies the remaining allegations in Paragraph 26.

27.    MTVN admits that the January 7, 2000 letter agreement contains the language quoted in Paragraph 27, but states that the language is included within a more fully integrated document that includes numerous other terms and conditions that supplement, influence and place into context the language as quoted, and MTVN respectfully refers the Court to the complete text of the January 7, 2000 letter agreement for its full and intended interpretation.  MTVN

denies all remaining allegations in Paragraph 27, including the allegation that it was notable that the January 7, 2000 letter agreement contained the quoted language.

28.    MTVN admits that the January 7, 2000 letter agreement contains the provision referenced in Paragraph 28, except that TC has misquoted the provision (the provision contains the term "therein", not "therefrom"). MTVN further states that the provision is included within a more fully integrated document that includes numerous other terms and conditions that supplement, influence and place into context the provision, and MTVN respectfully refers the Court to the complete text of the January 7, 2000 letter agreement for its full and intended interpretation.

29.    MTVN admits that the January 7, 2000 letter agreement contains the language quoted in Paragraph 29, but states that the language is included within a more fully integrated document that includes numerous other terms and conditions that supplement, influence and place into context the language as quoted, and MTVN respectfully refers the Court to the complete text of the January 7, 2000 letter agreement for its full and intended interpretation.

30.    MTVN admits that the parties entered into agreements dated January 7, 2000 and November 15, 2001, and respectfully refers the Court to Exhibits A and B of the Amended Complaint as the documents speak for themselves.

**B.    The Launch of** *Making the Band* **on ABC**[2]

31.    MTVN admits that Bunim Murray helped produce Making the Band when it originally aired on ABC, but denies that Making the Band originally aired in 1999.

32.    MTVN admits that the show chronicled the real-life competition between young men vying to become members of the next boy band group, but denies the remaining allegations in the first sentence of Paragraph 32.  MTVN admits the allegations in the second sentence of Paragraph 32.

33.    Admitted.

34.    MTVN lacks knowledge or information sufficient to form a belief as to the attribution in Paragraph 34 that O-Town's album sales were "[b]oosted by the popularity of the television series," and therefore denies same.  MTVN admits the remaining allegations in Paragraph 34.

35.    Paragraph 35 is merely an opinion that cannot be admitted or denied.  To the extent such opinion requires a response, MTVN denies same.

36.    MTVN lacks knowledge or information sufficient to form a belief as to the attribution in Paragraph 36 that "*Making the Band*'s ratings were strong enough to warrant a second season," and therefore denies same.  MTVN further

---

[2]  This section of the Amended Complaint (¶¶ 31 – 37) contains several allegations that are not directed specifically at MTVN and/or are opinions.  However, in the abundance of caution and to the extent possible, MTVN is responding to ¶¶ 31 – 37 to the best of its knowledge.

denies that Bunim Murray were the only producers. MTVN admits the remaining allegations in Paragraph 36.

37.    MTVN lacks knowledge or information sufficient to form a belief as to the attribution in Paragraph 37 that "Season Two of *Making the Band* was ground-breaking in that it marked the first time the main cast of a reality show returned for a second season[,]" and therefore denies same.

38.    MTVN admits that, until a certain point in time, *Making the Band* was scheduled to run for a third season on ABC, and denies the remaining allegations in Paragraph 38.

39.    MTVN avers that no response is required to the extent that paragraph 39 purports to allege legal conclusions, and refers the Court to the January 7, 2000 letter agreement for its content. MTVN denies the remaining allegations in Paragraph 39.

40.    MTVN lacks knowledge or information sufficient to form a belief as to the allegation in the first sentence of Paragraph 40 and therefore denies same. The remaining allegations of Paragraph 40 are merely opinions that cannot be admitted or denied. To the extent such opinions require a response, MTVN denies same.

## C.    The Parties Amend the Joint Venture Agreement.[3]

41.    MTVN denies the allegations in the first sentence of Paragraph 41. As to the remaining allegations, MTVN admits that on November 15, 2001, TC and MTVN entered into an amended agreement that altered certain provisions of the January 7, 2000 letter agreement, but respectfully refers the Court to the November 15, 2001 agreement for its complete terms and conditions. MTVN denies the remaining allegations in Paragraph 41.

42.    MTVN admits that the January 7, 2000 letter agreement contains the language quoted in the first sentence of Paragraph 42, but states that the language is included within a more fully integrated document that includes numerous other terms and conditions that supplement, influence and place into context the language as quoted, and MTVN respectfully refers the Court to the complete text of the January 7, 2000 letter agreement for its full and intended interpretation.    MTVN denies the allegations in the second sentence of Paragraph 42 and respectfully refers the Court to Exhibit B.

43.    The first sentence of Paragraph 43 is merely an opinion that cannot be admitted or denied.  To the extent such opinion requires a response, MTVN denies same.    MTVN denies the allegations in the second sentence of Paragraph 43 and respectfully refers the Court to Exhibit B for the true content and meaning of Paragraph 9 of Exhibit B.

---

[3]  To the extent this heading, "The Parties Amend the Joint Venture Agreement" is an allegation, MTVN denies same.

44.     Denied.  MTVN further states that the Amended Agreement speaks for itself, and respectfully refers the Court to Exhibit B of the Amended Complaint.

45.     Denied.  MTVN further states that the Amended Agreement speaks for itself, and respectfully refers the Court to Exhibit B of the Amended Complaint.

46.     Regarding the allegations in the first sentence of Paragraph 46, MTVN admits that it paid TC $725,064.85 but denies that it did so "belatedly" on December 3, 2001.  Further, MTVN states that it paid that amount to TC with a check dated November 29, 2001.  MTVN admits that the payments referred to in the second sentence of Paragraph 46 and those referred to in footnotes thereto were made to TC.  MTVN further states that its payment obligations, as described in Paragraph 46, are expressly provided for in ¶¶ 3 and 8 of the November 15, 2001 agreement, and MTVN respectfully refers the Court to those provisions for the complete terms and conditions.  MTVN denies the remaining allegations of Paragraph 46.

47.     MTVN denies that the third season of *Making the Band* aired in January 2002, but states that the first episode of the third season aired in January 2002.  MTVN admits the remaining allegations in Paragraph 47.  With respect to Paragraph 47, footnote 4, MTVN admits that it provided TC with an accounting for the third season of Making the Band in April 2005, but denies all other allegations contained therein.

**D.    MTV's Scheme to Misappropriate Trans Continental's Ownership[4]**

48.    Denied.

49.    Denied.

50.    Denied.

51.    MTVN denies all the allegations in Paragraph 51 including subparagraphs a through o.

52.    MTVN states that the letter speaks for itself, respectfully refers the Court to Exhibit C of the Amended Complaint, and denies any characterizations thereof.

53.    To the extent that the first sentence of Paragraph 53 refers to Exhibit C of the Amended Complaint, MTVN states that Exhibit C speaks for itself, and otherwise denies the remaining allegations in the first sentence of Paragraph 53.  To the extent the remaining allegations in paragraph 53 refer to documents produced in the litigation, the documents speak for themselves, and MTVN denies any characterizations thereof.

## COUNT II
## BREACH OF CONTRACT

54.    MTVN realleges and incorporates its responses to Paragraphs 1 through 53 as if set forth fully herein.

55.    MTVN admits that the January 7, 2000 letter agreement contains the language quoted in Paragraph 55, but states that the language is included

---

[4]  To the extent this heading, "MTV's Scheme to Misappropriate Trans Continental's Ownership" is an allegation, MTVN denies same:

within a more fully integrated document that includes numerous other terms and conditions that supplement, influence and place into context the language as quoted, and MTVN respectfully refers the Court to the complete text of the January 7, 2000 letter agreement for its full and intended interpretation.  In particular, Plaintiff has omitted the remaining language of the quoted provision, which states, "...except that on the Series, [MTVN] breaks any tie over creative matters, and on the creative musical aspect of the venture, [Trans Continental] breaks the tie."

56.     MTVN admits that the January 7, 2000 letter agreement contains the language quoted in Paragraph 56, but states that the language is included within a more fully integrated document that includes numerous other terms and conditions that supplement, influence and place into context the language as quoted, and MTVN respectfully refers the Court to the complete text of the January 7, 2000 letter agreement for its full and intended interpretation.  MTVN denies all remaining allegations in Paragraph 56, including Plaintiff's allegation that the quoted provisions in Paragraph 56 are similar to the quoted provision in Paragraph 55.

57.     MTVN respectfully refers the Court to Paragraph 5 of the Amended Agreement as it speaks for itself, and denies any characterizations thereof.

58.     MTVN admits that the November 15, 2001 agreement contains the language quoted in Paragraph 58, but states that the language is included within a

more fully integrated document that includes numerous other terms and conditions that supplement, influence and place into context the language as quoted, and MTVN respectfully refers the Court to the complete text of the November 15, 2001 agreement for its full and intended interpretation.

59.    Denied.

60.    Denied.

61.    Denied.

62.    Denied.

63.    Denied.

In response to the unnumbered "Wherefore" Paragraph following Paragraph 63, MTVN denies that any action or inaction on its part has given rise to any liability to TC and therefore denies that TC is entitled to any of the relief requested against MTVN whatsoever.

## COUNT III
## BREACH OF FIDUCIARY DUTY

64.    MTVN realleges and incorporates its responses to Paragraphs 1 through 53 as if set forth fully herein.

65.    MTVN admits that the parties entered into a letter agreement dated January 7, 2000, and respectfully refers the Court to Exhibit A of the Amended Complaint as it speaks for itself, and denies any characterizations thereof.

66.    Denied, but MTVN admits that one purpose of the January 7, 2000 letter agreement was to develop a profitable business enterprise. MTVN respectfully refers the Court to Exhibit A of the Amended Complaint as it speaks

for itself.  To the extent that the remaining allegations in Paragraph 66 call for legal conclusions, MTVN avers that no response is required.

66. 67.    Denied.

68.    Denied.

69.    MTVN admits that the parties entered into a letter agreement dated January 7, 2000, respectfully refers the Court to Exhibit A of the Amended Complaint as it speaks for itself, and denies any characterizations thereof.  To the extent that the remaining allegations in Paragraph 69 call for legal conclusions, MTVN avers that no response is required.

70.    MTVN denies all allegations in Paragraph 70 including those contained in subparagraphs (a) through (i).

71.    Denied.

72.    Denied.

73.    Denied.

74.    Denied.

75.    Denied.

In response to the unnumbered "Wherefore" Paragraph following Paragraph 75, MTVN denies that any action or inaction on its part has given rise to any liability to TC and therefore denies that TC is entitled to any of the relief requested against MTVN whatsoever.

## COUNT IV
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

76.     MTVN realleges and incorporates its responses to Paragraphs 1 through 53 as if set forth fully herein.

77.     MTVN avers that no response is required to the extent that paragraph 77 purports to allege legal conclusions.  In all other respects, denied.

78.     MTVN admits that the parties did not execute a long-form agreement.  In all other respects, denied.

79.     Denied.

80.     Denied.

81.     MTVN lacks knowledge or information sufficient to form a belief as to the allegation in Paragraph 81 and therefore denies same.

82.     Denied.

83.     Denied.

In response to the unnumbered "Wherefore" Paragraph following Paragraph 83, MTVN denies that any action or inaction on its part has given rise to any liability to TC and therefore denies that TC is entitled to any of the relief requested against MTVN whatsoever.

## COUNT V
## DECLARATORY RELIEF
### (As to Copyright Ownership)

84.     MTVN realleges and incorporates its responses to Paragraphs 1 through 53 as if set forth fully herein.

85.    MTVN admits that the November 15, 2001 agreement contains the language quoted in Paragraph 85, but states that the language is included within a more fully integrated document that includes numerous other terms and conditions that supplement, influence and place into context the language as quoted, and MTVN respectfully refers the Court to the complete text of the November 15, 2001 agreement for its full and intended interpretation.

86.    MTVN admits that it received a letter from TC and issued a written response and states that the letter speaks for itself, and MTVN respectfully refers the Court to the complete text of the letter Exhibit D.

87.    MTVN admits that it issued a written response to TC's letter and states that the letter speaks for itself, and MTVN respectfully refers the Court to the complete text of Exhibit C.

88.    Denied.

89.    MTVN admits that it received a letter from TC and states that the letter speaks for itself, and MTVN respectfully refers the Court to the complete text of the letter Exhibit E.

90.    MTVN states that numerous episodes of Making the Band were jointly registered under TC's name, and admits that a corporate representative of MTVN testified that certain episodes should have been jointly registered with TC. In all other respects, denied.

91.    MTVN admits that on May 14, 2009, its corporate representative testified that he was not aware of any plan to amend the copyright registrations. In all other respects, denied.

In response to the unnumbered "Wherefore" Paragraph following Paragraph 91, MTVN denies that any action or inaction on its part has given rise to any liability to TC and therefore denies that TC is entitled to any of the relief requested against MTVN whatsoever.

## COUNT VI
## DECLARATORY RELIEF
### (As to Trans Continental's Rights in and to *Making His Band*)

92.    MTVN realleges and incorporates its responses to Paragraphs 1 through 53 as if set forth fully herein.

93.    MTVN admits that the January 7, 2000 letter agreement contains the language quoted in Paragraph 93, but states that the language is included within a more fully integrated document that includes numerous other terms and conditions that supplement, influence and place into context the language as quoted, and MTVN respectfully refers the Court to the complete text of the January 7, 2000 letter agreement for its full and intended interpretation. MTVN denies all remaining allegations in Paragraph 93.

94.    Denied.

95.    Denied, except MTVN admits that Making His Band is not a spin-off, sequel or "other project" based on the series.

96.     MTVN avers that no response is required to the extent that paragraph 96 purports to allege legal conclusions.  In all other respects, denied.

97.     MTVN avers that no response is required to the extent that paragraph 97 purports to allege legal conclusions.  In all other respects, denied.

98.     MTVN avers that no response is required to the extent that paragraph 98 purports to allege legal conclusions.  In all other respects, denied.

99.     Denied.

100.    Denied, except MTVN admits that in this litigation MTVN has taken the position Making His Band is not a spin-off, sequel or "other project" based on the Series.

101.    MTVN avers that no response is required to the extent that paragraph 101 purports to allege legal conclusions.  In all other respects, denied, except insofar as it expresses TC's opinion, as to which no response is required.

102.    Denied.

In response to the unnumbered "Wherefore" Paragraph following Paragraph 102, MTVN denies that any action or inaction on its part has given rise to any liability to TC and therefore denies that TC is entitled to any of the relief requested against MTVN whatsoever.

**COUNT VII**
**DISSOLUTION OF JOINT VENTURE**

103.    MTVN realleges and incorporates its responses to Paragraphs 1 through 53, and 66 through 76 as if set forth fully herein.

.

104.    Denied, except MTVN admits that the parties entered into a letter agreement, and respectfully refers the Court to Exhibit A of the Amended Complaint as it speaks for itself.

105.    MTVN admits that the January 7, 2000 letter agreement contains the language quoted in Paragraph 105, but states that the language is included within a more fully integrated document that includes numerous other terms and conditions that supplement, influence and place into context the language as quoted, and MTVN respectfully refers the Court to the complete text of the January 7, 2000 letter agreement for its full and intended interpretation.  MTVN denies all remaining allegations in Paragraph 105.

106.    Denied, except MTVN admits that a more formal joint venture was never entered into, and that the parties entered into agreements dated January 7, 2000 and November 15, 2001, and respectfully refers the Court to Exhibits A and B of the Amended Complaint as the documents speak for themselves.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    MTVN lacks knowledge or information sufficient to form a belief as to the allegation in Paragraph 112 and therefore denies same.

In response to the unnumbered "Wherefore" Paragraph following Paragraph 112, MTVN denies that any action or inaction on its part has given rise to any liability to TC and therefore denies that TC is entitled to any of the relief requested against MTVN whatsoever.

**COUNT VIII**
**DEMAND FOR ACCOUNTING**
**(Pursuant to 17 U.S.C. § 101 et seq.)**

113.    MTVN realleges and incorporates its responses to Paragraphs 1 through 53 as if set forth fully herein.

114.    MTVN admits that the November 15, 2001 agreement contains the language quoted in Paragraph 114, but states that the language is included within a more fully integrated document that includes numerous other terms and conditions that supplement, influence and place into context the language as quoted, and MTVN respectfully refers the Court to the complete text of the November 15, 2001 agreement for its full and intended interpretation.

115.    Paragraph 115 contains legal conclusions, to which no response is required.  To the extent such legal conclusions require a response, MTVN denies same.

116.    Denied.

117.    Denied.

118.    Denied.

In response to the unnumbered "Wherefore" Paragraph following Paragraph 102, MTVN denies that any action or inaction on its part has given rise

to any liability to TC and therefore denies that TC is entitled to any of the relief
requested against MTVN whatsoever.

**COUNT IX**
**DEMAND FOR ACCOUNTING**
**(Pursuant to the terms of the Amended Agreement)**

119.    MTVN realleges and incorporates its responses to Paragraphs 1
through 53 as if set forth fully herein.

120.    MTVN admits that Count VIII purports to bring an action for
accounting but denies that TC is entitled to any relief against MTVN whatsoever.

121.    MTVN admits that the November 15, 2001 agreement contains the
language quoted in Paragraph 121, except that TC has misquoted the provision
(the provision contains the term "statements", not "statement").  MTVN further
states that the language is included within a more fully integrated document that
includes numerous other terms and conditions that supplement, influence and
place into context the language as quoted, and MTVN respectfully refers the
Court to the complete text of the November 15, 2001 agreement for its full and
intended interpretation.

122.    MTVN admits that it received a letter from TC and states that the
letter speaks for itself, and MTVN respectfully refers the Court to the complete
text of the letter Exhibit F.

123.    MTVN admits that it issued a written response to TC's letter and
states that the letter speaks for itself, and MTVN respectfully refers the Court to
the complete text of Exhibit G.

124.    Denied, except insofar as it refers to Schedule A, in which case MTVN respectfully refers the Court to the complete text of Schedule A, the content of which speaks for itself.

125.    Denied.

126.    Denied.

127.    Denied.

In response to the unnumbered "Wherefore" Paragraph following Paragraph 127, MTVN denies that any action or inaction on its part has given rise to any liability to TC and therefore denies that TC is entitled to any of the relief requested against MTVN whatsoever.

## COUNT X
## EQUITABLE ACCOUNTING

128.    MTVN realleges and incorporates its responses to Paragraphs 1 through 53 as if set forth fully herein.

129.    MTVN admits that Count IX purports to bring an action for equitable accounting but denies that Plaintiff is entitled to any relief against MTVN whatsoever.

130.    MTVN admits that the January 7, 2000 letter agreement provides TC with several potential revenue streams, including revenue from band-related merchandising, print and music publishing, the official web-site, domestic and foreign distribution fees, home video fees and a band management fee. MTVN further states, however, that those provisions are contained in a more fully integrated document that includes numerous other terms and conditions that

supplement, influence and place into context the provisions, and MTVN respectfully refers the Court to the complete text of the January 7, 2000 letter agreement for its full and intended interpretation. MTVN denies all remaining allegations in Paragraph 130.

131.    MTVN admits that the November 15, 2001 agreement, and Schedule A thereto, concern Net Proceeds, and respectfully refers the Court to the November 15, 2001 agreement, and Schedule A thereto, for its complete content and meaning. MTVN denies any characterization thereof.

132.    Denied.

133.    Denied. MTVN further states that this was a result of no monies being owed to TC.

134.    Denied.

135.    Denied.

136.    Denied.

137.    Denied.

In response to the unnumbered "Wherefore" Paragraph following Paragraph 137, MTVN denies that any action or inaction on its part has given rise to any liability to TC and therefore denies that TC is entitled to any of the relief requested against MTVN whatsoever.

## COUNT XI
## CONVERSION

138.    MTVN realleges and incorporates its responses to Paragraphs 1 through 53 as if set forth fully herein.

- 24 -

139.    MTVN avers that no response is required to the extent that paragraph 139 purports to allege legal conclusions.  In all other respects, denied.

140.    MTVN denies the allegations in paragraph 140 including subparagraphs (a) through (j).

141.    Denied.

142.    Denied.

143.    In response to the unnumbered "Wherefore" Paragraph following Paragraph 137, MTVN denies that any action or inaction on its part has given rise to any liability to TC and therefore denies that TC is entitled to any of the relief requested against MTVN whatsoever.

## AFFIRMATIVE DEFENSES

As and for its affirmative defenses, MTVN states as follows:

### *First Affirmative Defense*

Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to state a cause of action upon which relief can be granted.

### *Second Affirmative Defense*

Plaintiff's claims are barred, in whole or in part, by the statute of limitations pursuant to the five-year limitation set forth in Florida Statute § 95.11 or the six-year limitation set forth in New York Statute § 213.

### *Third Affirmative Defense*

Plaintiff's claims are barred because MTVN performed its obligations under the contracts at issue and acted in good faith at all times relevant to the allegations in the Amended Complaint.

### *Fourth Affirmative Defense*

Plaintiff's claims are barred because Plaintiff has suffered no damages as a result of any act or omission by MTVN.

### *Fifth Affirmative Defense*

To the extent that Plaintiff has sustained damages, such damages were caused by Plaintiff's acts and/or omissions and/or the acts and/or omissions of third parties.

### *Sixth Affirmative Defense*

The damages allegedly suffered by Plaintiff were caused by the acts and conduct of Plaintiff and/or other parties who intervened between MTVN's alleged acts and conduct and Plaintiff's alleged damages, thereby barring Plaintiff from any recovery from MTVN.

### *Seventh Affirmative Defense*

Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel, laches and/or waiver.

### *Eighth Affirmative Defense*

Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands.

### Ninth Affirmative Defense

Plaintiff failed to perform the requisite conditions precedent to MTVN's performance under the contracts at issue, thereby obstructing and/or rendering impossible MTVN's performance under the contracts at issue.

### Tenth Affirmative Defense

MTVN's obligations, if any, to perform under the contracts at issue were waived, rendered impossible, and/or excused by Plaintiff's prior breach of the contracts at issue.

### Eleventh Affirmative Defense

Plaintiff failed to take appropriate steps to mitigate, minimize or avoid damages it allegedly suffered, and its damages, if any are awarded, should be reduced by the extent it failed to mitigate, minimize or avoid them.

### Twelfth Affirmative Defense

MTVN is entitled to a set-off against any recovery that may be had by Plaintiff in an amount equal to damages caused by Plaintiff's breach of the contracts at issue.

### Thirteenth Affirmative Defense

Plaintiff is not contractually or statutorily entitled to attorneys' fees as claimed in Count I of the Complaint.

### Fourteenth Affirmative Defense

MTVN is entitled to a set-off against any recovery that may be had by Plaintiff in an amount equal to the overpayment by MTVN to TC with regards to *Making the Band* 1, Season 3, and *Making the Band* 2, Seasons 1 through 3

caused by the application of the 2000 Agreement in the place of the application of the Net Proceeds formula as defined in Schedule A of the 2001 Amended Agreement.

MTVN reserves the right to assert additional defenses or claims, which may become known during the course of discovery.

**WHEREFORE**, MTVN requests that the Court issue judgment in its favor, dismiss Plaintiff's Complaint, award MTVN its attorneys' fees and costs in defending this action, and grant MTVN such other and further relief as the Court deems just and proper.

Dated this 3rd day of August, 2009.

Respectfully Submitted,

**HOLLAND & KNIGHT LLP**
200 South Orange Ave.
Suite 2600
Orlando, FL 32801
Telephone: (407) 425-8500
Facsimile: (407) 244-5288

/s Brian A. McDowell
Brian A. McDowell
Florida Bar No. 765521
brian.mcdowell@hklaw.com
Edward M. Fitzgerald
Florida Bar No. 0010391
edward.fitzgerald@hkalw.com

And

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON
LLP**

/s Andrew J. Ehrlich
Leslie Gordon Fagen, Esq.
Stephen J. Shimshak, Esq.
Andrew J. Ehrlich, Esq.
Robert C. Schuwerk, Esq.
1285 Avenue of the Americas
New York, New York  10019-6064
Tel:  (212) 373-3000
Fax: (212) 757-3990
aehrlich@paulweiss.com

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al.*

     Debtor.

_____/

Case No. 6:07-bk-00761-ABB
Jointly Administered
Chapter 11

SONEET KAPILA, Chapter 11 Trustee
for TRANS CONTINENTAL
TELEVISION PRODUCTIONS, INC.,

     Plaintiff,

v.

MTV NETWORKS COMPANY,

     Defendant.

_____/

Adv. No.: 6:08-ap-00157-ABB

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 3, 2009, a true and correct copy of the foregoing Defendant's Answer and Affirmative Defenses to Plaintiff's Amended Complaint was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following counsel of record: James G. Sammataro, Esq., Kasowitz Benson Torres & Friedman, LLP, 2 South Biscayne Boulevard, Suite 2650, Miami, FL 33131.

                         /s Brian A. McDowell_____
                         Brian A. McDowell
                         Florida Bar No. 765521

# 8737518_v1