UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al*.

                Debtor.

_____/

SONEET KAPILA, Chapter 11 Trustee
for TRANS CONTINENTAL TELEVISION
PRODUCTIONS, INC.,                       Case No.: 6:10-cv-00181-Orl-28-DAB

                Plaintiff,
v.

MTV NETWORKS COMPANY, a division
of Viacom International, Inc.,

                Defendant.

_____/

**DEFENDANT MTVN'S MEMORANDUM OF LAW IN OPPOSITION TO TRANS
CONTINENTAL'S MOTION TO COMPEL BETTER TESTIMONY FROM MTV
NETWORKS' RULE 30(B)(6) CORPORATE REPRESENTATIVES
AND MOTION FOR SANCTIONS**

        Defendant MTV Networks Company ("MTVN"), a division of Viacom

International, Inc., respectfully submits this memorandum of law in opposition to Plaintiff Soneet

Kapila, Chapter 11 Trustee for Trans Continental Television Productions, Inc.'s ("TC") motion to

compel better testimony from MTVN's 30(b)(6) corporate representatives and motion for

sanctions ("TC's Motion").

## INTRODUCTION

TC's motion to compel and for sanctions should be denied as an exercise in gross overreaching.  Its overheated rhetoric and remarkable epithets cannot mask the fact that there is no precedent in law for imposing sanctions on a record like the one on this motion—where TC has propounded document requests and deposition notices of extraordinary breadth; MTVN has agreed to provide the information that is the subject of the motion and either has, or shortly will, provide such information; where the case until three months ago was subject to an eleven-month stay of discovery, the duration of which in part was caused by TC's delay in its own document production; where MTVN has produced thousands of pages of discovery since that stay was lifted, and where there is no case management order in effect.  To be clear, this motion to compel and for sanctions is not the product of a disagreement as to proper scope of discovery; rather, having served the broadest imaginable discovery requests, it is a complaint about the pace of MTVN's responses to certain of those requests, in the absence of a case management order.

This is, put simply, not the stuff of a motion to compel, much less a motion for sanctions.

TC's discovery requests could not be more extensive.  It propounded ninety-seven Rule 30(b)(6) topics at the outset of the case, before MTVN had collected its documents.  Many of the topics—including those that are the subject of TC's motion—seek facts and figures, for a ten-year period, relating to a variety of items, such as every ancillary revenue source, including information tracked by third parties, on every band that has ever appeared on the long-running series *Making the Band*; or a list of all countries or provinces in which any episode of any *Making the Band* series has ever aired.  MTVN has only objected to a small subset of TC's ninety-seven extraordinarily detailed and demanding corporate representative topics, which objections are the

2

subject of a pending motion for a protective order.  TC also propounded three sets of document requests, comprising <u>one hundred and ninety-two</u> specific requests, many with numerous sub-parts, as well as numerous interrogatories and requests for admissions.

Since TC first complained of the insufficiency of certain MTVN 30(b)(6) testimony about these kinds of facts and figures, MTVN has agreed to meet TC's concerns by providing a sworn writing containing the requested information and, if necessary, additional deposition testimony.   This is a reasonable, appropriate approach for providing information of the kind found in spreadsheets and databases, and not typically amenable to deposition testimony. And, although 30(b)(6) representatives must be prepared, they are not required to be omniscient. Because TC's 30(b)(6) topics largely seek details on revenue figures, payments, or lists of countries in which Making the Band aired that no witness could plausibly memorize, MTVN has understood that its commitment to produce a writing on these topics in the first instance—and TC's willingness to accept one—all but resolved the matter.

Impatient with the time it has taken MTVN to respond to these questions, TC now declares, contrary to fact, that MTVN has "refused to voluntarily provide the requested . . . discovery." (Brief in Support of TC's Motion ("TC Br.") at 1.)   Not so.  As TC is well aware, MTVN produced 30(b)(6) witnesses—at TC's strong insistence—just months after the complaint was filed, and well before document discovery was even close to substantial completion.  Given the wide range of the 97 topics, they required numerous witnesses.  Then, to meet any concerns that TC may have had regarding the adequacy of certain testimony that was adduced, MTVN agreed to re-produce 30(b)(6) witnesses on those certain subjects, at MTVN's cost and in Miami (where TC's counsel is located).  And, in addition to re-producing the witnesses, MTVN offered

to produce the writing to provide TC with the detailed financial information it was soliciting through 30(b)(6) testimony.

Importantly, although it hurls considerable invective at MTVN's purported "contumacious" foot-dragging, TC has not identified any harm caused by the delay in receiving responses to its 30(b)(6) topics while MTVN has researched and produced the promised writing. MTVN has not sought to unnecessarily delay discovery nor has it attempted to wrongfully hinder TC's efforts to obtain it, and TC can show no prejudice in any purported delay, since there is no current scheduling or discovery order, discovery deadline, or trial date. Indeed, after the case was recently transferred to the District Court, the Court directed the parties to submit a proposed case management order by April 30, 2010. (*See* Order Withdrawing Reference [Bankr. D.E. 128] at 2.)

The accusations of bad faith and "stonewalling" ring particularly hollow in light of the entirety of the record, and the enormity of TC's demands. Indeed, since discovery was recommenced three months ago, in response to TC's 192 document requests (some multi-part), MTVN has reviewed approximately 288,000 pages of documents, and produced over 4,500 documents to TC.

*          *          *

TC has asked for voluminous discovery, and now complains—seeking sanctions—that it has not obtained those volumes fast enough. TC's pique at the eleven-month stay in discovery in this case is apparent, but that is not a basis for a motion to compel and for sanctions, and certainly not a basis for the serious charge that MTVN has exhibited a disregard for this Court's authority. To the contrary, MTVN has been intensively engaged in substantial and

4

costly efforts to collect and produce a wide range of documents.  It has also simultaneously been assembling information needed for a written response to the detailed 30(b)(6) topics.  That these discovery efforts, and others, which are moving forward, are not proceeding fast enough for TC's liking, in the absence of a scheduling order, is not a basis for involving this court to referee a manufactured dispute—much less for imposing sanctions.

## BACKGROUND

TC filed the original, two-count complaint in this action against MTVN on August 11, 2008.  That complaint asserted claims for breach of contract and an accounting stemming from a contract dispute regarding a reality show entitled *Making the Band* (hereinafter "MTB") that first aired in 2000.[1]  TC made its first document request on October 31, 2008 and took its first deposition in the action just two and a half months later.  In the interim, it propounded 108 requests for production, twenty-five interrogatories, and noticed ninety-seven topics for 30(b)(6) depositions.  Just over two weeks after the first deposition, on January 29, 2009, TC served its second request for production which included thirty-one additional document requests, and the following day, served its first request for admissions, which included twelve requests.

At a status conference on February 10, 2009, the bankruptcy judge stayed discovery, pending MTVN's production of certain documents, and ordered the parties to submit a proposed list of mediators.  TC was also subsequently permitted to proceed with nearly all of its

---

[1]   TC sought leave to amend the complaint on June 3, 2009 which leave was granted and the amended complaint deemed filed on June 5, 2009.  The amended complaint added  eight new claims, including additional claims for an accounting and claims for conversion, breach of fiduciary duty, breach of good faith and fair dealing, declaratory relief, dissolution of the joint venture.  [Bankr. D.E. 58, 59.].  On December 31, 2009, TC again sought unopposed leave to amend the complaint, adding three new causes of action for unjust enrichment, unfair competition under the Lanham Act, and tortious interference, and naming Viacom International, Inc., Viacom Inc., Bad Boy Films and Bad Boy Records as  new defendants.  Leave was granted and the Second Amended Complaint was filed on January 26, 2010.  [Bankr. D.E. 102.]

noticed 30(b)(6) depositions.   Between January 12 and June 10, 2009, TC deposed nine

employees of MTVN[2] in their capacity as fact witnesses, corporate representatives, or both.   TC

complains that certain parts of the testimony of four of those witnesses was inadequate—which

complaints MTVN has <u>agreed</u> to address.

**A.      Topic 11 – Payments from MTVN to Diddy**

On April 22, 2009, Laura Dorson testified as to corporate representative topics 9-

15 and 78 of the March 30, 2009 Notice of Taking Deposition submitted by TC.   (Transcript of

the deposition of Laura Dorson dated Apr. 22, 2009 ("Dorson Tr."), attached hereto as Exhibit A,

at 4:12-19.)   TC takes issue with the sufficiency of her testimony as to Topic 11, which sought

"[t]he payments made by MTV to Diddy in connection with any season of *Making the Band 2*,

*Making the Band 3*, and *Making the Band 4*."   (TC's Fourth Re-Notice of Taking Deposition,

attached hereto as Exhibit B, at 6.)   MTVN objected on the record at the deposition to TC's

interpretation of the scope of Topic 11.   (Dorson Tr. at 138:11-21; 141:25-142:15; 143:21-

144:12.)

On April 30, 2009, TC sent a letter restating the objections made at Ms. Dorson's

deposition as to the quality of the testimony on Topic 11.   In a May 1, 2009 letter, MTVN's

counsel objected to TC's characterization of the testimony as insufficient, but stated that TC's

concerns could be addressed by subsequent testimony given the overlap between Topic 11 and

certain additional topics, which were the subject of another upcoming deposition.   That same day,

TC replied by demanding that MTVN re-produce a corporate representative capable of testifying

---

[2]      The deposed fact witnesses and/or corporate representatives were Karen Abdul (Jan. 12, 2009), Virginia
Lazalde-McPherson (Jan. 26, 2009), Jackie French (Jan. 27, 2009), Laura Dorson (Apr. 22, 2009), Michael
Rappaport (May 4, 2009), Rosanne Russo (May 4, 2009), Warren Solow (May 14, 2009), Brad Hazzard
(Jun. 9, 2009) and George Cheeks (Jun. 10, 2009).

on Topic 11. (Letter from Scott B. Cosgrove to Karen P. Finesilver (5/1/09), attached hereto as Exhibit C.)   In a letter from TC's counsel to MTVN's counsel dated May 8, 2009, TC memorialized the agreement that MTVN would re-produce a corporate representative capable of testifying on Topic 11.   (Letter from James G. Sammataro ("Sammataro") to Carol Lumpkin (5/8/09), attached hereto as Exhibit D.)

On June 5, 2009, MTVN notified TC that George Cheeks, MTVN's General Counsel, would be MTVN's corporate representative for Topics 11, 12, and ten other topics.[3]   In addition to being MTVN's General Counsel, Mr. Cheeks was also responsible for having negotiated several of the agreements relating directly to Topic 11.  (Transcript of the deposition of George Cheeks dated June 10, 2009 ("Cheeks Tr.") (a true and correct copy of this document will be filed with this Court pending the disposition of Defendant's Motion to File Under Seal as Exhibit "E") at 15:6-14; 59:2-15; 79:25-80:5.)

Mr. Cheeks' deposition was held June 10, 2009.  At the outset of the deposition, MTVN's counsel made clear that Mr. Cheeks would not be testifying as to every detail regarding every dollar paid to Diddy for his work on Making the Band, but that MTVN would provide additional information in a writing if TC deemed it needed more detail.  (Cheeks Tr. at 8:15-9:4.)  TC's counsel assented to this arrangement.  (*Id.* at 9:5-7 ("Fair enough. There actually is a pending interrog on that topic.").)  Based upon this understanding, Mr. Cheeks answered TC's questions as to whether certain payments in Diddy's contract were actually made, or confirmed that the details could be provided in a subsequent writing.  (*Id.* at 42:10-48:3; 56:6-23; 61:3-63:12;

---

[3]   TC's motion to compel and for sanctions is not directed at Topic 12, or any of the ten other 30(b)(6) topics addressed by Mr. Cheeks.

72:14-76:25; 80:17-81:4.)  Much, although not all, of that information has now been provided in writing.

**B.      Topics 23-34 and 36-42[4] -- Detailed Financial Information About Ancillary Revenues for MTB Seasons 2.1, 2.1, 2.3, 3.1, 3.2, 3.3, 4.1, 4.2, and 4.3**

TC's 30(b)(6) Topics 23-34 and 36-42  sought information regarding revenues obtained from tours, concerts, album sales, and other musical acts from bands that were featured on MTB, as well as detailed figures on revenue obtained from merchandise, publishing rights, websites, DVD sales, and revenue from domestic and foreign sales nine seasons of MTB (seasons 2.1 through 4.3).  Each and every one of Topics 23-34 and 36-42 sought "*all funds received* by MTV in connection with" the various revenue sources. (emphasis added.)

MTVN designated Rosanne Russo, business manager for finance for MTVN, as its corporate representative on Topics 23-34 and 36-42,[5] and produced her for deposition on May 4, 2009.  Ms. Russo testified that she managed the ancillary businesses for the music channels and MTVN, and did reporting and recording of revenue and expenses for non-TV businesses. (Transcript of the deposition of Rosanne Russo dated May 4, 2009 ("Russo Tr.") (a true and correct copy of this document will be filed with this Court pending the disposition of Defendant's Motion to File Under Seal as Exhibit "F") at 7:6-8:15.)  Ms. Russo testified that, in preparing for her deposition, she reviewed business records which contained evidence of payments from various third party sources and MTVN's international department, including "any business

---

[4]    Although TC moves to compel and for sanctions with respect to topics 24-42, Ms. Russo was not designated to address Topic 35, and it is therefore improperly included in TC's motion, likely as an oversight since the motion does not specifically reference Topic 35.  (Russo Tr. at 6:16-23.)  Additionally, Ms. Russo was also designated on Topic 23.  TC's brief inconsistently includes and excludes Topic 23.

[5]    Ms. Russo was also MTVN's corporate representative on Topic 50, which related to the amount of gross and net profit from Making the Band.

records that would have contained Making the Band." (*Id.* at 10:4-5.) She testified as to the information that was then in MTVN's possession (*see*, *e.g*., *id.* at 61-62), and, when asked, described the third parties from whom royalty and accounting statements had to be obtained in order to determine funds received. (*Id.* at 10-14; 20-22; 40-42.)

TC complained of the insufficiency of Ms. Russo's testimony. To respond to TC's concerns, MTVN offered to provide a writing and, in the event that additional testimony was needed, agreed to provide another corporate representative on those topics. (Letter from Andrew J. Ehrlich ("Ehrlich") to Sammataro (8/20/09), attached hereto as Exhibit G.)

**C.     Topics 43-49 – International Airing Information**

Brad Hazzard, Vice President of MTVN's business and legal affairs department, was designated to testify as to 30(b)(6) Topics 1-3, 5, 6, and 43-49. Mr. Hazzard was deposed on June 5, 2009. TC complains of the sufficiency of his testimony as to Topics 43-49, which relate to all the stations, countries, territories, and provinces to which MTB has been distributed or on which MTB was broadcasted (nos. 43, 44), all distribution and licensing agreements and any mechanism by which the show is distributed (nos. 45, 46), and all MTV-related entities which have been involved in distributing or licensing MTB or any ancillary merchandise or after-market products (nos. 47-49).

Notwithstanding the stay in document production, MTVN searched for, and produced additional foreign distribution agreements responsive to Topic 45 prior to Mr. Hazzard's deposition. (*See* Letters Karen Finesilver to Sammataro (5/13/09 & 5/27/09), attached hereto as composite Exhibit H.)

During Mr. Hazzard's deposition, TC sought detailed information on every instance in which any Making the Band episode had aired anywhere in the world.   Mr. Hazzard did not deny that the information could be obtained, but asserted that no one could extemporaneously recite that level of detail.  (Hazzard Tr. at 201:3-9.)

TC asserted that that they were entitled to the information; MTVN did not disagree.  At the end of the deposition, TC's counsel stated that MTVN's counsel agreed to "put together a complete list and in so doing will have a look at the documents that they previously provided." (Transcript of the deposition of Brad Hazzard dated June 9, 2009 ("Hazzard Tr.") at 240:20-241:7.)

**D.      Proceedings Following Depositions**

In July 2009, shortly after the last of the depositions had been taken and while discovery in the case was stayed pending mediation, MTVN retained present counsel, who substituted for predecessor counsel.  After entering the case, and notwithstanding the discovery stay, Paul Weiss made and/or reaffirmed MTVN's commitment to providing a series of written documents, as an initial matter, for all of the 30(b)(6) topics that are the subject of TC's motion. (*See* Exhibit G; Letter from Ehrlich to Sammataro (2/5/10), attached hereto as Exhibit J.)

Furthermore, since the depositions, MTVN has provided TC with additional information responsive to TC's 30(b)(6) topics.  On August 28, 2009, MTVN provided what it believed to be a complete list of channels on which each episode of Making the Band 2-4 had aired.  (*See* Letter from Ehrlich to Sammataro (8/28/09), attached hereto as Exhibit K.) On September 11, 2009, following a conversation between counsel for TC and counsel for MTVN, TC sent a letter regarding the information provided.  (*See* Letter from Sammataro to Ehrlich

(9/11/09), attached hereto as Exhibit L.)  In particular, TC asserted that MTVN had not provided written contracts with MTVN affiliates—even though they had previously been told that MTVN does not necessarily have formal contracts with each network within its worldwide programming services.  (Hazzard Tr. at 180:3-8.)  Nevertheless, MTVN agreed that it would review its records and supplement its August 28, 2009 letter to the extent that there were additional agreements in its possession.

On January 7, 2010, the mediation stay was lifted.  MTVN began searching for additional custodians responsive to TC's outstanding document requests and reviewing documents.  This undertaking has involved reviewing over 21,000 documents totaling over 288,000 pages, and is still ongoing.  MTVN has since produced over 4,500 additional documents to TC and continues to review documents potentially responsive to TC's document requests. Additionally, MTVN served its responses and objections to TC's second and third requests for production and first request for admissions.

On March 3, 2010, less than six weeks ago, this Court granted TC's unopposed motion to withdraw the reference, ordering that this action proceed in the District Court.[6]  Judge Antoon further directed the parties to file a proposed Case Management Report by April 30, 2010. [D.E. 4.]  Currently, there are no interim discovery deadlines, nor a discovery cut-off date nor a trial date.

## ARGUMENT

---

[6]     As the caption indicates, this case is an adversary proceeding arising out of the bankruptcy administration of the estate of Louis J. Pearlman.

**I.**

**TC's Request for Sanctions Is Unsupported By Law**

The factual circumstances set out above do not support the extraordinary remedy of sanctions.

TC's motion is governed by Fed. R. Civ. P. 37(a)(5), which permits discovery sanctions, and the award of fees and expenses, in certain limited instances, but prohibits a court from ordering such remedies when: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).   Here, in light of the totality of the record in this case, an award of TC's expenses would certainly be unjust.

Although the court has discretion in determining when sanctions are appropriate, that discretion is not unbridled. *Swofford* v. *Eslinger*, No. 6:08-cv-66-Orl-35DAB, 2009 WL 1025223, at *1 (M.D. Fla. Apr. 14, 2009).   A court's discretion to fashion sanctions is guided not only by Rule 37, but also by "judicial interpretation of the rule." *U.S.* v. *Certain Real Property Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997).   The imposition of sanctions "should be 'no more drastic than those actually required to protect the rights of other parties.'"   *Swofford*, 2009 WL 1025223, at *1 (quoting *Diaz v. Southern Drilling Corp.,* 427 F.2d 1118, 1126 (5th Cir. 1970)).   Indeed, the purpose of the discovery rules is to promote the discovery without court intervention, not to "seek punishment for a variety of developments and circumstances that took place in the extended course of discovery [;]. . .  [the] [c]reation of satellite litigations, or opportunities for seeking sanctions is not a goal of the process."   *Swofford*, 2009 WL 1025223 at *1.

Even where a party has failed to provide discovery in accordance with a court order—and to be clear, there is no court order in place here—sanctions are not necessarily warranted. *See, e.g.*, *Hickman* v. *Wal-Mart Stores, Inc.*, 152 F.R.D. 216, 220 (M.D. Fla. 1993) (determining that failure to comply with court order was not in bad faith and therefore finding it unnecessary to impose sanctions against the Defendant pursuant to Rule 37 "although they may not have responded in a timely manner"); *see also Yeisley* v. *PA State Police*, No. 3:CV-05-1650, 2008 WL 906465, *3 (M.D. Pa. Mar. 31, 2008) (holding that "sanctions for the untimely production of records in question [were] not warranted" where "discovery in th[e] matter ha[d] not closed, [and therefore] Plaintiff [could not] show that he incurred any harm by the production of the documents approximately two months beyond the court-imposed deadline.").

Hence, in cases in which a deadline for production has already been imposed by the court, "even seriously late production[ ] does not automatically equal a showing of an intent to subvert discovery." *Swofford*, 2009 WL 1025223,  at *2.  And, to be clear, here there is not even an interim deadline for discovery completion, so it cannot be said on this record that the contested discovery is "seriously late."

Most important, a movant must generally show bad faith and resulting prejudice—rather than mere delay—to justify an award of sanctions.  *Id.* at *3.  In the present case, TC is unable to point to any bad faith disregard of a court-imposed discovery deadline because neither a deadline nor any prejudice resulting from the disregard of such a deadline exists.

A.     **As MTVN Has Agreed to Provide the Requested Information, There is No Need for the Court to Issue an Order Compelling Production or Additional Testimony**

For each deposition topic complained of in TC's motion to compel, MTVN has agreed to provide TC first with a writing and then, should TC feel the need for additional

testimony, MTVN has agreed to re-produce a corporate representative for deposition.  Therefore, there is nothing to compel MTVN to do other than that to which it has already agreed.  While TC states that MTVN has "refused" to provide the requested testimony, this is false.  Although TC is disappointed at the pace of the production, MTVN has been diligently providing TC with additional documents pursuant to their document requests, has provided TC with some of the information it seeks, and will provide the balance of that information in short order.

**B.     MTVN Was Substantially Justified in Seeking to Provide a Writing in the First Instance**

TC argues that MTVN should be sanctioned because its 30(b)(6) deponents did not memorize nearly a decade's worth of information regarding the revenues and foreign airings of MTB.  Although Rule 30(b)(6) requires a deponent to be prepared, "absolute perfection in preparation is not required," and there are instances in which "[i]t is simply impractical to expect defendant's 30(b)(6) witness to know the intimate details" requested.  *Costa* v. *County of Burlington*, 254 F.R.D. 187, 191 (D.N.J. 2008); s*ee also Chick-Fil-A* v. *Exxon Mobil Corp.*, No. 08-61422-CIV, 2009 WL 3763032, at *12 (S.D. Fla. Nov. 10, 2009) (stating "[s]imply because defendant's witness could not answer every question posed to him does not equate to the fact that the defendant did not satisfy its obligation to prepare its 30(b)(6) witness") (quoting *Costa*, 254 F.R.D. at 190).

In order to resolve the issue without court intervention, MTVN agreed to provide a writing in the first instance with the information to be followed by additional deposition testimony, if needed.  This approach of first providing a writing is reasonable and has been adopted by other federal courts as a means of resolving similar discovery disputes.  For example, in *Alexander* v. *FBI*, 186 F.R.D. 137, 141 (D.D.C. 1998), plaintiffs moved to compel and for

sanctions based upon a 30(b)(6) deponent's inability to answer certain questions.  The defendant responded that it had produced a witness with the "broadest base of responsive knowledge, and that any required further inquiry should be done through less burdensome means such as interrogatories and requests for production."  *Id.*  The court agreed, finding that the unanswered questions were not tantamount to a failure to appear and stating that "[a]lthough plaintiffs are entitled to answers on many of their unanswered questions, they are not entitled to sanctions."  *Id.* at 143.  The court then ordered plaintiffs to submit "any unanswered questions in the form of interrogatories and requests for production"—effecting the same resolution that MTVN has consistently proposed to TC here, without the need for Court intervention.  While the Eleventh Circuit has not addressed the issue directly, a growing number of courts have determined that, in some circumstances, "courts may order parties to answer contention interrogatories in lieu of participating in Rule 30(b)(6) depositions."  *Smithkline Beecham Corp.* v. *Apotext Corp.*, No. 99CV-4304, 2004 WL 739959, *3 (E.D. Pa. Mar. 23, 2004).  At the very least, MTVN's offer to provide a writing addressing the 30(b)(6) Topics was "substantially justified" by the detailed nature of the information requested, and hardly sanctionable.

**C.    It Would be Unjust to Impose Sanctions on MTVN Because TC Has Agreed to Accept A Writing on the 30(b)(6) Topics and Because TC Faces No Prejudice From the Delay.**

The posture of this litigation makes clear that sanctions are not warranted.  On March 3, 2010, the Court granted TC's Motion to Withdraw the Reference and ordered that a Case Management Report be filed by April 30, 2010.  At present, there is neither a discovery cut-off date, nor a trial date, nor any other deadline in the case.  As a result, TC has not suffered any prejudice from not having received the information it seeks in the time frame TC it preferred.

Given the lack of prejudice to TC, it would be unjust to now impose sanctions upon MTVN. Furthermore, it would be unfair to now impose sanctions against MTVN since MTVN has agreed to first produce a writing on the requested topics and understood that such a writing would either (a) obviate the need for additional deposition testimony or (b) narrow the scope of the additional testimony needed.   Finally, it would be unfair to MTVN to sanction it for its corporate representatives' inability to answer questions outside of the scope of the Topics on which they were designated to testify.

        1.        **Topic 11 – Payments to Diddy**

At Ms. Dorson's deposition, MTVN's predecessor counsel objected to the scope of the testimony called for by Topic 11.  As a result of an exchange of letters and conferences stemming from those objections, TC demanded another corporate representative on those topics, and MTVN agreed to re-designate Mr. Cheeks.  As Mr. Cheeks is General Counsel to MTVN and the individual who actually negotiated several of the contracts with Diddy, this was clearly not an attempt by MTVN to "sandbag" TC with a corporate representative who knew nothing.

Mr. Cheeks answered the questions on Topic 11 in a manner sufficient to comply with MTVN's 30(b)(6) obligations.  As is evident from the excerpt provided by TC, Mr. Cheeks either answered TC's questions regarding the payments made, or noted that the precise amounts could be determined, and therefore could be submitted in a writing, as agreed.  As MTVN has reiterated on numerous occasions, it will supply that information to TC, and has done so in part. There is thus no basis to sanction MTVN on Topic 11.

        2.        **Topics 23-34 and 36-42 – Detailed Financial Information**

Ms. Russo's testimony on Topics 23-34 and 36-42 reveals no basis for sanctioning MTVN.  Each of the topics on which she was deposed sought information regarding "funds

received" by MTVN with respect to a variety of revenue sources which, according to Ms. Russo's testimony, were compiled largely by third parties and provided to MTVN in reports. (Russo Tr. at 8:11-15, 10:3-14.)

Given this request, MTVN designated Ms. Russo, business manager for finance for MTVN, as a person sufficiently knowledgeable as to the Topics on which she would be deposed. Ms. Russo reviewed the documents related to MTB to determine what revenues, if any, were generated by MTB. Though each of the 30(b)(6) topics dealt with funds received, TC asked Ms. Russo many questions regarding MTVN's legal entitlements under the agreements and the obligations of third parties to account to MTVN for royalties received—issues beyond the scope of the designated topics. (*See, e.g.*, Russo Tr. at 26:8-27:22; 60:6-20; 71:15-20.) If TC wanted that information, it should have specified those topics in the first instance. *See Kawasaki Kisen Kaisha, Ltd.* v. *All City Used Auto Parts, Inc.*, No.3:07-cv-86-J-20MCR, 2008 WL 423456, at *2 (M.D. Fla. Feb. 13, 2008)(denying motion to compel and noting "[i]f [ ] the corporate designee does not know the answer to questions which are outside the scope of the matters described in the notice, then the questioning party is out of luck").

It would be unjust to impose sanctions on MTVN for Ms. Russo's inability to answer questions outside the scope of that to which she was designated to testify. Indeed, the examples cited in TC's brief—whether the album *Danity Kane* was certified as a platinum selling album by the Recording Industry Association of America, or whether there were any videos made in connection with Danity Kane's songs (TC Br. at 15)—are only tangentially related to the question of what funds MTVN actually received.   Simply put, any failure to answer those

questions cannot serve as the basis for sanctions.[7]  While 30(b)(6) deponents must be "prepared and knowledgeable, . . . they need not be subjected to a 'memory contest.'"  *Alexander*, 186 F.R.D. at 143.  Nor must 30(b)(6) deponents be capable of answering every question, for while "Rule 30(b)(6) puts several duties on the designating party and on the deponent, . . . one of them is not omniscience."  *Id.*

TC's contention that Ms. Russo did not have the most up-to-date accounting also fails to provide a basis for sanctions, since Ms. Russo based her information on the most recent statements from Atlantic Group that were then available.  (Russo Tr. at 82:20-83:13.)  TC's argument, made without any supporting legal authority, boils down to either an assertion that either the Atlantic Group was under an obligation to have provided a more recent statement, whether or not revenues had actually accrued, or that MTVN should have sought documents from third parties in order to prepare Ms. Russo for her 30(b)(6) deposition.  The law simply does not support placing a burden on recipients of 30(b)(6) requests to testify to knowledge possessed by third parties.  To the contrary, case law supports the position that "the recipient of a Rule 30(b)(6) request is not required to have its counsel muster all of its factual evidence to prepare a witness to be able to testify regarding a . . . claim."  *Smithkline Beecham Corp.* v. *Apotex Corp.*, No.98 C 3952, 2000 WL 116082, at *9 (N.D. Ill. Jan. 24, 2000).  "This rule holds especially true when the information sought is likely discoverable from other sources."  *Id.*

---

[7]   As was explained to TC's counsel several times during the deposition, the business unit responsible for recognizing that funds were received was not tasked with the responsibility for determining whether royalty statements were due to MTVN under myriad participation agreements.  (*See, e.g.*, Russo Tr. at 114:16-115:16.)  Therefore, it cannot be surprising to TC that any representative designated to discuss funds received could not also speak to the legal obligations of third parties under their respective contracts.

Finally, MTVN has already mooted any concerns that TC might have by agreeing to provide a writing answering topics 23-34 and 36-42.  Courts have held that where a movant seeks highly detailed discovery, it is proper to provide the requested information in a writing in lieu of 30(b)(6) testimony.  *Alexander*, 186 F.R.D. at 141; *Smithkline Beecham Corp.*,  2004 WL 739959, at *3.

### 3.    Topics 43-49 – Foreign Airings

Mr. Hazzard's testimony about the airings of MTB worldwide is no different. MTVN has undertaken to provide a writing and on August 28, 2009, did so.  Although TC has asserted that the writing was insufficient, MTVN has agreed to once again review its files to determine if there were additional foreign airings not encompassed in the writing.

## D.    TC's Sanctions Request Is Overreaching

TC should not be awarded attorneys' fees for the filing of this motion or for any purported delay in addressing the 30(b)(6) topics.  MTVN has agreed to provide TC with the requested information in a writing and, if still necessary, additional deposition testimony in Miami at MTVN's cost.  There was therefore no reason for TC to compound the expenses of discovery through the filing of this motion, and TC should not be compensated for having burdened the Court with an issue that is not in dispute.[8]

---

[8]    TC certainly should not be awarded sanctions for its preparation of or participation in any past depositions, since it would have inevitably incurred those costs by virtue of having noticed those depositions.  Should TC be awarded any money for preparing and taking the past Rule 30(b)(6) depositions, that amount should, at most, be a fraction of the time spent on them, since TC does not dispute the adequacy of the majority of the testimony provided by the corporate representatives.  For example, Laura Dorson was designated to testify as to corporate representative Topics 9-15 and 78, but TC only objects to her testimony on Topic 11.  TC only challenges the adequacy of one of the twelve topics for which George Cheeks offered testimony.  Ms. Russo was designated on Topics 23-34, 36-42 and Topic 50, but TC does not object to her testimony on Topic 50.  Mr. Hazzard was designated as MTVN's corporate representative on Topics 1-3, 5,

## CONCLUSION

For the foregoing reasons, MTVN respectfully requests that TC's motion to compel better testimony from MTVN's 30(b)(6) corporate representatives and motion for sanctions be denied in its entirety.

Dated: This 16th day of April, 2010.

Respectfully Submitted,

**HOLLAND & KNIGHT LLP**
200 South Orange Ave.
Suite 2600
Orlando, FL 32801
Telephone: (407) 425-8500
Facsimile: (407) 244-5288

Brian A. McDowell
Florida Bar No. 765521
brian.mcdowell@hklaw.com
Edward M. Fitzgerald
Florida Bar No. 0010391
edward.fitzgerald@hklaw.com

And

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York  10019-6064
Tel:  (212) 373-3000
Fax: (212) 757-3990

Andrew J. Ehrlich, Esq.
aehrlich@paulweiss.com
Robert Schuwerk, Esq.
rschuwerk@paulweiss.com

---

6, and 43-49, but TC only seeks sanctions for Topics 43-49.  Clearly, TC should not be awarded sanctions for the Topics for which it has not sought relief.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 16, 2010, a true and correct copy of the foregoing

Memorandum of Law in Opposition to Trans Continental's Motion to Compel Better Testimony

From MTVN's 30(b)(6) Witnesses and Motion for Sanctions was electronically filed with the

Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the

following counsel of record: James G. Sammataro, Esq., Kasowitz Benson Torres & Friedman,

LLP, The Four Seasons Tower, 1441 Brickell Avenue, Suite 1420, Miami, FL 33131; Steven J.

Solomon, Esq., GrayRobinson, P.A., 1221 Brickell Avenue, Suite 1650, Miami, FL 33131.

/s Andrew J. Ehrlich
Andrew J. Ehrlich, Esq.