# EXHIBIT 6

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

A NEW YORK LIMITED LIABILITY PARTNERSHIP

ONE BISCAYNE TOWER, SUITE 2650

2 SOUTH BISCAYNE BOULEVARD

MIAMI, FLORIDA 33131

305-377-1666

FACSIMILE: 305-377-1664

ATLANTA
HOUSTON
NEWARK
NEW YORK
SAN FRANCISCO

May 15, 2009

<u>Via Scanned E-Mail & U.S. Mail</u>
Carol Lumpkin, Esq.
K&L Gates
Wachovia Financial Center
Suite 3900
200 South Biscayne Boulevard
Miami, Florida 33131-2399

Re: In re: Louis J. Pearlman, et al.
<u>Trans Continental Television Productions v. MTV Networks</u>

Dear Carol:

I am writing as a follow-up to our conversation at the conclusion of Mr. Solow's testimony.

With respect to electronically stored information ("ESI"), Mr. Solow testified that MTV Networks ("MTVN") provided ESI in native form to K&L Gates. We now know that K&L Gates intentionally chose not to produce ESI in the form in which it was maintained (*i.e.*, electronically) – and, equally important, in the form in which it was received from MTVN. Instead, K&L Gates converted the ESI to paper form for production. As a result, document review of ESI was considerably more time consuming and cumbersome <u>and</u> the ability to review associated metadata was lost.[1]

---

[1] Rule 34 requires that ESI be produced in a "form or forms in which it is ordinarily maintained or in a reasonably usable form." As Mr. Solow's testimony confirmed, K&L Gates did not produce the ESI in the form in which it is ordinarily maintained, nor did it produce the documents in a reasonably usable form. "[T]he option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in litigation. If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a way that removes or significantly degrades this feature." Fed. R. Civ. P. 34, Advisory Comm. Notes 2006 Amend. Indeed, federal courts have recognized that producing printouts of electronic data is often not feasible and may be considered an abusive tactic. There is support for that conclusion here. While K&L Gates had the luxury of reviewing the ESI in native form, its conversion of ESI to paper form required that we undergo a manual review.

Page | 1

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

In response to our repeated demands for ESI, MTVN first took the position that ESI was not requested. *See* Zaffuto letter dated April 24, 2009. This assertion was incorrect. *See* Sammataro letter dated April 30, 2009. Subsequently, Ms. Finesilver, on behalf of MTVN, argued that "MTVN is not required to produce documents in electronic form." *See* Finesilver letter dated May 1, 2009. Ms. Finesilver's statement on ESI was so shocking that we wrote back, asking MTVN to reconsider its position. *See* Cosgrove letter dated May 1, 2009. To date, MTVN has not retracted its argument.

However, after Mr. Solow's testimony, you went "on the record" to explain MTVN's failure to produce ESI. First, you stated that MTVN was not required to produce ESI in electronic form because MTVN raised objections in response to Trans Continental's First Request for Production. Second, you argued that the "stay" relieved MTVN from any obligation to produce ESI. I will briefly respond to these points.

MTVN objected to Trans Continental's definitions to the extent that they placed burdens or obligations upon MTVN beyond applicable rules and case law. That objection does not moot MTVN's obligation to produce ESI. *See, e.g.*, Fed. R. Civ. P. 34. MTVN did not object to producing ESI in native form, nor was there any explanation as to why MTVN would have difficulty producing ESI in native form (a difficult argument to make considering that MTVN produced ESI in its native form to K&L Gates).

Second, as I noted at the conclusion of Mr. Solow's testimony, a stay is necessarily forward-looking. It halts discovery obligations from the point it is entered forward. Trans Continental's First Request for Production of Documents required MTVN to produce ESI <u>before</u> the stay was entered, and the entry of the stay does not erase MTVN's intentional (and improper) withholding.[2]

Regardless, in the spirit of cooperation, I propose the following. The parties enter into an "Agreed Order on Electronically Stored Information." The order will require MTVN to produce ESI in native form (or some other reasonably usable form). To the extent you are seeking "limitations," we will agree that whatever ESI you produced in paper form should be produced electronically, with all metadata intact. If the court later orders MTVN to produce additional categories of documents, any ESI that falls within those categories should be produced in electronic form as well.

I recall that you expressed concern regarding bates stamping and redacting ESI. Those concerns should serve as no obstacle. ESI can easily be bates stamped and redacted.[3] K&L

---

[2] To the extent that you argue that MTVN is under no obligation to <u>correct</u> its known and intentional discovery violation pending the stay, that is your prerogative. We do not think the Court intended this effect, and disagree with your characterization.

[3] We <u>do not</u> agree that MTVN can redact a responsive documents based on "relevance." We believe it is highly improper to redact a document based on a lawyer's interpretation of what is "relevant." Given the level of protection in this case, redacting for relevance is even more improper.

Page | 2

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**

Gates probably has the capability to handle this "in house," but any outside vendor can handle the job.

Finally, I recall that Mr. Solow conceded that MTVN improperly registered MTVN (or Viacom) as the sole owner of a number of episodes in the *Making the Band* series. Mr. Solow further stated that MTVN has no current plans to notify the copyright office of the errors, nor does it have any plans to amend the copyright registrations. Although this should go without saying, we ask that MTVN immediately take steps to notify the copyright office that it filled out inaccurate copyright applications, and start the process of amending the registrations to accurately reflect ownership. During this process, we ask that you keep us informed of the steps that are being taken.

I look forward to hearing from you.

Very truly yours,

Scott B. Cosgrove, Esq.

cc: Karen P. Finesilver, Esq.
Annie T. Zaffuto, Esq.
James G. Sammataro, Esq.
Lawrence D. Silverman, Esq.