# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In re:

**LOUIS J. PEARLMAN,** *et al*

     **Debtor.**

_____/

**SONEET KAPILA, Chapter 11 Trustee
for TRANS CONTINENTAL TELEVISION
PRODUCTIONS, INC.,**

                **Plaintiffs,**

     **v.**

**MTV NETWORKS COMPANY,**

               **Defendant.**

_____/

**Case No. 6:07-bk-00761-ABB
Jointly Administered
Chapter 11**

**Adv. No.: 6:07-ap-bk-00761-ABB**

### TRANS CONTINENTAL'S FIRST REQUEST FOR PRODUCTION OF
### DOCUMENTS AND THINGS TO MTV NETWORKS

     Pursuant to Rule 34, Fed. R. Civ. P., plaintiff, Trans Continental Television, by and through counsel, hereby propounds its First Request for Production of Documents and Things to defendant, MTV Networks, a division of Viacom International, Inc. (hereinafter, "MTV"), and requests that MTV serves a written response to each of the following document requests (the "Requests") and produce the documents requested herein for inspection and copying at the offices of Silverman, Cosgrove & Sammataro, One Biscayne Tower, 2 South Biscayne Boulevard, Suite 2650, Miami, Florida 33131, within the time frame specified by the Federal Rules of Civil Procedure, or as otherwise directed by the Court.

## Instructions and Definitions

The following definitions and instructions shall apply to Trans Continental's Requests:

1.  "And" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of these Requests all responses that might otherwise be construed to be outside of their scope.

2.  The term "communication" shall mean the transmittal of information (in the form of facts, inquiries, ideas or otherwise) between or among any persons, in any medium or form, whether tangible, hard copy or electronic.

3.  The term "referring or relating to" shall mean relating to, referring to, reflecting, describing, evidencing, constituting, concerning, or comprising.

4.  The term "document" shall have the broadest meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure and means any writing of any kind, including originals and all non-identical copies (whether different from the original by reason of any notation made on such copies or otherwise). This shall include, without limitation, the following items, whether printed or reproduced by any process, or written or produced by hand or stored in computer memory, magnetic or hard disk or other data storage medium, and whether or not claimed to be privileged, confidential or otherwise excludable from discovery, namely, notes, letters, correspondence, communications, e-mails, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or meetings, diaries, reports, laboratory and research reports and notebooks, recorded experiments, charts, plans, drawings, diagrams, schematic diagrams, source code, object code, illustrations, product descriptions, product analyses, requests for proposals, documents related to proposed or actual product improvements or changes, users manuals or guides, installation guides or manuals, technical descriptions or specifications, product repair manuals or guides, photographs, video

2

images, software flow charts or descriptions or specifications, product functional descriptions or specifications, minutes or records of meetings, summaries of interviews, reports, or investigations, opinions or reports of consultants, reports of patent searches, patent appraisals, opinions of counsel, agreements, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of documents, and all other material fixed in a tangible medium of whatever kind known to you or in your possession, custody, or control.

**Warning**:   **Computer generated or stored documents and images, including computer files or data, electronic mail and information on hard disk which has been erased but is retrievable constitutes "documents and things" that are discoverable within the meaning of this definition.  An inspection of your computer system may be necessary to assure compliance with the Requests contained herein.**

5.      The term "person" shall mean any natural individual, in any capacity whatsoever, or any entity or organization, including divisions, departments, and other units therein, and shall include, without limitation, any public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

6.      The term "representative" shall mean any agent, employee, servant, officer, director, accountant, attorney, or other person acting or purporting to act on behalf of the person in question.

7.      The terms "you," "your," and "MTV" refer to MTV Networks, a division of Viacom International, Inc., and the signatory of the November 15, 2001 agreement.

3

8.      The term, "MTV," shall mean defendant, MTV Networks, a division of Viacom International, Inc., and its present and former agents, officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, sister entities, related entities, accountants, attorneys, predecessors, and any other person acting or purporting to act on MTV's behalf.

9.      The term "Trans Continental" means "Trans Continental Television Productions, Inc." and all others persons acting or purporting to act on its behalf.

10.      The term "Agreement," refers to the letter agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand, in connection with the development and production of an untitled Boy Band series for ABC.

11.      The term, "Amended Agreement," refers to the letter agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand, on or about November 15, 2001, in connection with the MTV series featuring O-Town, entitled "Making the Band."

12.      The term, "O-Town" refers to the musical act comprised of Ashley Angel, Jacob Underwood, Erik Estrada, Trevor Penick and, after the departure of Ikaika Kahoano, Dan Miller, which was the subject of the original series, Making the Band.

13.      The term, "Making the Band," refers to the reality television series which initially aired on American Broadcasting Companies, Inc. and then later on MTV.

14.      The term, "Making the Band," refers to the reality television series which initially aired on American Broadcasting Companies, Inc. and then later on MTV.

15.      The terms, "Sean Combs," "P. Diddy," "Puff Daddy" and "Diddy" refer to the artist/entertainer that appears in *Making the Band 2, Making the Band 3* and *Making the Band 4* and his present and former agents and representatives, as well as his corporate entities, Bad Boy

4

Entertainment, Bad Boy Productions and Bad Boy Records, and their respective officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, sister entities, related entities, accountants, attorneys, predecessors, and any other person acting or purporting to act on Diddy's or Bad Boy's behalf.

16.     The term, "*Making the Band 2*," refers to the television program broadcast on MTV beginning on or about October of 2002, in which Diddy sought to find the best rappers and singers from which to assemble a new hip-hop group.

17.     The term, "*Making the Band 3*," refers to the television program broadcast on MTV in 2005, which featured Diddy and his search for the next all female group.

18.     The term, "*Making the Band 4*," refers to television program broadcast on MTV, which features Diddy, the subsequently named band, *Day26*, and Donnie Klang, and a return of *Danity Kane*, the winners of *Making the Band 3*.

19.     The term, "Da Band," refers to the musical group, which arose out of *Making the Band 2*, and which released the album, *Too Hot for TV*.

20.     The term, "Danity Kane," refers to the musical group, which arose out of *Making the Band 3* and which is signed to Bad Boy Records.

21.     The term, "Donnie Klang," refers to the artist who appeared on *Making the Band 4*, and recently released his album, *Just Like a Rolling Stone*.

22.     The term, "Day 26," refers to the musical group formed during *Making the Band 4*, and which is signed to Bad Boy Records.

23.     The term "including" shall mean including but not limited to.

24.     The term "any" or "each" shall be construed to include and encompass "all."

5

25.     The term "date" shall mean the exact day, month, and year, if ascertainable, or, if not, the best approximation thereof.

26.     The use of the word "the" shall not be construed as limiting the scope of any request.

27.     The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other as are appropriate in the context.

28.     These Requests are continuing in nature.  Any document, created or identified after service of any response to these Requests, that would have been included in the response had the document then existed or been identified shall promptly be supplied by supplemental responses whenever you find, locate, acquire, create, or become aware of such documents, up until the time of trial.  Supplemental responses are to be served as soon as reasonably possible after receipt of such documents.

29.     Each individual document request shall be responded to fully, unless it is in good faith objected to, in which event the reasons for the objections shall be stated with specificity.  If an objection pertains to only a portion of a document request, or to a word, phrase, or clause contained therein, MTV shall state its objection to that portion only and respond to the remainder of the request.

30.     If any document responsive to these Requests has been destroyed, discarded, or lost, or is otherwise not capable of being produced, identify each such document and set forth the following information: (a) the date of the document; (b) a description of the subject matter of the document; (c) the name and address of each person who prepared, received, viewed, or had possession, custody, or control of the document; (d) the date when the document was destroyed, discarded, or lost; (e) the identity of the person who directed that the document be destroyed,

6

who directed that the document be discarded, or who lost the document; and (f) a statement of the reasons for and circumstances under which the document was destroyed, discarded, or lost.

31.　　If any document responsive to these Requests is withheld under a claim of privilege (including, but not limited to, the attorney-client privilege or work-product protection) you shall identify with respect to each document: (a) the author, (b) the addressee(s); (c) all other persons to whom the document was distributed, shown or explained; (d) its present custodian; (e) the document's number of pages, and attachments or appendices; (f) the type of document (letter, report, etc.); (g) the general subject matter of the document; (h) the date of the document; and (i) the specific privilege claimed.

32.　　If, in responding to these Requests, you claim any ambiguity in interpreting the request, or in a definition or instruction applicable thereto, such claim shall not be utilized as a basis for refusing to respond, but you shall set forth as part of your response the language deemed to be ambiguous and the interpretation used in responding to the document request.

33.　　Each document request shall be construed according to its terms and not with reference to any other request.

34.　　All responsive documents, wherever located, that are in your possession, custody, or control, or that of any of your agents, attorneys, or representatives, shall be produced in response to these Requests.

35.　　The original or one copy of each document is requested to be produced.  Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation or any omission, shall constitute a separate document and must be produced, whether or not the original of such document is within your possession, custody, or control.

36.     Documents shall be produced as they are kept in the ordinary course of business or organized and labeled to correspond with the categories in these Requests. All documents that are physically attached to each other when located for production shall be left so attached. Documents that are segregated or separated from other documents, whether by use of binders, files, sub-files, or by dividers, tabs, or any other method, shall be left so segregated or separated. All labels or markings on any such binders, files, sub-files, dividers, tabs, or folders shall be produced.

37.     Unless otherwise specified, in the event that any responsive document is maintained in electronic, magnetic, or computer-readable form, such document shall be produced: on disk or other computer storage medium, and converted into a reasonably usable form (preferably to Group IV, multi-page tiff format at 300dpi) that is completely text searchable.

38.     A document request shall be deemed to include a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents in addition to the document itself, without abbreviation or expurgation.

39.     If no documents exist that are responsive to a particular document request, so state in writing.

40.     If no time period is specified in a request, then the relevant time period shall be from January 1, 2000 through the present.

8

## DOCUMENTS TO BE PRODUCED

1.      All documents relied upon in preparing MTV's answers to Trans Continental's First Set of Interrogatories to MTV served simultaneously with these Requests.

2.      All documents identified in MTV's answers to Trans Continental's First Set of Interrogatories to MTV, served simultaneously with these Requests.

3.      Any and all documents that refer, relate to, reflect, concern or evidence communications between MTV and Trans Continental regarding the Agreement.

4.      Any and all documents that refer, relate to, reflect, concern or evidence communications between MTV and Trans Continental regarding the Amended Agreement.

5.      Any and all documents that refer, relate to, reflect, concern or evidence communications between MTV and Trans Continental regarding the series, entitled *Making the Band*.

6.      Any and all documents that refer, relate to, reflect, concern or evidence communications between MTV and Trans Continental regarding the sequels to *Making the Band*, including, but not limited, *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

7.      Any and all documents that refer, relate to, reflect, concern or evidence communications between MTV and Diddy regarding the sequels to *Making the Band*, including, but not limited, any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

8.      Any and all documents that refer, relate to, reflect, concern or evidence any and all payments made by MTV to Trans Continental pursuant to the Agreement.

9.      Any and all documents that refer, relate to, reflect, concern or evidence any and all payments made by MTV to Trans Continental pursuant to the Amended Agreement.

9

10.     Any and all documents that refer, relate to, reflect, concern or evidence any and all payments made by MTV to Trans Continental in connection with any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

11.     Any and all documents that refer, relate to, reflect, concern or evidence any and all payments made by MTV to Diddy in connection with any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

12.     Any and all documents that refer, relate to, reflect, concern or evidence any and all account statements rendered by MTV to Diddy in connection with any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

13.     Any and all documents that refer, relate to, reflect, concern or evidence any and all account statements rendered by MTV to any entity affiliated with or controlled/owned by Diddy in connection with any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*

14.     All copies of any account statements rendered by MTV to Trans Continental pursuant to the January 7, 2000 Agreement.

15.     All copies of any account statements rendered by MTV to Trans Continental pursuant to the Amended Agreement.

16.     All copies of any account statements rendered by MTV to Diddy in connection with any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

17.     Any and all contracts or other agreements between MTV and Trans Continental from 2001 through the present.

18.     Any and all contracts or other agreements between MTV and Diddy, which relate in any way to any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*

10

from 2000 through the present.

19.     Any and all contracts or other agreements between MTV and any entity or corporation affiliated with Diddy, including but not limited, to Bad Boy Productions, Bad Boy Entertainment and Bad Boy Records, which relate in any way to any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4* from 2000 through the present.

20.     Any and all contracts or other agreements between MTV and Bad Boy Records, which relate in any way to any individuals, bands or groups which have appeared on *Making the Band 2*, *Making the Band 3* and *Making the Band 4* from 2000 through the present.

21.     Any and all contracts or other agreements between MTV and Bad Boy Entertainment, which relate in any way to any individuals, bands or groups which have appeared on *Making the Band 2*, *Making the Band 3* and *Making the Band 4* from 2000 through the present.

22.     Any and all contracts or other agreements between MTV and Diddy, Bad Boy Records, Bad Boy Productions and/or Bad Boy Entertainment from 2001 through the present.

23.     Any and all budgets prepared for any seasons of the shows: *Making the Band*, *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

24.     Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each of the three seasons of *Making the Band*.

25.     Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each of the three seasons of *Making the Band 2*.

26.     Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each of the three seasons of *Making the Band 3*.

11

27.     Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each of the three seasons of *Making the Band 4*.

28.     Any and all documents that refer, relate to, reflect, concern or evidence the final production costs for each of the three seasons of *Making the Band*.

29.     Any and all documents that refer, relate to, reflect, concern or evidence the final production costs for each of the three seasons for *Making the Band 2*.

30.     Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each of the three seasons of *Making the Band 3*.

31.     Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each seasons of *Making the Band 4*.

32.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any tour or concert performed by *O-Town*.

33.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any tour or concert performed by *Danity Kane*.

34.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any tour or concert performed by *Da Band*.

35.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any tour or concert performed by *Donnie Klang*.

36.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any tour or concert performed by *Day 26*.

37.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the O-Town's self-titled album, *O-Town*.

12

38.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the O-Town album, entitled *Liquid Dreams*.

39.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the O-Town album, *O2*.

40.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with Da Band's album, *Too Hot for TV*.

41.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with Danity Kane's eponymous album, *Danity Kane*.

42.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with Danity Kane's follow-up album, *Welcome to the Dollhouse*.

43.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with Donnie Klang's album, *Just Like a Rolling Stone*.

44.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with Day 26's eponymous album, *Day 26*.

45.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any other work featuring O-Town's music, including but not limited, any funds received from iTunes, downloads, ring tones, streaming media, print publishing, synchronization licenses and the like.

46.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any other work featuring Da Band's music, including but not limited, any funds received from iTunes, downloads, ring tones, streaming media, print publishing, synchronization licenses and the like.

47.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any other work featuring Danity Kane's music, including but not limited, any funds received from iTunes, downloads, ring tones, streaming media, print publishing, synchronization licenses and the like.

48.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any other work featuring Donnie Klang's music, including but not limited, any funds received from iTunes, downloads, ring tones, streaming media, print publishing, synchronization licenses and the like.

49.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any other work featuring Day 26's music, including but not limited, any funds received from iTunes, downloads, ring tones, streaming media, print publishing, synchronization licenses and the like.

50.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the merchandise of either O-Town or *Making the Band*.

51.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the merchandise of either Da Band or *Making the Band 2*.

52.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the merchandise of either Danity Kane or *Making the Band 3*.

53.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the merchandise of Donnie Klang, Day 26 and/or *Making the Band 4*.

14

54.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with DVD sales of *Making the Band 2, Making the Band 3* and/or *Making the Band 4*.

55.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with product placement or product integrations agreements relating to *Making the Band 2, Making the Band 3* and/or *Making the Band 4*.

56.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with home video sales of *Making the Band 2, Making the Band 3* and/or *Making the Band 4*.

57.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the publishing rights (both print and music) for *Making the Band 2, Making the Band 3* and/or *Making the Band 4*.

58.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the publishing rights (both print and music) relating to O-Town, Da Band, Danity Kane, Donnie Klang and/or Day 26.

59.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the websites for the *Making the Band* web-site, including any and sites which link to or otherwise relate to *Making the Band 2, Making the Band 3* and/or *Making the Band 4*.

60.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the websites for the O-Town, Da Band, Danity Kane, Donnie Klang and/or Day 26.

15

61.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with either the domestic or foreign distribution of *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4.*

62.     Any and all documents reflecting payments made by MTV to Trans Continental Television Productions for Trans Continental's share of the distribution rights to *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4.*

63.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with international program sales from *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4.*

64.     Any and all documents reflecting payments made by MTV to Trans Continental Television Productions for Trans Continental's share of the international program sales to *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4.*

65.     Any and all documents that refer, relate to, reflect, concern or evidence all of the stations in which any season of *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4* has been distributed to, broadcast or exhibited in, aired or otherwise televised on.

66.     Any and all documents that refer, relate to, reflect, concern or evidence all of the countries, territories, or provinces in which any season of *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4* has been distributed to, broadcast or exhibited in, aired or otherwise televised on.

67.     Any and all documents that refer, relate to, reflect, concern or evidence any license, affiliate, program sales or distribution agreements that MTV has entered into with any

16

party involving *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4.*

68.    Any and all documents that refer, relate to, reflect, concern or evidence each and every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in the distribution (both foreign and domestic) of *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4.*

69.    Any and all documents that refer, relate to, reflect, concern or evidence each and every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in the licensing of the television programs, *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4.*

70.    Any and all documents that refer, relate to, reflect, concern or evidence each and every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in the licensing of any merchandise or ancillary, allied or after-market products (*e.g.,* DVDs and other products relating to the home video market) relating to any season of *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4.*

71.    Any and all documents that refer, relate to, reflect, concern or evidence the amount of gross and net profit that MTV, including any and all MTV-related, sister or affiliated entities, has made in connection with *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4.*

72.    Any and all documents that refer, relate to, reflect, concern or evidence the amount of advertising revenue that MTV, including any and all MTV-related, sister or affiliated

17

entities, has received in connection with the broadcast of *Making the Band 2* in the United States or any other country, territory or province.

73.    Copies of the monthly profit and loss statements created by MTV in connection with *Making the Band, Making the Band 2, Making the Band 3* and *Making the Band 4.*

74.    Any and all documents that discuss, reference, relate to or evidence the rate charged by MTV for advertising (be it for a :15 second or :30 second spot) during season three of *Making the Band.*

75.    Any and all documents that discuss, reference, relate to or evidence the rate charged by MTV for advertising (be it for a :15 second or :30 second spot) during any season of *Making the Band 2, Making the Band 3* and *Making the Band 4.*

76.    Any and all documents that discuss, reference, relate to or evidence the average revenue amount generated by MTV in connection with a single episode of season three of *Making the Band.*

77.    Any and all documents that discuss, reference, relate to or evidence the average revenue amount generated by MTV in connection with a single episode of seasons one, two and three of *Making the Band 2.*

78.    Any and all documents that discuss, reference, relate to or evidence the average revenue amount generated by MTV in connection with a single episode of seasons one, two and three of *Making the Band 3.*

79.    Any and all documents that discuss, reference, relate to or evidence the average revenue amount generated by MTV in connection with a single episode of seasons one, two and three of *Making the Band 4.*

80.    Any and all documents that discuss, reference, relate to or evidence any communications between MTV and any third party regarding the rate to advertise during season three of *Making the Band*, or any season of *Making the Band 2, Making the Band 3* and *Making the Band 4*.

81.    Any and all documents that discuss, reference, relate to or evidence every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in selling advertisement spots in connection with season three of *Making the Band*, or any season of *Making the Band 2, Making the Band 3* and *Making the Band 4*.

82.    Copies of all sales or advertising contracts between MTV and any third-party relating to the purchase of advertisement spots in connection with season three of *Making the Band*, or any season of *Making the Band 2, Making the Band 3* and *Making the Band 4*.

83.    Any and all documents that discuss, reference, relate to or evidence any software program used by MTV to track and manage its advertising inventory (*e.g.*, Wide Orbit, Inventory Explorer, etc.).

84.    Any and all documents that discuss, reference, relate to or evidence any software program used by MTV to ensure the proper placements of its advertisements.

85.    Any and all documents that refer, relate to, reflect, concern or evidence the number of episodes of *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4*, which aired on MTV.

86.    Any and all documents that refer, relate to, reflect, concern or evidence the number of re-runs of seasons three of *Making the Band*.

19

87.     Any and all documents that refer, relate to, reflect, concern or evidence the number of re-runs of any season of *Making the Band 2*.

88.     Any and all documents that refer, relate to, reflect, concern or evidence the number of times any episode of any season of *Making the Band 2* has been re-broadcast.

89.     Any and all documents that refer, relate to, reflect, concern or evidence the number of re-runs of any season of *Making the Band 3*.

90.     Any and all documents that refer, relate to, reflect, concern or evidence the number of times any episode of any season of *Making the Band 3* has been re-broadcast.

91.     Any and all documents that refer, relate to, reflect, concern or evidence the number of re-runs of any season of *Making the Band 4*.

92.     Any and all documents that refer, relate to, reflect, concern or evidence the number of times any episode of any season of *Making the Band 4* has been re-broadcast.

93.     Any and all documents that refer, relate to, reflect, concern or evidence any negotiations between MTV and Trans Continental regarding any spin-offs, sequels, made-for-TV movies, direct to video, non-theatrical, radio or other projects based on *Making the Band*.

94.     Any and all documents that refer, relate to, reflect, concern or evidence any internal discussions among MTV regarding Trans Continental's interest in any spin-offs, sequels, made-for-TV movies, direct to video, non-theatrical, radio or other projects based on *Making the Band*.

95.     Any and all documents that refer, relate to, reflect, concern or evidence any internal discussions among MTV regarding Trans Continental's interest in *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

20

96.     Any and all documents that refer, relate to, reflect, concern or evidence any discussions between MTV and Diddy regarding Trans Continental's interest in *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

97.     Any and all documents that refer, relate to, reflect, concern or evidence any discussions between MTV and Bad Boy regarding Trans Continental's interest in *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

98.     Any and all documents that refer, relate to, reflect, concern or evidence any discussions between MTV and Johnny Wright regarding Trans Continental's interest in *Making the Band 2*, *Making the Band 3* and *Making the Band 4* and/or Danity Kane, Day 26, Donnie Klang and Da Band.

99.     Any and all documents that refer, relate to, reflect, concern or evidence any discussions between MTV and any third-party regarding Trans Continental's interest in *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

100.     Any and all documents that refer, relate to, reflect, concern or evidence Trans Continental's interest in *Making the Band 2*, *Making the Band 3*, and *Making the Band 4*.

101.     All documents that constitute, reference, or relate to any memoranda, reports, statements, summaries and/or opinions that you have obtained from any person whom you propose to call as an expert witness at any hearing in this action.

102.     All documents on which each person identified by you as an expert in this proceeding bases any opinion, or which are grounds for his or her opinion, testimony, or expected testimony.

103.     All documents that constitute the resume or curriculum vitae of each person identified by you as an expert.

21

104.    All documents that summarize, contain, reference, or relate to the opinions, testimony, or expected testimony of each person identified by you as an expert.

105.    All documents that constitute, reference, or relate to any communication between you and any person identified by you as an expert.

106.    All documents constituting reports, statements, papers, treatises, theses, articles and other publications, presentations, or submissions which were prepared by any person identified by you as an expert and which in any way relate to the subject matter of this litigation.

107.    All documents supplied or transmitted by you, or which you caused to be supplied or transmitted, to any person identified by you as an expert.

108.    All documents that you may introduce into evidence at any hearing in this action.

Respectfully submitted,

**SILVERMAN COSGROVE & SAMMATARO**
*Special Litigation Counsel for Soneet R.*
*Kapila, as Chapter 11 Trustee for the*
*bankruptcy estate of Trans Continental*
*Television Productions, Inc.*
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2650
Miami, Florida 33131
Telephone: (305) 377-1666
Facsimile: (305) 377-1664
jsammataro@scs-legal.com

By: _____
James G. Sammataro
Florida Bar Number: 0520292

22

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Trans Continental's First Set of Interrogatory Requests was served via scanned e-mail and United States mail on this 31st day of October, 2008 to:

**Carol C. Lumpkin, Esq.**
K& L Gates
Wachovia Financial Center
Suite 3900
200 South Biscayne Boulevard
Miami, Florida 33131-2399


James G. Sammataro

23