## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:

**LOUIS J. PEARLMAN, *et al.***

               **Debtor.**

_____ /

**SONEET KAPILA, Chapter 11 Trustee for
TRANS CONTINENTAL TELEVISION
PRODUCTIONS, INC.,**

               **Plaintiff,**

**v.**

**MTV NETWORKS, a division of Viacom,
International, Inc.**

               **Defendant.**

_____ /

**Case No. 6:10-cv-181-Orl-28-DAB**

## TRANS CONTINENTAL TELEVISION PRODUCTION, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO MTVN, VIACOM, INC. AND VIACOM INTERNATIONAL, INC.'S MOTION TO STRIKE THE JURY TRIAL DEMAND

**KASOWITZ, BENSON, TORRES and FRIEDMAN LLP**
Four Seasons Tower
1441 Brickell Avenue, Suite 1420
Miami, Florida 33131

*Attorneys for plaintiff, Soneet Kapila in his capacity as the federally appointed Chapter 11 Trustee charged with administrating the bankruptcy estate of Trans Continental Television Productions, Inc.*

Soneet Kapila, as the Chapter 11 Trustee for the bankruptcy estate of Trans Continental Television Productions, Inc. ("Trans Continental"), by and through counsel, respectfully submits this memorandum of law in opposition to the Motion to Strike the Jury Trial Demand (the "Motion to Strike") filed by defendants, MTV Networks ("MTV"), Viacom International, Inc. ("Viacom International") and Viacom, Inc. (together with Viacom International, "Viacom," and collectively with MTV, "Defendants") [D.E. 101].[1]

## I.     INTRODUCTION

The Third Amended Complaint ("TAC")[2] raises fundamentally new and different issues than the original Complaint[3] filed in this action, entitling Trans Continental to its constitutional right to a jury trial. There is a singular question before the Court: Does the TAC include new factual issues that are not present in the original Complaint? The answer is indisputably yes, and a jury trial is mandated.

Defendants' analysis – perhaps intentionally – misses the mark because it is Trans Continental's original Complaint, not the First Amended Complaint ("FAC"), which is the operative pleading to assess whether Trans Continental's right to a jury trial right has been revived. The initial Complaint alleged that MTV had breached its November 15, 2001 amended agreement ("Amended Agreement") with Trans Continental by "excluding Trans Continental from the creative process … [and] failing to account for and pay Trans Continental its *contractual* share of the proceeds."[4] Ex. B, ¶ 62 (emphasis added). Indeed, the face of the 52-

---

[1]     Bad Boy Films, Inc. ("Bad Boy Films") and Bad Boy Records, LLC (collectively, "Bad Boy") have also moved to strike Trans Continental's jury trial demand [D.E. 98]. Trans Continental hereby incorporates by reference all arguments raised in this Opposition Memorandum in response to Bad Boy's argument.

[2]     On May 27, 2010, the Court dismissed TC's claims against Viacom without prejudice [D.E. 81]. Trans Continental accordingly amended its pleading on June 11, 2010 [D.E. 87]. The TAC is attached as **Exhibit A.**

[3]     A copy of the original Complaint filed in this action is attached as **Exhibit B.**

[4]     In total, there have been twelve (12) seasons of Making the Band, three seasons each for Making the Band, Making the Band II, Making the Band III and Making the Band IV. Also, in wake of this lawsuit, the next sequel,

page TAC demonstrates that a jury trial is warranted on extensive new facts and attendant new issues that were never raised in the 15-page original Complaint. The original breach of contract and equitable accounting action has morphed into a case alleging these causes of action *in addition* to new facts to support claims for (1) breach of fiduciary duty, (2) conversion, (3) breach of the covenant of good faith and fair dealing, (4) dissolution of the joint venture, (5) declaratory judgment on copyright ownership, (6) declaratory judgment on rights to spinoff shows from Making the Band, (7) accounting pursuant to the contract, (8), unjust enrichment, (9) tortious interference, (10) aiding and abetting breach of fiduciary duty, and (11) violation of the Lanham Act. These eleven (11) new claims unquestionably raise new issues and rely on new facts not alleged in the original Complaint (and, indeed, unknown at that time), and include claims against three (3) new defendants. Defendants' claim that the TAC "asserts no new factual issues" rings hollow. A comparison of the Complaint and the TAC flatly belies this contention because it makes clear that the issues in this litigation have dramatically changed.[5]

Moreover, Defendants would have this court believe that the right to jury trial is revived only "[i]n limited circumstances." [D.E. 101, p. 7]. This is a material misstatement of the law. Both the United States Supreme Court and the Eleventh Circuit Court of Appeal have repeatedly and consistently held that the right to a jury trial is "fundamental;" "shall be preserved … inviolate," and that "*courts must indulge every reasonable presumption against waiver*."[6]

Defendants' Motion to Strike necessitates separating fact from fiction. By way of example, the Motion to Strike makes much of the fact that Trans Continental's jury trial demand

which was initially titled, Making the Band V, was re-styled, *Making His Band*. Unless otherwise noted, references to the "Series" or "Making the Band" refer to all twelve seasons.

[5]     A redline of the TAC against the original Complaint demonstrating the new facts and issues is attached as **Exhibit C.**

[6]     *LaMarca v. R.V. Turner,* 995 F.2d 1526, 1544 (11th Cir. 1993) (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (U.S. 1937)) (emphasis added); *see Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959).

arises "more than one year after [MTV] first answered the original complaint," while neglecting to mention that, with minor exception, the action was stayed for eleven (11) months during that time period. [B.K. D.E. 88]. Defendants' attempt to confuse the issue aside, the passage of time is irrelevant to the analysis as to whether an amendment revives the right to a jury trial. Moreover, Defendants hang their hat on Trans Continental's purported "admission" that its new claims against Bad Boy and Viacom are "factually related" to the FAC. This cannot carry the day for two reasons. First, the Complaint, not the FAC, is the correct pleading to analyze in relation to Trans Continental's revived jury trial demand. Second, new facts and issues necessarily spring from related facts. *"Related" and "new" are not the same*.

Defendants also gloss over the fact that it was MTV's conflicting positions that created the need for a jury trial. Instead of accepting accountability for altering the complexion of this litigation, Defendants castigate Trans Continental's efforts to secure its constitutional right to a jury trial. Defendants would have this Court believe their latest position on the purported inapplicability of the agreement previously at the crux of the original Complaint somehow does not create a new issue. Yet the "ultimate issue" for determination transforms from what are Trans Continental's rights *pursuant to* the terms of the Amended Agreement to what are Trans Continental's rights and remedies in the *absence* of a contract. Consequently, the issues and facts are no longer the same, as reflected in extensive new allegations in the TAC. Alternatively, the Court should exercise its discretion under Rule 39(b) to authorize a jury trial due to the unique posture of this case, which commenced in bankruptcy court and has drastically changed since its inception as a result of MTV's conflicting positions and disclosures.

While Defendants cannot be faulted for trying, their attempt to paint this action with such broad brushstrokes glosses over the relevant constitutional analysis. At the most abstract level,

*every* civil action at law centers on the plaintiff's claim for monetary redress. Under this view, an amended complaint would *never* revive the plaintiff's right to a jury trial. This is plainly not the law. MTV's revolving defense fundamentally changes the facts, the issues, the claims, the defendants, the remedies and, indeed, the entire complexion of this case. Defendants cannot reasonably dispute this fact, nor can they genuinely dispute that the TAC revives Trans Continental's right to a jury trial.

## II. PRELIMINARY STATEMENT

The TAC is replete with new facts that change the ultimate issues for decision that were previously presented in the original Complaint. Trans Continental's claims against MTV were initially anchored on the terms of the parties' Amended Agreement – that MTV's breaches of the Amended Agreement had resulted in significant financial losses to Trans Continental. In answering Trans Continental's Complaint [D.E. 7], and in its original sworn Interrogatory Responses, MTV countered that no money was owed under Amended Agreement.[7] Thus, the original focus of this litigation was simple: how much money does MTV owe Trans Continental pursuant to the *terms* of the Amended Agreement?

However, immediately after the filing of Trans Continental's FAC, MTV overhauled its defense claiming for the first time that the Amended Agreement was limited *solely* to season 1.3 of the Making the Band. According to the sworn testimony of MTV's Rule 30(b)(6) corporate representatives, the Amended Agreement does not apply to, and has no bearing on, Trans Continental's rights in relation to Making the Band II-IV. MTV's Rule 30(b)(6) corporate representatives' sworn testimony was in direct conflict with MTV's prior sworn interrogatory

---

[7] This is an incredible assertion, given that Making the Band was a "prime-time" show that aired for twelve (12) seasons in an excess of thirty (30) countries.

responses.[8]  Subsequently, at the time that Trans Continental sought to file its Second Amended Complaint ("SAC"), MTV had covered its bases by irreconcilably attesting both that: (1) the Amended Agreement applies to Making the Band II-IV; and (2) that the Amended Agreement does not apply to Making the Band II-IV.  After receiving Trans Continental's SAC, MTV retreated back to its original defense, only to later flip-flop once more.[9]

Depending on the moment, MTV's position is that there is ***no*** contractual agreement between Trans Continental and MTV relating to Making the Band II-IV.  This defense introduces distinct and completely different issues, which spawned the TAC's new factual allegations.  Under this paradigm, the pivotal inquiry is no longer: "How much money does MTV owe Trans Continental pursuant to the terms of the Amended Agreement," but rather: "does the Amended Agreement apply to Making the II-IV and, if not, what are Trans Continental's corresponding rights and remedies under federal statutory, quasi-contractual, and tort theories?"  As a result of Defendants' evolving positions, this is no longer the same lawsuit.

It is MTV's fault that this a different lawsuit, and a jury deserves to know why.  While Defendants' would undoubtedly like for this Court to ignore MTV's repeated flip-flopping defenses, the new issues alleged in the TAC are of MTV's own making.  Consequently, when evaluating whether the TAC's new issues revive Trans Continental's inviolate right to a jury trial, this Court should be mindful of the circumstances that led to their inclusion.

### III.    MEMORANDUM OF LAW

### A.    Trans Continental Has an Inviolate Constitutional Right to a Jury Trial.

Trans Continental's right to a jury trial is the most basic of legal rights, grounded in the

---

[8]    Incredibly, Brad Hazzard, MTV's Vice President of Business and Legal Affairs and MTV's corporate designee on the application of the Amended Agreement has ***himself*** sworn – under oath and the penalty of perjury – to each of MTV's competing positions. (*See* Exhibit D, *infra*).

[9]    Attached hereto as **Exhibit D** is a chart tracking the history of MTV's revolving door defenses.

Seventh Amendment to the United States Constitution.  Indeed, both the United States Supreme Court and the Federal Rules of Civil Procedure recognize that a party's jury trial right is "inviolate."  *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510 (1959); Fed. R. Civ. P. 38(a). Consequently, a court's discretion to deny this right is "very narrowly limited and must, wherever possible, be exercised to preserve a jury trial."  *Borgh v. Gentry*, 953 F.2d 1309, 1311 (11th Cir. 1992) (quotations omitted).  For these reasons, a trial court's denial of a jury trial is reviewed with the most "***exacting scrutiny***."  *La Marca,* 995 F.2d at 1544 (emphasis added). Based on the application of this stringent standard, this case does not present a close call.

### B.        The New Issues Raised in the TAC Warrant a Jury Trial.

The Eleventh Circuit has repeatedly held that where an amended complaint alleges new issues and claims, a right to jury trial exists.  *See, e.g., id. at* 1544-45 (reversing district court's finding of waiver of jury trial where amended pleadings added new parties with new issues and individual claims); *In re Fin. Federated Title & Trust, Inc.*, 309 F.3d 1325, 1329-30 (11th Cir. 2002) (reversing district court's finding of waiver of jury trial where amended complaint raised a new issue by increasing the defendant's alleged liability); *Borgh,* 953 F.2d at 1311 (reversing district court denial of plaintiff's right to jury trial when plaintiff amended complaint to add a breach of contract claim).

Within the jury demand context, the term "issue" means "something more than the evidence offered and the legal theories pursued … [One must ask whether] the ultimate issue for decision is different."  *LaMarca,* 995 F.2d at 1544 (quotations omitted).  As explained by the Eleventh Circuit, the right to a jury trial is revived where "[t]he underlying facts and basic legal theory [are] changed by the amendments in order to create new issues."  *Id.* at 1545.

### 1.        Defendants' Analysis Misses the Mark.

Defendants' analysis is wrong in many respects and cannot defeat Trans Continental's

constitutional right to a jury trial on the extensive new ultimate issues for determination raised in the TAC. First, Defendants misguidedly focus their analysis on the FAC (not the original Complaint) to obfuscate the new issues and facts raised in the TAC. [D.E. 101, pp. 5, 9, 11-15]. The proper inquiry is to compare the TAC to the original Complaint, not the FAC. Because MTV answered the Complaint [D.E. 7], this first pleading is the proper baseline to assess whether new issues and facts have been pled in the TAC to revive Trans Continental's right to a jury trial. Fed. R. Civ. P. 38(b) (1993); *see, e.g., In re Texas General Petroleum Corp.,* 52 F.3d 1330, 1339 (5th Cir. 1995). Defendants admit as much, as they repeatedly emphasize that Trans Continental should have raised its jury demand in its original Complaint: "Since Plaintiff first demanded a jury trial more than a year after [MTV] answered the original Complaint … Plaintiff waived its right to a jury trial against Defendants." [D.E. 101, p. 2]. Again, Defendants concede "the last pleading for purposes of Rule 38 was Defendant's September 30, 2008 answer to the original complaint." *Id.* at 7.

Despite acknowledging that the initial Complaint is the baseline to analyze Trans Continental's right to a jury trial, Defendants nonetheless – and inexplicably – premise the bulk of their analysis on the FAC.[10] The reason for this is simple: a comparison of the TAC against the Complaint plainly establishes the introduction of new factual issues. *See* Exs. A, B, C. Consequently, Defendants attempt to avoid this result by muddying the analysis with the FAC rather than the Complaint. The Court should reject Defendants' attempt at misdirection.

Defendants' shell game with the complaints attempts to cheat Trans Continental out of its constitutional right to a jury trial. In particular, Defendants' argument that Trans Continental's "purportedly new issues have all been raised in this litigation" largely depends on the FAC, not

---

[10] For instance, Defendants assert, "Only the theories of recovery presented in [Trans Continental's] TAC differ from those presented in the FAC." *Id.* at 9 (emphasis omitted). Yet Defendants go on to state that "the factual allegations in the **SAC** are substantially similar to those in the FAC." *Id.* at 9-10 (emphasis added).

the original Complaint. *Id.* at 11-15. Defendants contend that Trans Continental's previous allegations in the FAC of its entitlement to advertising revenues[11] and Defendants' self-dealing defeat its right to a jury trial because the "new" claims for unjust enrichment and violations of the Lanham Act are merely new theories of recovery. This is a wholly inaccurate analysis, because the proper comparison is the TAC versus the Complaint, not versus the FAC.[12] Fed. R. Civ. P. 38(b); *see, e.g., Texas General Petroleum,* 52 F.3d at 1339. Nowhere are allegations of advertising revenues or unfair competition even raised in the original Complaint. *See* Ex. B. Rather, the only issue central to the original Complaint was whether MTV had breached the Amended Agreement, not whether this contract applied. *Id.*

Finally, confusing the issues even more, Defendants appear to be analyzing the SAC, not the TAC, throughout much of their papers. ***In short, not only do Defendants use the wrong benchmark (the FAC and not the original Complaint), they use the wrong point of comparison (the SAC and not the TAC).*** For instance, Defendants contend: (1) "As with the previous complaints, the [SAC] addresses…;" (2) "The [SAC] does not revive [Trans Continental's] Unmistakable Waiver of its Jury Trail Right;" (3) "The FAC sought contractual remedies; the SAC seeks those same remedies …;" (4) "[T]he factual allegations in the SAC are substantially similar to those in the FAC ….." [D.E. 101, pp. 2, 7, 10]. The SAC is not the operative pleading to analyze Trans Continental's revived jury trial right. As analyzed below, the new ultimate issues for determination in the TAC as compared to the original Complaint readily establish Trans Continental's right to trial by jury.

---

[11]     Defendants' reliance on Trans Continental's First and Second Requests for Production of Documents and Things is equally misplaced because discovery requests are irrelevant to the analysis of whether there are new issues raised in the TAC that were not raised in the original Complaint.

[12]     Even if the FAC were the correct pleading to analyze – which it is not – a violation of the Lanham Act was never alleged, so Trans Continental would also be entitled to a jury trial if the FAC were the original complaint.

## 2. The New Facts and Issues Pled in the TAC Result in a Completely Different Case.

A redline comparison of the TAC versus the original Complaint demonstrates that new facts and issues abound to warrant a jury trial. Ex. C. Defendants, however, again analyze the wrong pleading (the FAC) by asserting that the "new" claims of unfair competition, unjust enrichment, and aiding and abetting breach of fiduciary duty "do not undo the jury trial waiver." Defendants conveniently ignore that in addition to these three claims, Trans Continental also alleges new facts sufficient to state eight (8) additional claims that were not pled in the initial Complaint, such as breach of fiduciary duty and conversion. Defendants' shortsighted argument purposefully fails to account for the copious new facts and issues raised in the TAC, which change the ultimate issues for determination.

*United States v. Kyriakakis* is instructive. *See* 2008 WL 53648, * 2 (Jan. 2, 2008 M.D. Fla. 2008). In *Kyriakakis*, the United States amended its pleading to add a new corporate defendant, alleging that the existing individual defendant was responsible for the newly named entity's tax liabilities. Although the government's amended complaint claimed the ***same*** total tax liabilities, the ***same*** dates of assessment, and the ***same*** amounts assessed in the prior complaint, the *Kyriakakis* court held that the defendant did not waive its jury trial demand by asserting it in its amended answer. *Id.* Judge Fawsett reasoned that the addition of a new entity for which the existing defendant could be held liable "changes both the facts and the underlying legal theory of Plaintiff's case." *Id.* In so holding, the *Kyriakakis* court noted that its decision was guided by the Eleventh Circuit's stringent standard mandating that "there is a strong presumption in favor of a trial by jury and the Court's discretion to deny a trial is narrow." *Id.*

Furthermore, courts have ruled that adding new claims can sufficiently change the factual issues to revive a right to a jury trial. The addition of claims for intentional or negligent

infliction of emotional distress, defamation, and conspiracy revived a jury trial right as they "are **_not identical_** to the allegations underlying the previously alleged" claims in the original complaint for breach of employment contract, breach of the covenant of good faith and fair dealing, and age discrimination. *Clement v. American Greetings Corp.,* 636 F. Supp. 1326, 1335-36 (S.D. Cal. 1986) (emphasis added). In so holding, the court reasoned that the "plaintiff [had] not merely submitted a more detailed statement of his previously pleaded claims." *Id.* at 1335. Distinguishing *Lanza v. Drexel & Co.,* 479 F.2d 1277, 1310 (2d Cir. 1973)[13] – a case relied upon by Defendants – the court determined that the "factual issues underlying recovery for age discrimination … are not necessarily the same as those underlying plaintiff's claims for infliction of emotional distress, defamation, or conspiracy. *Id.* at 1336. Similarly, in *Naranjo v. The Salvation Army,* 2006 WL 2711690, *4 (N.D. Cal. Sept. 21, 2006), the court held that a punitive damages claim revived a jury trial right because it relied on new factual allegations.

As in *Kyriakakis, Clement,* and *Naranjo,* the TAC asserts new factual issues underlying new claims not previously alleged in the Complaint to revive Trans Continental's right to a jury trial. In sweeping and conclusory fashion, Defendants opine, "[t]he most recent amendment asserts no new factual issues." [D.E. 101, p. 2]. This statement is demonstrably false. Defendants attempt to gloss over the fact that the TAC includes one hundred fifty-one (151) more paragraphs of **_new factual allegations_** than pled in the original Complaint, changing the ultimate issues for determination from whether MTV breached the Amended Agreement to whether Defendants and Bad Boy breached duties sounding in tort, copyright, and trademark to Trans Continental. These extensive new facts form the bases of the eleven (11) new causes of action added to the TAC. Indeed, even a cursory read of the TAC reveals new factual issues that

---

[13]   Indeed, the Second Circuit analyzed the "original complaint" in the face of two subsequent amendments. *Id.* at 1310.

were not raised in the original Complaint, including:

(1)     If, as MTV asserts, that the Amended Agreement does not apply, does the original January 7, 2000 Joint Venture Agreement govern the parties' relationship? *See, e.g.,* TAC ¶¶ 33-39, 64-68, 71-74.

(2)     Did MTV breach its fiduciary duty to Trans Continental? *Id.* at ¶¶ 75-86.

(3)     Did Defendants' use of the title, Making the Band, in conjunction with Making the Band II-IV mislead the viewing public in violation of the Lanham Act? *Id.* at ¶¶ 166-86.

(4)     Did Bad Boy knowingly, willingly and unjustifiably tortiously interfere with Trans Continental's contractual rights? *Id.* at ¶¶ 57-62, 195-223.

(5)     Is Trans Continental entitled to recover fifty percent (50%) of advertising revenues as a joint copyright owner via its claim for unjust enrichment? *Id.* at ¶¶ 132-149.

(6)     Is Trans Continental entitled to the ill-gotten profits from Defendants' wrongful use of the Making the Band trademark?[14] *Id.* at ¶¶ 166-186.

(7)     Did Viacom wrongfully interfere with Trans Continental's exercise of its rights with regard to its joint ownership in the copyright of Making the Band? *Id.* at ¶¶ 95-107.

(8)     Did Viacom aid, abet, or induce MTV's breach of fiduciary duty against Trans Continental? *Id.* at ¶¶ 187-194

(9)     Did Viacom direct MTV to license Making the Band to Viacom-owned entities either free of charge or on less than customary terms and without adequate consideration to the Joint Venture or Trans Continental? *Id.* at ¶ 190.

(10)    Do There & Back, Making His Band, Taquita & Kaui, and the yet untitled show featuring Qwanell "Que" Mosely and Dawn Richard (the "Untitled Show") constitute sequels, spinoffs, or other projects in which Trans Continental has rights to jointly exploit with MTV? *Id.* at ¶¶ 81, 112-14, 119-21, 146.

(11)    Do There & Back, Making His Band, Taquita & Kaui, and the Untitled Show constitute derivative works within the meaning of 17 U.S.C. §§ 101, 106? *Id.* at ¶ 116, 120-121.

(12)    Did Defendants convert Trans Continental's property rights in Making the Band? *Id.* at ¶¶ 154-58.

        To borrow a phrase from Defendants' Motion to Strike, the marked differences in the

---

[14]   Notably, the specimen which Viacom submitted to the Patent and Trademark Office as evidence of its first use of the term, *Making the Band*, in commerce was the image of the O-Town band members ("O-Town").  O-Town was the band featured in the original Making the Band series of which Trans Continental is indisputably a co-owner of the copyright and all attendant intellectual property rights. *See* TAC, ¶¶ 180-81, n.12.

ultimate issues for determination "is the beginning and end of the analysis." [D.E. 101, p. 2]. The TAC's extensive new facts and new legal issues revive Trans Continental's constitutional right to a jury trial – and this is the case even if this Court were not obligated to give Trans Continental every benefit of the doubt and "indulge every reasonable presumption against waiver." *LaMarca*, 995 F.2d at 1544.

The new issues in the TAC go far beyond those sustained in *Kryiakakis, Clement,* and *Naranjo* to require a jury trial. Since the initial Complaint, Trans Continental has added ***three (3)*** new defendants and ***eleven (11)*** new causes of action, relying on new underlying facts to fundamentally "change the underlying legal theory" of Trans Continental's case. *Kryiakakis*, 2008 WL 53648, * 2. Plainly, the facts raised in the TAC for these new claims are ***not*** identical to the simple allegations underlying Trans Continental's claims for breach of contract and accounting in the original Complaint. *See* Exs. A, B, C. The entire complexion of the case has transformed as a result of MTV's belated and evolving defense that the Amended Agreement does not apply to Making the Band II-IV. *See* Ex. D.

### 3.    Trans Continental's  New Claims Also Warrant a Jury Trial.

This case is different because MTV has made it different. Although Defendants fail to analyze all of the new claims asserted in the TAC versus the original Complaint, Trans Continental will briefly address their arguments on the three (3) new claims pled in the SAC and the TAC. First, Trans Continental's Lanham Act claim hinges upon issues of fact that did not even exist at the time of the Complaint and warrants a jury trial for the claimed "actual and compensatory damages." TAC., ¶ 186; *see, e.g., Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 472-73 (1962) (Lanham Act claim seeking money damages in accounting claim presented legal issues sufficient to warrant constitutional right to trial by jury).

 MTV's belated defense that the Amended Agreement is inapplicable beyond Season 1.3

of the Making the Band gives rise to a Section 43(a) claim under the Lanham Act. If, as MTV attests, Making the Band II-IV are new and unrelated series to which Trans Continental possesses no right, then MTV's use of the trademark, Making the Band (which belongs to the Joint Venture and is, thus, equally owned by Trans Continental), in connection with these "new unrelated series" gives rise to an unfair competition claim. Defendants posit (wrongly) that the Lanham Act claim is merely an extension of the self-dealing allegations subsumed in the fiduciary duty and implied duty of good faith claims. [D.E. 101, p. 14]. First, self-dealing is not an element of a Lanham Act claim, and thus, not alleged.[15] Second, these claims were not even raised in the initial Complaint, so this argument fails. However, even analyzing the FAC, these claims make *no* mention of Defendants' wrongful and deceitful use of the Making the Band trademark. Trans Continental's Lanham Act claim introduces an entirely new "issue" for determination separate and distinct from the original breach of contract action: Whether Defendants violated Section 43(a) of the Lanham Act through their use of the trademark, Making the Band. *See* TAC, ¶¶ 167-173, 180. As such, the Lanham Act claim warrants a jury trial.

Second, Trans Continental's unjust enrichment claim against Defendants is similarly premised on the new issues injected into this lawsuit by MTV. Under the Complaint, Trans Continental did not allege its entitlement to share in the advertising revenues generated by MTV in connection with the exhibition of the copyright in Making the Band II-IV because the formula in the Amended Agreement reserved advertising revenues for MTV. Now everything has changed because MTV's corporate representatives swore in depositions that there is *no* contractual agreement between Trans Continental and MTV relating to Making the Band II-IV.

This sworn testimony, combined with MTV's prior sworn concession that Trans

---

[15] *See Davidoff & CIE, S.A. v. PLD Intern. Corp.,* 263 F.3d 1297, 1300-01 (11th Cir. 2001) (to prove trademark infringement claim, "plaintiff must show that defendant used the mark in commerce without its consent and that the unauthorized use was likely to deceive, cause confusion, or result in mistake.").

Continental is a co-owner of the copyright in the original Making the Band series,[16] not only serve as the foundation of Trans Continental's new unjust enrichment claim, but greatly enhances Trans Continental's scope of recovery. In the absence of a governing agreement between MTV and Trans Continental regarding the profits earned from the jointly-owned Making the Band II-IV (and all spinoffs, sequels, and other projects), then Trans Continental – as the undisputed copyright co-owner – is entitled to share in ***all*** of the proceeds generated from Making the Band II-IV, including the proceeds earned from advertising revenue. Trans Continental's right to share in the proceeds is now governed ***not*** by a contractual formula (as previously asserted Complaint), but instead by copyright principles.

Copyright principles make clear that in the absence of a governing agreement, ***all*** profits between joint copyright owners are to be divided equally. *See, e.g., Community for Creative Non-Violence v. Reid,* 846 F.2d 1485, 1498 (D.C. Cir. 1988) ("In the absence of an agreement specifying otherwise, any profits earned [as a result of the use or license of the jointly owned work] are to be divided equally, even where it is clear that [the] respective works to the joint work are not equal"). Joint copyright owners must account to co-owners for the profits gleaned from use of a copyright. *See, e.g., Oddo v. Ries,* 743 F.2d 630, 633 (9th Cir. 1984). And an unjust enrichment claim is the proper cause of action to recover copyright damages for co-ownership in the absence of a governing contract. *See, e.g., Oddo,* 743 F.2d at 633; *see Korman v. Iglesias,* 736 F. Supp. 261, 265 (S.D. Fla. 1990).

Trans Continental's unjust enrichment claim alleges new issues, new claims, and gives rise to significantly enhanced damages (from an amount greater than $75,000 to a minimum of $60,000,000.00). *Cf.* Ex. B, ¶ 3; TAC, ¶ 2. Under Eleventh Circuit precedent, the increased

---

[16] Warren Solow testified that the copyright registrations for Making the Band II-IV should have reflected Trans Continental as a co-owner. Similarly, asked for example: "Are seasons 1, 2 and 3 of Making the Band IV Trans Continental's property," Laura Dorson, MTV's Vice President of Participations Management, testified: "Yes."

damages claims, coupled with the new federal law issues raised under copyright law and the Lanham Act, mandate the revival of Trans Continental's fundamental right to a jury trial. *See, e.g., In re Fin. Federated Title & Trust, Inc.*, 309 F.3d at 1329-30 (reversing district court's finding of waiver of jury trial where amended complaint increased damages from approximately $10,000.00 to $1,000,000.00).

Finally, MTV wrongly asserts that Trans Continental's unjust enrichment and aiding and abetting breach of fiduciary duty claims do not warrant a jury trial because they are equitable. This is form over substance. When a plaintiff seeks a money judgment, the claim is generally considered legal in nature. *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 47-48, 65 (1989) (holding that on balance, the monetary remedy sought by bankruptcy trustee in fraudulent transfer action was legal in nature so the defendant had a right to a jury trial). Trans Continental seeks "actual and compensatory damages" in its unjust enrichment and aiding and abetting claims. TAC, ¶¶ 165, 194. As the Supreme Court explained, because a money judgment is sought in this case, "any distinction that might exist between 'damages' and monetary relief under a different label is purely semantic, with no relevance to the adjudication of petitioner's Seventh Amendment claim." *Granfinanciera,* 492 U.S. at 49, n.7. Thus, Trans Continental is entitled to a jury trial on its unjust enrichment and aiding and abetting claims because they ultimately seek to recover monetary damages.[17]

### C.     The Addition of Bad Boy and Viacom Warrants a Jury Trial.

---

[17] *See, e.g., In re K&R Express Systems, Inc.,* 382 B.R. 443, 447-48 (N.D. Ill. 2007) (defendants entitled to jury trial for aiding and abetting breach of fiduciary duty **and** unjust enrichment claims because bankruptcy trustee sought money damages as the remedy); *Dastgheib v. Genentech, Inc.,* 457 F. Supp. 2d 536, 546 (E.D. Pa. 2006) (defendant entitled to jury trial on claim for unjust enrichment that sought restitution of money damages as remedy); *In re Lee Way Holding Co.,* 118 B.R. 544, 549 (Bankr. S.D. Ohio 1990) (jury trial warranted for breach of fiduciary duty claim seeking monetary damages); *The Newark Group, Inc. v. Sauter,* 2004 WL 5782100, *1-2 (S.D. Ohio Apr. 6, 2004) (denying defendant's motion to strike jury trial demand where plaintiff's unjust enrichment claim was the method of computing monetary damages under the Ohio Trade Secret Misappropriation Act).

The addition of Bad Boy and Viacom also result in the inclusion of new issues and facts that mandate a jury trial.[18] In *Krykiakos,* Judge Fawsett held that the addition of a new defendant sufficiently changed the issues and legal theories of a case to require trial by jury. 2008 WL 53648 at * 2. This is also the case here: Trans Continental has asserted eleven (11) new claims against three (3) new defendants never mentioned in the original Complaint, changing the issues for ultimate determination.

## 1.     <u>Viacom's Inclusion in this Lawsuit Raises New Issues.</u>

*"f\*ck lou. Bg's thoughts were: keep lou off tv*."[19]

This e-mail, which was begrudgingly and only recently[20] turned over by MTV, communicates Defendants' view as to how Trans Continental and its principal Lou Pearlman were to be treated. Additional documents unearthed during discovery shed new light on Viacom's involvement in inexplicably registering the trademark for Making the Band in Viacom International's name, as well as Viacom's exploitation of Making the Band without justly compensating Trans Continental. By way of example, Viacom aired Making the Band on VH1, a Viacom entity, and failed to pay Trans Continental. Similarly, Making the Band has aired in numerous foreign countries on stations owed by Viacom without any compensation or benefit to Trans Continental. *See* TAC, ¶¶ 156, 190, 193-94.

In light of this recent discovery, Trans Continental asserted new claims against Viacom, Inc. for unfair competition under Section 43(a) of the Lanham Act, unjust enrichment,

---

[18]     Defendants again rely on the original complaint with respect to the addition of Viacom and Bad Boy. [D.E. 101, pp. 19, 20]. Defendants conveniently analyze the pleading that best serves their argument, but it is the original complaint –not the FAC – that serves as the proper benchmark.

[19]     The asterisk was added for the sake of decency but is not present in the original e-mail (MTV-MTB 00001770).

[20]     MTV withheld this document for well over a year, speciously claiming that this e-mail, exchanged between two non-lawyers and which communicates the coarse sentiment of a non-lawyer, was somehow protected by the attorney-client privilege.

conversion, and aiding and abetting breach of fiduciary duty. These same claims were asserted against Viacom International, which was also added as a defendant to the new claims for declaratory relief as to copyright ownership and demand for accounting. The addition of Viacom adds new issues to this case and thus further revives Trans Continental's right to a jury trial. *See LaMarca,* 995 F.2d at 1545 (where amendment added new plaintiffs with new individual claims arising from separate incident, right to jury trial revived).

## 2. Bad Boy's Inclusion in this Lawsuit Raises New Issues as to MTV.

Defendants concede that Bad Boy's addition raises "distinct" and "discrete" issues, which necessarily implicate "new" issues sufficient for a jury trial. [D.E. 101, p.20]. Yet Defendants offer no support for their supposition that Bad Boy's inclusion does not result in a waiver against them. Defendants' failure to even attempt to support their argument is not surprising given that the inclusion of Bad Boy as a defendant implicates new issues about MTV's conduct, including whether Bad Boy and MTV acted in concert to strip Trans Continental of its rights in Making the Band. Specifically, the TAC alleges that:

- Without Trans Continental's knowledge or involvement, MTV commenced negotiations with Sean Combs ("Diddy") and his loan out corporation Bad Boy Films, Inc., which culminated in the execution of a July 12, 2002 agreement between MTV and Bad Boy Films (the "MTV/Bad Boy Films Agreement"). TAC, ¶ 59.

- Without any notice and without any return consideration, the MTV/Bad Boy Films Agreement stripped Trans Continental of its rights and provided them to Bad Boy Films and their related record company, Bad Boy Records. *Id.* at ¶ 60.

These new allegations (incorporated into every count) raise another ultimate issue for decision: did Bad Boy, in concert with MTV, tortiously interfere with Trans Continental's rights?

## 3. Defendants' Case Law Is Inapposite.

In light of *Krykiakas,* MTV's reliance on *In re Sharpe*, 391 B.R. 117, 172 (N.D. Ala. 2008) for the proposition that the addition of new parties does not revive a jury trial demand is

misplaced.  As in *Krykiakas* (and unlike in *Sharpe*), here the ultimate issues and underlying facts have changed by way of the TAC.  *In re Sharpe* stands for the unremarkable proposition that the addition of a new party, without more, does not warrant a jury trial.  Specifically, the *Sharpe* court held that despite the addition of a new party, the plaintiffs' jury trial right had not been revived because the newly raised theories were based on "the ***same*** facts" as in the original complaint.  *Id.* (emphasis added).

By contrast, Trans Continental's TAC does far more than merely name new defendants.  Instead, it depends upon an entirely new matrix of facts and conduct and attendant legal issues.  As set forth above, the inclusion of Bad Boy and Viacom change the "ultimate issue for decision."  *La Marca,* 995 F.2d at 1545.  *Sharpe* is inapposite because here the addition of parties ***does*** "change the underlying claims or the nature of the relief desired."  391 B.R. at 173.

Defendants' heavy reliance on *Mega Life & Health Ins. Co. v. Pieniozek,*[21] is equally unavailing.  *Mega Life* is completely different.  There, the court held that the defendant's counterclaim for breach of an insurance policy did not raise any new "issues" to warrant a jury trial, as the counterclaim arose out of the same very facts as the plaintiff's declaratory action for rescission of the same insurance policy. Defendants' argument that Trans Continental's claims are analogous to the claims in *Mega Life* falls flat.  In fact, the instant case is almost exactly the opposite.  Unlike in *Mega Life,* MTV's belated one hundred eighty degree switch in its defense necessitated an amendment which changed the facts, the claims, the issues, the defendants, and the potential remedies. Moreover, as referenced above, the ultimate issue for determination is transformed from what are Trans Continental's rights pursuant to the terms of the Amended Agreement to what are Trans Continental's rights and remedies in the absence of a contract.

---

[21]    585 F.3d 1399, 1404 (11th Cir. 2009).

Consequently, unlike in *Mega Life,* the parties are now **outside of a contract** and the new issues concern federal statutory, quasi-contractual, and tort remedies that are **only** available based on MTV's assertion that the Amended Agreement is inapplicable to Making the Band II-IV.

### C.      Alternatively, a Jury Trial is Warranted Under Rule 39(b).

Even if the TAC did not revive Trans Continental's inviolate right to a jury trial – which it does – this Court should nonetheless exercise its discretion under Rule 39(b) and authorize a jury trial on all issues in this case.   Rule 39(b) provides: "[T]he court may, on motion, order a jury trial on any issue for which a jury might have been demanded."   Fed. R. Civ. P. 39(b); *see, e.g., Kyriakakis,* 2008 Wl 53648 at *2, n.1 ("Even if the Court were to find waiver of [a party's] right to a jury trial, the Court could construe [the demand for a jury trial] as a motion under Rule 39(b) … and the Court would exercise its discretion under this rule and order a jury trial on all issues"); *see also Wertz v. Grubbs,* 45 F.3d 428, 1995 WL 3164, *6 n. 9 (4th Cir. 1996) (Widener, J., concurring in the result) ("However, because the right to a jury trial is a fundamental element of our judicial system, any manifestation of a party's desire for a jury trial should suffice as a motion under Rule 39(b).").

Consistent with the strong presumption against waiver of the right to a jury trial, the Eleventh Circuit has expressly encouraged district courts to liberally exercise their discretionary power pursuant to Rule 39(b).   Indeed, the general rule concerning belated jury requests under Rule 39(b) is that the trial court "should grant a jury trial in the absence of strong and compelling reasons to the contrary."   *See, e.g., Swofford v. B&W, Inc.,* 336 F.2d 406, 408 (5th Cir. 1964).

There are **no compelling reasons** to deny Trans Continental its constitutional right to a jury trial.   First, this case started in bankruptcy court, where jury trials are anomalies.   As soon as the trustee sought to withdraw the reference, he simultaneously asserted Trans Continental's right to a jury trial in the SAC.   [B.K. D.E. 93, 94].   Thus, there has been no undue delay in

requesting a jury trial because Trans Continental first asserted its right after it discovered the new facts and issues resulting from MTV's position that the Amended Agreement did not apply to Making the Band II-IV, which also prompted its motion for this Court to exercise jurisdiction. Indeed, Trans Continental's federal claims under copyright law and the Lanham Act give this Court an additional basis for jurisdiction than existed when the original Complaint was first filed in bankruptcy court. Second, Defendants will not suffer any prejudice because they are responsible for injecting the new facts into this case that created the right to a jury trial, and they have not even taken a single deposition. Third, Trans Continental's demand for significant monetary damages involves fact-intensive issues best suited for determination by jury. Lastly, a jury trial should not dramatically disrupt this Court's schedule, as this Court only recently accepted jurisdiction over the matter [D.E. 128], and the proposed trial date is November 7, 2011 [D.E. 96]. In sum, based on this case's unique posture, and the new issues and federal statutory claims raised in Trans Continental's TAC caused by MTV's belated disclosures and abrupt change in legal positions, this Court should exercise its discretion and afford Trans Continental its constitutional right to a jury trial.

In the interests of justice and judicial economy, all of the claims contained in Trans Continental's TAC should be tried by a jury. *See Kyriakias,* 2008 WL 53648 at *2. It would be an anomalous situation to parse the claims between a jury trial and a bench trial, as this would needlessly increase expenses for all parties and thwart judicial economy. Moreover, separate adjudications could yield inconsistent results. As a jury trial is warranted based on new issues and Rule 39(b), the Court should consolidate all claims before one jury.

## IV. <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should deny MTV's Motion to Strike and order that all claims in the TAC be tried by a jury.

Respectfully submitted,

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
*Attorneys for plaintiff, Soneet Kapila in his capacity as the federally appointed Chapter 11 Trustee charged with administrating the bankruptcy estate of Trans Continental Television Productions, Inc.*
Four Seasons Tower
1441 Brickell Avenue, Suite 1420
Miami, Florida  33131
Telephone:  (305) 377-1666
Facsimile:  (305) 377-1664
jsammataro@kasowitz.com


By: */s/* James G. Sammataro _____
    James G. Sammataro
    Florida Bar Number: 0520292
    Scott B. Cosgrove
    Florida Bar Number: 0161365
    Courtney Caprio
    Florida Bar No. 0933961

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 9, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a notice of the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

**Andrew J. Ehrlich, Esq.**
aehrlich@paulweiss.com
Paul, Weiss, Rifkind, Wharton
& Garrison LLP
*Counsel for MTV Networks, Viacom, Inc and Viacom International, Inc.*
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

**Brian A. McDowell, Esq.**
brian.mcdowell@hklaw.com
Holland & Knight, LLP
*Counsel for MTV Networks, Viacom, Inc and Viacom International, Inc.*
200 South Orange Avenue
Suite 2600
Orlando, Florida 32801
Telephone: (407) 425-8500
Facsimile: (407) 244-5288

**Jonathan Davis, Esq.**
Jonathan D. Davis, P.C.
*Counsel for Bad Boy Films, Inc. and Bad Boy Records, LLC*
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone: (212) 687-5464
Facsimile: (212) 557-0565

**Daniel Traver, Esq.**
Gray Robinson, P.A.
*Counsel for Bad Boy Films, Inc. and Bad Boy Records, LLC*
301 E. Pine Street, Suite 1400
Orlando, Florida 32802-3068
Telephone: (407) 843-8880
Facsimile: (407) 244-5690

_/s/_ James G. Sammataro
Attorney