# EXHIBIT D-1

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al.*

      Debtor.

_____/

SONEET KAPILA, Chapter 11 Trustee
for TRANS CONTINENTAL TELEVISION
PRODUCTIONS, INC.,

                Plaintiff,

v.

MTV NETWORKS COMPANY,

                Defendant.

_____/

Case No. 6:07-bk-00761-ABB
Jointly Administered
Chapter 11

Adv. No.: 6:08-ap-00157-ABB

## DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORY REQUESTS

Defendant MTV Networks, a division of Viacom International Inc. ("MTVN"), improperly sued herein as MTV Networks Company, by and through its undersigned counsel, hereby submits its Responses and Objections to Soneet Kapila, Chapter 11 Trustee for Trans Continental Television Productions, Inc.'s ("Plaintiff's") First Set of Interrogatory Requests.

### GENERAL STATEMENT

MTVN does not intend to disclose information that is privileged or otherwise immune from discovery. Disclosure of any information protected by the attorney-client privilege, work product doctrine or any other applicable privilege or rule of confidentiality, including, but not limited to, the trade secret privilege, shall be deemed inadvertent, except pursuant to a specific

written agreement covering such information. Inadvertent disclosure of any such information shall not constitute a waiver or prejudice of any privilege or any other ground for objecting to discovery with respect to any such information, nor shall the inadvertent disclosure waive or prejudice MTVN's right to object to the use of any such information during this or any subsequent proceeding.

The responses herein are based on the best information available to MTVN as of this date. Because, among other things, discovery is ongoing, MTVN reserves the right to modify, amend and/or supplement these responses. MTVN's response to any of these Interrogatories shall not constitute an admission by it that the information is properly discoverable, or admissible at trial, and shall not constitute a waiver of any objection that might otherwise be made to the disclosure of such information.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.  MTVN objects to the Instructions and Definitions as set forth in Plaintiff's First Set of Interrogatory Requests to the extent that they impose obligations upon MTVN other than those authorized by the Federal Rules of Civil Procedure, including, but not limited to, Rules 26(b), 26(e) and 33, and the Federal Rules of Bankruptcy Procedure, including, but not limited to, Rules 7026 and 7033.

2.  MTVN objects to the Instructions and Definitions set forth in Plaintiff's First Set of Interrogatory Requests to the extent that they require MTVN to produce information that is protected by the attorney-client privilege, work product doctrine, or any other privilege or rule of confidentiality.

3.  MTVN objects to the Instructions and Definitions set forth in Plaintiff's First Set of Interrogatory Requests to the extent that they do not specify any relevant time period. To this

- 2 -

end, MTVN will consider the relevant time period to be from January 1, 2000 through the present.

## RESPONSES AND OBJECTIONS TO INDIVIDUAL INTERROGATORIES

## INTERROGATORY NO. 1

Identify by name and title the person signing MTV's answers to these Interrogatories; each person who participated or assisted in answering these Interrogatories; each person whom [sic] was consulted in connection with the preparation of MTV's answers to these Interrogatories, and all of the documents that were reviewed, relied on, or otherwise referred to in preparing MTV's answer to these Interrogatories.

### RESPONSE TO INTERROGATORY NO. 1

The following individuals are signing MTVN's answers to these Interrogatories:

Jackie French
Vice President Development, MTV
c/o Carol C. Lumpkin, Esq.
K&L Gates LLP
Wachovia Financial Center
200 S. Biscayne Blvd., Suite, 3900
Miami, FL 33131
(305) 539-3300

Brad Hazzard
MTVN's Vice President, Administration, Business & Legal Affairs
c/o Carol C. Lumpkin, Esq.
K&L Gates LLP
Wachovia Financial Center
200 S. Biscayne Blvd., Suite, 3900
Miami, FL 33131
(305) 539-3300

Other than undersigned counsel and in-house counsel for MTVN, the following individuals participated in and/or were consulted in connection with the preparation of MTVN's answers to these Interrogatories:

- 3 -

Jackie French
Then title:  Director of Development, MTV
Current title:  Vice President Development, MTV
c/o Carol C. Lumpkin, Esq.
K&L Gates LLP
Wachovia Financial Center
200 S. Biscayne Blvd., Suite, 3900
Miami, FL 33131
(305) 539-3300

Brad Hazzard
MTVN's Vice President, Administration, Business & Legal Affairs
c/o Carol C. Lumpkin, Esq.
K&L Gates LLP
Wachovia Financial Center
200 S. Biscayne Blvd., Suite, 3900
Miami, FL 33131
(305) 539-3300

Pursuant to Federal Rule of Civil Procedure 33(d) and subject to the parties' confidentiality agreement, the answer to the portion of Interrogatory No. 1 regarding "all of the documents that were reviewed, relied on, or otherwise referred to in preparing MTV[N]'s answer to these Interrogatories" may be determined by examining the documents produced by MTVN in response to Request No. 1 of Plaintiff's First Request for Production of Documents and Things.

## INTERROGATORY NO. 2

State the name, the current address and telephone number, present place of employment, and *then* job title of any individual who was involved, in any way, on MTV's behalf in the preparation, negotiation, drafting or finalization of the January 7, 2000 Agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand (hereinafter, the "Agreement").

## RESPONSE TO INTERROGATORY NO. 2

George Eichen, Esq.
Then title:  General Counsel, MTV and Senior Vice President of MTV Networks

- 4 -

No longer employed by MTVN

Ken Mok
Then title:  Vice President, Development, MTV
No longer employed by MTVN
Current address:
c/o Jared Levine, Esq.
Morris Yorn Barnes & Levine
2000 Avenue of the Stars, 3rd Floor, North Tower
Los Angeles, CA 90067
(310) 319-3900

Liz Skoler
Then title:  Vice President, Law & Business Affairs, MTV Networks
Current title:  Senior Vice President, Co-Productions & Business & Legal Affairs, Music
        Group, MTVN, VH1
c/o Carol C. Lumpkin, Esq.
K&L Gates LLP
Wachovia Financial Center
200 S. Biscayne Blvd., Suite, 3900
Miami, FL 33131
(305) 539-3300

    For some of the individuals listed above, MTVN is not aware of their current contact

information and/or place of employment.  MTVN reserves the right to supplement this response

pursuant to the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure.

**INTERROGATORY NO. 3**

    State the name, the current address and telephone number, present place of employment,

and *then* job title of any person who was involved, in any way, on MTV's behalf in the

preparation, negotiation, drafting or finalization of the Amended Agreement entered into by and

between, MTV, on the one hand, and Trans Continental, on the other hand, on or about

November 15, 2001 (hereinafter, the "Amended Agreement").

    **RESPONSE TO INTERROGATORY NO. 3**

George Eichen, Esq.
Then title:  General Counsel, MTV and Senior Vice President of MTV Networks
No longer employed by MTVN

Virginia Lazalde-McPherson, Esq.
Then title: MTVN's Vice President, Business & Legal Affairs
Current title: MTVN's Senior Vice President, Deputy General Counsel, Business and
Legal Affairs
c/o Carol C. Lumpkin, Esq.
K&L Gates LLP
Wachovia Financial Center
200 S. Biscayne Blvd., Suite, 3900
Miami, FL 33131
(305) 539-3300

John Miller
Then title: Senior Vice President, Long Form Development, MTV
No longer employed by MTVN

Ken Parks, Esq.
Then and current title: MTVN's VP Business & Legal Affairs
c/o Carol C. Lumpkin, Esq.
K&L Gates LLP
Wachovia Financial Center
200 S. Biscayne Blvd., Suite, 3900
Miami, FL 33131
(305) 539-3300

For some of the individuals listed above, MTVN is not aware of their current contact
information and/or place of employment. MTVN reserves the right to supplement this response
pursuant to the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure.

**INTERROGATORY NO. 4**

State the name, the current address and telephone number, present place of employment,
and *then* job title of any person who was involved, in any way, with or in the preparation,
negotiation, drafting or finalization of any agreement(s) with Sean Combs (*p/k/a* "Puff Daddy,"
"P-Diddy," or "Diddy") (hereinafter, "Diddy") or his affiliated entity or corporation in
connection with either *Making the Band 2, Making the Band 3* and *Making the Band 4*,
including, without limitation, the name of the contracting parties; all of the entities which were

- 6 -

affiliated with, or related to, Diddy; and all of the attorneys and/or law firms (if any) involved in the negotiation.

## RESPONSE TO INTERROGATORY NO. 4

George Cheeks, Esq.
Then title: Senior Vice President, Business and Legal Affairs, MTV Networks, General
    Counsel, MTV
Current Title: MTVN's Executive Vice President & Co-General Counsel
c/o Carol C. Lumpkin, Esq.
K&L Gates LLP
Wachovia Financial Center
200 S. Biscayne Blvd., Suite, 3900
Miami, FL 33131
(305) 539-3300

Ellie Cola Basner
Then title: Vice President, Music and Talent Relations, MTV
No longer employed by MTVN

Derek Ferguson
CFO Bad Boy Films Inc.

Jackie French
Then title: Director of Development, MTV
Current title: Vice President Development, MTV
c/o Carol C. Lumpkin, Esq.
K&L Gates LLP
Wachovia Financial Center
200 S. Biscayne Blvd., Suite, 3900
Miami, FL 33131
(305) 539-3300

Virginia Lazalde-McPherson, Esq.
Then title: MTVN's Vice President, Business & Legal Affairs
Current title: MTVN's Senior Vice President, Deputy General Counsel, Business and
Legal Affairs
c/o Carol C. Lumpkin, Esq.
K&L Gates LLP
Wachovia Financial Center
200 S. Biscayne Blvd., Suite, 3900
Miami, FL 33131
(305) 539-3300

Kenneth Meiselas, Esq.

Attorney for Bad Boy and Sean Combs
Grubman, Indursky & Schindler
152 W. 57th
New York, NY 10019
(212) 554-0409

John Miller
Then title: Senior Vice President, Long Form Development, MTV
No longer employed by MTVN

Phil Robinson
Manager of Sean Combs
Cristel Clear Management, Inc.
(646) 348-4834

Peter Safran
Manager of Sean Combs
Formerly at: Brillstein-Gray
Current address:
The Safran Company
2000 Avenue of the Stars
Suite 600-N
Los Angeles, CA 90067

Amy Weiss
Attorney for Sean Combs
Brillstein-Gray

For some of the individuals listed above, MTVN is not aware of their current contact information and/or place of employment. MTVN reserves the right to supplement this response pursuant to the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure.

**INTERROGATORY NO. 5**

Identify with specificity each and every country, territory or province in which any season of *Making the Band*, *Making the Band 2*, *Making the Band 3* and *Making the Band 4* has ever been distributed to, broadcast or exhibited in, aired or otherwise televised in, and include in your response the specific station(s) on which the program was broadcasted as well as the

- 8 -

mechanism by which that station acquired the rights to televise the program (*e.g.*, it is an MTV-owned station, or through an affiliate, license, distribution or program sales agreement).

### RESPONSE TO INTERROGATORY NO. 5

Pursuant to Federal Rule of Civil Procedure 33(d) and subject to the parties' confidentiality agreement, the answer to this interrogatory may be determined by examining the documents produced by MTVN in response to Request Nos. 65 and 66 of Plaintiff's First Request for Production of Documents and Things.

### INTERROGATORY NO. 6

Identify with specificity each and every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in the distribution (both foreign and domestic) of *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

### RESPONSE TO INTERROGATORY NO. 6

Pursuant to Federal Rule of Civil Procedure 33(d) and subject to the parties' confidentiality agreement, the answer to this interrogatory may be determined by examining the documents produced by MTVN in response to Request No. 68 of Plaintiff's First Request for Production of Documents and Things.

### INTERROGATORY NO. 7

Identify with specificity each and every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in the licensing of the television programs, *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*, and/or any merchandise or ancillary, allied or after-market products (*e.g.*, DVDs and

other products relating to the home video market) relating to any season of *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

## RESPONSE TO INTERROGATORY NO. 7

Pursuant to Federal Rule of Civil Procedure 33(d) and subject to the parties' confidentiality agreement, the answer to this interrogatory may be determined by examining the documents produced by MTVN in response to Request No. 70 of Plaintiff's First Request for Production of Documents and Things.

## INTERROGATORY NO. 8

Identify with specificity, and on a season-by-season basis, the amount of gross and net profit that MTV, including any and all MTV-related, sister or affiliated entities, has made in connection with *Making the Band 2*, describing with specificity each and every expense or deduction which was made to gross profit in order to arrive at the net profit figure.

## RESPONSE TO INTERROGATORY NO. 8

MTVN objects to this interrogatory as burdensome and seeking irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band I] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement defines "Net Proceeds" in a particularized manner, specifying that only certain revenues, expenses and deduction are to be included in the calculation of Net Proceeds. Furthermore, pursuant to Schedule A of the Amended Agreement, Net Proceeds, if any, are to be accounted for on a "semi-annual basis," and not a season-by-season basis. Therefore, this interrogatory, which requests MTVN to identify "on a season-by-

season basis, the amount of gross and net profit" and to describe "with specificity each and every expense or deduction," is irrelevant to the Amended Agreement, unduly burdensome and not representative of the parties' intent behind the contract. To the extent this interrogatory does seek the relevant items of revenues, expenses and deductions under the Net Proceeds calculation, pursuant to Federal Rule of Civil Procedure 33(d) and subject to the parties' confidentiality agreement, MTVN refers to the documents produced in response to Request for Production No. 9.

## INTERROGATORY NO. 10[1]

Identify with specificity, and on a season-by-season basis, the amount of gross and net profit that MTV, including any and all MTV-related, sister or affiliated entities, has made in connection with *Making the Band 3*, describing with specificity each and every expense or deduction which was made to gross profit in order to arrive at the net profit figure.

### RESPONSE TO INTERROGATORY NO. 10

MTVN objects to this interrogatory as burdensome and seeking irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement defines "Net Proceeds" in a particularized manner, specifying that only certain revenues, expenses and deduction are to be included in the calculation of Net Proceeds. Furthermore, pursuant to Schedule A of the Amended Agreement, Net Proceeds, if any, are to be accounted for on a "semi-annual basis," and not a season-by-season basis. Therefore, this interrogatory, which requests MTVN to identify "on a season-by-

---

[1] Plaintiff's First Set of Interrogatories does not contain an Interrogatory No. 9.

season basis, the amount of gross and net profit" and to describe "with specificity each and every expense or deduction," is irrelevant to the Amended Agreement, unduly burdensome and not representative of the parties' intent behind the contract.  To the extent this interrogatory does seek the relevant items of revenues, expenses and deductions under the Net Proceeds calculation, pursuant to Federal Rule of Civil Procedure 33(d) and subject to the parties' confidentiality agreement, MTVN refers to the documents produced in response to Request for Production No. 9.

## INTERROGATORY NO. 11

Identify with specificity, and on a season-by-season basis, the amount of gross and net profit that MTV, including any and all MTV-related, sister or affiliated entities, has made in connection with *Making the Band 4*, describing with specificity each and every expense or deduction which was made to gross profit in order to arrive at the net profit figure.

## RESPONSE TO INTERROGATORY NO. 11

MTVN objects to this interrogatory as burdensome and seeking irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence.  Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A."  In turn, Schedule A of the Amended Agreement defines "Net Proceeds" in a particularized manner, specifying that only certain revenues, expenses and deduction are to be included in the calculation of Net Proceeds.  Furthermore, pursuant to Schedule A of the Amended Agreement, Net Proceeds, if any, are to be accounted for on a "semi-annual basis," and not a season-by-season basis.  Therefore, this interrogatory, which requests MTVN to identify "on a season-by-

season basis, the amount of gross and net profit" and to describe "with specificity each and every expense or deduction," is irrelevant to the Amended Agreement, unduly burdensome and not representative of the parties' intent behind the contract. To the extent this interrogatory does seek the relevant items of revenues, expenses and deductions under the Net Proceeds calculation, pursuant to Federal Rule of Civil Procedure 33(d) and subject to the parties' confidentiality agreement, MTVN refers to the documents produced in response to Request for Production No. 9.

## INTERROGATORY NO. 12

Identify with specificity the date and amount of each and every payment made by MTV to Diddy (or any entity or corporation affiliated with or related to Diddy) in connection with any season of *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4.*

### RESPONSE TO INTERROGATORY NO. 12

MTVN objects to this interrogatory because it is burdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's breach of contract and accounting claims concern whether or not MTVN owes *Plaintiff* any Net Proceeds for *Making the Band 2, Making the Band 3,* and *Making the Band 4.* (Pursuant to Paragraph 9 of the Amended Agreement, *Making the Band 2, Making the Band 3,* and *Making the Band 4* are governed by the Net Proceeds formula.) Plaintiff's claims do not concern the payments made by MTVN to Diddy. Indeed, payments made to Diddy by MTVN are not included in the Net Proceeds calculation, as defined in Schedule A of the Amended Agreement. In response to Request for Production Nos. 18 – 21, and subject to the parties' confidentiality agreement, MTVN is producing contracts between itself and Diddy, which speak for themselves.

## INTERROGATORY NO. 13

Identify with specificity, and on a season-by-season basis, the amount of advertising revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received in connection with the broadcast of *Making the Band 2* in the United States or any other country, territory or province.

### RESPONSE TO INTERROGATORY NO. 13

MTVN objects to Interrogatory No. 13 as burdensome and seeking irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement excludes advertising revenue from the Net Proceeds calculation; specifically, Schedule A defines "Net Proceeds", in part, as "all non-refundable revenues ... (excluding exhibition on MTVN worldwide programming service)."

## INTERROGATORY NO. 14

Identify with specificity, and on a season-by-season basis, the amount of advertising revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received in connection with the broadcast of *Making the Band 3* in the United States or any other country, territory or province.

### RESPONSE TO INTERROGATORY NO. 14

MTVN objects to Interrogatory No. 14 as burdensome and seeking irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band

- 14 -

1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement excludes advertising revenue from the Net Proceeds calculation; specifically, Schedule A defines "Net Proceeds", in part, as "all non-refundable revenues ... (excluding exhibition on MTVN worldwide programming service)."

## INTERROGATORY NO. 15

Identify with specificity, and on a season-by-season basis, the amount of advertising revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received in connection with the broadcast of *Making the Band 4* in the United States or any other country, territory or province.

### RESPONSE TO INTERROGATORY NO. 15

MTVN objects to Interrogatory No. 15 as burdensome and seeking irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement excludes advertising revenue from the Net Proceeds calculation; specifically, Schedule A defines "Net Proceeds", in part, as "all non-refundable revenues ... (excluding exhibition on MTVN worldwide programming service)."

## INTERROGATORY NO. 16

Identify with specificity, and on a season-by-season basis, the amount of revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received, in connection with the foreign distribution of *Making the Band 2.*

### RESPONSE TO INTERROGATORY NO. 16

MTVN objects to this interrogatory to the extent it is burdensome and overbroad, as it requests MTVN to identify the amount of revenue on a "season-by-season basis." However, the Amended Agreement does not require MTVN to provide such a detailed accounting. Notwithstanding the foregoing, pursuant to Federal Rule of Civil Procedure 33(d) and subject to the parties' confidentiality agreement, MTVN refers to the documents it is producing in response to Request for Production No. 61.

### INTERROGATORY NO. 17

Identify with specificity, and on a season-by-season basis, the amount of revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received, in connection with the foreign distribution of *Making the Band 3*.

### RESPONSE TO INTERROGATORY NO. 17

MTVN objects to this interrogatory to the extent it is burdensome and overbroad, as it requests MTVN to identify the amount of revenue on a "season-by-season basis." However, the Amended Agreement does not require MTVN to provide such a detailed accounting. Notwithstanding the foregoing, pursuant to Federal Rule of Civil Procedure 33(d) and subject to the parties' confidentiality agreement, MTVN refers to the documents it is producing in response to Request for Production No. 61.

### INTERROGATORY NO. 18

Identify with specificity, and on a season-by-season basis, the amount of revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received, in connection with the foreign distribution of *Making the Band 4*.

## RESPONSE TO INTERROGATORY NO. 18

At this time, MTVN has not completed its reporting for *Making the Band 4*, and reserves the right to supplement this response pursuant to the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure.

## INTERROGATORY NO. 19

Identify with specificity the date and amount of each and every payment made by MTV to Trans Continental in connection with any season of *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

## RESPONSE TO INTERROGATORY NO. 19

MTVN objects to this interrogatory because it is overbroad by requesting "each and every payment made" and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding payments falling outside the specific terms of the Agreement and the Amended Agreement. MTVN also objects to this interrogatory to the extent the information requested is more readily obtainable by Plaintiff.

Plaintiff's claims only concern payments made by MTVN to Plaintiff pursuant to the specific terms of the Agreement and the Amended Agreement, not for any payments falling outside the terms of those contracts. To the extent this interrogatory seeks information regarding payments made by MTVN to Plaintiff pursuant to the specific terms of the Agreement and the Amended Agreement, pursuant to Federal Rule of Civil Procedure 33(d) and subject to the parties' confidentiality agreement, MTVN refers to the documents that are Bates-labeled MTVN 000001 – 000087, which were produced in 2007 in response to Plaintiff's subpoena to MTVN in the underlying bankruptcy case, *In re Louis J. Pearlman*, Case No. 07-bk-00761 (Bankr. M.D.

- 17 -

Fla.). In addition, to the extent this interrogatory does seek information regarding payments made by MTVN to Plaintiff pursuant to the Amended Agreement, MTVN also refers to the documents produced in response to Request for Production No. 9.

## INTERROGATORY NO. 20

Identify with specificity the amount of revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received in connection with any product placement/integration deals with season three of *Making the Band,,* [sic] *Making the Band* [sic], *Making the Band 2, Making the Band 3* and/or *Making the Band 4*, including the date of the agreement and the names of the contracting parties.

## RESPONSE TO INTERROGATORY NO. 20

MTVN objects to Interrogatory No. 20 as seeking irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence because it relates to advertising revenue, which is not part of the parties' contract. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement excludes advertising revenue from the Net Proceeds calculation; specifically, Schedule A defines "Net Proceeds", in part, as "all non-refundable revenues ... (excluding exhibition on MTVN worldwide programming service)."

## INTERROGATORY NO. 21

Identify with specificity the amount of revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received in connection with the musical works of *O-Town*,

*Da Band*, *Day 26*, *Danity Kane* and *Donnie Klang*, including any and all revenues from digital downloads, music publishing, touring, merchandise, as well as any management fee.

## RESPONSE TO INTERROGATORY NO. 21

MTVN objects to this interrogatory to the extent it is vague (specifically, but not limited to the definition of "musical works"), overbroad and asks for multiple categories of revenues that are unrelated to each other. MTVN reserves the right to supplement its response to this interrogatory upon receiving clarification of this interrogatory's meaning pursuant to the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure.

## INTERROGATORY NO. 22

Identify with specificity each and every individual or entity, including those employed or engaged by any and all MTV-related, sister or affiliated entities, which are involved, in any way, in selling advertisement spots in connection with season three of *Making the Band,,* [sic] *Making the Band* [sic], *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

## RESPONSE TO INTERROGATORY NO. 22

MTVN objects to Interrogatory No. 22 as seeking irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence because it relates to advertising revenue, which is not part of the parties' contract. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement excludes advertising revenue from the Net Proceeds calculation; specifically, Schedule A defines "Net Proceeds", in part, as "all non-refundable revenues ... (excluding exhibition on MTVN worldwide programming service)."

- 19 -

MTV Networks, a division of
Viacom International Inc.

By

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF NEW YORK  )

The foregoing Responses to these Interrogatories were acknowledged before me this 3rd day of December, 2008, by Brad Hazard, who is personally known to me or produced identification and, after being sworn, averred that he/she is duly authorized to execute the foregoing Responses and then subscribed to the foregoing.

NOTARY PUBLIC, STATE OF NEW YORK

ANGELA HICKSON
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED IN NEW YORK COUNTY
LIC. #01HI6190961
TERM EXPIRES JANUARY 22, 2012

Dated:  This 3rd day of December 2008.          Respectfully submitted,

**K&L GATES LLP**
*Attorneys for Defendant*
Wachovia Financial Center
200 S. Biscayne Boulevard, Suite 3900
Miami, Florida 33131
Tel: (305) 539-3300
Fax: (305) 358-7095

By:    *Karen Finesilver*
Karen P. Finesilver
FL Bar No. 031352
karen.finesilver@klgates.com
Carol C. Lumpkin
FL Bar No. 797448
carol.lumpkin@klgates.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of December 2008, a true and correct copy of the foregoing was served via United States Mail to **James G. Sammataro**, counsel for Plaintiff, Silverman Cosgrove & Sammataro, 2 S. Biscayne Blvd., Suite 2650, Miami, FL 33131.

*Karen Finesilver*
KAREN P. FINESILVER

- 20 -