UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al.*

          Debtor.

_____ /

SONEET KAPILA, Chapter 11 Trustee for
TRANS CONTINENTAL TELEVISION
PRODUCTIONS, INC.,

          Plaintiff,

v.

MTV NETWORKS, a division of Viacom,
International, Inc.

          Defendant.

_____ /

Case No. 6:10-cv-181-Orl-28-DAB

## TRANS CONTINENTAL TELEVISION PRODUCTIONS, INC.'S MOTION TO COMPEL DEPOSITIONS AND REQUEST FOR STATUS CONFERENCE

Pursuant to Federal Rule of Civil Procedure 37 and Middle District of Florida Local Rule 3.04, plaintiff, Soneet Kapila, in his capacity as the federally appointed Chapter 11 Trustee (the "Trustee") for Trans Continental Television Productions, Inc. ("Trans Continental"), hereby moves this Court to compel MTV Networks, Viacom, Inc., and Viacom International, Inc. (collectively, "MTV") to produce its clients Ken Mok ("Mok") and Brian Graden ("Graden") for deposition (the "Depositions") and to sanction MTV for its violation of two Court Orders and its unilateral eleventh-hour cancellation of the Depositions by awarding Trans Continental its attorneys' fees and costs incurred in preparing for the Depositions and in bringing this motion pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). Trans Continental additionally requests a status conference based on MTV and Bad Boy Films, Inc. and Bad Boy Records, LLC's

(collectively, "Bad Boy," and with MTV, "Defendants") pattern of obstructionist behavior that has thwarted the forward progression of this case.

## I.   <u>INTRODUCTION</u>

> But just so you know how I feel about case management, this is going to get in order and it's going to get ready for trial promptly … there has been an awful lot of back and forth between counsel that's not productive. ***And that's going to end.***

*See* Honorable David A. Baker, April 30, 2010 Transcript at pp. 3-4, the relevant excerpts of which are attached hereto as **Exhibit A** (emphasis added).

Regrettably, the "back and forth between counsel" has not ended. However, to be accurate, there is not so much of "back and forth between counsel" as a perpetual game of cat-and-mouse. Nearly every discovery request in this case follows the same path. Trans Continental requests discovery. Trans Continental's initial discovery requests are ignored. Then, after innumerable written correspondences demanding some form of response, MTV objects to the discovery. Thereafter, the parties have multiple conference calls where MTV's counsel agrees to narrow its objections and provide some of the discovery, only to later fail to adhere to its promised deadline. This leads to more written demands, without a satisfactory response. Then – cognizant of the clear message that has permeated this Court's prior orders, and with the goal of minimizing judicial intervention – Trans Continental goes to the extraordinary measure of providing MTV with a draft of the motion to compel that it intends to file. This draft motion leads to the ultimate resolution of the matter, but after more conference calls and typically more delay. The cycle then repeats itself all over with the next discovery request. This is the precise fact pattern which occurred in connection with Trans Continental's Motion to Compel MTV to Produce its Electronically Stored Information and Associated Metadata; Trans Continental's Motion for an *In Camera* Review of MTV's Claimed Privileged

Documents;[1] and Trans Continental's Motion to Compel Documents Responsive to its Third Request for Production.[2]

Trans Continental's request for the depositions of MTV's witnesses follows a similar story-arc.   The initial request is ignored.   Then, after several follow-up written demands, Trans Continental is provided with a date off in the distant future.   Then, after the deposition date has been cleared with all of the parties and noticed for weeks, it is unilaterally cancelled on the eve of the day that it is set to occur – without the filing of a protective order and, in several instances, without so much as the courtesy of an explanation.  This process is then repeated, often resulting in another unilateral cancellation.   Under the best case scenario, the deposition proceeds several months later, but only after Trans Continental has been forced to prepare and re-prepare for the deposition, as well as expend an inordinate amount of time drafting correspondence demanding that the deposition proceed.  Having a deposition actually proceed as scheduled is an *outlier*.   In fact, it has only happened once during the entirety of this action.

Trans Continental understands that the demands of everyday life often require rescheduling.   When the need to reschedule depositions due to unforeseen or unavoidable circumstances happens once, twice and maybe even three times, the occurrence is acceptable as a concession to life's demands. However, at some point when the rescheduling occurs in connection with *every* deposition, and generally by MTV's unilateral fiat, it must be viewed for what it is:  gamesmanship.   The Defendants' litigation stratagem has been incredibly effective. Not only have the Trustee and the Trans Continental estate been forced to incur staggering fees

---

[1]    While MTV agreed to de-designated and did, in fact, produce many documents that it once claimed were privileged, a multitude of issues remain in connection with MTV's claims of privilege.

[2]    Here, again, Trans Continental awaits written confirmation of MTV's commitment to produce documents responsive to Request Nos.  23-26, 31-32 and 36-37 of Trans Continental's Third Request.   No documents have been produced.

and costs as they have persistently attempted to obtain discovery, but only *three* (3) depositions have occurred since the discovery stay (imposed by the Bankruptcy Court) has been lifted.[3]

MTV, and to a lesser extent Bad Boy, have not heeded this Court's April 30, 2010 admonition, and their conduct has grounded this case to a standstill. While regrettable, the Court's immediate intervention is required. Trans Continental takes no delight in asking this Court to play referee, but it has no viable alternative because it alone cannot compel compliance with the Federal Rules of Civil Procedure, this Court's Local Rules, and this Court's prior discovery orders. On this point, the record speaks for itself. Trans Continental has expended reams of papers in an effort to ensure timely compliance. The hope is that this motion, and the requested Status Conference, will prevent the need for future discovery motions. The close of fact discovery is less than five (5) months away (March 9, 2010) [D.E. 110] and, unless a substantial change in the Defendants' conduct is immediately effectuated, this case will continue to be needlessly delayed.

It is against this backdrop which Trans Continental files this Motion. Specifically, Trans Continental seeks sanctions for MTV's eleventh-hour cancellation of the depositions of two critical witnesses, Ken Mok and Brian Graden, which were scheduled for Tuesday, October 26 and Wednesday, October 27, 2010, but unilaterally cancelled by an email sent on Sunday evening at 5:41 p.m. by MTV's counsel – less than twenty-four hours before Trans Continental's counsel was scheduled to depart for Los Angeles, California. (*See* October 24, 2010 correspondence, attached as **Exhibit B**). Notably, and consistent with the history of this case, both Messrs. Mok and Graden's depositions had already been rescheduled at the Defendants'

---

[3]     The United States Bankruptcy Court for the Middle District of Florida lifted the discovery stay on January 7, 2010 while this case was still pending in that court. Although MTV's dilatory tactics have continuously occurred since the inception of this case, this Motion only addresses the discovery abuses since the stay was lifted for brevity's sake.

request.   MTV's explanation behind cancelling these depositions underscores the need for judicial intervention.  Mok's deposition – which was originally scheduled for early September – had to be cancelled because Mok was purportedly unable to break away from the set of *America's Next Top Model*.   The stated basis for Graden's cancellation is even worse. Graden was actually ***available*** on October 27, 2010.   MTV nonetheless felt justified cancelling this deposition because they feared they lacked sufficient time to prepare Graden for his deposition.

MTV's counsel represents both Mok and Graden, who were compelled by subpoena[4] to appear for their depositions.  Yet, MTV did not move for a protective order before cancelling the depositions.  Further, despite some preliminary efforts, MTV has still ***not*** provided alternative dates for the depositions of Mok and Graden.   Instead, the cost and expense of remedying MTV's impermissible behavior has, once again, unfairly been foisted upon the Trustee and the estate.   The only way to avoid further delay is for this Court to compel MTV to immediately produce Mok and Graden for deposition, and to provide Trans Continental with the attorneys' fees and costs it incurred in preparing for the Depositions and in bringing this motion.  Trans Continental's request for sanctions is further grounded in MTV's failure to comply with this Court's May 5, 2010 and June 16, 2010 Orders compelling discovery.  [D.E. 75 and 89].

## II.   **FACTUAL BACKGROUND**

Discovery necessitates orderly progression, and can be likened to a line of dominos.  The first domino falls with the exchange of written discovery responses and responsive documents.  With these documents in hand, the next dominos fall when a party takes fact and expert depositions to develop its case.   Many of the depositions are themselves dependent upon the orderly completion of an earlier deposition.  Often, it does not make sense to take the deposition

---

[4]    The subpoenas are attached as **Exhibit C**.

of witness "B," until witness "A's" deposition has been completed.   The completion of depositions results in the toppling of the last two dominos: dispositive motions and, potentially, trial.   Here, the Defendants have imposed numerous obstacles to keep the dominos upright.   The Defendants have delayed in the production of their documents – including those ordered to be produced by this Court – necessarily resulting in the delay of depositions.[5]   Compounding the matter, the Defendants are recalcitrant in providing dates for depositions and then, as referenced above, either reschedule or unilaterally cancel Trans Continental's properly subpoenaed depositions.   A recitation of the record demonstrates why this Court's involvement to supervise future discovery is necessary.

A.      **MTV's Dilatory Discovery Tactics**.

MTV's last-minute cancellation of the Depositions only scratches the surface of the Defendants' pattern and practice of delaying this case.   Since the discovery stay was lifted on January 7, 2010, MTV has objected to producing documents (*See* multiple correspondences from January 2010 to October 2010, attached as **Exhibit D**); failed to provide its amended privilege log for over eighteen (18) months (*See* multiple correspondences from February 2010 to October 2010, attached as **Exhibit E**); persistently refused to provide deposition dates (*see* multiple correspondences from January 2010 to October 2010, attached as **Exhibit F**); and repeatedly cancelled and re-set two of the three depositions that have occurred over this nine (9) month period.

1.      **MTV's Failure to Comply with Court Orders**

More troubling, MTV has failed to abide by this Court's Orders.   On April 30, 2010, this

---

[5]   Notably, MTV's failure to timely and fully produce its documents necessitates the re-taking of the first three (3) depositions of this case as Trans Continental took these depositions based on MTV's predecessor counsel's representation that all documents responsive to Trans Continental's First Request for Production had been produced. They had not.   However, at least in theory, MTV has agreed to reproduce Virginia Lazalde-McPherson, Esq., Jackie French and Karen Abdul for deposition in Miami, Florida at MTV's cost.

Court held a hearing on Trans Continental's Motion to Compel Better Testimony from MTV's Rule 30(b)(6) Representatives and Motion for Sanctions ("Rule 30(b)(6) Motion to Compel"), Bad Boy's Motion to Stay Discovery and MTV's Motion for Protective Order [D.E. 27, 41, 61, 63].   During this hearing, the Court admonished the parties that the "back and forth between counsel" was "going to end," and that this case would "get ready for trial promptly."  (Ex. A at 3-4).  Rather than ending, the "back and forth" has exponentially increased and this case remains no closer to being ready for trial.  Although the parties largely resolved the Rule 30(b)(6) Motion before the hearing, such resolution was illusory as MTV has persistently failed to honor its commitment on the record to produce Rule 30(b)(6) witnesses at its own expense in Miami, Florida, as well as producing the most recent report from the International Programming Enterprises Division (the "IPE Report"). (*Id.* at 4-5).[6]  After oral argument, this Court entered an Order on May 6, 2010 compelling MTV to produce all documents relating to advertising revenue "by May 28, 2010, unless a later date was agreed to by the parties." [D.E. 75].  Based on MTV's representations that the documents would be difficult to obtain from its client, Trans Continental and MTV entered into the Stipulation Regarding Discovery [D.E. 82] ("Stipulation") which provided for a series of deadlines.  The Court adopted the Stipulation in the June 16, 2010 Order [D.E. 89].

Pursuant to this Order, MTV was obligated:  (1) to produce data reflecting revenue received from advertising associated with the exhibition of *Making the Band* I-IV on the Internet by June 30, 2010, (2) to produce data reflecting revenue received from advertising associated with domestic airings of *Making the Band* I-IV by June 18, 2010, (3) to produce one or more Rule 30(b)(6) representatives to testify on topics related to the domestic advertising revenue by

---

[6]   MTV's counsel has indicated that the IPE Report discussed on the record does not actually exist.   To their credit, MTV's counsel has offered to instead provide information which would duplicate the substance of what was expected to be this report.  This offer notwithstanding, Trans Continental has not received anything to date.

July 23, 2010, (4) to provide a response to Trans Continental's Third Set of Interrogatories by June 9, 2010, and (5) to promptly meet and confer with Trans Continental to agree on an appropriate discovery protocol for foreign advertising revenue, including the production of documents and depositions.  [D.E. 89].    Six months later – and after much "back and forth" – Trans Continental still does not have all of these documents, and as a result, no depositions have taken place.[7]  Specifically, MTV has failed to produce documents relating to the Internet revenues, and although the parties have agreed to a sampling procedure regarding foreign advertising revenue (which took several months after a multitude of correspondence, attached as **Exhibit G,** and conference calls to catalyze MTV's compliance), nothing on foreign revenue has been turned over.  Lacking the necessary documents, Trans Continental has been unable to take the Court-ordered corporate representative depositions.

### 2.    MTV's Failure to Produce Witnesses for Deposition

Trans Continental's protracted struggle to take the deposition of MTV's Rule 30(b)(6) corporate representative on Topics 1-5 and 6 (the "Topics") encapsulates MTV's strategy to force Trans Continental to needlessly expend its resources and delay discovery.    Trans Continental first sought to take a deposition on the Topics on November 11, 2008 – almost *two years ago*.  Brad Hazard was finally produced nine (9) months later on June 9, 2009.  Brad Hazzard had no knowledge regarding any of the Topics.  MTV initially conceded as such, promising to provide an alternative Rule 30(b)(6) corporate representative on the Topics.  MTV failed to honor its promises.  After the discovery stay was lifted, Trans Continental renewed its request in February 2010 to depose a sufficiently prepared corporate representative. (*See* February 5, 2010, February 18, 2010, March 29, 2010, and April 9, 2010 correspondences,

---

[7]    MTV produced an initial spreadsheet relating to domestic advertising revenues on June 18, 2010 and provided a response to the interrogatories on June 9, 2010.

attached as **Exhibit H**).

Trans Continental's numerous requests for a deposition date went unanswered, forcing the filing of Trans Continental's Rule 30(b)(6) Motion to Compel [D.E. 27].   During the parties' Court-order meet-and-confer in advance of the hearing on Trans Continental's Rule 30(b)(6) Motion to Compel,  MTV agreed to produce Ms. Skoler as its Rule 30(b)(6) witness in Miami, at its cost, for the Topics during the week of June 7, 2010.[8]   This deposition was subsequently noticed for June 18, 2010 to accommodate the Defendants' counsel and Ms. Skoler's schedule. *One* day prior to the scheduled June 18, 2010 deposition, MTV's counsel unilaterally cancelled the deposition due to a professed "internal miscommunication."  Trans Continental accepted this explanation despite its incurrence of costs in preparing for the deposition.  After more "back and forth," the parties' counsel ultimately agreed to take Ms. Skoler's deposition on July 8, 2010. (*See* May 7, 2010, June 18, 2010, and June 21, 2010 correspondences, attached as **Exhibit I**).

MTV unilaterally cancelled Ms. Skoler's deposition for a second time.   This time, late in the evening of July 6, 2010, MTV's counsel emailed Trans Continental that Ms. Skoler was unable to be deposed because of illness. (*See* July 16, 2010 correspondence, attached as **Exhibit J**).  Once again, Trans Continental's efforts in preparing for Ms. Skoler's deposition were wasted.  The parties again exchanged numerous correspondences to schedule the deposition for a third date. (*See* various July 7, 2010 and July 8, 2010 correspondences, attached as **Exhibit K**). Ms. Skoler's deposition was ultimately completed on July 19, 2010, almost two years after it was first requested by Trans Continental.

To put it in prospective, *eighteen months elapsed* from the date of its initial request to take MTV's Rule 30(b)(6) corporate representatives on the Topics to the completion of Ms.

---

[8]   MTV agreed to produce Ms. Skoler as the corporate representative for the Topics during the April 30, 2010 hearing.

Skoler's deposition.   The scheduling problems surrounding MTV's Rule 30(b)(6) corporate representatives on the Topics are unfortunately not the exception, but rather the rule in this case.

Trans Continental's efforts in scheduling Mok's deposition is further illustrative of the hurdles that Trans Continental is constantly forced to clear in taking depositions to which it is plainly entitled.  Despite the fact that Mok, and his production company (10 x 10 Entertainment Productions) is under contract with MTV, MTV advised Trans Continental that Mok would need to be subpoenaed for deposition.  After multiple attempts spanning several months to subpoena Mok, Trans Continental effectuated service on August 3, 2010.  Mok's deposition was first scheduled for September 9, 2010.  (*See* August 5, 2010 correspondence, attached as **Exhibit L**).  Unbeknownst to Trans Continental's counsel, September 9, 2010 coincided with the Jewish Holidays.   However, rather than raise this issue with Trans Continental sometime shortly after Trans Continental's August 5, 2010 correspondence, Bad Boy's counsel waited until August 31, 2010 to advise Trans Continental that it possessed a conflict.   (*See* August 31, 2010 correspondence, attached as **Exhibit M**).  In light of the Jewish Holidays, and as a matter of professional courtesy, Trans Continental agreed with Bad Boy to reschedule the deposition (*see* September 1, 2010 correspondence, attached as **Exhibit N**), only to learn that MTV had already – and unilaterally – cancelled Mok's deposition (a reason other than the Jewish Holidays) and informed Bad Boy, but ***not*** Trans Continental. (*See* September 1, 2010 and September 8, 2010 correspondences, attached as **Exhibit O**).

Unsurprisingly, once Mok was served with a subpoena, MTV's counsel announced that it would in fact be representing Mok and that, the properly served subpoena notwithstanding, the earliest date in which Mok was available for deposition was on October 26, 2010. Trans Continental accepted this date.   (*See* September 15, 2010 and September 16, 2010

correspondences, attached as **Exhibit P**).  MTV also represents Graden in connection with his deposition, and the parties agreed to MTV's proposal to move Graden's Los Angeles, California deposition from October 19, 2010 to October 27, 2010[9] to coincide with Mok's deposition to alleviate two trips to the west coast and because mediation was scheduled in Miami, Florida for October 21, 2010. (*See* October 15, 2010 correspondence, attached as **Exhibit Q**).

After Trans Continental spent substantial time and resources preparing for the Depositions, MTV's counsel unilaterally cancelled both of the Depositions without explanation on Sunday, October 24, 2010. (*See* Ex. B).  In response, Trans Continental requested MTV's explanation, noting MTV's disturbing trend to unilaterally cancel depositions at the eleventh hour in this case without filing a motion for protective order.   (*See* October 24, 2010 correspondence, attached as **Exhibit R**).

MTV's outlandish "explanation" does not – and cannot – excuse its disregard of the Federal Rules and in and of itself warrants sanctions:  Ken Mok could not be bothered with complying with his subpoena because he is purportedly too busy filming the television show, *America's Next Top Model*.  Graden's deposition was cancelled because even though he ***was*** available on the scheduled date, MTV was concerned that it lacked sufficient time to prepare Graden in advance of his deposition.  While MTV is supposedly attempting to secure alternative dates for its witnesses, the clock on the discovery deadline ticks away.   Further, Trans Continental needs to complete the deposition of Mok and Graden before it can proceed with the taking of the depositions of other MTV witnesses.  The Court must therefore compel MTV to produce its clients for deposition.

---

[9] Graden was originally subpoenaed for deposition on September 30, 2010, and MTV's counsel also advised that it was representing Graden in connection with his deposition, which was scheduled for October 19, 2010.  (*See* September 23, 2010, September 27, 2010, and October 7, 2010 correspondences, attached as **Exhibit S**).

### 3.    MTV's Failure to Produce Documents

Mindful that "[d]iscovery in this district should be practiced with a spirit of cooperation and civility," Trans Continental has refrained from burdening this Court with motion practice. Middle District Discovery, ¶ A(1).   Instead, to proactively resolve these discovery disputes without involving the Court, Trans Continental has submitted draft motions to MTV (1) for in camera inspection of certain documents withheld as privileged, and (2) to compel MTV's responses to Trans Continental's Third Request for Production.   In response, MTV has essentially capitulated to the motion to compel, and the motion for in camera inspection has been partially resolved.   These draft motions have been the only effective means to compel MTV to abide by its discovery obligations and to refrain from burdening the Court.   However, Trans Continental and the bankruptcy estate should not be forced to jump through these costly hoops just to obtain discovery to which it is entitled.   MTV's success at forcing Trans Continental to go to great lengths to secure discovery to which it is indisputably entitled underscores why this Court's assistance is essential to moving this case forward.

### 2.    Bad Boy's Dilatory Discovery Tactics.

Trans Continental's efforts to obtain discovery from Bad Boy has fared no better. Although the Court denied Bad Boy's Motion for Protective Order [D.E. 63] and Motion to Stay Discovery [D.E.    ] pending the resolution of its motion to dismiss (which was denied [D.E. 112 ]), Bad Boy has circumvented its discovery obligations by effectively engaging in self-help. Despite Trans Continental's repeated inquiries and multiple letters, it has taken Bad Boy over four (4) months to produce documents responsive to Trans Continental's First Request for Production of Documents.   (*See* multiple July 2010 – October 2010 correspondences, attached as **Exhibit T**).   The stated basis for this delay was that Bad Boy was grappling with the production

of its electronically stored information ("ESI") and the attendant metadata.   Yet, to date, no ESI has been produced.  Instead, the totality of Bad Boy's production amounts to three hundred and forty-two (342) pages of paper documents.    Bad Boy's delay in producing its documents precluded Trans Continental from taking the deposition of Bad Boy's Rule 30(b)(6) corporate representative in advance of the mediation, and thwarted any opportunity for Trans Continental and Bad Boy to engage in a meaningful settlement discussion.

As is the case with Mok and Graden, the deposition of Bad Boy's Rule 30(b)(6) representative is critical to Trans Continental's discovery plan.  Until this deposition is complete – and, again, despite Trans Continental's persistent requests, this deposition has still not been scheduled (*see* multiple August 2010 to October 2010 correspondences, attached as **Exhibit U**), Trans Continental cannot determine which other witnesses need to be deposed.   Like MTV, Bad Boy ostensibly believes that its is not obligated to comply with the deadlines specified by the Federal Rules of Civil Procedure and that it is entitled to unilaterally dictates the pace and scope of discovery.

### III.    MEMORANDUM OF LAW

#### A.    The Court Should Compel MTV to Produce Mok and Graden for Deposition.

MTV has failed to provide any alternative dates to reschedule the Depositions, despite its representations to Trans Continental to promptly do so.  Again, MTV's promises ring hollow, and its pattern of unjustifiably delaying discovery in this case continues.

The Court should compel MTV to provide dates for the Depositions. Rule 37(a) authorizes a party to move for an order compelling discovery, including depositions.  Fed. R. Civ. P. 37(a); *see Richardson v. Morgan*, 2008 WL 5170607, at *1-2 (M.D. Fla. Dec. 9, 2008) (Morris, J.) (compelling appearance at deposition).   In the instant case, MTV's tactics are

tantamount to a failure to appear for the Depositions, which were properly subpoenaed under Rule 45. MTV's unilateral cancellation of the Depositions at the eleventh hour is inexcusable. MTV provided no advance notice of Mok's preference to attend to *America's Next Top Model* than comply with his subpoena and of its own failure to adequately prepare Graden. MTV's counsel seemingly possesses a conflict with regard to its representation of Mok and Graden in connection with the Depositions. On the one hand, MTV's counsel is obligated to abide by the Federal Rules of Civil Procedure, but on the other, it is permitting its clients Mok and Graden to flout subpoenas.[10] Without the Court's intervention, Trans Continental is left without recourse, and the case will continue to stagnate. This is particularly true because Trans Continental needs to complete Mok and Graden's deposition in order to prepare for the depositions of other MTV witnesses. The Court should immediately compel the Mok and Graden Depositions.

**B.     The Court Should Sanction MTV for Its Violation of Its Orders and Eleventh-Hour Unilateral Cancellation of the Depositions.**

MTV's blatant disregard for the discovery process cannot go unchecked. Instead of complying with its discovery obligations and fully satisfying *two* of this Court's Orders, MTV has chosen to obstruct, stonewall, and needlessly increase the cost of this litigation by being "purposely sluggish." *In re Seroquel Products Liab. Litig.,* 244 F.R.D. 650, 656 (M.D. Fla. 2007) (Baker, J.) ("purposeful sluggishness" and being uncooperative in discovery justifies sanctions). Federal courts in the Eleventh Circuit are authorized to deal harshly with parties who refuse to comply with their discovery obligations. *See Bray & Gillespie Mgmt., LLC v. Lexington Ins. Co.,* 2010 WL 55595, *2 (M.D. Fla. Jan. 5, 2010) (awarding $75,000.00 in attorneys' fees and costs and striking plaintiff's claim for damages). The Court should not

---

[10]   Similarly, MTV's counsel should not get the benefit of representing Mok and Graden (*i.e.*, preparing them as to MTV's theory of the case and shielding communications which would not otherwise be privileged), but simultaneously assume none of the responsibility, as evidenced by MTV's failure to control its clients to appear for the subpoenaed Depositions.

hesitate to sanction MTV for its abusive discovery tactics that have hamstrung Trans Continental's ability to prosecute claims on behalf of the estate's creditors.

### 1.   MTV Has Failed to Comply with *Two* of this Court's Discovery Orders.

Rule 37(b)(2) provides that a court may grant sanctions against a party that "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2).  As the Eleventh Circuit has warned, "there is no requirement that the opposing party moves for this order – only that it be issued and disobeyed." *Properties Int'l, Ltd. v. Turner,* 706 F.2d 308, 310 (11th Cir. 1983) (affirming district court's dismissal with prejudice of foreclosure suit, and striking of answer). Finally, this Court "has broad discretion to fashion appropriate sanctions for the violation of discovery orders." *In re Seroquel,* 244 F.R.D. at 656.

MTV has indisputably failed to fully comply with two of this Court's Orders and should be sanctioned accordingly.  The two Orders are interrelated and must be read in tandem, as the June 16, 2010 Order outlining MTV's discovery deadlines was the direct result of the Court's May 5, 2010 Order compelling MTV to produce discovery on advertising revenue.  First, MTV has violated the May 6, 2010 Order by failing to produce the appropriate Rule 30(b)(6) depositions for Topics 11, 23-42, and 43-49.  Trans Continental has repeatedly requested that these witnesses be produced, and MTV has delayed in providing dates. (*See* Exhibit G; *see* multiple May 2010 to October 2010 correspondences, attached as **Exhibit V**).

MTV's disregard for this Court's authority does not stop there.  MTV violated the Court's June 16, 2010 Order by failing to produce all advertising revenue relating to the domestic airings of *Making the Band* I-V by June 18, 2010.[11]  MTV has further violated the

---

[11]    The last installment of the data reflecting the revenue received from the domestic airings of *Making the Band* I-IV was received on Saturday, October 23, 2010. (*See* October 23, 2010 correspondence, attached as **Exhibit X**).

Court's June 16, 2010 Order by refusing to produce the data evidencing revenue received from advertising associated with the exhibition of *Making the Band* I-IV on the Internet. This information was ordered to be produced by June 30, 2010, but remains outstanding.

Trans Continental has also not yet received the data reflecting the advertising revenue relating to the foreign airings of *Making the Band* I-V. Pursuant to the June 16, 2010 Order, the parties met and conferred on an appropriate discovery protocol limiting MTV's production of data reflecting the television show's foreign advertising. Despite being under no obligation to do so – particularly, because the Court's Order required the production of *all* advertising revenue – Trans Continental agreed to this concession in the spirit of cooperation. Cooperation and civility in this case are regrettably unreciprocated. In this particular instance, it took MTV *months* to propose a protocol for the production of foreign advertising revenue. This protocol is now seemingly in place, but the delay has precluded the taking of MTV's Rule 30(b)(6) corporate representatives on foreign advertising, as Trans Continental's receipt of the information is a necessary first step.

Trans Continental has been working in good faith with MTV over the past six (6) months to obtain this ordered discovery, to no avail. Though the Court is plainly authorized to strike MTV's affirmative defenses or enter a default judgment, Trans Continental does not request such a harsh remedy at this time. Fed. R. Civ. P. 37(b)(2)(iii)(vi). Instead, to deter MTV's abusive tactics, the Court should require MTV to reimburse Trans Continental for its persistent efforts to obtain this already Court-ordered discovery, including the costs of bringing this Motion in addition to requiring immediate compliance with the Orders.

### 2.    Trans Continental Is Entitled to Its Fees and Costs.

---

This delay in the complete production of the domestic advertising revenue has prevented Trans Continental from taking the deposition of MTV's Rule 30(b)(6) on domestic advertising.

The Court should also sanction MTV for its unjustified cancellation of the Depositions and its failure to reschedule them despite Trans Continental's good faith efforts to do so (*See* October 24, 25, and 26, 2010 correspondences, attached as **Exhibit Y**).   Rule 37 governs a party's failure to cooperate in discovery. *See In re Seroquel,* 244 F.R.D. at 656.  "A reading of [Rule 37] leads to the inescapable conclusion that the award of expenses is mandatory against a party whose conduct necessitated a motion to compel discovery … unless the court finds that the opposition to the motion was substantially justified." *Cal. Dive Int'l, Inc. v. M/V Tzimin,* 127 F.R.D. 213, 217 (S.D. Ala. 1989) (quoting *Merritt v. Int'l Brotherhood of Boilermakers,* 649 F.2d 1013, 1019 (5th Cir. 1981)).  Here, the Court should sanction MTV by requiring MTV to reimburse Trans Continental for the costs that have been occurred in light of MTV's unreasonable failure to produce its clients (Mok and Graden) for deposition, including the costs in bringing this motion.

There is no "substantial justification" for MTV's actions.    There is no valid justification for the cancellation of the Depositions in the first instance.   Mok's stated preference to work on *America's Next Top Model* is not a valid basis to ignore a subpoena – particularly after his deposition was already postponed for a month and a half to accommodate his schedule. Similarly, while MTV's desire to ensure that it sufficiently advised Graden of its theory of the case is understandable, it is not a valid basis for canceling Graden's deposition.   MTV was aware of Graden's deposition for months in advance.  It could have prepared Graden at any point during this time.   Instead, MTV's counsel waited until the last minute and when they felt uncomfortable with the deposition proceeding, they unilaterally cancelled it.   Such behavior offends both the Federal Rules of Civil Procedure and this Court's mandate that discovery be conducted in the spirit of civility and cooperation.

Compounding matters is that MTV did not inform Trans Continental of its intention to cancel the Depositions until the day before Trans Continental's counsel was scheduled to travel to Los Angeles, California.   Had MTV advised Trans Continental during the parties' October 21, 2010 mediation that the October 26 and 27, 2010 Depositions were not going to proceed, Trans Continental would have not needlessly prepared.  Further exasperating matters is that five (5) business days have passed since MTV's unilateral cancellation of the depositions, and Trans Continental has still not be provided with alternative dates, as promised.   As this Court has explained, "A party will not be permitted to gain an advantage by agreeing to cure the discovery violation, then fail to implement the cure, and hope to avoid a sanction by forestalling the sanctions ruling." *In re Seroquel,* 244 F.R.D. at 657.

MTV has not – and cannot – present this Court with any "substantial justification" to excuse its contravention of Rule 45 and its continued failure to provide alternative dates for these critical depositions under Rules 30 and 37.  The Court should not condone MTV's persistent non-compliance with the discovery rules and should sanction it accordingly.   As in *In re Seroquel,* MTV's "failure to meet its own commitments and its general chosen course of conduct regarding [depositions] and resolution of difficulties warrants imposition of Rule 37 sanctions." 244 F.R.D. at 657-58.  The Court should therefore order MTV to reimburse Trans Continental for the costs and attorney's fees incurred due to its unreasonable failure to abide by the Federal Rules of Civil Procedure.  Only an order requiring such reimbursement to Trans Continental for its costs and expenses incurred in dealing with MTV's frivolous discovery disputes will deter such conduct by MTV in the future.

**B.**      **The Court Should Order a Status Conference to Streamline Discovery**.

The Defendants' continued disregard of their discovery obligations requires judicial

supervision to enable Trans Continental to prosecute its claims and adhere to the Case Management Order [D.E. 110]. Trans Continental does not wish to – but fears it will otherwise be required to – burden this Court to compel each and every future deposition. The "back and forth between counsel" has snowballed, and any progress documented by the parties' Stipulation Regarding Discovery [D.E. 82] is illusory, as evidenced by MTV's failure to comply with the deadlines set forth in the Order [D.E. 89]. The cancellations of the Depositions evince a larger problem of discovery recalcitrance that must be addressed by the Court.

Accordingly, Trans Continental requests a status conference, which it believes will benefit the Court and all parties, to promote an efficient resolution of pending discovery issues. A status conference is necessary because the current practice of clearing dates, preparing for a deposition on the assumption it is going forward and then having it unilaterally cancelled, forcing yet another round of preparation, is unacceptable and unfair. In particular, Trans Continental remains in need of deposition dates for the following individuals from MTV (in addition to Mok, Graden, MTV's corporate representatives on Topics 11, 23-42, 43-49 and on the topics involving domestic and foreign advertising revenues): George Eichen, Esq., Tony DiSanto, Van Toffler, and MTV's records custodian. MTV has also agreed to reproduce its Rule 30(b)(6) representatives Virginia Lazalde-McPherson, Jackie French, and Karen Abdul in Miami, Florida at its cost, but a date certain must be obtained. As for Bad Boy, Trans Continental requires a date for its Rule 30(b)(6) deposition as well as Sean Combs, which it has just recently attempted to secure from Bad Boy. Trans Continental believes that if respective counsel meets in front of the Court with their calendars after obtaining dates of availability for these witnesses who are under their control,[12] the scheduling of these depositions can occur

---

[12]   Trans Continental is, of course, willing to confirm the availability of the witnesses that it controls prior to the hearing if Defendants' counsel provides it a list identifying these individuals.

without further shenanigans and delay.  Only three (3) depositions have occurred in the nine (9) months since the discovery stay due to the Defendants' dilatory behavior.  While Trans Continental understands that scheduling issues can occur, they should not happen with regard to every deposition, as has been demonstrated in this case.  Thus, this Court's assistance is required to ensure that this case progresses and that all of the required depositions of fact witnesses occurs prior to March 9, 2011 discovery deadline. [D.E. 110].

## IV.   CONCLUSION

The Defendants' disregard for the discovery process cannot be tolerated.  The Court should compel MTV to immediately produce Mok and Graden for deposition.  The Court should additionally sanction MTV for its repeated violations of the Federal Rules of Civil Procedure by requiring MTV to reimburse Trans Continental for: (1) the costs incurred in preparing this Motion (including the good faith conferences to obtain the discovery that is the subject of the Orders); (2) for preparing for the unilaterally cancelled Depositions; and (3) for preparing for Mok and Graden's rescheduled depositions.  Finally, Trans Continental respectfully requests that the Court hold a status conference to end the Defendants' pattern and practice of delaying discovery by setting deposition dates for the listed witnesses.

## CERTIFICATE OF GOOD FAITH CONSULTATION

Pursuant to Local Rule 3.01(g), the undersigned counsel wrote a number of letters to MTV's counsel, including correspondences dated October 24, 25, and 26, 2010, and had at least two conference calls with MTV's counsel on October 25 and 26, 2010, in an effort to resolve the issues raised in this motion without Court intervention.  (True and correct copies of Trans Continental's good faith correspondences are attached hereto as Exhibit Y).

Respectfully submitted,


**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Attorneys for plaintiff, *Soneet Kapila in his capacity as the federally appointed Chapter 11 Trustee charged with administrating the bankruptcy estate of Trans Continental Television Productions, Inc.*
The Four Seasons Tower
1441 Brickell Avenue, Suite 1420
Miami, Florida 33131-1704
Telephone:  (305) 377-1666
Facsimile:  (305) 377-1664
jsammataro@kasowitz.com


By: /s/ James G. Sammataro
    James G. Sammataro
    Florida Bar Number: 0520292
    Courtney Caprio
    Florida Bar Number: 0933961