1              IN THE UNITED STATES DISTRICT COURT
               FOR THE MIDDLE DISTRICT OF FLORIDA
2                       ORLANDO DIVISION

3            Case no.:  6:10-cv-181-Orl-28DAB

4    In re:
     LOUIS PEARLMAN, et al.,              Orlando, Florida
5                        Debtor.          November 17, 2010
     _____/    2:00 p.m.
6

7    SONEET KAPILA, Chapter 11 Trustee
     for TRANS CONTINENTAL TELEVISION
     PRODUCTIONS, INC.,

8

9                            Plaintiff,

10   -vs-

     MTV NETWORKS, a division of Viacom
11   International, Inc.; et al.,

12                           Defendants.
     _____/
13

14

15

16             Transcript of a status conference

17          before the Honorable David A. Baker

18             United States Magistrate Judge

19

20

21

     Digital transcriber:    Diane C. Peede, RMR, CRR
22                           United States Courthouse
                             401 West Central Blvd., #4600
23                           Orlando, Florida  32801
                             (407) 615-0305
24

25   Proceedings recorded by FTR Gold digital recording,
     transcript produced by computer.

1    Appearances:

2    Counsel for Plaintiff:   James G. Sammataro
                              Courtney Anne Caprio
3

4    Counsel for Defendants
        MTV and Viacom:       Andrew Ehrlich
5                             Brian A. McDowell

6

7    Counsel for Defendants
        Bad Boy Films and
        Bad Boy Records:      Daniel E. Traver
8                             Rachel Crews

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

1

2          THE COURTROOM DEPUTY:  The case number is 6:10-cv-

3   181-Orl-28DAB, Kapila, Chapter 11 Trustee for Trans

4   Continental Television Productions, Incorporated, versus MTV

5   Networks, et al.

6          Counsel, please state your appearances for the

7   record.

8          MR. SAMMATARO:  Good afternoon.  James Sammataro of

9   Kasowitz, Benson, Torres and Friedman.  I'm accompanied by

10  Courtney Caprio from the same law firm, and we are here on

11  behalf of Soneet Kapila, the Chapter 11 Trustee for Trans

12  Continental Television Productions, Inc.

13         MR. McDOWELL:  Your Honor, Brian McDowell of

14  Holland and McKnight; and Andrew Ehrlich from the Paul, Weiss

15  firm of New York, representing MTV.

16         MR. TRAVER:  Good afternoon, Your Honor.  Dan

17  Traver and Rachel Crews from the GrayRobinson law firm on

18  behalf of Bad Boy Records and Bad Boy Films.

19         THE COURT:  Okay.  We're here on the plaintiff's

20  motion.  Why don't you bring me up to date, Mr. Sammataro.

21         MR. SAMMATARO:  Thank you, Your Honor.  Your Honor,

22  prior to walking into this courtroom today, Mr. Ehrlich and I

23  have spoken, and we've actually spoken a fair amount over the

24  last two or three days, and we have reached a tentative

25  agreement on a number of the outstanding items.  There are

1    still some issues that we need to address; but in terms of

2    some of the due dates, I think we have a working agreement.

3            I actually wasn't the master taker of notes.  I

4    would actually defer to Mr. Ehrlich, if he wouldn't mind,

5    reading what we've agreed to to the Court, if that would be

6    okay with Your Honor.

7            THE COURT:  All right.

8            MR. EHRLICH:  Good morning, Your Honor.  Andrew

9    Ehrlich on behalf of MTV.

10           As Mr. Sammataro said, we've spent a bunch of time

11   together over the last couple of weeks trying to work out

12   some of these issues, and I think we have resolved all of the

13   open issues raised in the plaintiff's motion vis-a-vis

14   discovery.

15           We have agreed as follows:  With respect to -- and

16   we intend to memorialize this in a stipulation, Your Honor;

17   but in the interest of expediency, we thought we should also

18   read it into the record.  With respect to foreign advertising

19   revenue, we will produce data by December 12th for all

20   countries but India, which will be December 1st; and we'll

21   produce certain global data the plaintiff has requested by

22   December 1st.

23           With respect to plaintiff's third request for

24   production, there's a proposal set forth in a letter from

25   plaintiff dated November 3rd to which MTV has agreed to

1    produce the requested documents by December 14th.  The

2    deponent in that -- with respect to that issue, Mr. Eichen,

3    is confirmed for January 11th.

4            With respect to certain contracts concerning

5    advertising, we actually didn't discuss a date, but we have

6    an agreement and we'll work out a date when I understand

7    what's involved there.

8            With respect to other depositions, we've agreed to

9    Jackie Frank on December 19th; an MTV records custodian on

10   December 15th; a domestic advertising representative,

11   corporate representative, on December 17th; and then

12   tentative dates for two additional corporate representatives

13   on January 5th and 7th that are not confirmed.

14           We will be providing certain supplemental

15   information related to interrogatories this Friday.  The

16   deposition of Mr. Graden on December 8th.  Mr. Mok is already

17   confirmed for December 10th.  And I believe that that covers

18   everything that was open.

19           Have I forgotten anything?

20           (Discussion held off the record.)

21           MR. EHRLICH:  Oh, yeah, the first production for

22   advertising information is November 23rd; and the second

23   installment, December 1st.

24           I think that covers all the issues that we've been

25   discussing.

1          THE COURT:  The depositions of Mr. Mok and Mr.

2    Graden are going to be in New York City?

3          MR. EHRLICH:  They're going to be in Los Angeles.

4          THE COURT:  Okay.  What is still an issue?

5          MR. SAMMATARO:  If I may, Your Honor.  While we

6    appreciate the cooperation we've received recently, it's

7    somewhat regrettable that cooperation only comes when we need

8    to seek the Court's intervention.

9          Since we actually filed this motion, Mr. Graden's

10   deposition was once again unilaterally canceled, this time

11   after I had to fly to New York.  I flew to New York the day

12   before the deposition.  When I touched down, around five

13   p.m., I received a call from Mr. Ehrlich indicating that Mr.

14   Graden was ill, would not be available for deposition on that

15   Thursday.

16         I offered to extend my stay to take his deposition

17   to that Friday so I wouldn't have to return home to Miami

18   empty handed.

19         MTV has agreed to pay hard costs associated with

20   our necessary travel to New York.  I just don't think that's

21   enough.  There has been a pervasive practice of unilaterally

22   canceling depositions in this case.

23         Just with respect to the 30(b)(6) on certain

24   topics, Liz Skoler, her deposition was unilaterally canceled

25   twice, both times at the eleventh hour.

1       With respect to Mr. Mok and Mr. Graden, they were

2  set to occur on October 26th and October 27th in Los Angeles.

3  We received an e-mail from Mr. Ehrlich that Sunday evening --

4  I was set to travel Monday -- and even on Sunday, received an

5  e-mail saying, "Regrettably, we need to cancel these

6  depositions."

7       And the justification, frankly, I find somewhat

8  odious.  First of all, because I sat in a room with Mr.

9  Ehrlich on the 21st, not in virtual time.  We sat across from

10  the table.  They should have known on that date that those

11  depos weren't going to occur.

12       Instead, I prepared once again for these

13  depositions, prepared to travel to Los Angeles, and then it

14  comes to find out that the reason why Mr. Mok's deposition

15  was canceled was because he cannot be pulled away from the

16  set of America's Next Top Model.  Mr. Mok is a producer in

17  Hollywood, which I understand, but everyone has a job.  And

18  subpoenas are, by their nature, if you're a third party,

19  somewhat burdensome.

20       And if you know the back story here, which was Mr.

21  Mok was initially scheduled to be deposed on September 9th.

22  That, unfortunately, fell upon a Jewish holiday.  So we took

23  it one step further.  It took us months to subpoena Mr. Mok.

24  When we did subpoena him, it was for September 9th.

25       I wrote on August 5th, "I have Mr. Mok under

1    subpoena.  If anyone has any objections to the date, please

2    let me know."

3              Nobody lets me know.

4              Late August, the last day of August, I get a letter

5    from Bad Boys' counsel saying it's a Jewish holiday.

6              I said, "Well, of course, I would reschedule, but I

7    don't want this to be needlessly postponed."

8              As it turns out, MTV had already told Mr. Davis,

9    "Don't worry.  It's not going to go forward on that day."  We

10   didn't get that notification.

11             As it turns out, in September they said Mr. Mok

12   will be available in October.  So we took that date, a

13   seven-week postponement, but we took the day.  Then we come

14   to find out that he's in the middle of production.

15             Production doesn't happen overnight.  They had to

16   have known, if not in September, certainly when they sat

17   across the room from me on October 21st that Mr. Mok wasn't

18   going to be available.

19             In my mind, cancellation of Mr. Graden's deposition

20   is even less substantially justified.  He was actually

21   available on October 27th in Los Angeles.  MTV cancelled that

22   deposition because, due to conflicting schedules, they didn't

23   have adequate time to prepare him.  So I had to file a motion

24   to compel.

25             Rule 37 provides that if you have to file a motion

1    to compel and there is no substantial justification, which

2    there is no substantial justification in this case, that I

3    should be entitled to my fees.

4         And I believe that we need a deterrent.  It is

5    unfortunate there has been back and forth in this case; but

6    to be honest, Your Honor, it's not really so much back and

7    forth as it is us constantly pursuing the defendants.  We're

8    constantly trying to get deposition dates from them.  We're

9    constantly trying to get discovery.

10        And even as we sit here today, the issue is not

11   with our scope of discovery.  No one disagrees with the fact

12   that we're entitled to the discovery.  We are.  We are

13   entitled to the discovery.

14        MTV will say, "You're just complaining about

15   timing.  This is a lot of documents that we need to gather.

16   This is really burdensome."

17        But these aren't self-imposed deadlines.  They said

18   that they're self-imposed.  They're deadlines that MTV

19   proposed the last time we were in front of Your Honor, which

20   ultimately led to the June 16th order.

21        There were a series of deadlines set forth in an

22   order that MTV did not comply with.  They did not comply with

23   them.  These are deadlines they offered.

24        So we have to write countless letters.  We have to

25   threaten to file motions.  And all we do in this case, Your

1    Honor, is go east and west.  We never go north and south.  We

2    need to progress.

3            This case has had a long story arc.  It had a long

4    history from the bankruptcy court.  We've been in this court

5    now for eleven months; and there's no reason why discovery is

6    not being done in a timely, orderly progression.

7            If I can, Your Honor, the events with Bad Boy

8    present a perfect example of that.  We propounded a request

9    for production on Bad Boy in June.  Their responses and their

10   documents should have been produced to us in July.

11           The first shred of paper we got that was responsive

12   to that request for production was in October, October 22nd.

13   I just received documents on November 15th, this Monday.

14   I've now been told that all the documents will be due and be

15   provided by December 1st.

16           The problem with that is I can't take depositions.

17   They offered me, and they point out in their opposition to

18   our request for status conference, "Well, we gave you two

19   dates in October and you rejected them."

20           Well, that's a fool's offer.  How can I

21   meaningfully take a deposition without documents?

22           So part of what I need is I actually need -- and

23   we've agreed to it on the record with MTV, but I also need

24   some form of stipulation from Bad Boy that they're actually

25   going to timely produce their documents.

1          Constant promises mean nothing.  They're just

2    saying, and I think we even quote it in one of our earlier

3    motions, that an acre of performance is worth a whole world

4    of promise, and that's what we get in this case.  We get

5    unfulfilled promises.

6          Every time we meet and confer, they say, "Don't

7    worry.  We're working diligently.  We'll get that.  Don't be

8    a maniac.  Don't go seek judicial intervention."

9          But I get nothing.  I have to write more letters.

10   If you've looked at our motion, I'm sure you've seen the

11   reams of paper that we've expended trying to get compliance

12   with a court order -- with two court orders, to be honest,

13   and we should not have to go to those measures.  We should be

14   able to get discovery in a timely way so that we are able to

15   move this case forward.

16         The argument that you undoubtedly hear is, well,

17   there's no harm, no foul.  Look, we just agreed to all these

18   things, and we'll see.  We will see if we actually get

19   everything that we stipulated to.

20         But we are now four months away from the discovery

21   deadline, and we just read a list of depos.  In total,

22   there's probably something close to 17 depos that need to be

23   taken before the discovery deadline, and we have been

24   prejudiced.  There is harm.  We now have to cram all these

25   depos into a very short period of time, when in the last nine

1    months, we've taken a total of three depositions; four, if

2    you include the one that was taken by MTV.  There's no reason

3    why all of these months have elapsed without forward

4    progression.

5              Mok's deposition was supposed to be taken in

6    September, then October.  If I'm lucky, I'll get it on

7    December 10th.

8              Graden, who's also a pivotal witness, again, should

9    have been taken already.  Instead, I'm here.  I had to

10   prepare to be here.  I had to write a motion to compel.

11             We have been greatly, greatly impacted.  It should

12   not be that the only way that the Trustee gets discovery in

13   this case is by having to write ten letters.  And then we

14   actually go through the extraordinary measure on it because

15   we are cognizant that you do not want to play referee and we

16   are cognizant of the clear, clear message that has permeated

17   in the Court's prior orders that we should not be running to

18   your doorstep with every single step; but we have to go

19   through the process of actually drafting the motion that

20   we're going to file, and that is the only way that we

21   effectuate change in this case.

22             So, Your Honor, I'm hoping that today's appearance

23   and this agreement that we read on the record will prevent

24   the need to file another handful of motions down the road;

25   but we do think that we are entitled to sanctions under

1    Rule 37, and I want to be clear that we are seeking sanctions

2    for the violation of the Court's May 6th and June 16th

3    orders, and we are also seeking sanctions that are connected

4    to the motion to compel, which prompted us here based on the

5    unilateral cancellations of Mr. Mok and Mr. Graden; and that

6    under that standard, it's objectively reasonable.  That is

7    the standard.  It's not how they acted in bad faith.  It's,

8    is their behavior substantially justified?

9         And I would submit to Your Honor that the

10   cancellation of Mr. Mok's deposition, because he can't break

11   away from America's Next Top Model, is not substantial

12   justification.

13        And the cancellation Mr. Graden's deposition the

14   first time, before I got on a plane, was also not

15   substantially justified.  And MTV's offer to pay my costs

16   with the unnecessary travel to New York, while a nice

17   gesture, is really just the bare minimum.  I spent a minimum

18   of five hours between door to door travel from Miami to

19   New York, return travel, and I waited around half a day to

20   see if Mr. Graden's illness would suddenly allow him to

21   appear for deposition the following day.

22        I'd like to reserve for rebuttal, but I think you

23   understand my position.  Thank you, Your Honor.

24        MR. EHRLICH:  Your Honor, Andrew Ehrlich on behalf

25   of MTV.  With respect to counsel for plaintiff, I don't think

1   he's gotten nothing and I don't think we've only gone east

2   and west.

3           We've expended substantial efforts in discovery in

4   this case; and I know Mr. Sammataro makes light of it, we've

5   been working really hard, but we have been.  Since we've been

6   here, we've produced hundreds of thousands of documents.

7   We've got 200-plus requests from the plaintiff, and we have

8   quibbled with just a handful of them.  We have produced

9   advertising revenue for a ten-year period from the United

10  States.

11          The important thing to remember in this case, Your

12  Honor, is this case spans a ten-year period.  So the document

13  requests, which are extremely broad and which we have not

14  objected to, involve searching off-site records.  With

15  respect to the advertising data, there were three legacy

16  systems that had to be searched to call together the data,

17  and it took time.

18          With respect to Internet advertising, we again

19  produced information over a ten-year period.  So we've been

20  doing a lot of work.

21          Now with respect to Mr. Graden's deposition a

22  couple of weeks ago, ten days ago, it is regrettable.  I

23  spoke to Mr. Graden on Wednesday afternoon.  He called me.

24  He said, "I'm sick."  I spoke to him.  The man sounded sick

25  as a dog.  There's no doubt about it.  He was in bed for two

days with fever and the flu. He did not realize that counsel was coming from out of town.

Counsel had an opportunity to depose him and ask him questions about that under oath, if counsel so desires; but I don't believe that that is sanctionable conduct.

It has been difficult to schedule Mr. Graden and Mr. Mok's depositions, but they are not witnesses whom we can control. Mr. Mok has not worked for MTV since 2001. Mr. Graden has not worked for the network, I believe, for well over a year.

We are representing them in connection with their deposition. We are doing our best to facilitate it, and we now have confirmed dates for those depositions; and I don't believe -- I mean, given the history here, we thought it was appropriate to offer to pay the costs of coming to New York; but we don't believe that attorney's fees under these circumstances are warranted.

With respect to the deposition scheduling, we do have, I believe, a reasonable schedule set up over the next two months. I believe there are only two more depositions in the entire case at this point, two or three, that plaintiff is seeking that haven't been scheduled, and we have a mid-March discovery cutoff.

So, you know, plaintiff complained with respect to certain depositions he didn't have the documents. We're

1    getting him the documents.  We now on, I believe, December

2    14th, given the agreements here today, we'll have produced

3    all of the documents that are in dispute; and plaintiff, you

4    know, has already complained that he didn't get certain

5    documents with respect to depositions he previously took.

6          So, you know, we're sort of caught between one hand

7    and the other.  You know, I don't know if I'm supposed to

8    produce the documents first or the witnesses.

9          I think we have a reasonable schedule between here

10   and the end of the period that calls for one or two

11   depositions a week.  There are another six to eight weeks

12   following the last scheduled deposition to the end of the

13   period for certain depositions that we intend to take.

14         And, you know, Your Honor, I want to bracket we

15   note in our response we do not believe it's right for

16   adjudication at this time on a number of issues we have with

17   the plaintiff's production, including the most troublingly a

18   motion filed in the bankruptcy court recently, about 1500

19   boxes of Pearlman documents that appear haven't been looked

20   at; but we're going to try to work those out, and I hope we

21   don't have to come back.

22         In the interest of full disclosure, I want to raise

23   that because I don't want the Court to in the future say,

24   "Well, you never mentioned that when you were here before."

25         I'm hopeful that through the meet-and-confer

1    process we can resolve those issues.

2              So, you know, although we have had, you know,

3    admittedly some difficulties with a couple of the witnesses

4    that we don't control, I think otherwise I don't think it's

5    fair to say they've gotten nothing or that we've only moved

6    east and west.  We've produced a tremendous amount of

7    information pertaining to a ten-year period and have a

8    reasonable schedule to get to the end of the case.

9              THE COURT:  Mr. Traver.

10             MR. TRAVER:  Good afternoon, Your Honor.  We're

11   limited to two paragraphs in the motion for case management

12   conference, and the Trustee's attorney does not seek

13   sanctions against Bad Boy Films or Bad Boy Records.

14             What was referenced and I thought, well, we do have

15   a deal on it, and I'm happy to recite it into the record,

16   we'll produce documents by December 1st, including E.S.I., in

17   native format.  And we've produced depo dates for the Bad Boy

18   Films corporate rep.  Unfortunately, given the other

19   deposition schedules, that's a bit in flux right now; and

20   we'll work in good faith with the Trustee's counsel to get

21   dates in December, if not January; and this holds true for

22   Mr. Comes as well.

23             THE COURT:  Response, Mr. Sammataro.

24             MR. SAMMATARO:  Just a couple of quick points, Your

25   Honor.  With respect to MTV's statement about Mr. Mok and Mr.

1    Graden and how they do not control them, they do represent

2    them; and I think if there's some inequities to saying,

3    "Well, I get the benefit of telling these witnesses my side

4    of the story.  I get the benefit of representing them, but I

5    have no real control over them," you can't really ask for the

6    benefits and then at the same time run away from the

7    obligations.

8            The statement that MTV doesn't have a relationship

9    with Mr. Mok is demonstrably false.  In fact, I have a press

10   release, which is an MTV press release, which I'm happy to

11   share with Your Honor, which is in October of 2007.  MTV is

12   in production agreement with Mr. Mok and his production

13   company.

14           So MTV does have a contractual relationship with

15   Mr. Mok; and I do believe they have some aspect of control,

16   although I'm sure they can't tell them to appear on a certain

17   day.

18           And with respect to Mr. Graden, he was the

19   president of MTV.  I'm sure he has some post-contractual

20   obligations to MTV and probably even a duty to cooperate.

21           With respect to Bad Boy, it is true that they have

22   told me yesterday that they are going to finish their

23   production as of December 1st.  I still have a real problem

24   with the fact that the documents are due in July, and I

25   didn't start getting the first shred of paper until October.

1          You can say, "Well, we're working in good faith,"

2     but I think your actions speak otherwise.  It shouldn't take

3     weeks upon weeks upon weeks, if not months, to produce a

4     handful of documents.

5          Again, with respect to our request for sanctions,

6     I'm not quite sure why the Trustee in the bankruptcy estate

7     is the one who should have to incur the cost of a needless

8     travel to New York and back.

9          In that same vein, there was court orders.  We came

10    here on April 30th and we read an agreement into the record.

11    Those deadlines were not met, demonstrably not met.  I can go

12    through each one, if you'd like.  There was then a

13    stipulation, a deadline, which, again, MTV proposed we agree

14    to.

15         So if there's self-imposed deadlines, they're

16    MTV's.  Those deadlines, some, but not all, were met -- were

17    not met.

18         So we do have a violation of a court order.  And

19    under Rule 37, there has to be some consequences for

20    violating a court order.  There have to be consequences to

21    canceling depositions.

22         Again, if this was just the first time a deposition

23    was canceled in this case, even if I had to travel to New

24    York, I would caulk it up to the inconveniences of life.

25    Scheduling happens.  Things occur.  But the outlier in this

1    case is that a deposition actually proceeds as scheduled.

2              We've had six depositions unilaterally canceled in

3    this case since Paul, Weiss was aboard.  Even prior to Paul,

4    Weiss, when MTV had predecessor counsel, that also dotted the

5    landscape.

6              So, in a nutshell, Your Honor, I believe that this

7    is a helpful first step, but we need a deterrent, because

8    otherwise we will be here again.  Anything that wasn't

9    documented in the court record, I fear will result in more

10   motion practice.

11             THE COURT:  Well, I went through the papers that

12   were submitted; and without making any findings, I've got

13   certainly the impression that some of the things that I was

14   perturbed about back last spring have continued to fester;

15   but it also sounds -- although some good progress was made

16   apparently in the last few days to work out the scheduling

17   for many of the things that are most significant here, it

18   also sounds like there's likely to be continuing problems,

19   both in terms of material that the trustee may have and

20   actually completing the depositions that need to be taken.

21   With respect to avoiding future problems -- so I divide the

22   past problems from the future problems.

23             As to the potential for future issues and problems,

24   we can go a couple of ways.  One is to let you continue to

25   have at each other and then, when you need to file a motion,

1    you file a motion.  That doesn't seem very satisfactory,

2    given the history in the case.

3           I can schedule regular discovery conferences, which

4    I've found in cases of sufficient complexity does help focus

5    people; and usually after a couple of them, there are no

6    issues left, but you know that you've got that opportunity to

7    resolve things.

8           Something else I've done, which I was thinking

9    about before, you had indicated that most of the depositions

10   had actually been scheduled, but I'm still thinking about it

11   is, is to appoint a special master to be the project

12   management office to get you through these scheduling

13   difficulties.  It's expensive, because you have to pay a

14   P.M.O. to do what you should be doing; but I'll let you all

15   respond to that.

16          In terms of the past problems, again, it sounds to

17   me as if we're likely to have some more pertinent

18   circumstances; and I use that somewhat euphemistically in

19   terms of what's going to happen between now and March or May,

20   when you complete your fact and expert discovery.  And what I

21   think I'm going to do is defer any issue of sanctions until

22   the completion of discovery, and then allow any party that

23   feels that the discovery process has been abused, to file a

24   motion.  If I need to have an evidentiary hearing to have a

25   basis, including the testimony from the attorneys, which I

can guarantee you is one of the least pleasant things you'll

do in your professional career, then we'll do that.  The

point of doing it that way is to get a full picture of the

discovery, if people still want to pursue that, including

issues going in both directions, if that is what occurs.

It may also be that by that time, things have -- on

a good day, everything will be resolved and people are ready

to go to trial and leave the discovery behind them; but

that'll give you the opportunity to pursue that, if you feel

it's appropriate.

Mr. Sammataro, what are your thoughts about either

having regular discovery conferences or the appointment of a

project management office?

MR. SAMMATARO:  Your Honor, prior to the recent

cooperation, I was also of the thought process that we'd

probably need a special master.  I would like to at least see

if we can play out these depositions; but I will say if the

majority of these depositions go forward, we probably will

not need a special master; but if we have more unilateral

cancellations, then I think it's imperative.

I believe that a future, if not a standing

discovery conference, would make some sense.  I mean,

their -- as MTV mentioned for the first time in their papers,

they raised some issues about our discovery, which I think we

can easily address.  There are other issues relating to our

1    discovery to MTV as well which are not fully resolved.

2          So I do think there are going to regrettably be

3    future discovery disputes.  So I do think the idea of having

4    a discovery conference sometime in the not so distant future

5    would make a lot of sense.  And the issue of the special

6    master, maybe we could revisit that issue at the next

7    discovery conference.

8          THE COURT:  Mr. Ehrlich.

9          MR. EHRLICH:  It must be a good day.  Mr. Sammataro

10   and I seem to be agreeing a lot.

11         I have the same thought coming into this.  I think

12   a conference in the next four to six weeks would be useful.

13         I don't know if -- given that counsel for both

14   sides are out of town, I don't know if the Court ever engages

15   in telephonic conferences, if that's something that's

16   available.

17         THE COURT:  Every week.

18         MR. EHRLICH:  Otherwise, I'll have to come down.

19         THE COURT:  Every week.  I have telephonic

20   conferences every week.

21         MR. EHRLICH:  Particularly given the deposition

22   schedule here and that both parties are going to be traveling

23   either to New York or Miami a fair amount, I think it might

24   preserve more days for deposition if the Court would be

25   amenable to a telephonic conference sometime in mid-December

1    or early January.

2         THE COURT:  When are the December depositions

3    scheduled?

4         MR. SAMMATARO:  As of right now, Your Honor, the

5    December -- there's tentatively one on the 8th.  December

6    10th, December 15th and December 17th look to be confirmed.

7         THE COURT:  I'm looking at my calendar.  Let's set

8    a telephonic -- you can be here in person, if you want; but

9    you can attend by telephone, if you want, as well.  But we'll

10   do a further discovery and a status conference for Monday,

11   December 20th, at two o'clock.

12        What I was chuckling about is I've got a -- it

13   would be educational for you, but I'm not going to require

14   this.  I've got a regular Thursday four o'clock probation

15   re-entry intensive supervision hearing.  It actually is very

16   educational to watch.  If you're ever here on a Thursday

17   afternoon, I welcome you to come up and listen to some of our

18   participants.

19        The reason that I'm chuckling is I have other

20   defendants sit in through that who are in need of some

21   intensive supervision of their own.  So I don't mean to be

22   facetious, but that's actually a court program that you might

23   benefit by seeing, just as members of the bar.

24        So we'll hear from you again on the 20th.  If you

25   have issues that you want heard specifically, I want you to

1   confer the week before; and you don't have to agree, but try

2   to narrow the issues, but at least specify them; and if you

3   could file something on Friday that indicates the nature --

4   not a long brief or anything, but just sort of an agenda of

5   the issues that each side wants to bring up; and it may be

6   that there won't being anything to bring up, in which case

7   it'll be a very short hearing.

8           I didn't let you respond, Mr. Traver.

9           MR. TRAVER:  If there was something I disagreed

10  with, I would have said something, Your Honor.

11          THE COURT:  I figured you'd -- you're not shy.  I

12  understand.

13          MR. TRAVER:  No, sir.  The last thought on filing

14  an agenda, is that a joint document?

15          THE COURT:  Yeah, that's what I'd like to see.

16          MR. TRAVER:  Thank you.

17          THE COURT:  All right.  Anything else we can take

18  care of today?

19          MR. SAMMATARO:  No, Your Honor, and we do

20  appreciate your time.  Thank you.

21          THE COURT:  All right.  We're in recess.

22          (The proceedings were terminated at 2:33 p.m.)

23                  - - - - - - - -

24              Reporter's Certification

25  I certify that the foregoing is a correct transcript from the

1  record of proceedings in the above-entitled matter.

                                    s/Diane Peede, RMR, CRR
2                                   Official Court Reporter
                                    United States District Court
3  Date:   December 6, 2010        Middle District of Florida