# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al.*

        **Debtor.**

_____/

SONEET KAPILA, Chapter 11 Trustee for TRANS CONTINENTAL TELEVISION PRODUCTIONS, INC.,

        **Plaintiff,**

v.

MTV NETWORKS, a division of Viacom, International, Inc., VIACOM, INC., VIACOM, INTERNATIONAL, INC., BAD BOY FILMS, INC. and BAD BOY RECORDS, LLC,

        **Defendant.**

_____/

Case No. 6:10-cv-181-Orl-28

## THE TRUSTEE'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR LEAVE TO DEPOSE PRISONER AND TO INCREASE THE PERMITTED LENGTH OF THE DEPOSITION

Pursuant to Federal Rule of Civil Procedure 30(d), plaintiff, Soneet Kapila, in his capacity as the federally appointed Chapter 11 Trustee (the "Trustee") for Trans Continental Television Productions, Inc. ("Trans Continental") submits this response to the defendants MTV Networks ("MTV"), Bad Boy Films, Inc. and Bad Boy Records, LLC's (together "Bad Boy," and collectively with MTV, the "Defendants") Joint Motion for Leave to Depose Prisoner and to Increase the Permitted Length of the Deposition [D.E. 145]. In support, the Trustee states:

### I. INTRODUCTION

Louis J. Pearlman's ("Mr. Pearlman) deposition testimony will in all likelihood constitute

trial testimony because he will be unavailable to testify in person at the trial of this action. The Defendants have jointly sought leave of Court: (a) to depose Mr. Pearlman as he is a prisoner at the Federal Corrections Institution of Texarkana and (b) to exceed the seven (7) hour deposition time limitation set forth in Rule 30(d) of the Federal Rules of Civil Procedure. The Trustee does not oppose Mr. Pearlman's deposition, nor does he oppose the requested twelve hours ***provided the Court allocates two (2) of the requested twelve (12) hours*** for the Trustee to cross-examine Mr. Pearlman.

The Trustee does not concede that good cause exists to extend the presumptive seven (7) hour durational limit for Mr. Pearlman's deposition – a point underscored by the record evidence demonstrating Mr. Pearlman's lack of substantial involvement with either the Defendants or the critical underlying events. Nonetheless, the Trustee concurs that given the pragmatic considerations implicated by conducting a deposition within the confines of the federal prison's regulations, the parties must *all* be afforded the opportunity question Mr. Pearlman during his two (2) day deposition. To this end, the Trustee submits that collectively granting the Defendants a total of ten (10) hours to depose Mr. Pearlman is a reasonable proposal provided that the Trustee is afforded a corresponding right to depose Mr. Pearlman for two (2) hours.

In addition to reserving two (2) hours for the Trustee to cross-examine Mr. Pearlman, fundamental fairness further dictates that either Mr. Pearlman be permitted to appear in non-prison attire during his videotaped deposition, or that the deposition testimony be read as opposed to played at trial.

## II. MEMORANDUM OF LAW

### A. Good Cause Must Be Established to Exceed the Federal Rules of Civil Procedure's Seven (7) Hour Deposition Limit.

#### 1. The Good Cause Standard.

The Court's August 20, 2010 Scheduling Order expressly incorporates Rule 30(d)(1), providing that: "[A]bsent leave of the Court or stipulation by the parties, each deposition is limited to one day of seven hours." [D.E. 110 at ¶ 1.C]; *see* Fed. R. Civ. P. 30(d)(1) ("Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours."). This unambiguous rule establishes the "***presumptive durational limitation***" of a deposition. Fed. R. Civ. P. 30(d) advisory committee's note (2000) (emphasis added).

A party seeking to extend a deposition's presumptive duration of seven (7) hours has the burden to establish good cause: "The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show ***good cause*** to justify such an order." *Id.* (emphasis added); *see Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 691 (M.D. Fla. 2003) (holding that "Plaintiff has not supplied the Court with adequate reason to require depositions [to] exceed the presumptive time limitation of seven hours each" and that "[a]t best, Plaintiff's motion has been brought prematurely"). The good cause standard requires a showing that the additional time is needed to "fairly examine the deponent." Fed. R. Civ. P. 30(d)(1).

The cases cited by the Defendants are inapposite and do not support the proposition that good cause exists to authorize their requested twelve (12) hours of deposition time for Mr. Pearlman. *Cf. Pace v. City of Palmetto*, 2007 WL 470477, *2 (M.D. Fla. Feb. 13 2007) (deposition re-opened and allowed to proceed for eight (8) hours due to failure to produce four boxes of documents before previous deposition and documents to be used during deposition must be provided in advance); *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, 206 F.R.D. 518, 522 (S.D.

Fla. 2002) (deponent was an accountant also designated to testify on complex accounting issues as a corporate representative and plaintiffs were unable to elicit information from other witnesses); *New Colt Holding Corp. v. RJG Holdings of Florida, Inc.*, 2003 WL 22326978 (D. Conn. March 27, 2003) (extending time for deposition because there were two defendants with divergent interests and the deponent was an expert witness).

Indeed, the mere existence of multiple parties does not automatically equate to "good cause" to extend Rule 30(d)'s time limitation on a deposition, particularly where, as here, the Defendants do not have differing interests. *See, e.g.,* Fed. R. Civ. P. 30(d) advisory's committee's note (2000); *Nicholas v. Wyndham Int'l, Inc.*, 2002 U.S. Dist. LEXIS 27111, *4 (D.V.I. Nov. 18, 2002) (the Advisory Committee Notes make it "clear that in the first instance the seven hour limitation is applicable to multiple party opponents but the parties may stipulate otherwise, and failing agreement, the party seeking an extension must move therefor [sic] upon a demonstration of good cause.").

### 2. **Discovery Establishes that Good Cause Does Not Exist**.

The Trustee does not dispute that the Defendants are entitled to depose Mr. Pearlman. However, while Mr. Pearlman was involved in some of the underlying events of this case, he is not the central figure that the Defendants are attempting to portray him to be. In fact, Mr. Pearlman's actual role – as opposed to that of his legal representatives and Trans Continental's representatives – in the pivotal communications and the negotiations of the subject agreements was quite attenuated.

For evidence of this fact, one need not look any further than the sworn testimony of MTV's representatives. The sworn testimony of MTV's witnesses and Rule 30(b)(6) corporate representatives unequivocally establishes Mr. Pearlman's nominal involvement with the

contracts at issue and their respective negotiations. This point cannot be understated. To date, all of MTV's pertinent witnesses – *eight (8) in total* – have testified under oath that they had *no* communications with Mr. Pearlman, or that there communications were limited to a single communication. In fact, the sworn testimony of these witnesses suggests that, at most, they collectively had a handful of communications with Mr. Pearlman.

Jackie French and John Miller, the two MTV employees who were the creative heads of *Making the Band*, testified, for example, that they never spoke with Mr. Pearlman: Specifically, Ms. French testified:

> Q: Have you ever had any communications with Lou Pearlman?
>
> A: No.
>
> Q: Have you ever had any communications with anyone who you understood to be a representative of Trans Continental?
>
> A: No.

(*See* French Depo. p. 124, attached hereto as **Exhibit A-1**).

Mr. Miller similarly testified:

> Q: Have you ever spoken to Mr. Pearlman?
>
> A: Never.
>
> Q: Did you ever have any communications with Mr. Pearlman in writing?
>
> A: No, not to my recollection, but I am 99 percent sure.

(*See* Miller Depo. p. 34, attached hereto as **Exhibit A-2**).

Brian Graden, who during the pertinent time period was MTV's President of Programming and ultimately MTV's President of Entertainment, was unable to recall either a single meeting or conversation with Mr. Pearlman, and was unsure whether any such meeting or communication ever took place. (*See* Graden Depo. pp. 137-138 attached hereto as **Exhibit A-**

**3**).

Like Ms. French and Messrs. Miller and Graden, Brad Hazzard, the vice president of business and legal affairs at MTV, also testified that he has never spoken with Mr. Pearlman:

> Q: How about Mr. Pearlman, have you ever had any personal dealings with Mr. Pearlman?
>
> A: Absolutely not, never.
>
> Q: Have you ever spoken on the phone with Mr. Pearlman?
>
> A: No.
>
> Q: Ever had a meeting with Mr. Pearlman?
>
> A: No.

(*See* Hazzard Depo., p. 38, attached hereto as **Exhibit A-4**).

MTV's in-house lawyers – who were admittedly the authors and negotiators of the agreements in dispute – similarly testified that they had little to no contact with Mr. Pearlman. Virginia Lazalde-McPherson, the production and day-to-day lawyer for *Making the Band* (who appears on MTV's privilege log in excess of six hundred times), testified that to the best of her recollection she met Mr. Pearlman "once in New York" about a the show (*see* Lazalde-McPherson Depo., pp. 28-29, attached hereto as **Exhibit A-5**) and that she does not have a single recollection of discussing *Making the Band* with Mr. Pearlman. (*Id*. at p. 177).[1]

Liz Skoler, the author of the Joint Venture Agreement, similarly testified: "I met [Mr. Pearlman] I think maybe once, but it was more of a like a social occasion with the band," and

---

[1] Specifically, Ms. Lazalde-McPherson testified:

> Q: But do you have a recollection of discussing Making the Band with Lou Pearlman?
>
> A: I don't have a recollection.

(*Id*. at p. 177). Ms. Lazalde-McPherson further testified that she never spoke with Mr. Pearlman about the parties' November 15, 2001 Amended Agreement (the "Amended Agreement"). (*Id.* at pp. 79-80).

that she did not have a singular substantive conversation with Mr. Pearlman regarding *Making the Band*. (*See* Skoler Depo., p. 33, attached hereto as **Exhibit A-6**). Likewise, Ken Parks, an attorney who served as the vice-president of MTV's business affairs and legal department and was specifically brought in to negotiate specific points relating to the parties' Amended Agreement, testified that he was involved in "one meeting" with Mr. Pearlman. (*See* Parks Depo., p. 11, attached hereto as **Exhibit A-7**).

Finally, George Eichen, MTV's former general counsel, testified that he had one meeting with Mr. Pearlman, and was unable to recall the substance of this meeting. (*See* Eichen Depo. at pp. 25-26, attached hereto as **Exhibit A-8**). Thus, the sworn testimony of MTV's own witnesses negates the Defendants' claim that Mr. Pearlman is "the principal actor in a complex case." [2] [D.E. 145 at p. 4].

Consistent with MTV's testimony, the parties' respective document productions further confirm that Mr. Pearlman is not a "principal figure" in this case as Mr. Pearlman did not frequently communicate with MTV or Bad Boy. MTV has repeatedly chastised Trans Continental for producing only "limited communications from Pearlman" [D.E. 145] and not a "single e-mail from Pearlman." [D.E. 126]. MTV's complaint ignores the substance of *its* own production. There is not a ***single e-mail*** from Mr. Pearlman contained in MTV's ***615,335*** page production. Further, the reason why there are no e-mails from Mr. Pearlman is because Mr. Pearlman did not use e-mail. His assistant, Mandy Newland, sent and received e-mails on Mr. Pearlman's behalf. (*See generally* Kim Dawson Depo. at pp. 61-62, attached hereto as **Exhibit A-9**).

---

[2] Despite the Trustee's repeated requests, which date as far back as July 15, 2010, Bad Boy has still not produced its Rule 30(b)(6) corporate representative, who will be deposed on February 9, 2011. Regardless, there is no evidence that Mr. Pearlman had any communications with Bad Boy or Sean Combs.

Regardless, Ms. Newland's e-mails reveal that the volume of written communications exchanged between Mr. Pearlman and MTV were minimal, and that ostensibly no communications were exchanged between Mr. Pearlman and Bad Boy. Thus, the Defendants' argument that "additional time is required" to depose Mr. Pearlman is belied by the discovery taken in this case, which establishes that seven (7) hours should afford the Defendants ample opportunity to "fairly examine" Mr. Pearlman regarding his involvement in *Making the Band* and the underlying events. *See* Fed. R. Civ. P. 30(d).

The Trustee suspects that the Defendants' true motive in seeking additional time is not to question Mr. Pearlman about his involvement in events pertinent to this litigation, but instead to examine Mr. Pearlman on his misdeeds unrelated to this straightforward commercial dispute. Notably, there are no allegations that Mr. Pearlman lied, defrauded or otherwise committed any act of deceit against any of the Defendants. Yet, the Defendants – to divert attention from their own misconduct – need to misdirect the jury's attention to Mr. Pearlman's unrelated actions. While the Defendants certainly have the right to examine Mr. Pearlman on these issues, this right does not establish "good cause," nor does it afford the Defendants carte blanche to unduly harass Mr. Pearlman or exceed Rule 30's seven (7) hour deposition limitation – especially when discovery establishes Mr. Pearlman's minimal involvement with the issues raised by this lawsuit.

**B.     Without Conceding the Defendants Have Established Good Cause, the Court Should Allocate Twelve Hours Among the Parties to Depose Pearlman**.

In light of the prison regulations that require two (2) days to conduct a seven (7) hour deposition, the Trustee – again, without conceding that good cause exists – does not object to increase the time for Mr. Pearlman's deposition to twelve (12) hours, provided that the Court allocates two (2) of the requested twelve (12) hours for the Trustee to question Mr. Pearlman.

### 1. The Trustee Has an Absolute Right to Depose Mr. Pearlman.

The Trustee has an absolute right to cross-examine Mr. Pearlman at his deposition. *See* Fed. R. Civ. P. 30(c)(1); *see also Smith v. The Logansport Cmty. School Corp.*, 139 F.R.D. 637, 642 (N.D. Ind. 1991). Significantly, Mr. Pearlman's deposition testimony will be his trial testimony, as Mr. Pearlman is not subject to the Court's subpoena power to compel his appearance at trial. *See* Fed. R. Civ. P. 45(b)(2).[3]

Courts routinely allocate reasonable amounts of time among the parties to question a witness at a deposition. *See, e.g., Burket v. Hyman Lippitt, P.C.*, 2007 U.S. Dist. LEXIS 87279, *5 (E.D. Mich. Nov. 28, 2007) (declining to grant requested extension of ten and one-half hours in multi-party complex securities fraud case, but allowing additional time for a total of eleven hours of deposition time, allocating 3.5 hours to defendants in addition to the 5.5 hours already used, thirty minutes to deponent's counsel, and ninety minutes to plaintiff's counsel). Moreover, the seven (7) hour deposition limitation applies to the witness, not to the party taking the deposition, and the Federal Rules of Civil Procedure and the Advisory Committee Notes contemplate that all parties (not just the noticing party) will be afforded the opportunity to question the witness within the presumptive limitation of seven (7) hours. *See* Fed. R. Civ. P. 30(c)(1); Fed. R. Civ. P. 30(d) advisory committee's note (2000).[4]

In this case, the court should allocate the requested twelve (12) hours among **all** of the parties. The Trustee seeks to reserve only two (2) of the twelve (12) hours to depose Mr. Pearlman. Denying the Trustee this opportunity is tantamount to rejecting his right to confront a

---

[3] Furthermore, a witness can only be deposed once in an action absent leave of court. *See* Fed. R. Civ. P. 26(a)(2)(ii) (party must obtain leave of court if deponent has already been deposed in the case).

[4] While the Defendants presumably advocate that "additional time is required to allow **all** parties a fair opportunity to examine the deponent," [D.E. 145 at p. 4 (emphasis added)], they do not allocate any time for the Trustee to question Mr. Pearlman.

trial witness and would be fundamentally unfair and constitute a denial of due process. *See Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.").

Moreover, the practicalities dictate in favor of allocating the twelve (12) hours to the Trustee *and* the Defendants. As noted in the Defendants' Motion, two (2) deposition days will already be required to obtain seven (7) hours of deposition time at the prison. The Trustee appreciates that the prison's regulations, which only allow depositions from 8:00 a.m. to 3:00 p.m., could serve as a pragmatic basis to allow Mr. Pearlman's deposition to proceed for twelve (12) hours. And these two (2) days will afford all of the parties with more than adequate time to depose Mr. Pearlman on the issues relevant to this case. The deposition should promptly begin at 8:00 a.m. (rather than the Defendants' suggested start time of 9:00 a.m. [D.E. 145 at p. 1]) to fully utilize these two (2) days. Thus, the Court should not indulge the Defendants with any additional time above and beyond the requested twelve (12) hours, as requiring Mr. Pearlman to sit for three (3) days of deposition would be unwarranted given that discovery establishes Mr. Pearlman's attenuated role in this case.

### 2. The Defendants Are Required to Coordinate their Questioning.

Allowing the Trustee two (2) hours to depose Mr. Pearlman will not prejudice the Defendants in any way because the Defendants are required to streamline their questioning to avoid needless repetition and to preserve time. The Advisory Committee Notes to Rule 30(d) explain that in multi-party litigation, "duplicative questioning should be avoided and parties with similar interests should strive to designate one lawyer to question about areas of common interest." Fed. R. Civ. P. 30(d) advisory committee's note (2000). In addition to coordinating

their questions, the Defendants should send Mr. Pearlman copies of any exhibits in advance, if they are lengthy or numerous. *Id.*

Here, there is no indication that the Defendants have attempted to pursue any options that would shorten the amount of time needed for Mr. Pearlman's deposition. In light of Mr. Pearlman's incarceration and the efforts required to coordinate with the prison to take his deposition, the Defendants should do so. With a modicum of coordination, there is absolutely no reason that the Defendants cannot complete their deposition of Mr. Pearlman in ten (10) hours.[5] The Defendants' obligation to streamline their examinations further emphasizes that twelve (12) hours is more than enough time for all of the parties to collectively depose Mr. Pearlman.

### C. To Ensure Fundamental Fairness, Mr. Pearlman Should Be Entitled to Appear in Non-Prison Attire.

There is one additional point that needs to be addressed in connection with Mr. Pearlman's deposition. In that the Defendants are videotaping the deposition, and given the strong likelihood that Mr. Pearlman will be unavailable to testify at the trial of this action, Mr. Pearlman should be dressed in non-prison attire during the taking of his videotaped deposition. Such a ruling is necessary to ensure a just and fair trial. *See* M.D. Fla. Rule 1.01(b) (noting that the rules of the Court "shall be employed to provide fairness and simplicity in procedure … to secure just, expeditious and inexpensive determination of all proceedings").

In the context of criminal cases, the defendant's right to appear in attire other than prison garb is a fundamental right deemed essential to ensure a fair trial. As stated by the United States Supreme Court in *Estelle v. Williams*:

> The potential effects of presenting an accused before the jury in prison attire need

---

[5] The recent deposition of Jeffrey Kranzdorf was needlessly prolonged based on an apparent lack of coordination among the Defendants on areas of common interest.

not, however, be measured in the abstract. Courts have, with few exceptions,[6] determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption [of innocence] so basic to the adversary system.

425 U.S. 501, 504 (1976).

Indeed, there is no shortage of case law where the courts have found that the defendant's appearance in identifiable prison attire is a prejudicial influence likely to create a fundamentally unfair trial. *See, e.g., Turner v. Louisiana*, 379 U.S. 466, 473 (1965); *Chess v. Smith*, 617 P.2d 341, 344-45 (Utah 1980) ("The prejudicial effect that flows from a defendant's appearing before a jury in identifiable prison garb is not measurable, and is so potentially prejudicial as to create a fundamental unfairness in a criminal trial."); *People v. Bradford*, 15 Cal. 4th 1229, 1336, 65 Cal. Rptr. 2d 145, 939 P.2d 259 (1997) ("The Supreme Court has observed that the defendant's jail clothing is a constant reminder to the jury that the defendant is in custody, and tends to undercut the presumption of innocence by creating an unacceptable risk that the jury will impermissibly consider this factor."); *Mullins v. State*, 766 So.2d 1136, 1137 (Fla. 2d DCA 2000) ("A criminal defendant cannot be compelled to stand trial in prison clothing because it could impair the defendant's presumption of innocence, which is a basic component of the fundamental right to a fair trial") (internal citation omitted); *Torres-Arboledo v. State*, 524 So.2d 403, 409 (Fla. 1988) (same); *see also People v. Froehling*, 1 Cal. App. 4th 260, 1 Cal. Rptr. 2d 858 (1991) (a defense request that an incarcerated witness be dressed in civilian clothing must be granted if timely made, because the witness's credibility may otherwise be affected).

Courts have similarly found that prisoners involved in civil lawsuits are entitled to

---

[6] The recognized exceptions typically involve circumstances where the use of shackles or some other restraints is necessary to control a contumacious defendant, *see Illinois v. Allen*, 397 U.S. 337, 344 (1970), or where the defendant committed the alleged crime while he was an inmate of a custodial institution where prison garb is the normal attire. *See Atkins v. State*, 210 So.2d 9 (Fla. 1st DCA 1968). Neither of these exceptions applies here.

protection from undue prejudice under Rule 26 of the Federal Rules of Civil Procedure when being deposed in cases unrelated to their incarceration. *See Tolliver v. Liberty Mut. Fire Ins. Co.*, 2008 U.S. Dist. LEXIS 96645, *12 (E.D. Ohio Nov. 17, 2008) (where claims were unrelated to the prisoner-deponent's current incarceration, deponent was entitled to protection from prejudice; deposing party could either proceed with deponent in prison uniform with the understanding that the court reserved the right to prohibit the use of the deposition at trial, or alternatively, make arrangements with prison's administration for deponent to appear in non-prison attire); *Davis v. Am. Family Mut. Ins. Co.*, 2001 WI App 75 (Wis. Ct. App. 2001), *rev. denied*, 569 N.W.2d 591 (Wis. 1997) (affirming trial court's decision to read the deposition to the jury, rather than play the video, where the deposition was taken while deponent was incarcerated and wearing prison clothes).

Here, the issue of Mr. Pearlman's attire is of critical import, and any testimony given while wearing his prison uniform would unduly prejudice the creditors of Trans Continental's bankruptcy estate. Trans Continental's creditors are entitled to a fair trial, and they should be protected from the deleterious effects of having the jury subjected to hours of videotape in which Mr. Pearlman appears in prison garb. This is particularly true because this case is ***not*** about Mr. Pearlman's misdeeds. There are no affirmative claims against Trans Continental. It bears repeating that there are no allegations that Mr. Pearlman lied, defrauded or otherwise committed any act of deceit against any of the Defendants.[7] ***To the contrary, this case revolves around the Defendants' wrongful conduct against Trans Continental***. The Defendants are not entitled to deflect their bad acts by unfairly attempting to prejudice the jury with evidence of Mr. Pearlman's unrelated wrongdoing.

---

[7] In fact, as referenced above, the record evidence demonstrates that Mr. Pearlman had few, if any, substantive interactions with the Defendants.

### III. CONCLUSION

For the reasons stated herein, the Trustee respectfully requests that the Court: (a) order the deposition of Mr. Pearlman to proceed for twelve (12) hours over the course of two (2) days starting at 8:00 a.m., allocating ten (10) hours of questioning to the Defendants and two (2) hours of questioning to the Trustee, (b) order that Mr. Pearlman be dressed in non-prison attire during his deposition, and (c) grant such other and further relief the Court deems necessary and just. A proposed Order is attached hereto as **Exhibit B**.

Dated: January 26, 2011

Respectfully submitted,

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
*Attorneys for plaintiff, Soneet Kapila in his capacity as the federally appointed Chapter 11 Trustee charged with administrating the bankruptcy estate of Trans Continental Television Productions, Inc.*
Four Seasons Tower
1441 Brickell Avenue, Suite 1420
Miami, Florida 33131
Telephone: (305) 377-1666
Facsimile: (305) 377-1664
jsammataro@kasowitz.com


By: */s/* James G. Sammataro
    James G. Sammataro
    Florida Bar Number: 0520292
    Courtney Caprio
    Florida Bar No. 0933961

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 26, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a notice of the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

**Andrew J. Ehrlich, Esq.**
aehrlich@paulweiss.com
Paul, Weiss, Rifkind, Wharton
& Garrison LLP
*Counsel for MTV Networks, Viacom, Inc and Viacom International, Inc.*
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

**Brian A. McDowell, Esq.**
brian.mcdowell@hklaw.com
Holland & Knight, LLP
*Counsel for MTV Networks, Viacom, Inc and Viacom International, Inc.*
200 South Orange Avenue
Suite 2600
Orlando, Florida 32801
Telephone: (407) 425-8500
Facsimile: (407) 244-5288

**Jonathan Davis, Esq.**
Jonathan D. Davis, P.C.
*Counsel for Bad Boy Films, Inc. and Bad Boy Records, LLC*
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone: (212) 687-5464
Facsimile: (212) 557-0565

**Daniel Traver, Esq.**
Gray Robinson, P.A.
*Counsel for Bad Boy Films, Inc. and Bad Boy Records, LLC*
301 E. Pine Street, Suite 1400
Orlando, Florida 32802-3068
Telephone: (407) 843-8880
Facsimile: (407) 244-5690

         /s/ James G. Sammataro