# COMPOSITE

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al*

       Debtor.

_____/

Case No. 6:07-bk-00761-ABB
Jointly Administered
Chapter 11

SONEET KAPILA, Chapter 11 Trustee
for TRANS CONTINENTAL TELEVISION
PRODUCTIONS, INC.,

           Plaintiffs,

    v.

MTV NETWORKS COMPANY,

           Defendant.

_____/

Adv. No.:  6:07-bk-00761-ABB

## TRANS CONTINENTAL'S FIRST SET OF INTERROGATORY REQUESTS TO MTV NETWORKS

       Pursuant to Rule 33, Fed. R. Civ. P., plaintiff, Trans Continental Television, by and through counsel, hereby propounds its First Set of Interrogatory Requests to defendant, MTV Networks, a division of Viacom International, Inc. (hereinafter, "MTV") and requests that MTV answer each of the following interrogatories (the "Interrogatories"), separately and fully in writing, under oath.   MTV is subject to a duty to supplement all responses to these Interrogatories in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

### Instructions and Definitions

The following definitions and instructions shall apply to Trans Continental's Interrogatories:

       1.    Where knowledge or information in the possession of MTV is requested, such request includes knowledge and information within the possession, custody, or control of MTV's

agents, officers, directors, employees, representatives, servants, accountants, attorneys, or any other persons acting or purporting to act on MTV's behalf.

2.  As used in these Interrogatories, the term "communication" shall mean any oral or written utterance, notation or statement of any nature whatsoever, by or to whomsoever made, including but not limited to correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings between or among two or more persons.

3.  As used in these Interrogatories, the term "document" shall have the broadest meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure and means any writing of any kind, including originals and all non-identical copies (whether different from the original by reason of any notation made on such copies or otherwise). This shall include, without limitation, the following items, whether printed or reproduced by any process, or written or produced by hand or stored in computer memory, magnetic or hard disk or other data storage medium, and whether or not claimed to be privileged, confidential or otherwise excludable from discovery, namely, notes, letters, correspondence, communications, e-mails, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or meetings, diaries, reports, laboratory and research reports and notebooks, recorded experiments, charts, plans, drawings, diagrams, schematic diagrams, source code, object code, illustrations, product descriptions, product analyses, requests for proposals, documents related to proposed or actual product improvements or changes, users manuals or guides, installation guides or manuals, technical descriptions or specifications, product repair manuals or guides, photographs, video images, software flow charts or descriptions or specifications, product functional descriptions or specifications, minutes or records of meetings, summaries of interviews, reports, or investigations, opinions or reports of consultants,

reports of patent searches, patent appraisals, opinions of counsel, agreements, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of documents, and all other material fixed in a tangible medium of whatever kind known to you or in your possession, custody, or control.

4.   "Identify," "identity," and "describe":

(a)   When used in reference to a person, shall mean to state the person's full name, present or last known residence and business addresses, business or official affiliation, and present or last know business and home telephone numbers;

(b)   When used in reference to an act, transaction, or conduct, shall mean to state the event(s) constituting such act, the location, date, time and place of the event, transaction or conduct, and the person(s) participating, present, or involved;

(c)   When used in reference to a communication, shall mean to state the full name and address of each person participating in the communication and to state the date, manner, place, and substance of the communication; and

(d)   When used in reference to a document, shall mean to state the number of pages and nature of the document (e.g., letter or memorandum), its title, date, present location and custodian of the document, and the name(s) of its author(s) and recipient(s).

5.   As used in these Interrogatories, the word "or" appearing in an interrogatory should not be read so as to eliminate any part of the interrogatory, but, whenever applicable, it should have the same meaning as the word "and." For example, an interrogatory stating "support or refer" should be read as "support and refer" if an answer that does both can be made.

6.   "Person" shall mean any natural individual, in any capacity whatsoever, or any entity or organization, including divisions, departments, and other units therein, and shall include, without limitation, any public or private corporation, partnership, joint venture,

voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

7.    "Representative" shall mean any agent, employee, servant, officer, director, accountant, attorney, or other person acting or purporting to act on behalf of the person in question.

8.    As used in these Interrogatories, the terms "you," "your," "yourself" and any synonym or derivative thereof shall mean MTV Networks, a division of Viacom International, Inc. and the signatory of the November 15, 2001 agreement, and each of its present and former agents, officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, accountants, attorneys, predecessors, and any person acting or purporting to act on MTV's behalf.

9.    "MTV" shall mean defendant, MTV Networks, a division of Viacom International, Inc., and its present and former agents, officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, sister entities, related entities, accountants, attorneys, predecessors, and any other person acting or purporting to act on MTV's behalf.

10.    The term "Trans Continental" means "Trans Continental Television Productions, Inc." and all others persons acting or purporting to act on its behalf.

11.    The term "Agreement," refers to the letter agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand, in connection with the development and production of an untitled Boy Band series for ABC.

12.    The term, "Amended Agreement," refers to the letter agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand, on or about

4

November 15, 2001, in connection with the MTV series featuring O-Town, entitled "Making the Band."

13.     The term, "O-Town" refers to the musical act comprised of Ashley Angel, Jacob Underwood, Erik Estrada, Trevor Penick and, after the departure of Ikaika Kahoano, Dan Miller, which was the subject of the original series, Making the Band.

14.     The term, "Making the Band," refers to the reality television series which initially aired on American Broadcasting Companies, Inc. and then later on MTV.

15.     The terms, "Sean Combs," "P. Diddy," "Puff Daddy" and "Diddy" refer to the artist/entertainer that appears in *Making the Band 2, Making the Band 3* and *Making the Band 4*, and his present and former agents and representatives, as well as his corporate entities, Bad Boy Entertainment, Bad Boy Productions and Bad Boy Records, and their respective officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, sister entities, related entities, accountants, attorneys, predecessors, and any other person acting or purporting to act on Diddy's or Bad Boy's behalf.

16.     The term, "*Making the Band 2*" refers to the television program broadcast on MTV beginning on or about October of 2002, in which Diddy sought to find the best rappers and singers from which to assemble a new hip-hop group.

17.     The term, "*Making the Band 3*" refers to the television program broadcast on MTV in 2005, which featured Diddy and his search for the next all female group.

18.     The term, "*Making the Band 4*" refers to television program broadcast on MTV, which features Diddy, the subsequently named band, *Day26,* and Donnie Klang, and a return of *Danity Kane*, the winners of *Making the Band 3.*

19.     The term "describe" means to provide a detailed narrative account of the subject matter and to identify all documents and witnesses relating to the subject matter.

20.     The term "including" means including but not limited to.

21.     The term "any" or "each" shall be construed to include and encompass "all."

22.     The term "date" means the exact day, month, and year, if ascertainable, or, if not, the best approximation thereof.

23.     The use of the word "the" shall not be construed as limiting the scope of any request.

24.     The words "and" and "or" shall be used conjunctively or disjunctively, whichever makes the request, definition or instruction more inclusive.

25.     The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other as are appropriate in the context.

## SPECIFIC INTERROGATORIES

### INTERROGATORY NO. 1

Identify by name and title the person signing MTV's answers to these Interrogatories; each person who participated or assisted in answering these Interrogatories; each person whom was consulted in connection with the preparation of MTV's answers to these Interrogatories, and all of the documents that were reviewed, relied on, or otherwise referred to in preparing MTV's answers to these Interrogatories.

### RESPONSE:

7

## INTERROGATORY NO. 2

State the name, the current address and telephone number, present place of employment, and *then* job title of any individual who was involved, in any way, on MTV's behalf in the preparation, negotiation, drafting or finalization of the January 7, 2000 Agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand (hereinafter, the "Agreement").

## RESPONSE:

8

**INTERROGATORY NO. 3**

State the name, the current address and telephone number, present place of employment, and *then* job title of any person who was involved, in any way, on MTV's behalf in the preparation, negotiation, drafting or finalization of the Amended Agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand, on or about November 15, 2001 (hereinafter, the "Amended Agreement").

**RESPONSE:**

9

INTERROGATORY NO. 4

State the name, the current address and telephone number, present place of employment, and *then* job title of any person who was involved, in any way, with or in the preparation, negotiation, drafting or finalization of any agreement(s) with Sean Combs (*p/k/a* "Puff Daddy," "P-Diddy," or "Diddy") (hereinafter, "Diddy") or his affiliated entity or corporation in connection with either *Making the Band 2, Making the Band 3* and *Making the Band 4*, including, without limitation, the name of the contracting parties; all of the entities which were affiliated with, or related to, Diddy; and all of the attorneys and/or law firms (if any) involved in the negotiation.

RESPONSE:

<u>INTERROGATORY NO. 5</u>:

Identify with specificity each and every country, territory or province in which any season of *Making the Band*, *Making the Band 2*, *Making the Band 3* and *Making the Band 4* has ever been distributed to, broadcast or exhibited in, aired or otherwise televised in, and include in your response the specific station(s) on which the program was broadcasted as well as the mechanism by which that station acquired the rights to televise the program (*e.g.*, it is an MTV-owned station, or through an affiliate, license, distribution or program sales agreement).

<u>RESPONSE</u>:

11

<u>INTERROGATORY NO. 6</u>:

Identify with specificity each and every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in the distribution (both foreign and domestic) of *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

<u>RESPONSE</u>:

12

<u>INTERROGATORY NO. 7</u>:

Identify with specificity each and every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in the licensing of the television programs, *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*, and/or any merchandise or ancillary, allied or after-market products (*e.g.*, DVDs and other products relating to the home video market) relating to any season of *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

<u>RESPONSE</u>:

13

<u>INTERROGATORY NO. 8:</u>

Identify with specificity, and on a season-by-season basis, the amount of gross and net profit that MTV, including any and all MTV-related, sister or affiliated entities, has made in connection with *Making the Band 2*, describing with specificity each and every expense or deduction which was made to gross profit in order to arrive at the net profit figure.

<u>RESPONSE</u>:

14

<u>INTERROGATORY NO. 10</u>:

Identify with specificity, and on a season-by-season basis, the amount of gross and net profit that MTV, including any and all MTV-related, sister or affiliated entities, has made in connection with *Making the Band 3*, describing with specificity each and every expense or deduction which was made to gross profit in order to arrive at the net profit figure.

<u>RESPONSE</u>:

15

## INTERROGATORY NO. 11:

Identify with specificity, and on a season-by-season basis, the amount of gross and net profit that MTV, including any and all MTV-related, sister or affiliated entities, has made in connection with *Making the Band 4*, describing with specificity each and every expense or deduction which was made to gross profit in order to arrive at the net profit figure.

## RESPONSE:

<u>INTERROGATORY NO. 12</u>:

Identify with specificity the date and amount of each and every payment made by MTV to Diddy (or any entity or corporation affiliated with or related to Diddy) in connection with any season of *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

<u>RESPONSE</u>:

INTERROGATORY NO. 13:

Identify with specificity, and on a season-by-season basis, the amount of advertising revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received in connection with the broadcast of *Making the Band 2* in the United States or any other country, territory or province.

RESPONSE:

18

<u>INTERROGATORY NO. 14</u>:

Identify with specificity, and on a season-by-season basis, the amount of advertising revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received, in connection with any broadcast of *Making the Band 3* in the United States or any other country, territory or province.

<u>RESPONSE</u>:

<u>INTERROGATORY NO. 15</u>:

Identify with specificity, and on a season-by-season basis, the amount of advertising revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received, in connection with any broadcast of *Making the Band 4* in the United States or any other country, territory or province.

<u>RESPONSE</u>:

20

<u>INTERROGATORY NO. 16</u>:

Identify with specificity, and on a season-by-season basis, the amount of revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received, in connection with the foreign distribution of *Making the Band 2.*

<u>RESPONSE</u>:

21

<u>INTERROGATORY NO. 17</u>:

Identify with specificity, and on a season-by-season basis, the amount of revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received, in connection with the foreign distribution of *Making the Band 3*.

<u>RESPONSE</u>:

22

<u>INTERROGATORY NO. 18</u>:

Identify with specificity, and on a season-by-season basis, the amount of the amount of revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received, in connection with the foreign distribution of *Making the Band 4*.

<u>RESPONSE</u>:

23

<u>INTERROGATORY NO. 19</u>:

Identify with specificity the date and amount of each and every payment made by MTV to Trans Continental in connection with any season of *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

<u>RESPONSE</u>:

<u>INTERROGATORY NO. 20</u>:

Identify with specificity the amount of revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received in connection with any product placement/integration deals with season three of *Making the Band,*, *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*, including the date of the agreement and the names of the contracting parties.

<u>RESPONSE</u>:

<u>INTERROGATORY NO. 21</u>:

Identify with specificity the amount of revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received in connection with the musical works of *O-Town, Da Band, Day 26, Danity Kane* and *Donnie Klang*, including any and all revenues received from digital downloads, music publishing, touring, merchandise, as well as any management fee.

**RESPONSE:**

<u>INTERROGATORY NO. 22</u>:

Identify with specificity each and every individual or entity, including those employed or engaged by any and all MTV-related, sister or affiliated entities, which are involved, in any way, in selling advertisement spots in connection with season three of *Making the Band,*, *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

RESPONSE:

MTV NETWORKS, INC.

By_____

_____
(print)

_____
(title)

STATE OF _____ )
                       ) ss:
COUNTY OF _____ )

      The foregoing Responses to these Interrogatories were acknowledged before me this _____ day of _____, 2008, by _____, who is personally known to me or produced identification and, after being sworn, averred that he/she is duly authorized to execute the foregoing Responses and then subscribed to the foregoing.

                              _____
                              NOTARY PUBLIC, STATE OF _____

28

Dated:     October 31, 2008                    Respectfully submitted,

                                               SILVERMAN COSGROVE & SAMMATARO
                                               *Special Litigation Counsel for Soneet R. Kapila,*
                                               *as Chapter 11 Trustee for the bankruptcy estate of*
                                               *Trans Continental Television Productions, Inc.*
                                               One Biscayne Tower
                                               2 South Biscayne Boulevard
                                               Miami, Florida 33131
                                               Telephone:   (305) 377-1666
                                               Facsimile:   (305) 377-1664
                                               jsammataro@scs-legal.com

                                               By: _____
                                                   JAMES G. SAMMATARO
                                                   Florida Bar No. 0520292

29

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Trans Continental's First Set of Interrogatory Requests was served via scanned e-mail and United States mail on this day of 31st October, 2008 to:

**Carol C. Lumpkin, Esq.**
K & L Gates, LLP
Wachovia Financial Center
Suite 3900
200 South Biscayne Boulevard
Miami, Florida 33131-2399

James G. Sammataro

30

# COMPOSITE

# EXHIBIT B-1

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al*

        Debtor.

Case No. 6:07-bk-00761-ABB
Jointly Administered
Chapter 11

_____/

SONEET KAPILA, Chapter 11 Trustee
for TRANS CONTINENTAL TELEVISION
PRODUCTIONS, INC.,

               Plaintiffs,

     v.

MTV NETWORKS COMPANY,

             Defendant.

Adv. No.:  6:08-ap-00157-ABB

_____/

## TRANS CONTINENTAL'S SECOND SET OF INTERROGATORY REQUESTS
## TO MTV NETWORKS

Pursuant to Rule 33, Fed. R. Civ. P., plaintiff, Trans Continental Television, by and through counsel, hereby propounds its Second Set of Interrogatory Requests to defendant, MTV Networks, a division of Viacom International, Inc. ("MTV") and requests that MTV answer each of the following interrogatories (the "Interrogatories"), separately and fully in writing, under oath.   MTV is subject to a duty to supplement all responses to these Interrogatories in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

### Instructions and Definitions

The following definitions and instructions shall apply to Trans Continental's Interrogatories:

1.      Where knowledge or information in the possession of MTV is requested, such request includes knowledge and information within the possession, custody, or control of MTV's

agents, officers, directors, employees, representatives, servants, accountants, attorneys, or any other persons acting or purporting to act on MTV's behalf.

2.      As used in these Interrogatories, the term "communication" shall mean any oral or written utterance, notation or statement of any nature whatsoever, by or to whomsoever made, including but not limited to correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings between or among two or more persons.

3.      As used in these Interrogatories, the term "document" shall have the broadest meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure and means any writing of any kind, including originals and all non-identical copies (whether different from the original by reason of any notation made on such copies or otherwise). This shall include, without limitation, the following items, whether printed or reproduced by any process, or written or produced by hand or stored in computer memory, magnetic or hard disk or other data storage medium, and whether or not claimed to be privileged, confidential or otherwise excludable from discovery, namely, notes, letters, correspondence, communications, e-mails, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or meetings, diaries, reports, laboratory and research reports and notebooks, recorded experiments, charts, plans, drawings, diagrams, schematic diagrams, source code, object code, illustrations, product descriptions, product analyses, requests for proposals, documents related to proposed or actual product improvements or changes, users manuals or guides, installation guides or manuals, technical descriptions or specifications, product repair manuals or guides, photographs, video images, software flow charts or descriptions or specifications, product functional descriptions or specifications, minutes or records of meetings, summaries of interviews, reports, or investigations, opinions or reports of consultants,

reports of patent searches, patent appraisals, opinions of counsel, agreements, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of documents, and all other material fixed in a tangible medium of whatever kind known to you or in your possession, custody, or control.

4.   "Identify," "identity," and "describe":

(a)   When used in reference to a person, shall mean to state the person's full name, present or last known residence and business addresses, business or official affiliation, and present or last know business and home telephone numbers;

(b)   When used in reference to an act, transaction, or conduct, shall mean to state the event(s) constituting such act, the location, date, time and place of the event, transaction or conduct, and the person(s) participating, present, or involved;

(c)   When used in reference to a communication, shall mean to state the full name and address of each person participating in the communication and to state the date, manner, place, and substance of the communication; and

(d)   When used in reference to a document, shall mean to state the number of pages and nature of the document (e.g., letter or memorandum), its title, date, present location and custodian of the document, and the name(s) of its author(s) and recipient(s).

5.   As used in these Interrogatories, the word "or" appearing in an interrogatory should not be read so as to eliminate any part of the interrogatory, but, whenever applicable, it should have the same meaning as the word "and." For example, an interrogatory stating "support or refer" should be read as "support and refer" if an answer that does both can be made.

6.   "Person" shall mean any natural individual, in any capacity whatsoever, or any entity or organization, including divisions, departments, and other units therein, and shall include, without limitation, any public or private corporation, partnership, joint venture,

voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

7.      "Representative" shall mean any agent, employee, servant, officer, director, accountant, attorney, or other person acting or purporting to act on behalf of the person in question.

8.      As used in these Interrogatories, the terms "you," "your," "yourself" and any synonym or derivative thereof shall mean MTV Networks Company, a division of Viacom and the signatory of the November 15, 2001 agreement, and each of its present and former agents, officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, accountants, attorneys, predecessors, and any person acting or purporting to act on MTV's behalf.

9.      "MTV" shall mean defendant, MTV Networks, a division of Viacom International, Inc., and its present and former agents, officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, sister entities, related entities, accountants, attorneys, predecessors, and any other person acting or purporting to act on MTV's behalf.

10.     The term "Trans Continental" means "Trans Continental Television Productions, Inc." and all others persons acting or purporting to act on its behalf.

11.     The term "Agreement," refers to the letter agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand, in connection with the development and production of an untitled Boy Band series for ABC.

12.     The term, "Amended Agreement," refers to the letter agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand, on or about

4

November 15, 2001, in connection with the MTV series featuring O-Town, entitled "Making the Band."

13.     The term, "O-Town" refers to the musical act comprised of Ashley Angel, Jacob Underwood, Erik Estrada, Trevor Penick and, after the departure of Ikaika Kahoano, Dan Miller, which was the subject of the original series, Making the Band.

14.     The term, "Making the Band," refers to the reality television series which initially aired on American Broadcasting Companies, Inc. and then later on MTV.

15.     The terms, "Sean Combs," "P. Diddy," "Puff Daddy" and "Diddy" refer to the artist/entertainer that appears in *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

16.     The term, "*Making the Band 2*" refers to the television program broadcast on MTV beginning on or about October of 2002, in which Diddy sought to find the best rappers and singers from which to assemble a new hip-hop group.

17.     The term, "*Making the Band 3*" refers to the television program broadcast on MTV in 2005, which featured Diddy and his search for the next all female group.

18.     The term, "*Making the Band 4*" refers to television program broadcast on MTV, which features Diddy, the subsequently named band, *Day26,* and Donnie Klang, and a return of *Danity Kane*, the winners of *Making the Band 3*.

19.     The term "describe" means to provide a detailed narrative account of the subject matter and to identify all documents and witnesses relating to the subject matter.

20.     The term "including" means including but not limited to.

21.     The term "any" or "each" shall be construed to include and encompass "all."

22.     The term "date" means the exact day, month, and year, if ascertainable, or, if not, the best approximation thereof.

5

23.     The use of the word "the" shall not be construed as limiting the scope of any request.

24.     The words "and" and "or" shall be used conjunctively or disjunctively, whichever makes the request, definition or instruction more inclusive.

25.     The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other as are appropriate in the context.

6

<u>SPECIFIC INTERROGATORIES</u>

<u>INTERROGATORY NO. 23</u>

Identify with specificity, and on a season-by-season basis, the per episode production cost of *Making the Band 2*.

<u>RESPONSE</u>:

7

**INTERROGATORY NO. 24**

      Identify with specificity, and on a season-by-season basis, the per episode production cost of *Making the Band 3*.

**RESPONSE**:

## INTERROGATORY NO. 25

Identify with specificity, and on a season-by-season basis, the per episode production cost of *Making the Band 4*.

## RESPONSE:

9

MTV NETWORKS, INC.


By_____


_____
(print)

_____
(title)


STATE OF _____       )
                          ) ss:
COUNTY OF _____      )


    The foregoing Responses to these Interrogatories were acknowledged before me this _____ day of _____, 2008, by _____, who is personally known to me or produced identification and, after being sworn, averred that he/she is duly authorized to execute the foregoing Responses and then subscribed to the foregoing.


_____
NOTARY PUBLIC, STATE OF _____

10

Dated:    November 11, 2008               Respectfully submitted,

**SILVERMAN COSGROVE & SAMMATARO**
*Special Litigation Counsel for Soneet R. Kapila,*
*as Chapter 11 Trustee for the bankruptcy estate of*
*Trans Continental Television Productions, Inc.*
One Biscayne Tower
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  (305) 377-1666
Facsimile:  (305) 377-1664
jsammataro@scs-legal.com

By:  *[signature]*
      JAMES G. SAMMATARO
      Florida Bar No. 0520292

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Trans Continental's First Set of Interrogatory Requests was served via scanned e-mail and United States mail on this 11th day of November, 2008 to:

**Carol C. Lumpkin, Esq.**
K& L Gates
Wachovia Financial Center
Suite 3900
200 South Biscayne Boulevard
Miami, Florida 33131-2399

James G. Sammataro

12

# COMPOSITE

# EXHIBIT B-2

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al*

    Debtor.

_____/

Case No. 6:07-bk-00761-ABB
Jointly Administered
Chapter 11

SONEET KAPILA, Chapter 11 Trustee
for TRANS CONTINENTAL TELEVISION
PRODUCTIONS, INC.,

           Plaintiffs,

   v.

MTV NETWORKS COMPANY,

          Defendant.

_____/

Adv. No.: 6:08-ap-00157-ABB

## TRANS CONTINENTAL'S THIRD SET OF INTERROGATORY REQUESTS
## TO MTV NETWORKS

Pursuant to Rule 33, Fed. R. Civ. P., plaintiff, Trans Continental Television Productions, Inc. ("Trans Continental"), by and through counsel, hereby propounds its Third Set of Interrogatory Requests[1] to defendant, MTV Networks, a division of Viacom International, Inc. ("MTV") and requests that MTV answer each of the following interrogatories (the "Interrogatories"), separately and fully in writing, under oath.   MTV is subject to a duty to supplement all responses to these Interrogatories in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

_____

[1]   Trans Continental's first two set of Interrogatory Requests contained a combined total of twenty-four (24) interrogatory requests.  As noted, in MTV's Responses to Trans Continental's First Set of Interrogatory Requests, to Trans Continental's First Requests failed to include Interrogatory Request No. 9.

<u>Instructions and Definitions</u>

The following definitions and instructions shall apply to Trans Continental's Interrogatories:

    1.     Where knowledge or information in the possession of MTV is requested, such request includes knowledge and information within the possession, custody, or control of MTV's agents, officers, directors, employees, representatives, servants, accountants, attorneys, or any other persons acting or purporting to act on MTV's behalf.

    2.     As used in these Interrogatories, the term "communication" shall mean any oral or written utterance, notation or statement of any nature whatsoever, by or to whomsoever made, including but not limited to correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings between or among two or more persons.

    3.     As used in these Interrogatories, the term "document" shall have the broadest meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure and means any writing of any kind, including originals and all non-identical copies (whether different from the original by reason of any notation made on such copies or otherwise). This shall include, without limitation, the following items, whether printed or reproduced by any process, or written or produced by hand or stored in computer memory, magnetic or hard disk or other data storage medium, and whether or not claimed to be privileged, confidential or otherwise excludable from discovery, namely, notes, letters, correspondence, communications, e-mails, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or meetings, diaries, reports, laboratory and research reports and notebooks, recorded experiments, charts, plans, drawings, diagrams, schematic diagrams, source code, object code, illustrations, product descriptions, product analyses, requests for proposals, documents related to proposed or actual product improvements or changes, users manuals or guides, installation guides or manuals, technical descriptions or specifications, product repair

Page | 2

manuals or guides, photographs, video images, software flow charts or descriptions or specifications, product functional descriptions or specifications, minutes or records of meetings, summaries of interviews, reports, or investigations, opinions or reports of consultants, reports of patent searches, patent appraisals, opinions of counsel, agreements, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of documents, and all other material fixed in a tangible medium of whatever kind known to you or in your possession, custody, or control.

4.  "Identify," "identity," and "describe":

(a)  When used in reference to a person, shall mean to state the person's full name, present or last known residence and business addresses, business or official affiliation, and present or last know business and home telephone numbers;

(b)  When used in reference to an act, transaction, or conduct, shall mean to state the event(s) constituting such act, the location, date, time and place of the event, transaction or conduct, and the person(s) participating, present, or involved;

(c)  When used in reference to a communication, shall mean to state the full name and address of each person participating in the communication and to state the date, manner, place, and substance of the communication; and

(d)  When used in reference to a document, shall mean to state the number of pages and nature of the document (e.g., letter or memorandum), its title, date, present location and custodian of the document, and the name(s) of its author(s) and recipient(s).

5.  As used in these Interrogatories, the word "or" appearing in an interrogatory should not be read so as to eliminate any part of the interrogatory, but, whenever applicable, it should have the same meaning as the word "and." For example, an interrogatory stating "support or refer" should be read as "support and refer" if an answer that does both can be made.

6.    "Person" shall mean any natural individual, in any capacity whatsoever, or any entity or organization, including divisions, departments, and other units therein, and shall include, without limitation, any public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

7.    "Representative" shall mean any agent, employee, servant, officer, director, accountant, attorney, or other person acting or purporting to act on behalf of the person in question.

8.    As used in these Interrogatories, the terms "you," "your," "yourself" and any synonym or derivative thereof shall mean MTV Networks Company, a division of Viacom and the signatory of the November 15, 2001 agreement, and each of its present and former agents, officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, accountants, attorneys, predecessors, and any person acting or purporting to act on MTV's behalf.

9.    "MTV" shall mean defendant, MTV Networks, a division of Viacom International, Inc., and its present and former agents, officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, sister entities, related entities, accountants, attorneys, predecessors, and any other person acting or purporting to act on MTV's behalf.

10.    The term "Trans Continental" means "Trans Continental Television Productions, Inc." and all others persons acting or purporting to act on its behalf.

11.    The term "Agreement," refers to the letter agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand, in connection with the development and production of an untitled Boy Band series for ABC.

12.     The term, "Amended Agreement," refers to the letter agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand, on or about November 15, 2001, in connection with the MTV series featuring O-Town, entitled "Making the Band."

13.     The term, "O-Town" refers to the musical act comprised of Ashley Angel, Jacob Underwood, Erik Estrada, Trevor Penick and, after the departure of Ikaika Kahoano, Dan Miller, which was the subject of the original series, Making the Band.

14.     The term, "Making the Band," refers to the reality television series which initially aired on American Broadcasting Companies, Inc. and then later on MTV.

15.     The terms, "Sean Combs," "P. Diddy," "Puff Daddy" and "Diddy" refer to the artist/entertainer that appears in *Making the Band 2, Making the Band 3* and *Making the Band 4*.

16.     The term, "*Making the Band 2*" refers to the television program broadcast on MTV beginning on or about October of 2002, in which Diddy sought to find the best rappers and singers from which to assemble a new hip-hop group.

17.     The term, "*Making the Band 3*" refers to the television program broadcast on MTV in 2005, which featured Diddy and his search for the next all female group.

18.     The term, "*Making the Band 4*" refers to television program broadcast on MTV, which features Diddy, the subsequently named band, *Day26,* and Donnie Klang, and a return of *Danity Kane,* the winners of *Making the Band 3.*

19.     The term "describe" means to provide a detailed narrative account of the subject matter and to identify all documents and witnesses relating to the subject matter.

20.     The term "including" means including but not limited to.

21.     The term "any" or "each" shall be construed to include and encompass "all."

22.     The term "date" means the exact day, month, and year, if ascertainable, or, if not, the best approximation thereof.

23.     The use of the word "the" shall not be construed as limiting the scope of any request.

24.     The words "and" and "or" shall be used conjunctively or disjunctively, whichever makes the request, definition or instruction more inclusive.

25.     The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other as are appropriate in the context.

<u>SPECIFIC INTERROGATORIES</u>

<u>INTERROGATORY NO. 9</u>:

State the name, current address and telephone number and present place of employment of any individual who served as a Production Accountant in connection with any season of *Making the Band*, *Making the Band 2*, *Making the Band 3* and *Making the Band 4*, and include in your response the specific season or seasons in which the individual served as the production accountant – *e.g.*, Chrystal Gyger, Production Accountant, Season Three of *Making the Band 3*).

<u>RESPONSE</u>:

MTV NETWORKS, INC.

By_____

_____
                    (print)

_____
                    (title)

STATE OF _____      )
                         ) ss:
COUNTY OF _____)

     The foregoing Responses to these Interrogatories were acknowledged before me this _____ day of _____, 2008, by _____, who is personally known to me or produced identification and, after being sworn, averred that he/she is duly authorized to execute the foregoing Responses and then subscribed to the foregoing.

_____
NOTARY PUBLIC, STATE OF _____

Dated:   December 23, 2008

Respectfully submitted,

**SILVERMAN COSGROVE & SAMMATARO**
*Special Litigation Counsel for Soneet R. Kapila,*
*as Chapter 11 Trustee for the bankruptcy estate of*
*Trans Continental Television Productions, Inc.*
One Biscayne Tower
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  (305) 377-1666
Facsimile:  (305) 377-1664
jsammataro@scs-legal.com

By: _____
     JAMES G. SAMMATARO
     Florida Bar No. 0520292

Page | 9

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Trans Continental's Third Set of Interrogatory Requests was served via scanned e-mail and United States mail on this 23rd day of December, 2008 to:

**Carol C. Lumpkin, Esq.**
K& L Gates
Wachovia Financial Center
Suite 3900
200 South Biscayne Boulevard
Miami, Florida 33131-2399

James G. Sammataro

# COMPOSITE

# EXHIBIT B-3

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al.*

Debtor.

_____ /

SONEET KAPILA, Chapter 11 Trustee for
TRANS CONTINENTAL TELEVISION            Case No. 6:10-cv-181-Orl-28
PRODUCTIONS, INC.,

Plaintiff,

v.

MTV NETWORKS, a division of Viacom,
International, Inc., VIACOM, INC.,
VIACOM, INTERNATIONAL, INC., BAD
BOY FILMS, INC. and BAD BOY
RECORDS, LLC,

Defendant.

_____ /

**TRANS CONTINENTAL TELEVISION PRODUCTION, INC.'S FIRST SET OF
INTERROGATORY REQUESTS TO VIACOM, INC.**

Pursuant to Rule 33, Fed. R. Civ. P., plaintiff, Trans Continental Television Productions,

Inc. ("Trans Continental"), by and through counsel, hereby propounds its First Set of

Interrogatory Requests to defendant, Viacom, Inc. ("Viacom") and requests that Viacom answer

each of the following interrogatories (the "Interrogatories"), separately and fully in writing,

under oath.   Viacom is subject to a duty to supplement all responses to these Interrogatories in

accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

**Instructions and Definitions**

The following definitions and instructions shall apply to Trans Continental's Interrogatories:

1.      Where knowledge or information in the possession of Viacom is requested, such request includes knowledge and information within the possession, custody, or control of Viacom's agents, officers, directors, employees, representatives, servants, accountants, attorneys, or any other persons acting or purporting to act on Viacom's behalf.

2.      As used in these Interrogatories, the term "communication" shall mean any oral or written utterance, notation or statement of any nature whatsoever, by or to whomsoever made, including but not limited to correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings between or among two or more persons.

3.      As used in these Interrogatories, the term "document" shall have the broadest meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure and means any writing of any kind, including originals and all non-identical copies (whether different from the original by reason of any notation made on such copies or otherwise). This shall include, without limitation, the following items, whether printed or reproduced by any process, or written or produced by hand or stored in computer memory, magnetic or hard disk or other data storage medium, and whether or not claimed to be privileged, confidential or otherwise excludable from discovery, namely, notes, letters, correspondence, communications, e-mails, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or meetings, diaries, reports, laboratory and research reports and notebooks, recorded experiments, charts, plans, drawings, diagrams, schematic diagrams, source code, object code, illustrations, product descriptions, product analyses, requests for proposals, documents related to proposed or actual product improvements or changes, users manuals or guides, installation guides or manuals, technical descriptions or specifications, product repair manuals or guides, photographs, video images, software flow charts or descriptions or

specifications, product functional descriptions or specifications, minutes or records of meetings, summaries of interviews, reports, or investigations, opinions or reports of consultants, reports of patent searches, patent appraisals, opinions of counsel, agreements, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of documents, and all other material fixed in a tangible medium of whatever kind known to you or in your possession, custody, or control.

4.    "Identify," "identity," and "describe":

(a)    When used in reference to a person, shall mean to state the person's full name, present or last known residence and business addresses, business or official affiliation, and present or last know business and home telephone numbers;

(b)    When used in reference to an act, transaction, or conduct, shall mean to state the event(s) constituting such act, the location, date, time and place of the event, transaction or conduct, and the person(s) participating, present, or involved;

(c)    When used in reference to a communication, shall mean to state the full name and address of each person participating in the communication and to state the date, manner, place, and substance of the communication; and

(d)    When used in reference to a document, shall mean to state the number of pages and nature of the document (e.g., letter or memorandum), its title, date, present location and custodian of the document, and the name(s) of its author(s) and recipient(s).

5.    As used in these Interrogatories, the word "or" appearing in an interrogatory should not be read so as to eliminate any part of the interrogatory, but, whenever applicable, it should have the same meaning as the word "and." For example, an interrogatory stating "support or refer" should be read as "support and refer" if an answer that does both can be made.

6.    "Person" shall mean any natural individual, in any capacity whatsoever, or any entity or organization, including divisions, departments, and other units therein, and shall

include, without limitation, any public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

7.      "Representative" shall mean any agent, employee, servant, officer, director, accountant, attorney, or other person acting or purporting to act on behalf of the person in question.

8.      As used in these Interrogatories, the terms "you," "your," "yourself" and any synonym or derivative thereof shall mean Viacom, Inc., and each of its present and former agents, officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, accountants, attorneys, predecessors, and any person acting or purporting to act on Viacom's behalf.

9.      The term "MTV" shall mean defendant, MTV Networks, a division of Viacom International, Inc., and its present and former agents, officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, sister entities, related entities, accountants, attorneys, predecessors, and any other person acting or purporting to act on MTV's behalf.

10.      The term "Viacom" shall mean defendant, Viacom, Inc., and its present and former agents, officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, sister entities, related entities, accountants, attorneys, predecessors, and any other person acting or purporting to act on Viacom's behalf.

11.      The term "Action" shall refer to the instant lawsuit styled *Soneet Kapila, Chapter 11 Trustee for Trans Continental Television Productions, Inc. v. MTV Networks, et al.*, Case No. 6:10-cv-181-Orl-28.

12.     The term "ESI" shall mean electronically stored information as that term is defined in the Federal Rules of Civil Procedure.

13.     The term "Trans Continental" means "Trans Continental Television Productions, Inc." and its present and former agents, officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, sister entities, related entities, accountants, attorneys, predecessors, and any other person acting or purporting to act on Trans Continental's behalf.

14.     The term "Agreement," refers to the letter agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand, on January 7, 2000 in connection with the development and production of an untitled Boy Band series.

15.     The term, "Amended Agreement," refers to the letter agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand, on or about November 15, 2001, in connection with the MTV series entitled "Making the Band."

16.     The term, "O-Town" refers to the musical act comprised of Ashley Angel, Jacob Underwood, Erik Estrada, Trevor Penick and, after the departure of Ikaika Kahoano, Dan Miller, which was the subject of the original series, Making the Band.

17.     The term, "Making the Band," refers to the reality television series which initially aired on American Broadcasting Companies, Inc. and then later on MTV.

18.     The terms, "Sean Combs," "P. Diddy," "Puff Daddy" and "Diddy" refer to the artist/entertainer that appears in *Making the Band 2, Making the Band 3* and *Making the Band 4*.

19.     The term, "*Making the Band 2*" refers to the television program broadcast on MTV beginning on or about October of 2002, in which Diddy sought to find the best rappers and singers from which to assemble a new hip-hop group.

20.     The term, *"Making the Band 3"* refers to the television program broadcast on MTV in 2005, which featured Diddy and his search for the next all female group.

21.     The term, *"Making the Band 4"* refers to television program broadcast on MTV, which features Diddy, the subsequently named band, *Day26,* and Donnie Klang, and a return of *Danity Kane*, the winners of *Making the Band 3*.

22.     The term "Other Litigation Holds" means litigation holds issued by you or MTV from 1999 to the present for matters other than this Action.

23.     The term "describe" means to provide a detailed narrative account of the subject matter and to identify all documents and witnesses relating to the subject matter.

24.     The term "including" means including but not limited to.

25.     The term "any" or "each" shall be construed to include and encompass "all."

26.     The term "date" means the exact day, month, and year, if ascertainable, or, if not, the best approximation thereof.

27.     The use of the word "the" shall not be construed as limiting the scope of any request.

28.     The words "and" and "or" shall be used conjunctively or disjunctively, whichever makes the request, definition or instruction more inclusive.

29.     The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other as are appropriate in the context.

30.     The relevant time frame for answering the interrogatories unless otherwise stated is 1999 to the present.

## INTERROGATORIES

**INTERROGATORY NO. 1**:

    Please identify the job titles and responsibilities of all individuals which served as records custodians in this action (as listed on Andrew J. Ehrlich's December 16, 2010 correspondence attached hereto as **Exhibit A**).

**RESPONSE**:

**INTERROGATORY NO. 2**:

Please state whether the records custodians identified on Exhibit A were subject to Other Litigation Holds, and identify the time period(s) of the Other Litigation Hold(s).

**RESPONSE**:

**INTERROGATORY REQUEST NO. 3:**

Please state whether the individuals listed in Request Nos. 7 to 24 of Trans Continental's Second Request for Admissions to MTV (which is attached hereto as **Exhibit B**) were subject to Other Litigation Holds, and for each individual state the time period(s) the Other Litigation Hold(s) was in place.

**RESPONSE**:

**INTERROGATORY REQUEST NO. 4:**

State whether the ESI and hard copy documents of the individuals listed in your response to Interrogatory No. 3 were searched during the collection of documents responsive to Trans Continental's document requests in this Action, and state whether such documents were produced.

**RESPONSE:**

**INTERROGATORY REQUEST NO. 5:**

Please state whether George Eichen was subject to a litigation hold when he separated from his employment with MTV in 2002, and state the time period the subject litigation hold was in place for Mr. Eichen.

**RESPONSE:**

## INTERROGATORY REQUEST NO. 6:

State whether Mr. Eichen's ESI and hard copy documents were searched during the collection of documents responsive to Trans Continental's document requests in this Action, and state whether such documents were produced.

## RESPONSE:

**INTERROGATORY REQUEST NO. 7:**

Please state whether Ken Mok was subject to a litigation hold when he separated from his employment with MTV in 2002, state the time period the subject litigation hold was in place for Mr. Mok.

**RESPONSE:**

**INTERROGATORY REQUEST NO. 8:**

State whether Mr. Mok's ESI and hard copy documents were searched during the collection of documents responsive to Trans Continental's document requests in this Action, and state whether such documents were produced.

**RESPONSE:**

**INTERROGATORY REQUEST NO. 9:**

Please list all search terms used to search MTV's document management system, share drives, personal network shares, exchange server, and other communal electronic storage spaces for documents that were not in the possession of MTV's records custodians in this Action (as Warren Solow testified during his December 17, 2010 deposition on pp. 138-139).

**RESPONSE:**

**INTERROGATORY NO. 10:**

State whether the search terms described in response to Interrogatory No. 9 resulted in the production of documents to Trans Continental in this Action.

**RESPONSE:**

**INTERROGATORY REQUEST NO. 11:**

Explain why you failed to collect and/or produce to Trans Continental in this Action the documents attached hereto as **Composite Exhibit C**, which are letters authored by Virginia Lazalde-McPherson and emails either sent to or from Virginia Lazalde-McPherson.

**RESPONSE:**

**INTERROGATORY REQUEST NO. 12:**

   State when you searched for unexecuted version(s), draft(s), redline(s), and ESI of the Agreement, and provide the Bates-numbers for any documents that were collected from this search.

**RESPONSE:**

**INTERROGATORY REQUEST NO. 13:**

State whether ESI exists for any unexecuted version(s), draft(s), or redline(s) of the Agreement, and if it does not, please explain why not.

**RESPONSE:**

<u>**INTERROGATORY REQUEST NO. 14:**</u>

State when you searched for unexecuted version(s), draft(s), redline(s), and ESI of the Amended Agreement, and provide the Bates-numbers for any documents that were collected from this search.

<u>**RESPONSE**</u>:

**INTERROGATORY NO. 15:**

State whether ESI exists for any unexecuted version(s), draft(s), or redline(s) of the Amended Agreement, and if it does not, please explain why not.

**RESPONSE:**

**INTERROGATORY REQUEST NO. 16:**

      State whether MTV-MTB00158996 of Trans Continental's Exhibit 200 (which is attached hereto as **Exhibit D**) was created, last edited, and/or emailed on MTV's document management system on September 7, 1999.

**RESPONSE**:

**INTERROGATORY NO. 17:**

Please identify who drafted or authored Plaintiff's Exhibit 200, and if it is impossible to determine the identity of this person, please explain why.

INTERROGATORY NO. 18:

State whether the term "joint venture" was added by MTV to MTV-MTB00158996 (as evidenced by the ESI attached as page 4 to Trans Continental's Exhibit 200), and if you are unable to respond, please explain why.

RESPONSE:

VIACOM, INC.

By_____

_____
(print)

_____
(title)

STATE OF _____)
                        ) ss:
COUNTY OF _____)

The foregoing Responses to these Interrogatories were acknowledged before me this

_____ day of _____, 2011, by _____, who is personally

known to me or produced identification _____, and after being sworn, averred

that he/she is duly authorized to execute the foregoing Responses and then subscribed to the

foregoing.

NOTARY PUBLIC, STATE OF _____

My commission expires:          _____
                                Print name:

Dated:  February 3, 2011.

Respectfully submitted,

**KASOWITZ,    BENSON,    TORRES    &
FRIEDMAN LLP**
*Attorneys for plaintiff, Soneet Kapila in his
capacity as the federally appointed Chapter 11
Trustee   charged   with   administrating   the
bankruptcy estate of Trans Continental Television
Productions, Inc.*
Four Seasons Tower
1441 Brickell Avenue, Suite 1420
Miami, Florida  33131
Telephone:  (305) 377-1666
Facsimile:  (305) 377-1664
jsammataro@kasowitz.com

By:  _____
James G. Sammataro
Florida Bar Number: 0520292
Courtney Caprio
Florida Bar No. 0933961

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 3, 2011, a true and correct copy of the foregoing was hand delivered upon Andrew J. Ehrlich, Esq. and served via U.S. Mail upon all remaining counsel listed below.

**Andrew J. Ehrlich, Esq.**
aehrlich@paulweiss.com
Paul, Weiss, Rifkind, Wharton
& Garrison LLP
*Counsel for MTV Networks, Viacom, Inc and*
*Viacom International, Inc.*
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:  (212) 373-3000
Facsimile: (212) 757-3990

**Brian A. McDowell, Esq.**
brian.mcdowell@hklaw.com
Holland & Knight, LLP
*Counsel for MTV Networks, Viacom, Inc and*
*Viacom International, Inc.*
200 South Orange Avenue
Suite 2600
Orlando, Florida 32801
Telephone:  (407) 425-8500
Facsimile: (407) 244-5288

**Jonathan Davis, Esq.**
Jonathan D. Davis, P.C.
*Counsel for Bad Boy Films, Inc. and Bad*
*Boy Records, LLC*
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone: (212) 687-5464
Facsimile: (212) 557-0565

**Daniel E. Traver, Esq.**
Gray Robinson, P.A.
*Counsel for Bad Boy Films, Inc. and Bad*
*Boy Records, LLC*
301 East Pine Street, Suite 1400
P.O. Box 3068
Orlando, Florida 32801
Telephone: (407) 843-8880
Facsimile: (407) 244-5690

_____
Attorney

# COMPOSITE

# EXHIBIT B-4

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al.*

Debtor.

_____ /

SONEET KAPILA, Chapter 11 Trustee for
TRANS CONTINENTAL TELEVISION
PRODUCTIONS, INC.,

Case No. 6:10-cv-181-Orl-28

Plaintiff,

v.

MTV NETWORKS, a division of Viacom,
International, Inc., VIACOM, INC.,
VIACOM, INTERNATIONAL, INC., BAD
BOY FILMS, INC. and BAD BOY
RECORDS, LLC,

Defendant.

_____ /

### TRANS CONTINENTAL TELEVISION PRODUCTION, INC.'S FIRST SET OF INTERROGATORY REQUESTS TO VIACOM INTERNATIONAL, INC.

Pursuant to Rule 33, Fed. R. Civ. P., plaintiff, Trans Continental Television Productions, Inc. ("Trans Continental"), by and through counsel, hereby propounds its First Set of Interrogatory Requests to defendant, Viacom International, Inc. ("Viacom International") and requests that Viacom International answer each of the following interrogatories (the "Interrogatories"), separately and fully in writing, under oath. Viacom International is subject to a duty to supplement all responses to these Interrogatories in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

### Instructions and Definitions

The following definitions and instructions shall apply to Trans Continental's Interrogatories:

1.    Where knowledge or information in the possession of Viacom International is requested, such request includes knowledge and information within the possession, custody, or control of Viacom International's agents, officers, directors, employees, representatives, servants, accountants, attorneys, or any other persons acting or purporting to act on Viacom International's behalf.

2.    As used in these Interrogatories, the term "communication" shall mean any oral or written utterance, notation or statement of any nature whatsoever, by or to whomsoever made, including but not limited to correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings between or among two or more persons.

3.    As used in these Interrogatories, the term "document" shall have the broadest meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure and means any writing of any kind, including originals and all non-identical copies (whether different from the original by reason of any notation made on such copies or otherwise). This shall include, without limitation, the following items, whether printed or reproduced by any process, or written or produced by hand or stored in computer memory, magnetic or hard disk or other data storage medium, and whether or not claimed to be privileged, confidential or otherwise excludable from discovery, namely, notes, letters, correspondence, communications, e-mails, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or meetings, diaries, reports, laboratory and research reports and notebooks, recorded experiments, charts, plans, drawings, diagrams, schematic diagrams, source code, object code, illustrations, product descriptions, product analyses, requests for proposals, documents related to proposed or actual product improvements or changes, users manuals or guides, installation guides or manuals, technical descriptions or specifications, product repair

manuals or guides, photographs, video images, software flow charts or descriptions or specifications, product functional descriptions or specifications, minutes or records of meetings, summaries of interviews, reports, or investigations, opinions or reports of consultants, reports of patent searches, patent appraisals, opinions of counsel, agreements, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of documents, and all other material fixed in a tangible medium of whatever kind known to you or in your possession, custody, or control.

4.  "Identify," "identity," and "describe":

    (a)  When used in reference to a person, shall mean to state the person's full name, present or last known residence and business addresses, business or official affiliation, and present or last know business and home telephone numbers;

    (b)  When used in reference to an act, transaction, or conduct, shall mean to state the event(s) constituting such act, the location, date, time and place of the event, transaction or conduct, and the person(s) participating, present, or involved;

    (c)  When used in reference to a communication, shall mean to state the full name and address of each person participating in the communication and to state the date, manner, place, and substance of the communication; and

    (d)  When used in reference to a document, shall mean to state the number of pages and nature of the document (e.g., letter or memorandum), its title, date, present location and custodian of the document, and the name(s) of its author(s) and recipient(s).

5.  As used in these Interrogatories, the word "or" appearing in an interrogatory should not be read so as to eliminate any part of the interrogatory, but, whenever applicable, it should have the same meaning as the word "and." For example, an interrogatory stating "support or refer" should be read as "support and refer" if an answer that does both can be made.

6.    "Person" shall mean any natural individual, in any capacity whatsoever, or any entity or organization, including divisions, departments, and other units therein, and shall include, without limitation, any public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

7.    "Representative" shall mean any agent, employee, servant, officer, director, accountant, attorney, or other person acting or purporting to act on behalf of the person in question.

8.    As used in these Interrogatories, the terms "you," "your," "yourself" and any synonym or derivative thereof shall mean Viacom International and each of its present and former agents, officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, accountants, attorneys, predecessors, and any person acting or purporting to act on Viacom International's behalf.

9.    The term "MTV" shall mean defendant, MTV Networks, a division of Viacom International, Inc., and its present and former agents, officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, sister entities, related entities, accountants, attorneys, predecessors, and any other person acting or purporting to act on MTV's behalf.

10.   The term "Viacom" shall mean defendant, Viacom, Inc., and its present and former agents, officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, sister entities, related entities, accountants, attorneys, predecessors, and any other person acting or purporting to act on Viacom's behalf.

11.   The term "Trans Continental" means "Trans Continental Television Productions, Inc." and its present and former agents, officers, directors, employees, servants, representatives,

parents, affiliates, subsidiaries, sister entities, related entities, accountants, attorneys, predecessors, and any other person acting or purporting to act on Trans Continental's behalf.

12.     The term "Agreement," refers to the letter agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand, on or about January 7, 2000 in connection with the development and production of an untitled Boy Band series.

13.     The term, "Amended Agreement," refers to the letter agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand, on or about November 15, 2001, in connection with the MTV series entitled "Making the Band."

14.     The term, "O-Town" refers to the musical act comprised of Ashley Angel, Jacob Underwood, Erik Estrada, Trevor Penick and, after the departure of Ikaika Kahoano, Dan Miller, which was the subject of the original series, Making the Band.

15.     The term, "Making the Band," refers to the reality television series which initially aired on American Broadcasting Companies, Inc. and then later on MTV.

16.     The terms, "Sean Combs," "P. Diddy," "Puff Daddy" and "Diddy" refer to the artist/entertainer that appears in *Making the Band 2, Making the Band 3* and *Making the Band 4.*

17.     The term, "*Making the Band 2*" refers to the television program broadcast on MTV beginning on or about October of 2002, in which Diddy sought to find the best rappers and singers from which to assemble a new hip-hop group.

18.     The term, "*Making the Band 3*" refers to the television program broadcast on MTV in 2005, which featured Diddy and his search for the next all female group.

19.     The term, "*Making the Band 4*" refers to television program broadcast on MTV, which features Diddy, the subsequently named band, *Day26,* and Donnie Klang, and a return of *Danity Kane*, the winners of *Making the Band 3.*

20.     The term "There and Back" refers to the reality television series broadcast on MTV beginning on or around 2006 which chronicled the efforts of former O-Town member, Ashley Parker Angel, to launch his solo career while providing for his new family.

21.     The term "Taquita & Kaui" refers to the reality television series broadcast on MTV beginning on or around 2007, which featured two of the female contestants from Making the Band III, trying to make their dreams come true in Las Vegas, Nevada.

22.     The term, "Making His Band," refers to the television program broadcast on MTV, which aired on MTV on or about July of 2009.

23.     The term "describe" means to provide a detailed narrative account of the subject matter and to identify all documents and witnesses relating to the subject matter.

24.     The term "including" means including but not limited to.

25.     The term "any" or "each" shall be construed to include and encompass "all."

26.     The term "date" means the exact day, month, and year, if ascertainable, or, if not, the best approximation thereof.

27.     The use of the word "the" shall not be construed as limiting the scope of any request.

28.     The words "and" and "or" shall be used conjunctively or disjunctively, whichever makes the request, definition or instruction more inclusive.

29.     The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other as are appropriate in the context.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Explain your decision to cease registering the copyright in Making the Band in the names of both Viacom International and Trans Continental, identify who made this decision, and state when the decision was made.

### RESPONSE:

**INTERROGATORY NO. 2:**

      Please explain why MTV and/or Viacom use Viacom International to serve as the registered copyright owner of all copyrights associated with television programs created by Viacom-owned entities.

**RESPONSE:**

**INTERROGATORY NO. 3**:

Explain your decision to register the trademark in Making the Band solely in your name, identify who made this decision, and state when the decision was made.

**RESPONSE**:

<u>**INTERROGATORY NO 4:**</u>

Please state whether you have entered into any licensing agreements with third parties for the broadcast of Taquita and Kaui, Making His Band, and There and Back.

<u>**RESPONSE:**</u>

**INTERROGATORY NO. 5:**

Please state the factual basis for Mr. Warren Solow's declaration filed in March 10 in the action styled *Viacom Int'l, Inc. v. Youtube, Inc.*, Case No. 07-Civ-2103 (LLS) that you are the sole owner of the Making the Band IV copyright.

**RESPONSE:**

**INTERROGATORY NO. 6:**

Please explain why the decision was made not to register copyrights in Making His Band, There and Back, and Taquita and Kaui, and please identify who made this decision.

**RESPONSE:**

## INTERROGATORY NO. 7:

Please also explain why you abandoned your attempt to obtain a trademark registration for Taquita and Kaui, please state when this decision was made, and identify who made the decision.

## RESPONSE:

**INTERROGATORY NO. 8:**

Do you dispute the acuracy of the hand-written information provided by Jackie French during her January 27, 2009 (which was marked as Plaintiff's Exhibit 67, and attached hereto as **Exhibit A**), evidencing the number of times each episode of Making the Band 2.1 through 4.3 aired and, if so, please explain the basis for your dispute.

**RESPONSE:**

**INTERROGATORY NO. 9:**

      Do you dispute that according to Plaintiff's Exhibit 67, a total number of 1,510 thirty (30) minute episodes of Making the Band aired and, if so, please state the total number of episodes of Making the Band 2.1 through 3.3 that were broadcast between September 13, 2002 and October 14, 2008, and, if so, please explain the basis for your dispute.

**RESPONSE:**

**INTERROGATORY NO. 10:**

      Do you dispute that according to Plaintiff's Exhibit 67, total number of 755 sixty (60) minute episodes of Making the Band aired and, if so, please state the total number of episodes of Making the Band 4.1 through 4.3 that were broadcast between September 13, 2002 and October 14, 2008, and, if so, please explain the basis for your dispute.

**RESPONSE:**

**INTERROGATORY NO. 11:**

Do you dispute the accuracy of Ira Sterling's deposition testimony that, as a general rule, a thirty (30) minute television program would typically contain approximately twenty-one and a half (21.5) minutes of program time and an approximate range of six (6) to seven and a half (7.5) minutes for national commercial time, and, if so, please explain the basis for your dispute.

**RESPONSE:**

**INTERROGATORY NO. 12:**

Do you dispute the accuracy of Ira Sterling's deposition testimony that, as a general rule, a sixty (60) minute television program would typically contain between forty-one (41) to forty-three (43) minutes of program time and an approximate range of twelve and half (12.5) to fifteen (15) minutes of national commercial time, and, if so, please explain the basis for your dispute.

**RESPONSE:**

**INTERROGATORY NO. 13:**

In light of the information provided by Ms. French in Plaintiff's Exhibit 67 and given Mr. Sterling's testimony as to the approximate range of national commercial time contained with the standard thirty (30) and sixty (60) minute programs, please explain the basis for your claim that the episodes of Making the Band broadcast between September 13, 2002 and October 14, 2008 contained "26,899 :30 equivalent spots" (as stated in Marie-Amelie George's June 18, 2010 e-mail, a copy of which is attached hereto as **Exhibit B**).

**RESPONSE:**

**INTERROGATORY NO. 14:**

Specify in detail the basis for your belief that for all of the telecasts of Making the Band broadcast between September 13, 2002 and October 14, 2008, there was a total of "26,899 :30 equivalent spots."

**RESPONSE:**

**INTERROGATORY NO. 15:**

Do you dispute that based on the telecast of 1,510 broadcasts of thirty (30) minute episodes of Making the Band and 755 broadcasts of sixty (60) minute episodes of Making the Band between September 13, 2002 and October 14, 2008 that the running of "26,899 :30 second equivalent spots" amounts to an average of four and a half (4.5) commercials per thirty (30) minutes of program time, and, if so, please explain the basis for your dispute.

**RESPONSE:**

**VIACOM INTERNATIONAL, INC.**

By_____

_____
(print)

_____
(title)

STATE OF _____ )
                        ) ss:
COUNTY OF _____ )

   The foregoing Responses to these Interrogatories were acknowledged before me this

_____ day of _____, 2011, by _____, who is personally

known to me or produced identification _____. and after being sworn, averred

that he/she is duly authorized to execute the foregoing Responses and then subscribed to the

foregoing.

                              NOTARY PUBLIC, STATE OF _____

My commission expires:        _____
                              Print name:

Dated:    February 3, 2011.

Respectfully submitted,

**KASOWITZ,    BENSON,    TORRES    &
FRIEDMAN LLP**
*Attorneys for plaintiff, Soneet Kapila in his
capacity as the federally appointed Chapter 11
Trustee charged with administrating the
bankruptcy estate of Trans Continental Television
Productions, Inc.*
Four Seasons Tower
1441 Brickell Avenue, Suite 1420
Miami, Florida 33131
Telephone:  (305) 377-1666
Facsimile:  (305) 377-1664
jsammataro@kasowitz.com

By: _____
James G. Sammataro
Florida Bar Number: 0520292
Courtney Caprio
Florida Bar No. 0933961

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that on February 3, 2011, a true and correct copy of the foregoing hand-delivered upon Andrew J. Ehrlich, Esq. and served via U.S. Mail upon all remaining counsel listed below.

**Andrew J. Ehrlich, Esq.**
aehrlich@paulweiss.com
Paul, Weiss, Rifkind, Wharton
& Garrison LLP
*Counsel for  Networks, Viacom, Inc and*
*Viacom International, Inc.*
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:  (212) 373-3000
Facsimile: (212) 757-3990

**Jonathan Davis, Esq.**
Jonathan D. Davis, P.C.
*Counsel for Bad Boy Films, Inc. and Bad*
*Boy Records, LLC*
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone: (212) 687-5464
Facsimile: (212) 557-0565

**Brian A. McDowell, Esq.**
brian.mcdowell@hklaw.com
Holland & Knight, LLP
*Counsel for MTV Networks, Viacom, Inc and*
*Viacom International, Inc.*
200 South Orange Avenue
Suite 2600
Orlando, Florida 32801
Telephone:  (407) 425-8500
Facsimile: (407) 244-5288

**Daniel E. Traver, Esq.**
Gray Robinson, P.A.
*Counsel for Bad Boy Films, Inc. and Bad*
*Boy Records, LLC*
301 East Pine Street, Suite 1400
P.O. Box 3068
Orlando, Florida 32801
Telephone: (407) 843-8880
Facsimile: (407) 244-5690

Attorney