UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SONEET KAPILA, Chapter 11 Trustee
for TRANS CONTINENTAL
TELEVISION PRODUCTIONS, INC.,          Case No.: 6:10-cv-00181-Orl-28-DAB

        Plaintiff,

v.

MTV NETWORKS COMPANY, a division
of Viacom International, Inc., et al.,

        Defendants.
_____/

**MTVN'S MEMORANDUM IN OPPOSITION TO THE TRUSTEE'S
MOTION TO COMPEL MTV NETWORKS TO PRODUCE DOCUMENTS**

# Table of Authorities

**Page(s)**

## CASES

*Broughton* v. *City of Jacksonville*,
 No. 3:06-cv-234-J-32MCR, 2007 WL 2964174 (M.D. Fla. Oct. 10, 2007) ...................... 12

*Cunningham* v. *Senez Roofing, LLC*,
 No. 6:08-cv-1648-Orl-31DAB, 2008 WL 5158283 (M.D. Fla. Dec. 9, 2008) ................. 12

*Dunkin Donuts Inc.* v. *Mary's Donuts, Inc.*,
 No. 01-0392-CIV-GOLD, 2001 WL 34079319 (S.D. Fla. Nov. 1, 2001) ...................... 4, 6

*Gibbons* v. *Food Lion*,
 No. 98-1197-CIV-T-23F, 1999 WL 33226474 (M.D. Fla. Feb.19, 1999) ......................... 7

*Maddow* v. *Procter & Gamble Co. Inc.*,
 107 F.3d 846 (11th Cir. 1997) ................................................................................... 3, 14

*Maxwell* v. *Health Ctr. of Lake City, Inc.*,
 No. 3:05-CV-1056-J-32MCR, 2006 WL 1627020 (M.D. Fla. June 6, 2006) .................... 7

*Morroni* v. *Gunderson*,
 169 F.R.D. 168 (M.D. Fla. 1996) ................................................................................... 12

*Pendlebury* v. *Starbucks Coffee Co.*,
 No. 04-80521-CIV, 2005 WL 2105024 (S.D. Fla. Aug. 29, 2005) ........................... 3, 4, 6

*Reist* v. *Source Interlink Cos. Inc.*,
 No. 2:10-cv-269-FtM-36SPC, 2010 WL 4940096 (M.D. Fla. Nov. 29, 2010) ................ 14

*Siemens Aktiengesellschaft* v. *Jutai 661 Equipamentos Electronicos, LTDA.*,
 No. 08-21568-CIV, 2009 WL 800143 (S.D. Fla. Mar. 25, 2009) ...................................... 7

*Soto* v. *Genentech, Inc.*,
 No. 08-60331-CIV, 2008 WL 4621832 (S.D. Fla. Oct. 17, 2008) ................................... 14

*Weber* v. *Finker*,
 2008 U.S. Dist. LEXIS 31067 (M.D. Fla. Apr. 15, 2008) .................................................. 5

## OTHER AUTHORITIES

Ashish S. Prasad & Tara Thompson, *U.S. Discovery of Electronic Documents in Europ*, 5 SEDONA CONF. J. 119 (2004) .......................................................................... 8

Fed. R. Civ. P. 26(b)(2)(C)(iii) ............................................................................................ 7

Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii) .................................................................................... 14

Local Rule 3.01(g) ........................................................................................................... 12

Defendant MTV Networks ("MTVN"), a division of Viacom International Inc., respectfully submits this memorandum of law in opposition to Plaintiff Soneet R. Kapila, as Chapter 11 Trustee ("Trustee") for Trans Continental Television Productions, Inc.'s ("Trans Continental" or "TC") Motion to Compel MTV Networks to Produce Documents.

## INTRODUCTION

On the eve of the close of discovery, the Trustee served 74 new requests for production, asking for a broad array of information. Thereafter, MTVN expended enormous time and expense responding to those requests, and with respect to where there were disputes, MTVN also engaged in an extensive meet and confer process. Despite MTVN's efforts to avoid unnecessary motion practice, the Trustee has filed yet again *another* motion, this time seeking to compel three categories of documents: tax returns and supporting documents; documents related to the "Five Projects," which is a series of projects in which Lou Pearlman or TC was purportedly involved; and advertising revenue data from the airing of seasons one and two of *Making the Band I* ("MTB 1.1" and "MTB 1.2"). The Trustee's motion should be denied in its entirety.

*First*, the Trustee cannot demonstrate a compelling need for production of tax returns relating to MTVN. As an unincorporated division of Viacom International Inc. ("VII"), MTVN does not file tax returns. VII also does not file a separate tax return, but instead reports its financial information to Viacom Inc. ("Viacom"), which files a consolidated tax return for VII and its other subsidiaries. Nor should Viacom's consolidated tax returns be turned over, as they would not provide *any* information whatsoever that the Trustee claims it needs from those documents. Moreover, other than subscriber fee data

1

(which the Trustee has never specifically requested at any other time), the information the Trustee claims he needs from the tax returns has already been provided to him in numerous other documents and deposition testimony.

*Second*, the Trustee's request for documents relating to the Five Projects would require an enormous burden. MTVN owns and operates more than 100 channels throughout the world and has foreign licenses or joint ventures with 37 others. Responding to the Trustee's request would require identifying the involvement of each of those MTVN-related entities and any relevant custodians. Collecting documents in the European Union can also be challenging given differing privacy laws. Collection of documents in the U.S. to satisfy the Trustee's broad request would also impose a burden to MTVN. MTVN estimates that it would take approximately six months to collect and process the documents the Trustee seeks, unnecessarily delaying this case for information that has little relevance to the principal issues.

*Third*, with respect to the advertising data, the Trustee inexplicably filed its motion to compel before the meet and confer process concluded. When the Trustee filed its motion, MTVN had agreed to determine whether it had access to reliable advertising revenue data. MTVN learned that it could produce the data, but would have to incur an extra cost to obtain the data that it would not have otherwise had to pay if the Trustee had requested the data with its prior requests. Accordingly, MTVN informed the Trustee it would produce the data, but only if the Trustee paid the cost. MTVN has not yet received a response from the Trustee who is apparently hoping that the Court will shift the burden to MTVN.

\*        \*        \*

We respectfully submit that enough is enough. MTVN has provided the Trustee with comprehensive discovery. The Trustee's true objection to MTVN's production to date is that it does not prove his farfetched theories about the case. TC was never entitled to (and never sought) the revenue streams that the Trustee now seeks. Likewise, the burdensome nature of the production requested is itself indicative of the impracticality of the Trustee's position. Thus, the Trustee's attempt to compel MTVN to produce documents that have little or no relevance at great burden should be rejected. The time has come to move this case forward toward dispositive motions, when MTVN will demonstrate as a matter of law that the Trustee's case has no merit.

## ARGUMENT

I.  **MTVN SHOULD NOT BE COMPELLED TO PRODUCE TAX RETURNS AND SUPPORTING TAX DOCUMENTATION**

   A.  **This Court Should Adopt A Heightened Standard For The Production Of Tax Returns**

As courts repeatedly and consistently have held, the "greater weight of authority . . . has concluded that tax returns are subject to at least some level of heightened protection from disclosure."[1] *Pendlebury* v. *Starbucks Coffee Co.*, No. 04-80521-CIV, 2005

---

[1] Contrary to the Trustee's contention, the Eleventh Circuit has not yet addressed the standard for compelling production of tax returns. (Mot. at 7-8.) In *Maddow* v. *Procter & Gamble Co. Inc.,* 107 F.3d 846, 853 (11th Cir. 1997), the Eleventh Circuit held only that the district court had not abused its discretion when it ordered the production of tax returns containing information not found elsewhere. Notably (and ignored by the Trustee), the Eleventh Circuit reversed the district court's award of sanctions when the plaintiffs initially did not comply with the defendants' discovery request. *Id.* The Court explained that because "there was no in-circuit caselaw regarding the tax form issue," the plaintiff was "substantially justified in initially refusing discovery" when relying on out-of-circuit caselaw that required a showing of compelling need. *Id.*

3

WL 2105024, at *1 (S.D. Fla. Aug. 29, 2005) (citing *Terwillinger* v. *York Int'l Corp.*, 176 F.R.D 214, 217 (W.D. Va. 1997)).  Under a heightened standard, production of tax returns will be compelled only when "(1) it clearly appears that they are relevant to the subject matter of the action, and (2) a compelling need is shown because the information contained therein is not otherwise available." *Dunkin Donuts Inc.* v. *Mary's Donuts, Inc.*, No. 01-0392-CIV-GOLD, 2001 WL 34079319, at *2 (S.D. Fla. Nov. 1, 2001); *accord Pendlebury,* 2005 WL 2105024, at *2 ("[T]he Court agrees with those courts that have held that a party seeking the production of tax returns must demonstrate (1) the relevance of the tax returns to the subject matter of the dispute and (2) a compelling need for the tax returns exists because the information contained therein is not otherwise readily obtainable.").  Plaintiff simply cannot meet this burden (or even the lesser burden of showing relevance alone).

### B.     The Tax Documents Do Not Contain Relevant Information

The Trustee claims he is entitled to discovery of MTVN's profits for MTB given his claim that TC is a co-copyright owner and has a joint venture interest.[2]  (Mot. at 8.) He erroneously claims that the tax returns will contain information relating to four areas: 1) "amounts earned by MTVN on an annual basis from cable and satellite providers subscription fees"; 2) MTVN's advertising figures; 3) "how [MTVN] characterized its income streams"; and 4) "construction of the imputed license fee in the Amended Agreement."  (Mot. at 11.)

---

[2]  MTVN continues to dispute the merits of the Trustee's claims to MTVN's advertising revenue, his newly-minted theory relating to subscription fees and his interpretation of the relevant agreements.  MTVN will refute those claims in the appropriate dispositive motions.

This Court should not compel production of the tax documents. Simply put, the tax documents do not contain the information that the Trustee seeks.

As an unincorporated division of VII, MTVN does not file its own tax returns. (Velez Declaration (Ex. 1), sworn to on April 6, 2011 ¶ 3.) "MTVN's revenues are reported through VII." (*Id.* ¶ 3.) VII does not file a separate tax return, but reports its income on Viacom's tax returns. (*Id.* ¶ 4.)

Viacom reports all revenue streams for a legal entity as "gross receipts." (*Id.* ¶ 4.) "Viacom's tax returns do not reflect separate revenue figures for any division of VII, including MTVN." (*Id.* ¶ 4.)

The supporting tax documentation is no different. Specific MTVN revenues and are not discernable. (*Id.* ¶ 5.)

In short, the information that the Trustee seeks to glean from the tax documents – MTVN advertising revenue, MTVN cable and satellite providers subscription fees, characterization of MTVN income and MTVN's foreign-related income – just does not exist in the tax documents. The Trustee's motion should be denied.

### C. The Trustee Cannot Demonstrate A Compelling Need For The Tax Documents

With the exception of the cable and satellite providers subscription fees, the Trustee has had ample discovery into all of the above areas. Because the production of tax returns is inappropriate where the information they contain is "readily available from other sources," the motion should be denied. *Dunkin Donuts Inc.*, 2001 WL 34079319, at *2; *see also Pendlebury,* 2005 WL 2105024, at *2 (denying motion to compel production of tax

returns when information could be gleaned from interrogatories, depositions and requests for admissions).

Indeed, the Trustee admits that he has received relevant advertising data, but claims he needs the tax documents to prove his baseless contention that the advertising figures have been significantly underreported. (Mot. at 11.) Yet, MTVN provided a corporate representative to testify about advertising revenue giving TC the means to test the accuracy of the information MTVN provided. (*See, e.g.*, Composite Ex. 2 (Sperling Tr. 102:13-104:15; 119:23-120:21; 167:25-168:19; 185:21-188:22; 194:13-195:10).) The Trustee has had ample opportunity to assess the accuracy of the advertising data and yet has provided no basis for his bald-faced assertion that the numbers are being underreported.

Similarly, MTVN has produced documents and corporate representatives on the issue of MTVN's income and the construction of the imputed license fee. (*See, e.g.,* Composite Ex. 3 (Skoler Tr. 172:18-173:4; Cheeks Tr. 181:24-182:10; Rapaport Tr. 21:12-21:17, 23:25-25:23; MTVN 001691).) The Trustee suggests "it stretches credulity" that MTVN cannot report revenues on a show-by-show basis and so he is thus entitled to the tax documents. (Mot. at 11.) Yet, the Trustee points to nothing in the record to support that contention. What truly stretches credulity is the Trustee continuing to cling to the notion that MTVN agreed to share certain revenue with TC on a show-by-show basis when every witness and every document kept in the ordinary course of business has been unwavering on the point that MTVN does not calculate revenues in that way. If the Trustee's position on the merits were true then MTVN would have comprehensive documentation at the ready. That the Trustee has now, in his Fifth Request, resorted to this type of fishing expedition

6

demonstrates the weakness of his position on the merits and should not be sanctioned by the Court. *Gibbons* v. *Food Lion*, No. 98-1197-CIV-T-23F, 1999 WL 33226474, at *1 (M.D. Fla. Feb.19, 1999) ( "The Court is mindful of the broad parameters of discovery . . . . Yet, even that broad directive is tempered by the acknowledgment that 'discovery is not a fishing expedition.'") The tax documents will not prove their contention because it cannot be proven.

Finally, the Trustee's own actions with respect to his request for information relating to cable and satellite providers demonstrate why he cannot show a compelling need. Despite having ample opportunity – *two and half years* – the Trustee has not sought *any* document or a deposition specifically relating to cable and satellite providers, subscription fees.

## II. MTVN SHOULD NOT BE COMPELLED TO PRODUCE DOCUMENTS RELATING TO THE FIVE PROJECTS DUE TO BURDEN

This Court has the authority to limit discovery otherwise allowed by the Federal Rules of Civil Procedure where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); *Siemens Aktiengesellschaft* v. *Jutai 661 Equipamentos Electronicos, LTDA.*, No. 08-21568-CIV, 2009 WL 800143, at *3 (S.D. Fla. Mar. 25, 2009) (requiring defendant to limit its document requests to prevent plaintiff from having to bear an undue burden); *Maxwell* v. *Health Ctr. of Lake City, Inc.*, No. 3:05-CV-1056-J-32MCR, 2006 WL 1627020, at *3 (M.D. Fla. June 6, 2006) (noting that courts have discretion to limit discovery to protect a person from undue

burden or expense). Here, MTVN would be required to expend an enormous amount of time and expense to respond to the Trustee's last-minute request, which starkly contrast with the limited probative value of the information collected.

### A. Collection of Documents Would Cause Undue Burden

#### 1. Collection from MTVN-Related Foreign Entities

The Trustee specifically requests documents relating to MTVN's "foreign affiliates' involvement" in any of the Five Projects. MTVN owns and operates more than 100 channels throughout the world and has foreign licenses or joint ventures with 37 others. (Warren Solow Declaration (Ex. 4), sworn to on April 5, 2011 ¶ 5.) The Trustee's request would first require MTVN to identify the involvement of each of those MTVN-related entities and any relevant custodians, and then collect and produce from dozens of potential custodians. The burden is, on its face, enormous.

Collecting documents in the European Union adds an additional layer of complexity. Because of privacy laws, data must often be reviewed in the host country before it is exported. (*Id.* ¶ 7); *see also* Ashish S. Prasad & Tara Thompson, *U.S. Discovery of Electronic Documents in Europe*, 5 SEDONA CONF. J. 119, 121 (2004). Even after the review is completed and the data set is reduced to responsive documents, certain countries put limits on transferring the data to the United States. S*ee also* Prasad & Thompson, *supra*, at 120. For example, in the past, MTVN has had to consult with local counsel regarding procedures to preserve documents and to bring data to the U.S. (Ex. 4 ¶ 8.) MTVN has estimated that it would take approximately six months to complete a production.

Such a collection would come at tremendous cost to MTVN. "[G]iven the regulatory and logistical challenges involved, the cost to Viacom for such a collection, before outside counsel's involvement, would likely be several times the costs of a similar collection domestically." (*Id.* ¶ 10.) The added necessity of wading through the European regulatory process would necessarily add to that cost. (*Id.* ¶ 7 .)

### 2. Collection of Documents in the U.S.

While collecting documents in the U.S. does not present the same regulatory issues as a European collection, MTVN would still have to incur significant costs. MTVN cannot merely search for each of the Five Projects' names in its electronic database as the Trustee suggests. (Mot. at 17.) MTVN would have to collect documents from new custodians and process more than 1.4 million documents, costing MTVN in excess of $100,000 even before outside counsel's review. (Ex. 4 ¶ 11.) MTVN estimates that this process would take another month, when the parties should be focusing on experts and dispositive motions.[3]

---

[3] TC's reliance on the fact that MTVN requested documents relating to the Five Projects is misplaced. (Mot. at 16.) MTVN requested that TC produce documents relating to the Five Projects a year ago and its request did not require TC to perform a globe-trotting search.

9

### B.      The Burden of Production Far Outweighs the Documents Value

Moreover, TC's own production of documents reveals the Five Projects' marginal relevance to the central issues in this case. A sweeping search of MTVN's files cannot be justified.

*Big in America* was a reality television show that chronicled a competition between eight performers from the United States and Germany to become members of TC's new group, US5. (Ex. 5) This show was produced by a Trans Continental and Triple-M joint venture (Ex. 6), and MTVN Europe negotiated a gratis license (Ex. 7). While certain MTVN European channels may have aired this show, no evidence suggests that their role extended beyond the terms of the license agreement. Nor does the evidence indicate that any U.S. MTVN-related entity was involved. No obvious link exists between MTVN's airing of the show and TC's "wherewithal to participate in the production of the show" (Mot. at 17) justifying the time and expense or a production.

*Breaking the Band* may refer to one of three shows; a reality television series about the TC group Natural trying to break into the U.S. market (Ex. 8), a similar reality show about the TC group C Note (Ex. 9), or a sequel to *Big in America* (Ex. 10 at 9877-78; Ex. 11).[4] While it appears that MTVN European affiliates may have aired a *Big in America* sequel (Ex. 10 at 9877-78), the evidence does not suggest that a show about Natural or C Note was ever created. Again, MTVN would be required to conduct an extensive search looking for needles in haystacks.

---

[4]   The Trustee did not define "Breaking the Band" in his Fifth Request for Production.

The same can be said for the remaining of the Five Projects. The only evidence of a show entitled the *Brady Bunch Band* is a draft fax to Paramount pitching a "Making the Band ('MTB') type program based on a Brady Bunch theme." (Ex. 12.) No final fax was produced nor any documents evidencing any discussions. *On the Road* refers to a reality television show about US5, the group formed on *Big in America*, moving to the U.S. market. (Ex. 13.) No evidence suggests that this show was even pitched to MTVN. Finally, *Making the Hit* is a home recording kit produced by Atari for TC. (Ex. 14.) Nothing produced indicates that MTV was aware of the project, let alone involved in it.

The Trustee himself considered these projects inconsequential, as evidenced by the fact that he has admittedly known about them since April 2, 2010, but never mentioned any of the Five Projects prior to serving his Fifth Request for Production. (Mot. at 15.) The Trustee did not request a 30(b)(6) deponent on the Five Projects, despite having served MTVN with seventy-nine 30(b)(6) deposition topics, did not propound interrogatories asking for information on the Five Projects, despite having served 58 interrogatories on the Viacom Defendants, and never so much as asked one question about the Five Projects during depositions.

Moreover, the Trustee refused to narrow the scope of his request even though MTVN explained the burden during a March 14, 2011 telephonic meet and confer. MTVN asked TC if it could formulate a proposal for collecting documents that was not unduly burdensome. (Ex. 15.) TC rejected MTVN's request outright. (Ex. 16 ("As to Request No. 67, Trans Continental cannot agree to limit the search for these documents that are indisputably relevant and must be produced.").) MTVN had been willing to compromise, but

11

hoped to reach agreement on search parameters that were consistent with the marginal relevance of the materials sought. The Trustee's refusal to compromise reveals his true purpose in making the request.

### III. MTVN WILL PRODUCE ADVERTISING DATA FOR *MAKING THE BAND I* SEASONS ONE AND TWO AT THE TRUSTEE'S COST

The Trustee filed his motion to compel the production of advertising data for airings of MTB 1.1 and MTB 1.2 in violation of this Court's rule requiring the parties to meet and confer. (M.D. Fla. Local Rule 3.01(g).) For this reason alone the Trustee's motion should be denied. *See, e.g.*, *Cunningham* v. *Senez Roofing, LLC*, No. 6:08-cv-1648-Orl-31DAB, 2008 WL 5158283, at *1 (M.D. Fla. Dec. 9, 2008) (Baker, M.J.) (failure to comply with Local Rule 3.01(g) "would normally result in a denial of the motion, without prejudice"); *Morroni* v. *Gunderson*, 169 F.R.D. 168, 172 (M.D. Fla. 1996) (plaintiffs "should have been presented with the opportunity to resolve the issues raised by the motion"); *Broughton* v. *City of Jacksonville*, No. 3:06-cv-234-J-32MCR, 2007 WL 2964174, at *2 (M.D. Fla. Oct. 10, 2007) (denying plaintiff's motion to compel discovery requests for failing to comply with Rule 3.01(g) because exchange of letters was insufficient and plaintiff knew defendant intended to provide supplemental responses to discovery requests in short order).

During its initial meet and confer on the Trustee's Fifth Request for Production, MTVN stated that it would try to determine whether the advertising data that the Trustee requested was available. On March 21, 2011, MTVN informed the Trustee that it was still attempting to determine whether the data was available for the time period and, if so, whether that data had integrity. (Ex. 17.) Although the parties spoke twice on the day that the Trustee filed his motion, counsel for the Trustee did not raise the issue of the

12

advertising data with counsel for MTVN. (Ex. 18.) In fact, MTVN had learned later that day that reliable advertising data existed and that it was willing to produce it provided that the Trustee paid the cost to the vendor for retrieving the data. (*Id.*) Notably, the Trustee did not amend his motion, nor has he even replied to MTVN's correspondence.

Moreover, the Trustee's claim that he did not know that MTB 1.1 and 1.2 aired on MTVN at the time of his previous requests for advertising data is patently false. (Mot. at 15.) The Trustee learned that MTB 1.1 and 1.2 aired on MTVN more than *one year* before this Court issued its May 6, 2010 order compelling MTVN to produce advertising data. [D.E. 75.] On January 27, 2009, Jackie French not only testified that MTB I appeared on MTVN, but also provided the Trustee with a list of the number of times each episode of MTB I was broadcast. (*See, e.g.,* Composite Ex. 19 (French Tr. at 120:19-24, 260:20-261:16; Pl. Ex. 67).) The Trustee's counsel asked detailed questions about the list, confirming that the number Ms. French provided only included airings on MTVN, and not other Viacom-owned channels. (*Id.* at 260:20-261:16.) Yet, the Trustee did not request advertising data for MTB 1.1. and 1.2 until more than *two years* after that deposition.

MTVN can only assume that the Trustee's silence to MTVN's last offer is refusal to once again reach some compromise. To retrieve the data, MTVN must pay a flat fee to its vendor for every report. (Ex. 4 ¶ 13.) Had the Trustee requested this advertising data when he made his prior request for similar data for later seasons, MTVN would not have to incur any additional expense. (*Id.* ¶¶ 14-15.) If MTVN is to produce the data, the Trustee should pay for it.

13

## IV. THE TRUSTEE'S REQUEST FOR ATTORNEY'S FEES SHOULD BE DENIED

For the ninth time, the Trustee requests an award of attorney's fees or sanctions in connection with a motion he has filed. [D.E. 27, 31, 32, 76, 123, 157, 171; Bankr. D.E. 19, 23.] As with the others, attorney's fees should be denied because MTVN was justified in resisting the Trustee's overbroad, burdensome and tardy requests.

According to the Federal Rules of Civil Procedure, a court should not grant an award of attorney's fees if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). A party is substantially justified where "reasonable people could differ as to the appropriateness of the contested action." *Maddow*, 107 F.3d at 853.

Like the plaintiffs in *Maddow*, MTVN was "substantially justified . . . in relying on out-of-circuit district court caselaw, where there was no in-circuit caselaw, regarding the tax form issue." *Id*. Therefore, just as the sanctions ruling was deemed to be an abuse of discretion in that case, the same would be true in the present case because the Eleventh Circuit has still not ruled on the standard for compelling tax returns.

MTVN was also justified in refusing to produce documents relating to the Five Projects because the Trustee's request was overbroad and unduly burdensome. *Reist* v. *Source Interlink Cos. Inc.*, No. 2:10-cv-269-FtM-36SPC, 2010 WL 4940096, at *3 (M.D. Fla. Nov. 29, 2010) (refusing to assess attorney's fees where defendant properly objected to overbroad and irrelevant requests). On this motion, MTVN has demonstrated the burden

14

required to respond to the Trustee's request, corroborating that its objection was made in good faith. *Soto* v. *Genentech, Inc.*, No. 08-60331-CIV, 2008 WL 4621832, at *14 (S.D. Fla. Oct. 17, 2008) (refusing to impose attorney's fees where defendant's "objections were made in good faith").

Finally, not only was MTVN substantially justified in objecting to the burden associated with the Trustee's request for advertising data, but the Trustee failed to properly meet and confer regarding the issue. The Trustee's failure to abide by the local rules precludes him from obtaining attorney's fees.

## CONCLUSION

For the foregoing reasons, MTVN respectfully submits that the Trustee's motion should be denied in its entirety.

Dated: This 6th day of April, 2011.

Respectfully submitted,

| | |
|---|---|
| **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** | **HOLLAND & KNIGHT LLP** |
| 1285 Avenue of the Americas | 200 South Orange Ave. |
| New York, New York  10019-6064 | Suite 2600 |
| Tel:  (212) 373-3000 | Orlando, FL 32801 |
| Fax: (212) 757-3990 | Telephone: (407) 425-8500 |
| | Facsimile: (407) 244-5288 |
| /s Andrew J. Ehrlich | Brian A. McDowell |
| Andrew J. Ehrlich, Esq. | Florida Bar No. 765521 |
| aehrlich@paulweiss.com | brian.mcdowell@hklaw.com |
| (admitted *pro hac vice*) | Edward M. Fitzgerald |
| Leslie Gordon Fagen | Florida Bar No. 0010391 |
| lfagen@paulweiss.com | edward.fitzgerald@hklaw.com |
| (*pro hac vice* pending) | |

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 6, 2011, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following counsel of record: James G. Sammataro, Esq., Kasowitz Benson Torres & Friedman, LLP, Four Seasons Tower, 1441 Brickell Avenue, Suite 1420, Miami, FL 33131; Daniel E. Traver, Esq., GrayRobinson, P.A., 301 E. Pine Street, Suite 1400, Orlando, FL 32801; Jonathan D. Davis, Esq., Jonathan D. Davis P.C., 99 Park Avenue, Suite 1600, New York, New York 10016.

/s Andrew J. Ehrlich
Andrew J. Ehrlich, Esq.