# COMPOSITE EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al*

  Debtor,

Case No. 6:07-bk-00761-ABB
Jointly Administered
Chapter 11

_____/

SONEET KAPILA, Chapter 11 Trustee
for TRANS CONTINENTAL TELEVISION
PRODUCTIONS, INC.,

Adv. No.: 6:07-ap-bk-00761-ABB

    Plaintiffs,

 v.

MTV NETWORKS COMPANY,

    Defendant.

_____/

## TRANS CONTINENTAL'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS TO MTV NETWORKS

Pursuant to Rule 34, Fed. R. Civ. P., plaintiff, Trans Continental Television, by and through counsel, hereby propounds its First Request for Production of Documents and Things to defendant, MTV Networks, a division of Viacom International, Inc. (hereinafter, "MTV"), and requests that MTV serves a written response to each of the following document requests (the "Requests") and produce the documents requested herein for inspection and copying at the offices of Silverman, Cosgrove & Sammataro, One Biscayne Tower, 2 South Biscayne Boulevard, Suite 2650, Miami, Florida 33131, within the time frame specified by the Federal Rules of Civil Procedure, or as otherwise directed by the Court.

## Instructions and Definitions

The following definitions and instructions shall apply to Trans Continental's Requests:

1.      "And" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of these Requests all responses that might otherwise be construed to be outside of their scope.

2.      The term "communication" shall mean the transmittal of information (in the form of facts, inquiries, ideas or otherwise) between or among any persons, in any medium or form, whether tangible, hard copy or electronic.

3.      The term "referring or relating to" shall mean relating to, referring to, reflecting, describing, evidencing, constituting, concerning, or comprising.

4.      The term "document" shall have the broadest meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure and means any writing of any kind, including originals and all non-identical copies (whether different from the original by reason of any notation made on such copies or otherwise). This shall include, without limitation, the following items, whether printed or reproduced by any process, or written or produced by hand or stored in computer memory, magnetic or hard disk or other data storage medium, and whether or not claimed to be privileged, confidential or otherwise excludable from discovery, namely, notes, letters, correspondence, communications, e-mails, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or meetings, diaries, reports, laboratory and research reports and notebooks, recorded experiments, charts, plans, drawings, diagrams, schematic diagrams, source code, object code, illustrations, product descriptions, product analyses, requests for proposals, documents related to proposed or actual product improvements or changes, users manuals or guides, installation guides or manuals, technical descriptions or specifications, product repair manuals or guides, photographs, video

2

images, software flow charts or descriptions or specifications, product functional descriptions or specifications, minutes or records of meetings, summaries of interviews, reports, or investigations, opinions or reports of consultants, reports of patent searches, patent appraisals, opinions of counsel, agreements, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of documents, and all other material fixed in a tangible medium of whatever kind known to you or in your possession, custody, or control.

**Warning**: **Computer generated or stored documents and images, including computer files or data, electronic mail and information on hard disk which has been erased but is retrievable constitutes "documents and things" that are discoverable within the meaning of this definition. An inspection of your computer system may be necessary to assure compliance with the Requests contained herein.**

5.    The term "person" shall mean any natural individual, in any capacity whatsoever, or any entity or organization, including divisions, departments, and other units therein, and shall include, without limitation, any public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

6.    The term "representative" shall mean any agent, employee, servant, officer, director, accountant, attorney, or other person acting or purporting to act on behalf of the person in question.

7.    The terms "you," "your," and "MTV" refer to MTV Networks, a division of Viacom International, Inc., and the signatory of the November 15, 2001 agreement.

8.     The term, "MTV," shall mean defendant, MTV Networks, a division of Viacom International, Inc., and its present and former agents, officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, sister entities, related entities, accountants, attorneys, predecessors, and any other person acting or purporting to act on MTV's behalf.

9.     The term "Trans Continental" means "Trans Continental Television Productions, Inc." and all others persons acting or purporting to act on its behalf.

10.    The term "Agreement," refers to the letter agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand, in connection with the development and production of an untitled Boy Band series for ABC.

11.    The term, "Amended Agreement," refers to the letter agreement entered into by and between, MTV, on the one hand, and Trans Continental, on the other hand, on or about November 15, 2001, in connection with the MTV series featuring O-Town, entitled "Making the Band."

12.    The term, "O-Town" refers to the musical act comprised of Ashley Angel, Jacob Underwood, Erik Estrada, Trevor Penick and, after the departure of Ikaika Kahoano, Dan Miller, which was the subject of the original series, Making the Band.

13.    The term, "Making the Band," refers to the reality television series which initially aired on American Broadcasting Companies, Inc. and then later on MTV.

14.    The term, "Making the Band," refers to the reality television series which initially aired on American Broadcasting Companies, Inc. and then later on MTV.

15.    The terms, "Sean Combs," "P. Diddy," "Puff Daddy" and "Diddy" refer to the artist/entertainer that appears in *Making the Band 2, Making the Band 3* and *Making the Band 4* and his present and former agents and representatives, as well as his corporate entities, Bad Boy

4

Entertainment, Bad Boy Productions and Bad Boy Records, and their respective officers, directors, employees, servants, representatives, parents, affiliates, subsidiaries, sister entities, related entities, accountants, attorneys, predecessors, and any other person acting or purporting to act on Diddy's or Bad Boy's behalf.

16.    The term, "*Making the Band 2*," refers to the television program broadcast on MTV beginning on or about October of 2002, in which Diddy sought to find the best rappers and singers from which to assemble a new hip-hop group.

17.    The term, "*Making the Band 3*," refers to the television program broadcast on MTV in 2005, which featured Diddy and his search for the next all female group.

18.    The term, "*Making the Band 4*," refers to television program broadcast on MTV, which features Diddy, the subsequently named band, *Day26*, and Donnie Klang, and a return of *Danity Kane*, the winners of *Making the Band 3*.

19.    The term, "Da Band," refers to the musical group, which arose out of *Making the Band 2*, and which released the album, *Too Hot for TV*.

20.    The term, "Danity Kane," refers to the musical group, which arose out of *Making the Band 3* and which is signed to Bad Boy Records.

21.    The term, "Donnie Klang," refers to the artist who appeared on *Making the Band 4*, and recently released his album, *Just Like a Rolling Stone*.

22.    The term, "Day 26," refers to the musical group formed during *Making the Band 4*, and which is signed to Bad Boy Records.

23.    The term "including" shall mean including but not limited to.

24.    The term "any" or "each" shall be construed to include and encompass "all."

25.    The term "date" shall mean the exact day, month, and year, if ascertainable, or, if not, the best approximation thereof.

26.    The use of the word "the" shall not be construed as limiting the scope of any request.

27.    The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other as are appropriate in the context.

28.    These Requests are continuing in nature.  Any document, created or identified after service of any response to these Requests, that would have been included in the response had the document then existed or been identified shall promptly be supplied by supplemental responses whenever you find, locate, acquire, create, or become aware of such documents, up until the time of trial.  Supplemental responses are to be served as soon as reasonably possible after receipt of such documents.

29.    Each individual document request shall be responded to fully, unless it is in good faith objected to, in which event the reasons for the objections shall be stated with specificity.  If an objection pertains to only a portion of a document request, or to a word, phrase, or clause contained therein, MTV shall state its objection to that portion only and respond to the remainder of the request.

30.    If any document responsive to these Requests has been destroyed, discarded, or lost, or is otherwise not capable of being produced, identify each such document and set forth the following information: (a) the date of the document; (b) a description of the subject matter of the document; (c) the name and address of each person who prepared, received, viewed, or had possession, custody, or control of the document; (d) the date when the document was destroyed, discarded, or lost; (e) the identity of the person who directed that the document be destroyed,

who directed that the document be discarded, or who lost the document; and (f) a statement of the reasons for and circumstances under which the document was destroyed, discarded, or lost.

31.    If any document responsive to these Requests is withheld under a claim of privilege (including, but not limited to, the attorney-client privilege or work-product protection) you shall identify with respect to each document: (a) the author, (b) the addressee(s); (c) all other persons to whom the document was distributed, shown or explained; (d) its present custodian; (e) the document's number of pages, and attachments or appendices; (f) the type of document (letter, report, etc.); (g) the general subject matter of the document; (h) the date of the document; and (i) the specific privilege claimed.

32.    If, in responding to these Requests, you claim any ambiguity in interpreting the request, or in a definition or instruction applicable thereto, such claim shall not be utilized as a basis for refusing to respond, but you shall set forth as part of your response the language deemed to be ambiguous and the interpretation used in responding to the document request.

33.    Each document request shall be construed according to its terms and not with reference to any other request.

34.    All responsive documents, wherever located, that are in your possession, custody, or control, or that of any of your agents, attorneys, or representatives, shall be produced in response to these Requests.

35.    The original or one copy of each document is requested to be produced.  Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation or any omission, shall constitute a separate document and must be produced, whether or not the original of such document is within your possession, custody, or control.

36.     Documents shall be produced as they are kept in the ordinary course of business or organized and labeled to correspond with the categories in these Requests.  All documents that are physically attached to each other when located for production shall be left so attached. Documents that are segregated or separated from other documents, whether by use of binders, files, sub-files, or by dividers, tabs, or any other method, shall be left so segregated or separated. All labels or markings on any such binders, files, sub-files, dividers, tabs, or folders shall be produced.

37.     Unless otherwise specified, in the event that any responsive document is maintained in electronic, magnetic, or computer-readable form, such document shall be produced: on disk or other computer storage medium, and converted into a reasonably usable form (preferably to Group IV, multi-page tiff format at 300dpi) that is completely text searchable.

38.     A document request shall be deemed to include a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents in addition to the document itself, without abbreviation or expurgation.

39.     If no documents exist that are responsive to a particular document request, so state in writing.

40.     If no time period is specified in a request, then the relevant time period shall be from January 1, 2000 through the present.

## DOCUMENTS TO BE PRODUCED

1.      All documents relied upon in preparing MTV's answers to Trans Continental's First Set of Interrogatories to MTV served simultaneously with these Requests.

2.      All documents identified in MTV's answers to Trans Continental's First Set of Interrogatories to MTV, served simultaneously with these Requests.

3.      Any and all documents that refer, relate to, reflect, concern or evidence communications between MTV and Trans Continental regarding the Agreement.

4.      Any and all documents that refer, relate to, reflect, concern or evidence communications between MTV and Trans Continental regarding the Amended Agreement.

5.      Any and all documents that refer, relate to, reflect, concern or evidence communications between MTV and Trans Continental regarding the series, entitled *Making the Band*.

6.      Any and all documents that refer, relate to, reflect, concern or evidence communications between MTV and Trans Continental regarding the sequels to *Making the Band*, including, but not limited, *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

7.      Any and all documents that refer, relate to, reflect, concern or evidence communications between MTV and Diddy regarding the sequels to *Making the Band*, including, but not limited, any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

8.      Any and all documents that refer, relate to, reflect, concern or evidence any and all payments made by MTV to Trans Continental pursuant to the Agreement.

9.      Any and all documents that refer, relate to, reflect, concern or evidence any and all payments made by MTV to Trans Continental pursuant to the Amended Agreement.

10.     Any and all documents that refer, relate to, reflect, concern or evidence any and all payments made by MTV to Trans Continental in connection with any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

11.     Any and all documents that refer, relate to, reflect, concern or evidence any and all payments made by MTV to Diddy in connection with any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

12.     Any and all documents that refer, relate to, reflect, concern or evidence any and all account statements rendered by MTV to Diddy in connection with any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

13.     Any and all documents that refer, relate to, reflect, concern or evidence any and all account statements rendered by MTV to any entity affiliated with or controlled/owned by Diddy in connection with any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*

14.     All copies of any account statements rendered by MTV to Trans Continental pursuant to the January 7, 2000 Agreement.

15.     All copies of any account statements rendered by MTV to Trans Continental pursuant to the Amended Agreement.

16.     All copies of any account statements rendered by MTV to Diddy in connection with any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

17.     Any and all contracts or other agreements between MTV and Trans Continental from 2001 through the present.

18.     Any and all contracts or other agreements between MTV and Diddy, which relate in any way to any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*

from 2000 through the present.

19.     Any and all contracts or other agreements between MTV and any entity or corporation affiliated with Diddy, including but not limited, to Bad Boy Productions, Bad Boy Entertainment and Bad Boy Records, which relate in any way to any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4* from 2000 through the present.

20.     Any and all contracts or other agreements between MTV and Bad Boy Records, which relate in any way to any individuals, bands or groups which have appeared on *Making the Band 2*, *Making the Band 3* and *Making the Band 4* from 2000 through the present.

21.     Any and all contracts or other agreements between MTV and Bad Boy Entertainment, which relate in any way to any individuals, bands or groups which have appeared on *Making the Band 2*, *Making the Band 3* and *Making the Band 4* from 2000 through the present.

22.     Any and all contracts or other agreements between MTV and Diddy, Bad Boy Records, Bad Boy Productions and/or Bad Boy Entertainment from 2001 through the present.

23.     Any and all budgets prepared for any seasons of the shows: *Making the Band*, *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

24.     Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each of the three seasons of *Making the Band*.

25.     Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each of the three seasons of *Making the Band 2*.

26.     Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each of the three seasons of *Making the Band 3*.

11

27.    Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each of the three seasons of *Making the Band 4*.

28.    Any and all documents that refer, relate to, reflect, concern or evidence the final production costs for each of the three seasons of *Making the Band*.

29.    Any and all documents that refer, relate to, reflect, concern or evidence the final production costs for each of the three seasons for *Making the Band 2*.

30.    Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each of the three seasons of *Making the Band 3*.

31.    Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each seasons of *Making the Band 4*.

32.    Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any tour or concert performed by *O-Town*.

33.    Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any tour or concert performed by *Danity Kane*.

34.    Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any tour or concert performed by *Da Band*.

35.    Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any tour or concert performed by *Donnie Klang*.

36.    Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any tour or concert performed by *Day 26*.

37.    Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the O-Town's self-titled album, *O-Town*.

38.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the O-Town album, entitled *Liquid Dreams*.

39.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the O-Town album, *O2*.

40.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with Da Band's album, *Too Hot for TV*.

41.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with Danity Kane's eponymous album, *Danity Kane*.

42.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with Danity Kane's follow-up album, *Welcome to the Dollhouse*.

43.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with Donnie Klang's album, *Just Like a Rolling Stone*.

44.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with Day 26's eponymous album, *Day 26*.

45.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any other work featuring O-Town's music, including but not limited, any funds received from iTunes, downloads, ring tones, streaming media, print publishing, synchronization licenses and the like.

46.      Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any other work featuring Da Band's music, including but not limited, any funds received from iTunes, downloads, ring tones, streaming media, print publishing, synchronization licenses and the like.

13

47.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any other work featuring Danity Kane's music, including but not limited, any funds received from iTunes, downloads, ring tones, streaming media, print publishing, synchronization licenses and the like.

48.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any other work featuring Donnie Klang's music, including but not limited, any funds received from iTunes, downloads, ring tones, streaming media, print publishing, synchronization licenses and the like.

49.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any other work featuring Day 26's music, including but not limited, any funds received from iTunes, downloads, ring tones, streaming media, print publishing, synchronization licenses and the like.

50.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the merchandise of either O-Town or *Making the Band*.

51.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the merchandise of either Da Band or *Making the Band 2*.

52.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the merchandise of either Danity Kane or *Making the Band 3*.

53.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the merchandise of Donnie Klang, Day 26 and/or *Making the Band 4*.

14

54.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with DVD sales of *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

55.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with product placement or product integrations agreements relating to *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

56.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with home video sales of *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

57.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the publishing rights (both print and music) for *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

58.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the publishing rights (both print and music) relating to O-Town, Da Band, Danity Kane, Donnie Klang and/or Day 26.

59.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the websites for the *Making the Band* web-site, including any and sites which link to or otherwise relate to *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

60.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the websites for the O-Town, Da Band, Danity Kane, Donnie Klang and/or Day 26.

61.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with either the domestic or foreign distribution of *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4*.

62.     Any and all documents reflecting payments made by MTV to Trans Continental Television Productions for Trans Continental's share of the distribution rights to *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4*.

63.     Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with international program sales from *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4*.

64.     Any and all documents reflecting payments made by MTV to Trans Continental Television Productions for Trans Continental's share of the international program sales to *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4*.

65.     Any and all documents that refer, relate to, reflect, concern or evidence all of the stations in which any season of *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4* has been distributed to, broadcast or exhibited in, aired or otherwise televised on.

66.     Any and all documents that refer, relate to, reflect, concern or evidence all of the countries, territories, or provinces in which any season of *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4* has been distributed to, broadcast or exhibited in, aired or otherwise televised on.

67.     Any and all documents that refer, relate to, reflect, concern or evidence any license, affiliate, program sales or distribution agreements that MTV has entered into with any

party involving *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

68.     Any and all documents that refer, relate to, reflect, concern or evidence each and every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in the distribution (both foreign and domestic) of *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

69.     Any and all documents that refer, relate to, reflect, concern or evidence each and every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in the licensing of the television programs, *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

70.     Any and all documents that refer, relate to, reflect, concern or evidence each and every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in the licensing of any merchandise or ancillary, allied or after-market products (*e.g.*, DVDs and other products relating to the home video market) relating to any season of *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

71.     Any and all documents that refer, relate to, reflect, concern or evidence the amount of gross and net profit that MTV, including any and all MTV-related, sister or affiliated entities, has made in connection with *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

72.     Any and all documents that refer, relate to, reflect, concern or evidence the amount of advertising revenue that MTV, including any and all MTV-related, sister or affiliated

entities, has received in connection with the broadcast of *Making the Band 2* in the United States or any other country, territory or province.

73.   Copies of the monthly profit and loss statements created by MTV in connection with *Making the Band, Making the Band 2, Making the Band 3* and *Making the Band 4*.

74.   Any and all documents that discuss, reference, relate to or evidence the rate charged by MTV for advertising (be it for a :15 second or :30 second spot) during season three of *Making the Band*.

75.   Any and all documents that discuss, reference, relate to or evidence the rate charged by MTV for advertising (be it for a :15 second or :30 second spot) during any season of *Making the Band 2, Making the Band 3* and *Making the Band 4*.

76.   Any and all documents that discuss, reference, relate to or evidence the average revenue amount generated by MTV in connection with a single episode of season three of *Making the Band*.

77.   Any and all documents that discuss, reference, relate to or evidence the average revenue amount generated by MTV in connection with a single episode of seasons one, two and three of *Making the Band 2*.

78.   Any and all documents that discuss, reference, relate to or evidence the average revenue amount generated by MTV in connection with a single episode of seasons one, two and three of *Making the Band 3*.

79.   Any and all documents that discuss, reference, relate to or evidence the average revenue amount generated by MTV in connection with a single episode of seasons one, two and three of *Making the Band 4*.

80.    Any and all documents that discuss, reference, relate to or evidence any communications between MTV and any third party regarding the rate to advertise during season three of *Making the Band*, or any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

81.    Any and all documents that discuss, reference, relate to or evidence every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in selling advertisement spots in connection with season three of *Making the Band*, or any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

82.    Copies of all sales or advertising contracts between MTV and any third-party relating to the purchase of advertisement spots in connection with season three of *Making the Band*, or any season of *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

83.    Any and all documents that discuss, reference, relate to or evidence any software program used by MTV to track and manage its advertising inventory (*e.g.*, Wide Orbit, Inventory Explorer, etc.).

84.    Any and all documents that discuss, reference, relate to or evidence any software program used by MTV to ensure the proper placements of its advertisements.

85.    Any and all documents that refer, relate to, reflect, concern or evidence the number of episodes of *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*, which aired on MTV.

86.    Any and all documents that refer, relate to, reflect, concern or evidence the number of re-runs of seasons three of *Making the Band*.

19

87.     Any and all documents that refer, relate to, reflect, concern or evidence the number of re-runs of any season of *Making the Band 2*.

88.     Any and all documents that refer, relate to, reflect, concern or evidence the number of times any episode of any season of *Making the Band 2* has been re-broadcast.

89.     Any and all documents that refer, relate to, reflect, concern or evidence the number of re-runs of any season of *Making the Band 3*.

90.     Any and all documents that refer, relate to, reflect, concern or evidence the number of times any episode of any season of *Making the Band 3* has been re-broadcast.

91.     Any and all documents that refer, relate to, reflect, concern or evidence the number of re-runs of any season of *Making the Band 4*.

92.     Any and all documents that refer, relate to, reflect, concern or evidence the number of times any episode of any season of *Making the Band 4* has been re-broadcast.

93.     Any and all documents that refer, relate to, reflect, concern or evidence any negotiations between MTV and Trans Continental regarding any spin-offs, sequels, made-for-TV movies, direct to video, non-theatrical, radio or other projects based on *Making the Band*.

94.     Any and all documents that refer, relate to, reflect, concern or evidence any internal discussions among MTV regarding Trans Continental's interest in any spin-offs, sequels, made-for-TV movies, direct to video, non-theatrical, radio or other projects based on *Making the Band*.

95.     Any and all documents that refer, relate to, reflect, concern or evidence any internal discussions among MTV regarding Trans Continental's interest in *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

96. Any and all documents that refer, relate to, reflect, concern or evidence any discussions between MTV and Diddy regarding Trans Continental's interest in *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

97. Any and all documents that refer, relate to, reflect, concern or evidence any discussions between MTV and Bad Boy regarding Trans Continental's interest in *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

98. Any and all documents that refer, relate to, reflect, concern or evidence any discussions between MTV and Johnny Wright regarding Trans Continental's interest in *Making the Band 2*, *Making the Band 3* and *Making the Band 4* and/or Danity Kane, Day 26, Donnie Klang and Da Band.

99. Any and all documents that refer, relate to, reflect, concern or evidence any discussions between MTV and any third-party regarding Trans Continental's interest in *Making the Band 2*, *Making the Band 3* and *Making the Band 4*.

100. Any and all documents that refer, relate to, reflect, concern or evidence Trans Continental's interest in *Making the Band 2*, *Making the Band 3*, and *Making the Band 4*.

101. All documents that constitute, reference, or relate to any memoranda, reports, statements, summaries and/or opinions that you have obtained from any person whom you propose to call as an expert witness at any hearing in this action.

102. All documents on which each person identified by you as an expert in this proceeding bases any opinion, or which are grounds for his or her opinion, testimony, or expected testimony.

103. All documents that constitute the resume or curriculum vitae of each person identified by you as an expert.

21

104.    All documents that summarize, contain, reference, or relate to the opinions, testimony, or expected testimony of each person identified by you as an expert.

105.    All documents that constitute, reference, or relate to any communication between you and any person identified by you as an expert.

106.    All documents constituting reports, statements, papers, treatises, theses, articles and other publications, presentations, or submissions which were prepared by any person identified by you as an expert and which in any way relate to the subject matter of this litigation.

107.    All documents supplied or transmitted by you, or which you caused to be supplied or transmitted, to any person identified by you as an expert.

108.    All documents that you may introduce into evidence at any hearing in this action.

Respectfully submitted,

**SILVERMAN COSGROVE & SAMMATARO**
*Special Litigation Counsel for Soneet R. Kapila, as Chapter 11 Trustee for the bankruptcy estate of Trans Continental Television Productions, Inc.*
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2650
Miami, Florida 33131
Telephone: (305) 377-1666
Facsimile: (305) 377-1664
jsammataro@ses-legal.com

By: _____
James G. Sammataro
Florida Bar Number: 0520292

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of Trans Continental's First Set of Interrogatory Requests was served via scanned e-mail and United States mail on this 31st day of October, 2008 to:

**Carol C. Lumpkin, Esq.**
K& L Gates
Wachovia Financial Center
Suite 3900
200 South Biscayne Boulevard
Miami, Florida 33131-2399

James G. Sammataro

23

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al.*

     Debtor.

Case No. 6:07-bk-00761-ABB
Jointly Administered
Chapter 11

_____/

SONEET KAPILA, Chapter 11 Trustee
for TRANS CONTINENTAL TELEVISION
PRODUCTIONS, INC.,

          Plaintiff,

v.

MTV NETWORKS COMPANY,

        Defendant.

Adv. No.: 6:08-ap-00157-ABB

_____/

## DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS

Defendant MTV Networks, a division of Viacom International Inc. ("MTVN"), improperly sued herein as MTV Networks Company, by and through its undersigned counsel, hereby submits its Responses and Objections to Soneet Kapila, Chapter 11 Trustee for Trans Continental Television Productions, Inc.'s ("Plaintiff's") First Request for Production of Documents and Things.

## GENERAL STATEMENT

MTVN does not intend to disclose information that is privileged or otherwise immune from discovery. Disclosure of any information protected by the attorney-client privilege, work product doctrine or any other applicable privilege or rule of confidentiality, including, but not

MI-284914 v1 0437295-00202

limited to, the trade secret privilege, shall be deemed inadvertent, except pursuant to a specific written agreement covering such information. Inadvertent disclosure of any such information shall not constitute a waiver or prejudice of any privilege or any other ground for objecting to discovery with respect to any such information, nor shall the inadvertent disclosure waive or prejudice MTVN's right to object to the use of any such information during this or any subsequent proceeding.

The responses herein are based on the best information available to MTVN as of this date, and on the best of MTVN's knowledge. Because, among other things, discovery is on-going, MTVN reserves the right to modify, amend and/or supplement these responses. MTVN's response to any of these Requests shall not constitute an admission by it that the information is properly discoverable, or admissible at trial, and shall not constitute a waiver of any objection that might otherwise be made to the disclosure of such information.

Subject to the parties' confidentiality agreement, which the parties are currently negotiating, MTVN will produce responsive, non-privileged and non-confidential documents to the extent such documents exist and are in MTVN's possession, custody and control, at a date, time and place mutually convenient to the parties' respective counsel.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.      MTVN objects to the Instructions and Definitions as set forth in Plaintiff's First Request for Production of Documents and Things to the extent that they impose obligations upon MTVN other than those authorized by the Federal Rules of Civil Procedure, including, but not limited to, Rules 26(b), 26(e) and 34. By way of example, MTVN objects to the "Warning" in Instruction No. 4 to the extent that it attempts to place burdens or obligations upon MTVN beyond the applicable rules and case law.

- 2 -

2.      MTVN objects to the Instructions and Definitions as set forth in Plaintiff's First Request for Production of Documents and Things to the extent that they require MTVN to produce information that is protected by the attorney-client privilege, work product doctrine, or any other privilege or rule of confidentiality.

## RESPONSES AND OBJECTIONS TO
## INDIVIDUAL REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

### REQUEST NO. 1

All documents relied upon in preparing MTV's answers to Trans Continental's First Set of Interrogatories to MTV served simultaneously with these Requests.

### RESPONSE TO REQUEST NO. 1

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 2

All documents identified in MTV's answers to Trans Continental's First Set of Interrogatories to MTV, served simultaneously with these Requests.

### RESPONSE TO REQUEST NO. 2

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 3**

Any and all documents that refer, relate to, reflect, concern or evidence communications between MTV and Trans Continental regarding the Agreement.

**RESPONSE TO REQUEST NO. 3**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 4**

Any and all documents that refer, relate to, reflect, concern or evidence communications between MTV and Trans Continental regarding the Amended Agreement.

**RESPONSE TO REQUEST NO. 4**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 5**

Any and all documents that refer, relate to, reflect, concern or evidence communications between MTV and Trans Continental regarding the series, entitled *Making the Band*.

**RESPONSE TO REQUEST NO. 5**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

- 4 -

**REQUEST NO. 6**

Any and all documents that refer, relate to, reflect, concern or evidence communications between MTV and Trans Continental regarding the sequels to *Making the Band,* including, but not limited, *Making the Band 2, Making the Band 3 and Making the Band 4.*

**RESPONSE TO REQUEST NO. 6**

MTVN objects to this request to the extent it uses the overbroad language, "including, but not limited." MTVN also objects to this request to the extent it characterizes *Making the Band 2, Making the Band 3 and Making the Band 4* as "sequels." Without waiving the foregoing objections, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 7**

Any and all documents that refer, relate to, reflect, concern or evidence communications between MTV and Diddy regarding the sequels to *Making the Band,* including, but not limited, any season of *Making the Band 2, Making the Band 3* and *Making the Band 4.*

**RESPONSE TO REQUEST NO. 7**

MTVN objects to this request to the extent it uses the overbroad language, "including, but not limited." MTVN also objects to this request to the extent it characterizes *Making the Band 2, Making the Band 3 and Making the Band 4* as "sequels." Without waiving the foregoing objections, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

## REQUEST NO. 8

Any and all documents that refer, relate to, reflect, concern or evidence any and all payments made by MTV to Trans Continental pursuant to the Agreement.

## RESPONSE TO REQUEST NO. 8

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control. In addition, other documents responsive to this request are the documents that are Bates-labeled MTVN 000001 – 000087, which were produced in 2007 in response to Plaintiff's subpoena to MTVN in the underlying bankruptcy case, *In re Louis J. Pearlman*, Case No. 07-bk-00761 (Bankr. M.D. Fla.).

## REQUEST NO. 9

Any and all documents that refer, relate to, reflect, concern or evidence any and all payments made by MTV to Trans Continental pursuant to the Amended Agreement.

## RESPONSE TO REQUEST NO. 9

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control. In addition, other documents responsive to this request are the documents that are Bates-labeled MTVN 000001 – 000087, which were produced in 2007 in response to Plaintiff's subpoena to MTVN in the underlying bankruptcy case, *In re Louis J. Pearlman*, Case No. 07-bk-00761 (Bankr. M.D. Fla.).

**REQUEST NO. 10**

Any and all documents that refer, relate to, reflect, concern or evidence any and all payments made by MTV to Trans Continental in connection with any season of *Making the Band 2, Making the Band 3* and *Making the Band 4*.

**RESPONSE TO REQUEST NO. 10**

MTVN objects to this request to the extent that it is duplicative of Request No. 9 and refers to its response thereto.

**REQUEST NO. 11**

Any and all documents that refer, relate to, reflect, concern or evidence any and all payments made by MTV to Diddy in connection with any season of *Making the Band 2, Making the Band 3* and *Making the Band 4*.

**RESPONSE TO REQUEST NO. 11**

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's breach of contract and accounting claims concern whether or not MTVN owes *Plaintiff* any Net Proceeds for *Making the Band 2, Making the Band 3*, and *Making the Band 4*. (Pursuant to Paragraph 9 of the Amended Agreement, *Making the Band 2, Making the Band 3*, and *Making the Band 4* are governed by the Net Proceeds formula.) Plaintiff's claims do not concern the payments made by MTVN to Diddy. Indeed, payments made to Diddy by MTVN are not included in the Net Proceeds calculation, as defined in Schedule A of the Amended Agreement. In response to Request for Production Nos. 18 – 21, and subject to the parties'

confidentiality agreement, MTVN is producing contracts between itself and Diddy, which speak for themselves.

## REQUEST NO. 12

Any and all documents that refer, relate to, reflect, concern or evidence any and all account statements rendered by MTV to Diddy in connection with any season of *Making the Band 2, Making the Band 3 and Making the Band 4.*

### RESPONSE TO REQUEST NO. 12

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's breach of contract and accounting claims concern whether or not MTVN owes *Plaintiff* any Net Proceeds for *Making the Band 2, Making the Band 3*, and *Making the Band 4.* (Pursuant to Paragraph 9 of the Amended Agreement, *Making the Band 2, Making the Band 3*, and *Making the Band 4* are governed by the Net Proceeds formula.) Plaintiff's claims do not concern the payments made by MTVN to Diddy. Indeed, payments made to Diddy by MTVN are not included in the Net Proceeds calculation, as defined in Schedule A of the Amended Agreement.

**REQUEST NO. 13**

Any and all documents that refer, relate to, reflect, concern or evidence any and all account statements rendered by MTV to any entity affiliated with or controlled/owned by Diddy in connection with any season of *Making the Band 2, Making the Band 3* and *Making the Band 4*

**RESPONSE TO REQUEST NO. 13**

MTVN objects to this request because it is duplicative of Request No. 12, is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's breach of contract and accounting claims concern whether or not MTVN owes *Plaintiff* any Net Proceeds for *Making the Band 2, Making the Band 3,* and *Making the Band 4.* (Pursuant to Paragraph 9 of the Amended Agreement, *Making the Band 2, Making the Band 3,* and *Making the Band 4* are governed by the Net Proceeds formula.) Plaintiff's claims do not concern the payments made by MTVN to Diddy. Indeed, payments made to Diddy by MTVN are not included in the Net Proceeds calculation, as defined in Schedule A of the Amended Agreement.

**REQUEST NO. 14**

All copies of any account statements rendered by MTV to Trans Continental pursuant to the January 7, 2000 Agreement.

**RESPONSE TO REQUEST NO. 14**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control. In addition, other documents responsive to this request are the documents that are Bates-labeled MTVN 000001 – 000087, which were produced in 2007 in response to Plaintiff's

subpoena to MTVN in the underlying bankruptcy case, *In re Louis J. Pearlman*, Case No. 07-bk-00761 (Bankr. M.D. Fla.).

## REQUEST NO. 15

All copies of any account statements rendered by MTV to Trans Continental pursuant to the Amended Agreement.

### RESPONSE TO REQUEST NO. 15

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.  In addition, other documents responsive to this request are the documents that are Bates-labeled MTVN 000001 – 000087, which were produced in 2007 in response to Plaintiff's subpoena to MTVN in the underlying bankruptcy case, *In re Louis J. Pearlman*, Case No. 07-bk-00761 (Bankr. M.D. Fla.).

## REQUEST NO. 16

All copies of any account statements rendered by MTV to Diddy in connection with any season of *Making the Band 2, Making the Band 3 and Making the Band 4.*

### RESPONSE TO REQUEST NO. 16

MTVN objects to this request because it is duplicative of Request No. 12, overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff's breach of contract and accounting claims concern whether or not MTVN owes *Plaintiff* any Net Proceeds for *Making the Band 2, Making the Band 3,* and *Making the Band 4.*  (Pursuant to Paragraph 9 of the Amended Agreement, *Making the Band 2, Making the Band 3,* and *Making the Band 4* are governed by the Net Proceeds formula.)

Plaintiff's claims do not concern the payments made by MTVN to Diddy.  Indeed, payments made to Diddy by MTVN are not included in the Net Proceeds calculation, as defined in Schedule A of the Amended Agreement.

**REQUEST NO. 17**

Any and all contracts or other agreements between MTV and Trans Continental from 2001 through the present.

**RESPONSE TO REQUEST NO. 17**

Besides the Amended Agreement dated November 15, 2001, which Plaintiff already has, there are no responsive documents.

**REQUEST NO. 18**

Any and all contracts or other agreements between MTV and Diddy, which relate in any way to any season of *Making the Band 2, Making the Band 3* and *Making the Band 4* from 2000 through the present.

**RESPONSE TO REQUEST NO. 18**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

## REQUEST NO. 19

Any and all contracts or other agreements between MTV and any entity or corporation affiliated with Diddy, including but not limited, to Bad Boy Productions, Bad Boy Entertainment and Bad Boy Records, which relate in any way to any season of *Making the Band 2, Making the Band 3 and Making the Band 4* from 2000 through the present.

### RESPONSE TO REQUEST NO. 19

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

## REQUEST NO. 20

Any and all contracts or other agreements between MTV and Bad Boy Records, which relate in any way to any individuals, bands or groups which have appeared on *Making the Band 2, Making the Band 3* and *Making the Band 4* from 2000 through the present.

### RESPONSE TO REQUEST NO. 20

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 21

Any and all contracts or other agreements between MTV and Bad Boy Entertainment, which relate in any way to any individuals, bands or groups which have appeared on *Making the Band 2, Making the Band 3* and *Making the Band 4* from 2000 through the present.

### RESPONSE TO REQUEST NO. 21

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 22

Any and all contracts or other agreements between MTV and Diddy, Bad Boy Records, Bad Boy Productions and/or Bad Boy Entertainment from 2001 through the present.

### RESPONSE TO REQUEST NO. 22

MTVN objects to this request because it is overbroad and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence because it may go beyond the scope of the *Making the Band* series. MTVN will only produce contracts and other agreements between MTVN and the various Bad Boy entities (subject to the parties' confidentiality agreement) that relate to the *Making the Band* series.

### REQUEST NO. 23

Any and all budgets prepared for any seasons of the shows: Making the Band, Making the Band 2, Making the Band 3 and Making the Band 4.

### RESPONSE TO REQUEST NO. 23

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 24

Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each of the three seasons of *Making the Band*.

### RESPONSE TO REQUEST NO. 24

With respect to the production costs for the first two seasons of *Making the Band*, such numbers are ascertainable from Paragraph 2(a) of the Agreement, and from Paragraphs 1 and 2 of the Amended Agreement. With respect to the production costs for the third season of *Making the Band*, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 25**

Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each of the three seasons of *Making the Band 2*.

**RESPONSE TO REQUEST NO. 25**

MTVN objects to this request as burdensome to the extent it requests MTVN to produce documents regarding production costs on a season-by-season basis, which is not required by the Net Proceeds calculation.   Without waiving the foregoing objection, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 26**

Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each of the three seasons of *Making the Band 3*.

**RESPONSE TO REQUEST NO. 26**

MTVN objects to this request as burdensome to the extent it requests MTVN to produce documents regarding production costs on a season-by-season basis, which is not required by the Net Proceeds calculation.   Without waiving the foregoing objection, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 27**

Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each of the three seasons of *Making the Band 4.*

**RESPONSE TO REQUEST NO. 27**

MTVN objects to this request as burdensome to the extent it requests MTVN to produce documents regarding production costs on a season-by-season basis, which is not required by the Net Proceeds calculation. Without waiving the foregoing objection, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 28**

Any and all documents that refer, relate to, reflect, concern or evidence the final production costs for each of the three seasons of *Making the Band.*

**RESPONSE TO REQUEST NO. 28**

MTVN objects to this request to the extent it can see no reasonable distinction between "production costs" (as requested in Request No. 24) and "final production costs." Without waiving the foregoing objection, MTVN states that, with respect to the production costs for the first two seasons of *Making the Band*, such numbers are ascertainable from Paragraph 2(a) of the Agreement, and from Paragraphs 1 and 2 of the Amended Agreement. With respect to the production costs for the third season of *Making the Band*, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

- 16 -

### REQUEST NO. 29

Any and all documents that refer, relate to, reflect, concern or evidence the final production costs for each of the three seasons for *Making the Band 2.*

### RESPONSE TO REQUEST NO. 29

MTVN objects to this request to the extent it can see no reasonable distinction between "production costs" (as requested in Request No. 25) and "final production costs." Without waiving the foregoing objection, MTVN will produce responsive, non-privileged documents regarding the production costs for *Making the Band 2* (subject to the parties' confidentiality agreement) that are in its possession, custody or control.

### REQUEST NO. 30

Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each of the three seasons of *Making the Band 3.*

### RESPONSE TO REQUEST NO. 30

MTVN objects to this request because it is duplicative of Request No. 26 and incorporates its response to that request herein.

### REQUEST NO. 31

Any and all documents that refer, relate to, reflect, concern or evidence the production costs for each seasons of *Making the Band 4.*

### RESPONSE TO REQUEST NO. 31

MTVN objects to this request because it is duplicative of Request No. 27 and incorporates its response to that request herein.

### REQUEST NO. 32

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any tour or concert performed by *0-Town*.

### RESPONSE TO REQUEST NO. 32

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 33

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any tour or concert performed by *Danity Kane*.

### RESPONSE TO REQUEST NO. 33

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. The Amended Agreement does not entitle Plaintiff to any funds received by MTVN regarding any tour or concert performed by Danity Kane. Indeed, the Net Proceeds formula, as defined in Schedule A to the Amended Agreement, concerns, in part, "all non-refundable revenues actually received in the United States from all sources worldwide by [MTVN] in connection with Ancillary Uses ... of the *Series*," and the Ancillary Uses listed in Schedule A do not include tour or concert revenues.

## REQUEST NO. 34

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any tour or concert performed by *Da Band*.

### RESPONSE TO REQUEST NO. 34

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. The Amended Agreement does not entitle Plaintiff to any funds received by MTVN regarding any tour or concert performed by Da Band. Indeed, the Net Proceeds formula, as defined in Schedule A to the Amended Agreement, concerns, in part, "all non-refundable revenues actually received in the United States from all sources worldwide by [MTVN] in connection with Ancillary Uses ... of the *Series*," and the Ancillary Uses listed in Schedule A do not include tour or concert revenues.

## REQUEST NO. 35

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any tour or concert performed by *Donnie Klang*.

### RESPONSE TO REQUEST NO. 35

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. The Amended Agreement does not entitle Plaintiff to any funds received by MTVN regarding any tour or concert performed by Donnie Klang. Indeed, the Net Proceeds formula, as defined in Schedule A to the Amended Agreement, concerns, in part, "all non-refundable revenues actually received in the United States from all sources worldwide by [MTVN] in connection with

Ancillary Uses ... of the *Series*," and the Ancillary Uses listed in Schedule A do not include tour or concert revenues.

### REQUEST NO. 36

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any tour or concert performed by *Day 26.*

#### RESPONSE TO REQUEST NO. 36

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. The Amended Agreement does not entitle Plaintiff to any funds received by MTVN regarding any tour or concert performed by Day 26. Indeed, the Net Proceeds formula, as defined in Schedule A to the Amended Agreement, concerns, in part, "all non-refundable revenues actually received in the United States from all sources worldwide by [MTVN] in connection with Ancillary Uses ... of the *Series*," and the Ancillary Uses listed in Schedule A do not include tour or concert revenues.

### REQUEST NO. 37

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the O-Town's self-titled album, *O-Town.*

#### RESPONSE TO REQUEST NO. 37

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 38**

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the O-Town album, entitled *Liquid Dreams.*

**RESPONSE TO REQUEST NO. 38**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 39**

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the O-Town album, *O2.*

**RESPONSE TO REQUEST NO. 39**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 40**

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with Da Band's album, *Too Hot for TV.*

**RESPONSE TO REQUEST NO. 40**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 41**

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with Danity Kane's eponymous album, *Danity Kane.*

**RESPONSE TO REQUEST NO. 41**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 42**

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with Danity Kane's follow-up album, *Welcome to the Dollhouse.*

**RESPONSE TO REQUEST NO. 42**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 43**

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with Donnie Klang's album, *Just Like a Rolling Stone.*

**RESPONSE TO REQUEST NO. 43**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 44**

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with Day 26's eponymous album, *Day 26.*

**RESPONSE TO REQUEST NO. 44**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 45**

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any other work featuring O-Town's music, including but not limited, any funds received from iTunes, downloads, ring tones, streaming media, print publishing, synchronization licenses and the like.

**RESPONSE TO REQUEST NO. 45**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

- 23 -

**REQUEST NO. 46**

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any other work featuring Da Band's music, including but not limited, any funds received from iTunes, downloads, ring tones, streaming media, print publishing, synchronization licenses and the like.

**RESPONSE TO REQUEST NO. 46**

MTVN objects to this request to the extent it is overbroad and vague (with respect to, but not limited to, the term "any other work").   Subject to and without waiving the foregoing objections, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.   MTVN reserves the right to supplement this response upon clarification of this request.

**REQUEST NO. 47**

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any other work featuring Danity Kane's music, including but not limited, any funds received from iTunes, downloads, ring tones, streaming media, print publishing, synchronization licenses and the like.

**RESPONSE TO REQUEST NO. 47**

MTVN objects to this request to the extent it is overbroad and vague (with respect to, but not limited to, the term "any other work").  Subject to and without waiving the foregoing objections, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody

or control.  MTVN reserves the right to supplement this response upon clarification of this request.

### REQUEST NO. 48

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any other work featuring Donnie Klang's music, including but not limited, any funds received from iTunes, downloads, ring tones, streaming media, print publishing, synchronization licenses and the like.

### RESPONSE TO REQUEST NO. 48

MTVN objects to this request to the extent it is overbroad and vague (with respect to, but not limited to, the term "any other work").  Subject to and without waiving the foregoing objections, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.  MTVN reserves the right to supplement this response upon clarification of this request.

### REQUEST NO. 49

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with any other work featuring Day 26's music, including but not limited, any funds received from iTunes, downloads, ring tones, streaming media, print publishing, synchronization licenses and the like.

### RESPONSE TO REQUEST NO. 49

MTVN objects to this request to the extent it is overbroad and vague (with respect to, but not limited to, the term "any other work").  Subject to and without waiving the foregoing

objections, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.  MTVN reserves the right to supplement this response upon clarification of this request.

### REQUEST NO. 50

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the merchandise of either O-Town or *Making the Band.*

### RESPONSE TO REQUEST NO. 50

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 51

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the merchandise of either Da Band or *Making the Band 2.*

### RESPONSE TO REQUEST NO. 51

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 52

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the merchandise of either Danity Kane or *Making the Band 3.*

### RESPONSE TO REQUEST NO. 52

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 53

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the merchandise of Donnie Klang, Day 26 and/or *Making the Band 4.*

### RESPONSE TO REQUEST NO. 53

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

## REQUEST NO. 54

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with DVD sales of *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

### RESPONSE TO REQUEST NO. 54

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

## REQUEST NO. 55

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with product placement or product integrations agreements relating to *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

### RESPONSE TO REQUEST NO. 55

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement excludes advertising revenue from the Net Proceeds calculation; specifically, Schedule A defines "Net Proceeds", in part, as "all non-refundable revenues ... (excluding exhibition on MTVN worldwide programming service)."

**REQUEST NO. 56**

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with home video sales of *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

**RESPONSE TO REQUEST NO. 56**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 57**

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the publishing rights (both print and music) for *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

**RESPONSE TO REQUEST NO. 57**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 58

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the publishing rights (both print and music) relating to O-Town, Da Band, Danity Kane, Donnie Klang and/or Day 26.

### RESPONSE TO REQUEST NO. 58

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 59

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the websites for the *Making the Band* web-site, including any and sites which link to or otherwise relate to *Making the Band 2, Making the Band 3* and/or *Making the Band 4.*

### RESPONSE TO REQUEST NO. 59

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 60**

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with the websites for the O-Town, Da Band, Danity Kane, Donnie Klang and/or Day 26.

**RESPONSE TO REQUEST NO. 60**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 61**

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with either the domestic or foreign distribution of *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4.*

**RESPONSE TO REQUEST NO. 61**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 62**

Any and all documents reflecting payments made by MTV to Trans Continental Television Productions for Trans Continental's share of the distribution rights to *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4*.

**RESPONSE TO REQUEST NO. 62**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 63**

Any and all documents that refer, relate to, reflect, concern or evidence any funds received by MTV in connection with international program sales from *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4*.

**RESPONSE TO REQUEST NO. 63**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 64**

Any and all documents reflecting payments made by MTV to Trans Continental Television Productions for Trans Continental's share of the international program sales to *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4*.

**RESPONSE TO REQUEST NO. 64**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 65**

Any and all documents that refer, relate to, reflect, concern or evidence all of the stations in which any season of *Making the Band*, *Making the Band 2*, *Making the Band 3* and/or *Making the Band 4* has been distributed to, broadcast or exhibited in, aired or otherwise televised on.

**RESPONSE TO REQUEST NO. 65**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 66

Any and all documents that refer, relate to, reflect, concern or evidence all of the countries, territories, or provinces in which any season of *Making the Band, Making the Band 2, Making the Band 3 and/or Making the Band 4* has been distributed to, broadcast or exhibited in, aired or otherwise televised on.

### RESPONSE TO REQUEST NO. 66

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 67

Any and all documents that refer, relate to, reflect, concern or evidence any license, affiliate, program sales or distribution agreements that MTV has entered into with any party involving *Making the Band, Making the Band 2, Making the Band 3 and/or Making the Band 4.*

### RESPONSE TO REQUEST NO. 67

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 68**

Any and all documents that refer, relate to, reflect, concern or evidence each and every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in the distribution (both foreign and domestic) of *Making the Band, Making the Band 2, Making the Band 3 and/or Making the Band 4*.

**RESPONSE TO REQUEST NO. 68**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 69**

Any and all documents that refer, relate to, reflect, concern or evidence each and every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in the licensing of the television programs, *Making the Band, Making the Band 2, Making the Band 3 and/or Making the Band 4*.

**RESPONSE TO REQUEST NO. 69**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 70**

Any and all documents that refer, relate to, reflect, concern or evidence each and every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in the licensing of any merchandise or ancillary, allied or after-market products (e.g., DVDs and other products relating to the home video market) relating to any season of *Making the Band, Making the Band 2, Making the Band 3 and/or Making the Band 4.*

**RESPONSE TO REQUEST NO. 70**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 71**

Any and all documents that refer, relate to, reflect, concern or evidence the amount of gross and net profit that MTV, including any and all MTV-related, sister or affiliated entities, has made in connection with *Making the Band, Making the Band 2, Making the Band 3 and/or Making the Band 4.*

**RESPONSE TO REQUEST NO. 71**

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence because "gross and net profit" falls outside the scope of the parties' contract. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50%

of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement defines "Net Proceeds" in a particularized manner, specifying that only certain revenues, expenses and deduction are to be included in the calculation of Net Proceeds. The more general "gross and net profits" is therefore irrelevant.

## REQUEST NO. 72

Any and all documents that refer, relate to, reflect, concern or evidence the amount of advertising revenue that MTV, including any and all MTV-related, sister or affiliated entities, has received in connection with the broadcast of *Making the Band 2* in the United States or any other country, territory or province.

### RESPONSE TO REQUEST NO. 72

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement excludes advertising revenue from the Net Proceeds calculation; specifically, Schedule A defines "Net Proceeds", in part, as "all non-refundable revenues ... (excluding exhibition on MTVN worldwide programming service)."

## REQUEST NO. 73

Copies of the monthly profit and loss statements created by MTV in connection with *Making the Band, Making the Band 2, Making the Band 3* and *Making the Band 4*.

### RESPONSE TO REQUEST NO. 73

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence because "profit and loss" falls outside the scope of the parties' contract. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement defines "Net Proceeds" in a particularized manner, specifying that only certain revenues, expenses and deduction are to be included in the calculation of Net Proceeds. The more general information contained on any "monthly profit and loss statements" is therefore irrelevant.

## REQUEST NO. 74

Any and all documents that discuss, reference, relate to or evidence the rate charged by MTV for advertising (be it for a :15 second or :30 second spot) during season three of *Making the Band*.

### RESPONSE TO REQUEST NO. 74

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of

## REQUEST NO. 76

Any and all documents that discuss, reference, relate to or evidence the average revenue amount generated by MTV in connection with a single episode of season three of *Making the Band*.

## RESPONSE TO REQUEST NO. 76

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. With respect to the first two seasons of *Making the Band*, the Agreement entitles Plaintiff only to certain items of revenue; therefore, the "average revenue" amount generated on an episode-by-episode basis is both irrelevant and overburdensome. With respect to the third season of *Making the Band*, pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement defines "Net Proceeds" in a particularized manner, specifying that only certain revenues, expenses and deduction are to be included in the calculation of Net Proceeds. Furthermore, pursuant to Schedule A of the Amended Agreement, Net Proceeds, if any, are to be accounted for on a "semi-annual basis," and not an episode-by-episode basis. The "average revenue" per episode is therefore irrelevant and overburdensome.

Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement excludes advertising revenue from the Net Proceeds calculation; specifically, Schedule A defines "Net Proceeds", in part, as "all non-refundable revenues ... (excluding exhibition on MTVN worldwide programming service)."

### REQUEST NO. 75

Any and all documents that discuss, reference, relate to or evidence the rate charged by MTV for advertising (be it for a :15 second or :30 second spot) during any season of *Making the Band 2, Making the Band 3* and *Making the Band 4.*

### RESPONSE TO REQUEST NO. 75

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement excludes advertising revenue from the Net Proceeds calculation; specifically, Schedule A defines "Net Proceeds", in part, as "all non-refundable revenues ... (excluding exhibition on MTVN worldwide programming service)."

### REQUEST NO. 77

Any and all documents that discuss, reference, relate to or evidence the average revenue amount generated by MTV in connection with a single episode of seasons one, two and three of *Making the Band 2*.

### RESPONSE TO REQUEST NO. 77

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement defines "Net Proceeds" in a particularized manner, specifying that only certain revenues, expenses and deduction are to be included in the calculation of Net Proceeds. Furthermore, pursuant to Schedule A of the Amended Agreement, Net Proceeds, if any, are to be accounted for on a "semi-annual basis," and not an episode-by-episode basis. The "average revenue" per episode is therefore irrelevant and overburdensome.

- 41 -

**REQUEST NO. 78**

Any and all documents that discuss, reference, relate to or evidence the average revenue amount generated by MTV in connection with a single episode of seasons one, two and three of *Making the Band 3*.

**RESPONSE TO REQUEST NO. 78**

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement defines "Net Proceeds" in a particularized manner, specifying that only certain revenues, expenses and deduction are to be included in the calculation of Net Proceeds. Furthermore, pursuant to Schedule A of the Amended Agreement, Net Proceeds, if any, are to be accounted for on a "semi-annual basis," and not an episode-by-episode basis. The "average revenue" per episode is therefore irrelevant and overburdensome.

**REQUEST NO. 79**

Any and all documents that discuss, reference, relate to or evidence the average revenue amount generated by MTV in connection with a single episode of seasons one, two and three of *Making the Band 4.*

**RESPONSE TO REQUEST NO. 79**

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement defines "Net Proceeds" in a particularized manner, specifying that only certain revenues, expenses and deduction are to be included in the calculation of Net Proceeds. Furthermore, pursuant to Schedule A of the Amended Agreement, Net Proceeds, if any, are to be accounted for on a "semi-annual basis," and not an episode-by-episode basis. The "average revenue" per episode is therefore irrelevant and overburdensome.

- 43 -

**REQUEST NO. 80**

Any and all documents that discuss, reference, relate to or evidence any communications between MTV and any third party regarding the rate to advertise during season three of *Making the Band,* or any season of *Making the Band 2, Making the Band 3* and *Making the Band 4.*

**RESPONSE TO REQUEST NO. 80**

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement excludes advertising revenue from the Net Proceeds calculation; specifically, Schedule A defines "Net Proceeds", in part, as "all non-refundable revenues … (excluding exhibition on MTVN worldwide programming service)."

**REQUEST NO. 81**

Any and all documents that discuss, reference, relate to or evidence every individual or entity, including any and all MTV-related, sister or affiliated entities, which have been involved, in any way, in selling advertisement spots in connection with season three of *Making the Band,* or any season of *Making the Band 2, Making the Band 3* and *Making the Band 4.*

**RESPONSE TO REQUEST NO. 81**

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence.

- 44 -

Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A."  In turn, Schedule A of the Amended Agreement excludes advertising revenue from the Net Proceeds calculation; specifically, Schedule A defines "Net Proceeds", in part, as "all non-refundable revenues ... (excluding exhibition on MTVN worldwide programming service)."

## REQUEST NO. 82

Copies of all sales or advertising contracts between MTV and any third-party relating to the purchase of advertisement spots in connection with season three of *Making the Band*, or any season of *Making the Band 2, Making the Band 3* and *Making the Band 4.*

### RESPONSE TO REQUEST NO. 82

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A."  In turn, Schedule A of the Amended Agreement excludes advertising revenue from the Net Proceeds calculation; specifically, Schedule A defines "Net Proceeds", in part, as "all non-refundable revenues ... (excluding exhibition on MTVN worldwide programming service)."

**REQUEST NO. 83**

Any and all documents that discuss, reference, relate to or evidence any software program used by MTV to track and manage its advertising inventory (e.g., Wide Orbit, Inventory Explorer, etc.).

**RESPONSE TO REQUEST NO. 83**

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement excludes advertising revenue from the Net Proceeds calculation; specifically, Schedule A defines "Net Proceeds", in part, as "all non-refundable revenues ... (excluding exhibition on MTVN worldwide programming service)."

**REQUEST NO. 84**

Any and all documents that discuss, reference, relate to or evidence any software program used by MTV to ensure the proper placements of its advertisements.

**RESPONSE TO REQUEST NO. 84**

MTVN objects to this request because it is overburdensome and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Paragraph 9 of the Amended Agreement, "with respect to the third season [of Making the Band 1] and all subsequent seasons of the Series, MTV shall pay to TC an all-in

- 46 -

amount equal to 50% of 100% of the MTV's Net Proceeds derived from the Series and defined as set forth in Schedule A." In turn, Schedule A of the Amended Agreement excludes advertising revenue from the Net Proceeds calculation; specifically, Schedule A defines "Net Proceeds", in part, as "all non-refundable revenues ... (excluding exhibition on MTVN worldwide programming service)."

## REQUEST NO. 85

Any and all documents that refer, relate to, reflect, concern or evidence the number of episodes of *Making the Band, Making the Band 2, Making the Band 3* and/or *Making the Band 4,* which aired on MTV.

### RESPONSE TO REQUEST NO. 85

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

## REQUEST NO. 86

Any and all documents that refer, relate to, reflect, concern or evidence the number of re-runs of seasons three of *Making the Band.*

### RESPONSE TO REQUEST NO. 86

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

- 47 -

**REQUEST NO. 87**

Any and all documents that refer, relate to, reflect, concern or evidence the number of re-runs of any season of *Making the Band 2*.

**RESPONSE TO REQUEST NO. 87**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 88**

Any and all documents that refer, relate to, reflect, concern or evidence the number of times any episode of any season of *Making the Band 2* has been re-broadcast.

**RESPONSE TO REQUEST NO. 88**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

**REQUEST NO. 89**

Any and all documents that refer, relate to, reflect, concern or evidence the number of re-runs of any season of *Making the Band 3*.

**RESPONSE TO REQUEST NO. 89**

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 90

Any and all documents that refer, relate to, reflect, concern or evidence the number of times any episode of any season of *Making the Band 3* has been re-broadcast.

### RESPONSE TO REQUEST NO. 90

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 91

Any and all documents that refer, relate to, reflect, concern or evidence the number of re-runs of any season of *Making the Band 4*.

### RESPONSE TO REQUEST NO. 91

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 92

Any and all documents that refer, relate to, reflect, concern or evidence the number of times any episode of any season of *Making the Band 4* has been re-broadcast.

### RESPONSE TO REQUEST NO. 92

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 93

Any and all documents that refer, relate to, reflect, concern or evidence any negotiations between MTV and Trans Continental regarding any spin-offs, sequels, made-for-TV movies, direct to video, non-theatrical, radio or other projects based on *Making the Band*.

### RESPONSE TO REQUEST NO. 93

MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### REQUEST NO. 94

Any and all documents that refer, relate to, reflect, concern or evidence any internal discussions among MTV regarding Trans Continental's interest in any spin-offs, sequels, made-for-TV movies, direct to video, non-theatrical, radio or other projects based on *Making the Band*.

### RESPONSE TO REQUEST NO. 94

MTVN objects to this request as vague with respect to the phrase "Trans Continental's interest." Without waiving the foregoing objection, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control. MTVN reserves the right to supplement this response upon clarification of the term "Trans Continental's interest."

**REQUEST NO. 95**

Any and all documents that refer, relate to, reflect, concern or evidence any internal discussions among MTV regarding Trans Continental's interest in *Making the Band 2, Making the Band 3 and Making the Band 4.*

**RESPONSE TO REQUEST NO. 95**

MTVN objects to this request as vague with respect to the phrase "Trans Continental's interest." Without waiving the foregoing objection, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control. MTVN reserves the right to supplement this response upon clarification of the term "Trans Continental's interest."

**REQUEST NO. 96**

Any and all documents that refer, relate to, reflect, concern or evidence any discussions between MTV and Diddy regarding Trans Continental's interest in *Making the Band 2, Making the Band 3 and Making the Band 4.*

**RESPONSE TO REQUEST NO. 96**

MTVN objects to this request as vague with respect to the phrase "Trans Continental's interest." Without waiving the foregoing objection, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control. MTVN reserves the right to supplement this response upon clarification of the term "Trans Continental's interest."

### REQUEST NO. 97

Any and all documents that refer, relate to, reflect, concern or evidence any discussions between MTV and Bad Boy regarding Trans Continental's interest in *Making the Band 2, Making the Band 3 and Making the Band 4.*

### RESPONSE TO REQUEST NO. 97

MTVN objects to this request as vague with respect to the phrase "Trans Continental's interest." Without waiving the foregoing objection, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control. MTVN reserves the right to supplement this response upon clarification of the term "Trans Continental's interest."

### REQUEST NO. 98

Any and all documents that refer, relate to, reflect, concern or evidence any discussions between MTV and Johnny Wright regarding Trans Continental's interest in *Making the Band 2, Making the Band 3 and Making the Band 4* and/or Danity Kane, Day 26, Donnie Klang and Da Band.

### RESPONSE TO REQUEST NO. 98

MTVN objects to this request as vague with respect to the phrase "Trans Continental's interest." Without waiving the foregoing objection, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control. MTVN reserves the right to supplement this response upon clarification of the term "Trans Continental's interest."

### REQUEST NO. 99

Any and all documents that refer, relate to, reflect, concern or evidence any discussions between MTV and any third-party regarding Trans Continental's interest in *Making the Band 2, Making the Band 3 and Making the Band 4*.

### RESPONSE TO REQUEST NO. 99

MTVN objects to this request as vague with respect to the phrase "Trans Continental's interest." Without waiving the foregoing objection, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control. MTVN reserves the right to supplement this response upon clarification of the term "Trans Continental's interest."

### REQUEST NO. 100

Any and all documents that refer, relate to, reflect, concern or evidence Trans Continental's interest in *Making the Band 2, Making the Band 3, and Making the Band 4.*

### RESPONSE TO REQUEST NO. 100

MTVN objects to this request as vague with respect to the phrase "Trans Continental's interest." Without waiving the foregoing objection, MTVN will produce (subject to the parties' confidentiality agreement) responsive, non-privileged documents to the extent such documents exist and are in its possession, custody or control. MTVN reserves the right to supplement this response upon clarification of the term "Trans Continental's interest."

### REQUEST NO. 101

All documents that constitute, reference, or relate to any memoranda, reports, statements, summaries and/or opinions that you have obtained from any person whom you propose to call as an expert witness at any hearing in this action.

#### RESPONSE TO REQUEST NO. 101

MTVN objects to this request on the grounds that it is premature, as discovery in this matter is ongoing.  MTVN has not yet identified any person(s) whom it proposes to call as an expert witness at any hearing in this action.

### REQUEST NO. 102

All documents on which each person identified by you as an expert in this proceeding bases any opinion, or which are grounds for his or her opinion, testimony, or expected testimony.

#### RESPONSE TO REQUEST NO. 102

MTVN objects to this request on the grounds that it is premature, as discovery in this matter is ongoing.  MTVN has not yet identified any experts.

### REQUEST NO. 103

All documents that constitute the resume or curriculum vitae of each person identified by you as an expert.

#### RESPONSE TO REQUEST NO. 103

MTVN objects to this request on the grounds that it is premature, as discovery in this matter is ongoing.  MTVN has not yet identified any experts.

### REQUEST NO. 104

All documents that summarize, contain, reference, or relate to the opinions, testimony, or expected testimony of each person identified by you as an expert.

### RESPONSE TO REQUEST NO. 104

MTVN objects to this request on the grounds that it is premature, as discovery in this matter is ongoing. MTVN has not yet identified any experts.

### REQUEST NO. 105

All documents that constitute, reference, or relate to any communication between you and any person identified by you as an expert.

### RESPONSE TO REQUEST NO. 105

MTVN objects to this request on the grounds that it is premature, as discovery in this matter is ongoing. MTVN has not yet identified any experts.

### REQUEST NO. 106

All documents constituting reports, statements, papers, treatises, theses, articles and other publications, presentations, or submissions which were prepared by any person identified by you as an expert and which in any way relate to the subject matter of this litigation.

### RESPONSE TO REQUEST NO. 106

MTVN objects to this request on the grounds that it is premature, as discovery in this matter is ongoing. MTVN has not yet identified any experts.

**REQUEST NO. 107**

All documents supplied or transmitted by you, or which you caused to be supplied or transmitted, to any person identified by you as an expert.

**RESPONSE TO REQUEST NO. 107**

MTVN objects to this request on the grounds that it is premature, as discovery in this matter is ongoing. MTVN has not yet identified any experts.

**REQUEST NO. 108**

All documents that you may introduce into evidence at any hearing in this action.

**RESPONSE TO REQUEST NO. 108**

MTVN objects to this request on the grounds that it is premature, as discovery in this matter is ongoing. MTVN has not yet determined which documents it may introduce into evidence at any hearing in this action.

Dated: This 3rd day of December 2008.

Respectfully submitted,

**K&L GATES LLP**
*Attorneys for Defendant*
Wachovia Financial Center
200 S. Biscayne Boulevard, Suite 3900
Miami, Florida 33131
Tel:   (305) 539-3300
Fax:   (305) 358-7095

By: _____
Carol C. Lumpkin
FL Bar No. 797448
carol.lumpkin@klgates.com
Karen P. Finesilver
FL Bar No. 031352
karen.finesilver@klgates.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 3rd day of December 2008, a true and correct copy of the foregoing was served via United States Mail to **James G. Sammataro**, counsel for Plaintiff, Silverman Cosgrove & Sammataro, 2 S. Biscayne Blvd., Suite 2650, Miami, FL 33131.

_____
KAREN P. FINESILVER

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al.*

      **Debtor.**

_____/

SONEET KAPILA, Chapter 11 Trustee
for TRANS CONTINENTAL TELEVISION
PRODUCTIONS, INC.,

             **Plaintiff,**

v.

MTV NETWORKS COMPANY,

             **Defendant.**

_____/

Case No. 6:07-bk-00761-ABB
Jointly Administered
Chapter 11

Adv. No.: 6:08-ap-00157-ABB

## DEFENDANT'S INITIAL DISCLOSURES

Defendant MTV Networks, a division of Viacom International Inc. ("MTVN"), improperly sued herein as MTV Networks Company, by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 26(a)(1) and Federal Rule of Bankruptcy Procedure 7026, hereby serves its Initial Disclosures.

## GENERAL STATEMENT

The Initial Disclosures herein are based on the information reasonably available to MTVN as of this date. MTVN reserves the right to modify, amend and/or supplement these disclosures pursuant to the requirements set forth by Rule 26(e) of the Federal Rules of Civil Procedure. MTVN's disclosure of information pursuant to the requirements set forth by Rule 26(a) of the Federal Rules of Civil Procedure shall not constitute an admission by MTVN that

the information is admissible at trial and shall not constitute a waiver of any objection that might

otherwise be made to the disclosure and/or admissibility of such information.

Subject to the foregoing, MTVN makes the following disclosures:

## INITIAL DISCLOSURES

I.  **INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION THAT MTVN MAY USE TO SUPPORT ITS CLAIMS OR DEFENSES**[1]

1.  Plaintiff Trans Continental Television Productions, Inc.
    c/o James G. Sammataro, Esq.
    Silverman Cosgrove & Sammataro
    One Biscayne Tower
    2 South Biscayne Boulevard, Suite 2650
    Miami, Florida 33131
    (305) 377-1666

Plaintiff Trans Continental Television Productions, Inc. ("Plaintiff") should have knowledge regarding (1) the allegations in the Complaint; (2) the negotiations between Plaintiff and MTVN regarding the January 7, 2000 letter agreement (the "Agreement"); (3) the negotiations between Plaintiff and MTVN regarding the November 15, 2001 amended agreement (the "Amended Agreement"); and (4) the parties' rights and obligations under the Agreement and Amended Agreement.

2.  Louis J. Pearlman
    Plaintiff's (Former) President
    c/o James G. Sammataro, Esq.
    Silverman Cosgrove & Sammataro
    One Biscayne Tower
    2 South Biscayne Boulevard, Suite 2650
    Miami, Florida 33131
    (305) 377-1666

Louis J. Pearlman ("Mr. Pearlman") should have knowledge regarding (1) the allegations in the Complaint; (2) the negotiations between Plaintiff and MTVN regarding the January 7, 2000 letter agreement (the "Agreement"); (3) the negotiations between Plaintiff and MTVN regarding the November 15, 2001 amended agreement (the "Amended Agreement"); and (4) the parties' rights and obligations under the Agreement and Amended Agreement.

---

[1] MTVN is only listing non-duplicative witnesses, who have not been already listed by Plaintiff in its Initial Disclosures. In no way does MTVN intend this to be a waiver of its right to rely on the individuals disclosed by Plaintiff.

3.      Brad Hazzard
         MTVN's Vice President, Administration, Business & Legal Affairs
         c/o Carol C. Lumpkin, Esq.
         K&L Gates LLP
         Wachovia Financial Center
         200 South Biscayne Boulevard, Suite 3900
         Miami, Florida 33131
         (305) 539-3300

Brad Hazzard ("Mr. Hazzard") has factual knowledge regarding (1) certain revenues, funds and other income streams from the *Making the Band* series; (2) the participation statements regarding the *Making the Band* series; and (3) the amount of money paid by MTVN to Plaintiff.

4.      Jackie French
         MTVN's Vice President of Series
         c/o Carol C. Lumpkin, Esq.
         K&L Gates LLP
         Wachovia Financial Center
         200 South Biscayne Boulevard, Suite 3900
         Miami, Florida 33131
         (305) 539-3300

Jackie French ("Ms. French") has knowledge regarding (1) the production aspects of the *Making the Band* series; and (2) Mr. Pearlman's meeting with Da Band during *Making the Band II* to be Da Band's manager.

5.      MTVN further identifies all individuals identified by or to Plaintiff in discovery, either specifically by name or by reference to position. MTVN reserves the right to call any and all additional fact witnesses revealed during investigation or discovery that have relevant information regarding this lawsuit. MTVN incorporates by reference the names of any and all persons disclosed to or by Plaintiff through disclosures, answers to interrogatories, responses to requests for production or for admission, pleadings, or otherwise.

## II.  DESCRIPTION BY CATEGORY OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION AND TANGIBLE THINGS IN MTVN'S POSSESSION, CUSTODY, OR CONTROL THAT IT MAY USE TO SUPPORT ITS CLAIMS OR DEFENSES

The documents required to be disclosed by Rule 26(a)(1)(B) will be made available for inspection and copying at the offices of undersigned counsel at a mutually convenient date and time to be agreed upon by counsel to the parties, and subject to the execution of a confidentiality agreement.

These documents fall into the following categories:

1.  Documents produced by MTVN in 2007 pursuant to subpoena duces tecum
    (MTVN 00001 – 000262), which fall into the following categories:

    - Accounting, Participation Statements, Checks from MTVN to Plaintiff
      (MTVN 000001 – 000087);

    - Agreement between J Records, Plaintiff and MTVN regarding O-Town
      (MTVN 000088 – 000137);[2]

    - Exclusive Artist Recording Agreement between O-Town and MTVN and
      Plaintiff (MTVN 000138 – 000199);

    - ABC's release of all its airing rights in *Making the Band* to MTV (MTVN
      000200 – 000201);

    - The January 7, 2000 and November 15, 2001 letter agreements between
      MTVN and Plaintiff regarding *Making the Band* (MTVN 000202 –
      000211); and

    - Licensing Agreement between ABC and MTVN and Plaintiff regarding
      *Making the Band* (MTVN 000212 – 000262).

2.  Unaired footage from *Making the Band II*, dated April 2, 2003, of Mr. Pearlman
    visiting the cast house and meeting with Da Band in order to pitch himself and
    Plaintiff to be Da Band's manager; and

3.  Summary of Net Proceeds on a season-by-season basis since *Making the Band I*,
    Season Three.[3]

## III.   COMPUTATION OF DAMAGES CLAIMED BY MTVN

At this time, subject to more discovery, MTVN believes that it is entitled to certain

damages from Plaintiff, including, but not limited to, MTVN's share of certain advances paid by

J Records to Plaintiff in connection with O-Town's second artist album.  MTVN reserves the

right to modify, amend and/or supplement these damages as discovery continues.

## IV.   INSURANCE AGREEMENTS THAT MAY PROVIDE COVERAGE

Not applicable.

---

[2] Regarding J Records, Plaintiff has better access to contracts and other documents regarding its
relationship with J Records and therefore is obligated to disclose and produce such documents to MTVN.

[3] MTVN anticipates that the Summary of Net Proceeds will be completed by Wednesday, November 26,
2008, and will thereafter be available to Plaintiff, subject to the execution of a confidentiality agreement.

Dated:  November 14, 2008.            Respectfully submitted,

**K&L GATES LLP**
*Attorneys for Defendant*
Wachovia Financial Center
200 S. Biscayne Boulevard, Suite 3900
Miami, Florida 33131
Tel: (305) 539-3300
Fax: (305) 358-7095

By: _____
      Karen P. Finesilver
      FL Bar No. 031352
      karen.finesilver@klgates.com
      Carol C. Lumpkin
      FL Bar No. 797448
      carol.lumpkin@klgates.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of November 2008, I served the foregoing via United States Mail to: **James G. Sammataro**, counsel for Plaintiff, Silverman Cosgrove & Sammataro, 2 S. Biscayne Blvd., Suite 2650, Miami, FL 33131.

_____
KAREN P. FINESILVER