UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al.*

        Debtor.

_____ /

SONEET KAPILA, Chapter 11 Trustee for
TRANS CONTINENTAL TELEVISION
PRODUCTIONS, INC.,

        Plaintiff,

v.

MTV NETWORKS, a division of Viacom,
International, Inc.

        Defendant.

_____ /

Case No. 6:10-cv-181-Orl-28-DAB

### THE TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MTV NETWORKS' MOTION FOR *IN CAMERA* REVIEW

Plaintiff, Soneet Kapila, the Chapter 11 Trustee for Trans Continental Television Productions, Inc. (the "Trustee"), by and through counsel, hereby respectfully submits this memorandum of law in opposition to the Motion for *in camera* Review (the "Motion") filed by defendant, MTV Networks ("MTV") [D.E. 203]. In support of this memorandum, the Trustee states as follows:

### I. INTRODUCTION

MTV's Motion is both substantively incorrect and procedurally improper. As an initial matter, MTV's motion is not ripe. Before an *in camera* inspection is granted, the Trustee should *first* be afforded the opportunity to review the pertinent portion of the e-mail sent by Mr. Pearlman from a computer in the Texarcana Federal Correctional Institute to his criminal counsel, Don West, Esq., which relates to this adversary proceeding (the "Disputed

Communication").[1] The reason for this is simple. The privilege, if any, that applies to the information that Mr. Pearlman, Trans Continental's former officer, sought to relay to the Trustee's counsel for the purposes of formulating and assisting Trans Continental Television Productions, Inc.'s ("Trans Continental") legal strategy against MTV belongs to the Trustee.

Ignoring this fact, MTV has wrongfully eliminated the Trustee from the equation by preventing his counsel from reviewing this email,[2] instead requesting that Mr. West (who is unfamiliar with the specifics of this adversary proceeding) unilaterally opine on the applicability of the privilege. And, now that it is displeased with Mr. West's assertion of privilege, MTV is petitioning this Court to overrule Mr. West's determination. Notably, MTV has not provided this Court with: (a) any support that the Disputed Communication contains relevant information, or (b) any grounds to question the validity of Mr. West's privilege assertion – nor could it, unless it has already reviewed the Disputed Communication.

Further casting doubt on the propriety of MTV's actions is its continued engagement in discovery gamesmanship. Despite the Trustee's pending Motion for Sanctions against MTV for Spoliation and Discovery Abuses (the "Sanctions Motions") [D.E. 159, 199], MTV's counsel nonetheless deemed it appropriate to withhold the totality of the documents it received from the Bureau of Prisons until *after* the second day of Mr. Pearlman's deposition, ensuring that the Trustee's counsel would be precluded from reviewing and/or otherwise using any of these documents during Mr. Pearlman's deposition – a fact which is particularly troublesome given

---

[1] Given its assertion that it has *not* reviewed the Disputed Communication, MTV's contention that the e-mail "may provide crucial factual information concerning the Trustee's claims in this case" is unsupportable, if not outright perplexing. [D.E. 203, p. 5].

[2] Based on MTV's counsel's espoused (but mistaken) view that the undersigned's review of the Disputed Communication would automatically result in a waiver, the Trustee's counsel has made no attempt, and has not requested, to review the document.

that Mr. Pearlman's deposition testimony will, in all likelihood, serve as his trial testimony.[3] Now, having deprived the Trustee of the opportunity to review the Disputed Communication and deciding whether or not to waive the privilege, MTV seeks to capitalize on the Disputed Communication by using it in support of its forthcoming summary judgment motion.

Lastly, irrespective of whether the Court orders an *in camera* inspection of the Disputed Communication, the Trustee respectfully requests that the Court conduct an *in camera* inspection of the documents listed in the Motion for Sanctions [D.E. 159, p. 14; *see* D.E. 159-28] on an expedited basis, as these challenged documents are equally likely to impact both the Trustee's forthcoming motion for summary judgment and his opposition to MTV's summary judgment motion.

## II. MEMORANDUM OF LAW

MTV's Motion demonstrates a fundamental misunderstanding of the law. First, in an adversary proceeding, the attorney-client privilege protects post-bankruptcy petition communications between the Trustee's counsel and the debtor entity's former officers, directors and employees. The privilege relating to these communications belongs to the Trustee. Second, to the extent that the Disputed Communication is privileged, the privilege has not been waived by virtue of the fact that Mr. Pearlman – who is incarcerated and has few, if any, alternative means to relay information – attempted to use his legal counsel as an intermediary to communicate information to the Trustee's counsel. Indeed, there is a robust body of law which

---

[3] Despite having indisputably received the responsive documents at 1:12 p.m. on April 26, 2011, MTV's counsel did not produce these documents to the Trustee's counsel until 10:18 a.m. EST on April 27, 2011 – at which point, the second day of Mr. Pearlman's deposition had commenced. Once in the Texarcana Federal Correctional Institute, the undersigned had no access to his e-mail and was not permitted to leave the Institution in order to retrieve e-mail. Having been aware of these regulations, MTV's counsel should have produced all of the responsive documents to the Trustee's counsel *at the same time* that it provided Mr. West with a copy of the Disputed Communication at approximately 7:00 a.m. on April 27, 2011. The Trustee's counsel made his objection on the record. The pertinent excerpt containing the Trustee's counsel's objection to MTV's refusal to timely produce the documents is attached hereto as **Exhibit A**.

provides that the attorney-client privilege shields communications relayed to reasonably necessary intermediaries for the purpose of forwarding information to counsel to obtain legal advice. Third, MTV broadly, and wrongly, asserts that Mr. Pearlman's email to his criminal counsel which purportedly contains a description of factual information can never be the proper subject of a privilege claim.

### A. The Trustee Holds the Privilege and Is Entitled to Review the Disputed Communication.

MTV asserts that "any information provided by Mr. Pearlman to Mr. West concerning this case – as opposed to Mr. Pearlman's criminal case – is simply not privileged." [D.E. 203, p. 4]. This sweeping statement is off-base. First, given that it is not privy to the specifics of the Mr. Pearlman-Mr. West attorney-client relationship, either past or present, MTV cannot authoritatively speak to the parameters of the relationship or definitively conclude that "the facts of this civil litigation have no bearing [on Mr. Pearlman's criminal case]." [D.E. 203, pp. 4-5]. This is a decision for Mr. West to make.[4] Having said this, it stretches the imagination to believe that an e-mail authored by Mr. Pearlman to his counsel would not be a privileged communication.

In this same vein, while MTV repeatedly emphasizes that the present adversary

---

[4] MTV's Motion operates from the assumption that Mr. West's representation of Mr. Pearlman relates solely to past matters, which may not be the case given that the United States Attorneys' Office's investigation into the Ponzi scheme is ostensibly on-going. Being as equally uninformed as MTV to the nature and scope of Mr. West's present representation of Mr. Pearlman, this response refrains from making any argument as to whether Mr. Pearlman's communication to Mr. West regarding this case was for the purpose of securing legal advice from Mr. West and would instead note that Mr. West has previously determined that Mr. Pearlman's e-mail communication:

> was intended first and foremost for my consideration in the larger context of my representation of Mr. Pearlman and in furtherance of my counsel and advice regarding the [then] upcoming MTV deposition and how that proceeding could impact the pending criminal matters in this district; and ultimately, for the exercise of my discretion, whether or not to provide that part of the email to counsel for the trustee.

(*See* **Exhibit B**).

proceeding is "completely unrelated" to Mr. Pearlman's criminal case [D.E. 202, pp. 1,4], this assertion is belied, in part, by the fact that MTV dedicated a considerable portion of Mr. Pearlman's deposition to questioning him on the First Superseding Information, his Plea Agreement and his sentencing hearing.[5] MTV's "un-relatedness" argument is further undermined by its own – however mistaken – belief that Mr. Pearlman's sentence incentivizes him to cooperate with the Trustee. Regardless, there is an obvious nexus between Mr. Pearlman's criminal proceedings; the Trustee's attempts to recover assets for the benefit of the victims of Mr. Pearlman's Ponzi scheme; and Mr. Pearlman's desire to communicate with Mr. West regarding the legal ramifications of his testimony.[6]

This point aside, MTV is mistaken as to the privilege that is implicated by the purported pertinent portion of the Disputed Communication. In an adversary proceeding, the attorney-client privilege protects communications between the Trustee's counsel and the debtor entity's former officers, directors, and employees. *See In re Worldwide Wholesale Lumber, Inc.*, 392 B.R. 197, 202-203 (Bankr. D. S.C. 2008). In *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343 (1985), the United States Supreme Court expressly held that the trustee of a bankrupt corporation is the holder of, and has the power to waive, the corporation's attorney-client privilege with respect to pre-bankruptcy communications. *See also In re Smith*, 24 B.R. 3 (Bankr. S.D. Fla. 1982) (holding that the attorney-client privilege always passes to the trustee even if the debtor is an individual). The Supreme Court's decision has subsequently been extended to apply to ***post-petition*** communications. By way of example, in *In re Bame*, the

---

[5] It was this line of questioning which prompted Mr. West to attend Mr. Pearlman's deposition in the first instance.

[6] To the extent that the content of the Disputed Communication relates solely to the impact of Mr. Pearlman's testimony on his criminal sentencing, then it is difficult to fathom how the communication would be relevant to the instant litigation. Conversely, to the extent that the content is relevant to this adversary proceeding, then the privilege belongs to the Trustee.

bankruptcy court ruled that the attorney-client privilege passes to the Trustee as to "***all matters having to do with the administration of the estate, including, in particular, disclosure and recovery of assets.***" 251 B.R. 367, 375 (Bankr. D. Minn. 2000) (emphasis added).

Pressed with a similar issue, the *Worldwide* court held that the attorney-client privilege applied to post-bankruptcy petition communications between a former officer of the debtor entity and the Trustee's attorney "to the extent that counsel's communications with [the debtor's former director] relate to matters within the scope of [the Trustee's] corporate duties," which included prosecution of the *Worldwide* adversary proceeding. *See id.* at 203.[7] Consequently, to the extent that Mr. Pearlman, as a former officer of Trans Continental, was attempting to relay information to the Trustee's counsel for the purposes of assisting the recovery of assets in this case, the communication is privileged, and the privilege belongs to the Trustee. It is, therefore, the Trustee's counsel's – not Mr. Pearlman's or Mr. West's – right to make the determination in the first instance as to whether the information contained in the Disputed Communication is protected by the attorney-client privilege. By refusing to furnish the document to the Trustee's counsel and instead requesting an *in camera* inspection, MTV has skipped a critical step and unnecessarily burdened the Court with a premature request.

### B. The Attorney-Client Privilege is *Not* Waived When the Information Is Relayed Through Reasonably Necessary Intermediaries.

During Trans Continental's attempt to meet and confer, MTV rejected the applicability of *Worldwide*, suggesting that, even if the Disputed Communication contained privileged information, the privilege was waived by Mr. Pearlman's communication of the information to Mr. West and/or use of Mr. West as an intermediary. MTV is again mistaken.

---

[7] The *Worldwide* court ruled that the Trustee was entitled to a protective order to the extent that the discovery requests required disclosure of privileged communications between the Trustee and the debtor's former officers. *Id.* at 203-204.

The attorney-client privilege shields communications relayed through reasonably necessary intermediaries to counsel for the purpose of obtaining legal advice or furthering legal strategy. "A communication, then, by ***any form of agency*** employed or set in motion by the client is within the privilege. This of course includes communications through an ***interpreter***, and also communications ***through a messenger*** or any other ***agent of transmission***, as well as communications ***originating with the client's agent*** and made to the attorney." 8 Wigmore, Evidence s. 2317, at 618 (McNaughton rev. 1961) (footnotes omitted; emphasis in original). *See also, Gerheiser v. Stephens*, 712 So. 2d 1252, 1254 (Fla. 4th DCA 1998) (holding that communication between inmate and mother was privileged because mother was "reasonably necessary for the transmission of the communication," even though the lawyer was never retained by the son); *see also In re Haile Co.*, WL 12004362, *1 (Bankr. S.D. Ga. Mar. 10, 1992) ("Pursuant to Federal Rule of Evidence 501, made applicable here by Bankruptcy Rule 9017, application of the attorney/client privilege in this adversary proceeding to an apparent State law cause of action sounding in tort is governed by State law.").

Mr. Pearlman is incarcerated and has limited, to no, direct access to third-parties, including the Trustee's counsel. Mr. West is Mr. Pearlman's primary legal liaison. Consequently, to the extent that Mr. Pearlman imparted Mr. West with privileged information either for Mr. West's own use, or with the goal of having Mr. West ultimately relay this information to the Trustee's counsel, there is no waiver as Mr. West was reasonably necessary for the transmission of the information.

Of note, MTV's argument of waiver is incongruous with its own long-standing position that communications between non-attorneys are privileged if the "communications ask for information that MTV[ ]'s attorneys have requested in order to provide legal advice, forward

legal advice, attach documents containing legal advice, respond to legal advice, or relay legal advice." (*See* **Exhibit C**). By way of example, MTV has asserted and maintained a privilege as to four (4) e-mails exchanged between John Miller and Jackie French, two non-lawyers, on the e-mail thread which concludes: "*f\*%k lou. bg's thoughts were: keep lou off tv*" (hereinafter, the "*f\*%k lou*" email) (*See* **Exhibit D**).[8] Neither of MTV's creative executives copied an attorney on these four (4) e-mails and, short of an *in camera* inspection, there is no way to meaningfully access whether these non-lawyers were communicating legal advice.

MTV cannot have it both ways. Applying MTV's own logic, the Disputed Communication, in which Mr. Pearlman relayed information to his legal counsel (one of his few sources of outside contact) either for Mr. West's own use or so that the information could be transmitted to the Trustee's counsel, is protected by the attorney-client privilege.

### C. MTV Wrongly Asserts that Factual Information Is Never the Proper Subject of a Privilege Claim.

MTV asserts that "any factual information imparted to Mr. West" is not protected by the attorney-client privilege. [D.E. 203, p. 5]. This is not necessarily the case. Indeed, as held by the United States Court in *Upjohn Co. v. United States*, the attorney-client privilege exists to protect not only the giving of professional advice, but also the giving of information to the lawyer to enable him to render sound and informed advice. *See* 449 U.S. 383, 390 (1981). Consequently, in certain circumstances, ***"[a] client's confidential communication of facts to his attorney is protected by the attorney-client privilege, even if the facts are discoverable by other means."*** *Id.* at pp. 395-96 (emphasis added); *Hagan's v. Gatorland Kubota, LLC*, 45 So.3d 73, 76 (Fla. 1st DCA 2010) (same); *see United States ex rel. Locey v. Drew Medical, Inc.*, 2009 WL 88481, * 2-3 (M.D. Fla. Jan. 12, 2009) (Spaulding, J.) ("Defendants correctly argue that even if

---

[8] MTV originally withheld the *f\*%k lou*" email on privileged grounds for a year before turning it over to the Trustee.

the communication was privileged, the underlying facts set forth in the chronology are not protected by the privilege. ***However, those facts must be obtained through testimony or other discovery tools, not through production of the attorney-client communication.***") (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)) (emphasis added).

*Kintera, Inc. v. Convio, Inc.* is illustrative. There, Kintera erroneously argued that the communication in question was not privileged "because the document contained only factual information." 219 F.R.D. 503, 509 (S.D. Cal. 2003). The court disagreed, ruling that a communication from a client to an attorney is protected by the attorney-client privilege if it was confidential and part of a request for legal advice or assistance. Thus, while the facts may be independently discoverable, their inclusion in a confidential communication with legal counsel shields the document from production.

A fact is one thing. A self-authored narrative concerning what the client perceives to be pertinent and "intends as information regarding the 'subject matter' of his problem" is an entirely different thing. *In re Grand Jury Proceedings*, 896 F.2d 1267, 1270 (11th Cir. 1990). "Thus, courts have distinguished between underlying facts – facts existing independently of any communication between the attorney and client – and communications about those facts, extending the privilege to the latter but not the former." *Id.* Consequently, whether a communication contains factual information is not dispositive as to whether it is privileged. A document, such as the Disputed Communication, may well be shielded from production, even if the underlying facts themselves are discoverable.

D. <u>MTV's Continued Discovery Abuse</u>.

It also bears noting that the Trustee's Sanctions Motion [D.E. 159] has done little to curb MTV's discovery misconduct, as demonstrated by the circumstances surrounding MTV's receipt

of the Disputed Communication. In this particular instance, MTV improperly secured a strategic advantage by refusing to produce the documents responsive to its subpoena to the Bureau of Prisons until *after* the commencement of the second day of Mr. Pearlman's deposition – at which point in time it was impossible for the Trustee's counsel to question Mr. Pearlman on the documents.

On the morning of April 27, 2010 (the second day of Mr. Pearlman's two-day deposition) MTV's counsel represented that it had "just received" documents responsive to MTV's subpoena to the Bureau of Prisons, but they were somehow inexplicably incapable of furnishing the Trustee's counsel with copies of the documents. In truth – and as evidenced by the facsimile coversheet accompanying the production of the documents – MTV's counsel had received the documents at 1:12 p.m. on *April 26, 2011*. (*See* **Exhibit E**). These documents should have been immediately provided to the Trustee. Instead, MTV's counsel waited until 10:17 a.m. EST on April 27, 2011 (*see* **Exhibit F**) – at which point the Trustee's counsel was already inside the Federal Correctional Institute and, thus, incapable of accessing the documents – to turn them over, thereby depriving the Trustee of the reciprocal opportunity to determine whether he wished to question Mr. Pearlman on these documents.

Moreover, questions abound regarding this document production from the Bureau of Prisons, as MTV has failed to respond to the Trustee's request for confirmation that the totality of the documents it received from the Bureau of Prisons was twenty-seven (27) pages and that only one (1) of these documents involved an email between Mr. Pearlman and Mr. West. (*See* **Exhibit G**). Moreover, part of the document production includes communications between Mr. Pearlman and his other attorney, Ken Schwartz, Esq., and at least one of these documents

appears to be privileged and should not have been either reviewed or produced by MTV.[9]

### E. MTV's Actions Mandate the Exclusion of the Disputed Communication and an *In Camera* Review of the Trustee's Long-Standing Challenge to MTV's Privilege Claims.

MTV's actions have resulted in a fundamental unfairness, as MTV purposefully shielded documents from the Trustee, including the Disputed Communication, on which it might have chosen to question Mr. Pearlman. In that Mr. Pearlman is incarcerated and lies outside of this Court's subpoena power, he will be unavailable to testify in person at the trial of this action. His deposition testimony will serve as his trial testimony. MTV does not have the right to dictate the scope of the Trustee's examination of Mr. Pearlman by belatedly producing documents. The Trustee had an absolute right to question Mr. Pearlman on all information then available to MTV,[10] including the Disputed Communication, and MTV should not be able to benefit from a discovery stratagem that prejudiced the Trustee because MTV precluded him from being able to conduct a full and complete examination of a trial witness. *See Allstate Ins. Co. v. Palterovich*, 2007 U.S. Dist. Lexis 78714, *18-19 (S.D. Fla. Oct. 23, 2007) (defendants' failure to produce certain documents "constrained [plaintiff's] ability to inquire upon probative matters that would not be apparent to them without the opportunity to examine pertinent documentary materials ... As a result of Defendants' unabashed and unmitigated neglect of their discovery obligations, [Plaintiff] has simply been deprived of any reasonable opportunity to effectively prosecute its case against them."); *Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*, 212 F.R.D. 178, 173 (S.D.N.Y. 2003) (fact that important documents were produced after

---

[9] To avoid further impingement upon Mr. Pearlman's privilege, the Trustee's counsel has refrained from attaching this document to its Opposition but can provide the document to the Court under seal, should it so desire.

[10] Aside from Trans Continental's past practice of providing all documents acquired by virtue of subpoenas to third-parties, Trans Continental had specifically requested that MTV produce all documents received in connection with its subpoena to the Bureau of Prisons. (*See* J. Sammataro's February 25, 2011 e-mail to MTV's counsel, attached hereto as **Exhibit H**).

the depositions of key witnesses was an "obstruction[]" that prevented the adverse party from adequately planning and preparing its case; adverse party was "forced to proceed with depositions before relevant documents were produced, it was no doubt hampered in opposing summary judgment and, ultimately, in preparing for trial."); *Frederick v. Hanna*, 2007 U.S. Dist. Lexis 18626, * 14 (W.D. Pa. Mar. 16, 2007) ("Defendants are prejudiced, because trial is imminent and they are unable to now prepare to address the late-disclosed documents; Defendants cannot cure that prejudice, because I will not now postpone the trial date to accommodate additional preparation…").

This is particularly true given that, as referenced above, even if the pertinent portion of the Disputed Communication was privileged, pursuant to the United States Supreme Court's decision in *Weintraub*, the Trustee possessed the right to waive the privilege if he was so inclined. After having deprived the Trustee of his right to review the document, consider its privilege and potentially question Mr. Pearlman on the substance of the document, MTV is now seeking to use the Disputed Communication in connection with its forthcoming motion for summary judgment. MTV cannot both deprive the Trustee of the right to examine Mr. Pearlman on the Disputed Communication and then attempt to capitalize on the Disputed Communication by ensuring that there is no accompanying explanation. Consequently, even if this Court determines that the Disputed Communication is not privileged, MTV should nonetheless be precluded from relying upon the document in support of its summary judgment motion. *See Optowave Co., Ltd. v. Nikitin*, 2006 WL 3231422 (M.D. Fla. Nov. 7, 2006) (Baker, J.) ("The Court has broad discretion to impose sanctions derived from its inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases.").

Furthermore, irrespective of whether the Court conducts an *in camera* inspection of the

Disputed Communication, the Trustee respectfully requests that the Court conduct an *in camera* inspection of the documents listed in his March 10, 2011 Motion for Sanctions [D.E. 159, p. 14; *see* D.E. 159-28] on an expedited basis, as these challenged documents are also likely to impact both the Trustee's motion for summary judgment and his opposition to MTV's summary judgment motion.

### III. CONCLUSION

For the reasons set forth herein, the Trustee respectfully requests that the Court deny MTV's Motion for *In Camera* Inspection [D.E. 203]; order that the Disputed Communication be produced to the Trustee for his review to discern the application of his privilege on a non-waiver basis; and grant such other and further relief the Court deems just and necessary, including conducting an expedited *in camera* review of the "*f*%k lou*" e-mail chain[11] and other documents mentioned in the Trustee's March 10, 2011 Sanctions Motion, and precluding MTV from using the Disputed Communication in connection with its summary judgment motion and/or opposition to the Trustee's motion for summary judgment.

---

[11] The "*f*%k lou*" email chain was inadvertently omitted from the list of documents submitted in connection with the Sanctions Motion [D.E. 159-28], but was expressly referenced in the Sanctions Motion [D.E. 159, p. 13], and was the subject of the Trustee's prior good faith meet and confer efforts.

Dated: May 23, 2011

        Respectfully submitted,

        **KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
*Attorneys for plaintiff, Soneet Kapila in his capacity as the federally appointed Chapter 11 Trustee charged with administrating the bankruptcy estate of Trans Continental Television Productions, Inc.*
Four Seasons Tower
1441 Brickell Avenue, Suite 1420
Miami, Florida  33131
Telephone:  (305) 377-1666
Facsimile:  (305) 377-1664
jsammataro@kasowitz.com

By: /s/ James G. Sammataro
    James G. Sammataro
    Florida Bar Number: 0520292
    Courtney Caprio
    Florida Bar No. 0933961

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 23, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a notice of the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF to:

**Andrew J. Ehrlich, Esq.**
aehrlich@paulweiss.com
Paul, Weiss, Rifkind, Wharton
& Garrison LLP
*Counsel for MTV Networks, Viacom, Inc and Viacom International, Inc.*
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

**Brian A. McDowell, Esq.**
brian.mcdowell@hklaw.com
Holland & Knight, LLP
*Counsel for MTV Networks, Viacom, Inc and Viacom International, Inc.*
200 South Orange Avenue
Suite 2600
Orlando, Florida 32801
Telephone: (407) 425-8500
Facsimile: (407) 244-5288

**Jonathan Davis, Esq.**
Jonathan D. Davis, P.C.
*Counsel for Bad Boy Films, Inc. and Bad Boy Records, LLC*
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone: (212) 687-5464
Facsimile: (212) 557-0565

**Daniel E. Traver, Esq.**
Gray Robinson, P.A.
*Counsel for Bad Boy Films, Inc. and Bad Boy Records, LLC*
301 East Pine Street, Suite 1400
P.O. Box 3068
Orlando, Florida 32801
Telephone: (407) 843-8880
Facsimile: (407) 244-5690

By: /s/ James G. Sammataro
      Attorney